**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re Application of<br><br>CANACOL ENERGY COLOMBIA S.A.S, CNE OIL & GAS S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA<br><br>Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Index No.: |

**DECLARACIÓN DE DAVID ESPINOSA ACUÑA EN SOPORTE DE LA SOLICITUD DE ASISTENCIA JUDICIAL DE ACUERDO CON EL TÍTULO 28 U.S.C. § 1782**

Yo, David Espinosa Acuña, con domicilio profesional en la Carrera 16ª No. 79-48, Bogotá, Colombia, declaro lo siguiente:

1. Represento a CANACOL ENERGY COLOMBIA S.A.S ("**Canacol**"), CNE OIL & GAS S.A.S ("**CNE**") y CNEOG COLOMBIA SUCURSAL COLOMBIA ("**CNEOG**" y, junto con Canacol y CNE, los "**Solicitantes**"), en calidad de denunciantes en una serie de procesos penales contra representantes de VP Ingenergía S.A.S. E.S.P. ("**VP Colombia**") ante la Fiscalía General de la Nación colombiana (véanse párrafos **13** a **16** *infra*).

2. Presento esta declaración en apoyo a la solicitud de asistencia judicial conforme al Título 28 del *United States Code* (U.S.C.) Sección (§) 1782 para el requerimiento (*subpoena*) respecto de personas ubicadas en este distrito judicial para su uso en ciertos procedimientos judiciales en Colombia (la "**Solicitud**").

*Formación y experiencia*

3. Soy abogado titulado en la Universidad de la Sabana y socio fundador de David Espinosa Acuña & Asociados, firma de abogadas penalista en Bogotá, Colombia. Tengo 21 años de experiencia, he tenido la oportunidad de adelantar representaciones judiciales muy importantes

ante toda la estructura del sistema judicial colombiano, incluyendo litigios ante la Sala Penal de la Corte Suprema de Justicia, Tribunales Superiores de Distrito Judicial, Juzgados Penales del Circuito y Penales Municipales.

4. A lo largo de mi trayectoria como abogado titulado en Colombia he ejercido la representación ante la Fiscalía General de la Nación y los Jueces Penales, tanto de personas naturales como de personas jurídicas, éstas, a su vez, de derecho público y de derecho privado, como es el caso de los Solicitantes. En dichas instancias, he actuado como abogado defensor y representante de víctimas con un alto grado de éxito.

*Anexos a esta declaración*

5. A lo largo de esta declaración, hago referencia a una serie de denuncias penales, presentadas en el marco del artículo 250 de la Constitución Política y de los artículos 66 y subsiguientes de la Ley 906 de 2004 o Código de Procedimiento Penal, así como de los tipos penales de Estafa en circunstancias de agravación (artículos 246 y 267 de la Ley 599 de 2000), Alzamiento de Bienes (artículo 253 de la Ley 599 de 2000), Lavado de Activos (artículo 323 de la Ley 599 de 2000), y Concierto Para Delinquir (artículo 340 de la Ley 599 de 2000), cuyas copias auténticas y correctas se adjuntan como Anexos 1 a 5:

    a. Denuncia penal por la presunta comisión del delito de estafa en circunstancias de agravación contra Álvaro Vargas Bravo, Patricia Peña Anaya y Darlyn Yesenia Neira Caro (**Anexo 1**) y su traducción al inglés (**Anexo 1A**);

    b. Ampliación de denuncia de 13 de febrero de 2024 por la presunta comisión del delito de estafa en circunstancias de agravación contra Álvaro Vargas

    Bravo, Patricia Peña Anaya y Darlyn Yesenia Neira Caro (**Anexo 2**) y su traducción al inglés (**Anexo 2A**);

c. Ampliación de denuncia de 3 de abril de 2024 por la presunta comisión del delito de estafa en circunstancias de agravación contra Álvaro Vargas Bravo, Patricia Peña Anaya y Darlyn Yesenia Neira Caro (**Anexo 3**) y su traducción parcial al inglés (**Anexo 3A**);

d. Denuncia penal por la presunta comisión del delito alzamiento de bienes y lavado de activos contra Álvaro Vargas Bravo, Patricia Peña Anaya, Darlyn Yesenia Neira Caro y el Álvaro Vargas Grass (**Anexo 4**) y su traducción al inglés (**Anexo 4A**); y

e. Denuncia penal por la presunta comisión del delito de concierto para delinquir contra Álvaro Vargas Bravo, Patricia Peña Anaya, Darlyn Yesenia Neira Caro y Luis Fernández Zaher (**Anexo 5**) y su traducción al inglés (**Anexo 5A**).

## I. ANTECEDENTES FÁCTICOS

6. Los Solicitantes son personas jurídicas de nacionalidad colombiana dedicadas a la exploración, producción y comercialización de gas natural convencional en Colombia.

7. Por su parte, VP Colombia es una empresa dedicada al comercio de hidrocarburos y sus derivados líquidos y gaseosos a nombre propio o de terceros. VP Colombia tiene como representantes legales a su presidente, Álvaro Augusto Vargas Bravo (el "**Sr. Vargas Bravo**"); su vicepresidenta, Patricia Cristina Peña Anaya (la "**Sra. Peña Anaya**"); Darlyn Yesenia Neira Caro (la "**Sra. Neira Caro**"); y Álvaro Vargas Grass (el "**Sr. Vargas Grass**").

8. A su vez, VP Colombia tiene como empresa matriz a VP Engenergy LLC ("**VP USA**"), una compañía de responsabilidad limitada (*limited liability company*) registrada en Texas

con establecimiento principal en Florida. Figuran como sus gestores el Sr. Vargas Bravo, la Sra. Peña Anaya y el Nicolás Vargas Peña (el "**Sr. Vargas Peña**"). (*Id.*).

9. Las relaciones comerciales entre los Solicitantes y VP Colombia comenzaron en 2016. Hasta entonces, los Solicitantes suministraban de manera directa el gas a su cliente TERMOBARRANQUILLA S.A. E.S.P. ("**TEBSA**"). Sin embargo, desde ese año, VP Colombia comenzó a actuar como intermediario, adquiriendo el gas de los Solicitantes y vendiéndoselo a TEBSA a un precio mayor.

10. En este contexto, CNE y VP Colombia celebraron el Contrato No. CNEGN-01-2016 de 2 de febrero de 2016, cuyo objeto era el suministro de gas natural (el "**Contrato 2016**").

11. Años más tarde, el 21 de diciembre de 2022, las partes firmaron un nuevo Contrato No. CNEOG-CF-VP-01-2022, por el cual CNE y CNEOG venderían gas a VP Colombia (el "**Contrato 2022**"). En virtud del Contrato 2022, VP Colombia debía prestar una garantía para garantizar el cumplimiento de sus obligaciones. Asimismo, se constituiría un fideicomiso de administración y pagos con la sociedad fiduciaria Itaú Fiduciaria Colombia ("**Fiduciaria Itaú**"), de manera que los recursos provenientes de los pagos TEBSA se emplearían en satisfacer las obligaciones de VP Colombia frente a CNE por el suministro del gas.

12. En la misma fecha se firmó el Contrato CNEOG-CI-VP-01-2022 entre CNE y CNEOG, por un lado, y VP Colombia, por otro, para el suministro de gas interrumpible en los términos y condiciones acordados (el "**Contrato 2022 Interrumpible**").

## II. LOS PROCEDIMIENTOS EN COLOMBIA

13. En el marco de dicha relación contractual, VP Colombia, a través de sus representantes, adoptó ciertas conductas de carácter delictivo que fueron puestas en conocimiento de la Fiscalía General de la Nación de Colombia. Tales denuncias dieron lugar a tres procesos penales explicados a continuación.

14. El 1 de febrero de 2024, los Solicitantes presentaron denuncia solicitando la imputación del Sr. Vargas Bravo, la Sra. Peña Anaya y la Sra. Neira Caro por la comisión del delito de estafa en circunstancias de agravación. Anexos 1 y 1A. En la denuncia, los Solicitantes alegan que los denunciados se valieron de un mecanismo contractual fraudulento para inducir a error a los Solicitantes y dejar impagado el gas recibido con valor de US$18 millones. *Id*., p. 2. En dicha denuncia se aduce que la garantía emitida por VP Colombia de acuerdo con el Contrato 2022 resultó ineficaz y fue rechazada por el banco correspondiente. *Id*., pp. 3 – 6. Además, se manifiesta que los representantes de VP Colombia dieron instrucción expresa a la Fiduciaria Itaú de denegar el pago de las facturas relativas al gas recibido, a la vez que sustraían fraudulentamente la totalidad de los recursos de la fiducia. *Id*., p. 6. La denuncia fue ampliada en dos ocasiones, indicando los Solicitantes que los denunciados habían continuado con su comportamiento delictivo al hacer desaparecer el domicilio comercial de VP Colombia registrado ante la Cámara de Comercio y al rechazar las facturas que acreditaban la entrega del gas ("**Procedimiento por Delito de Estafa**"). Anexos 2 y 2A y Anexos 3 y 3A. En este procedimiento, la Fiscalía General de la Nación colombiana ya ha dado órdenes a sus investigadores para recolectar técnicamente la información objeto de denuncia.

15. El 21 de octubre de 2024, Canacol y CNE presentaron una nueva denuncia por la presunta comisión del delito de alzamiento de bienes y lavado de activos contra el Sr. Vargas Bravo, la Sra. Peña Anaya, la Sra. Neira Caro y el Sr. Vargas Grass. Anexos 4 y 4A. Como describe la declaración de Juan Mendoza Gómez presentada también en soporte de la Solicitud, CNE y CNEOG iniciaron una serie de procedimientos ejecutivos contra VP Colombia (los "**Procedimientos Ejecutivos**"). No obstante, al embargarse las cuentas de VP Colombia a resultas de dichos Procedimientos Ejecutivos, se encontró que VP Colombia solamente contaba con

COP$1.445.811,00 (aproximadamente US$350). *Id*., p. 3.  Esta cuantía mínima no se condice con el objeto social y operaciones de VP Colombia, ni con el hecho de que VP Colombia había sido capaz de sufragar los honorarios de COP$2.817.915.835,00 (aproximadamente US$ 687.892,16) en un arbitraje que había iniciado recientemente. *Id*., p. 4.  Lo anterior evidencia una conducta constitutiva del delito de alzamiento de bienes o, subsidiariamente, de un delito de lavado de activos si el origen de los fondos utilizados en el arbitraje tiene un origen ilícito ("**Procedimiento por Delito de Alzamiento de Bienes y Lavado de Activos**"). *Id*., pp. 5 – 12.

16. El 8 de abril de 2024, CNE y CNEOG presentaron denuncia por la presunta comisión del delito de concierto para delinquir contra el Sr. Vargas Bravo, la Sra. Neira Caro, la Sra. Peña Anaya y el Sr. Luis Miguel Fernández Zaher (representante legal de TEBSA). Anexos 5 y 5A.  Se alega que VP Colombia, TEBSA y la Fiduciaria Itaú se concertaron para hacerse con el gas proveniente de CNE y CNEOG y encubrir la insatisfacción del pago de US$18 millones. *Id*., pp. 3 – 6.  Tal comportamiento delictivo se efectúo por medio de la constitución de garantías inválidas, así como de la distribución improcedente y sustracción de los recursos de la fiducia calificándolos como "excedentes", sin verificar el cumplimiento de las obligaciones contractuales ("**Procedimiento por Delito de Concierto para Delinquir**" y, junto al Procedimiento por Delito de Estafa y el Procedimiento por Delito de Alzamiento de Bienes y Lavado de Activos, los "**Procedimientos Penales**").[1] *Id*.

---

[1] Las Solicitantes han presentado también ante la Fiscalía de la Nación una denuncia por la presunta comisión del delito de fraude procesal en concurso heterogéneo con los delitos de constreñimiento ilegal y especulación contra el Sr. Vargas Bravo y la Sra. Yesenia Neira Caro.  Este proceso no se referencia en más detalle por no ser relevante a la presente Solicitud.

**III. LA INSOLVENCIA DE VP COLOMBIA Y LA SUSTRACCIÓN DE LOS RECURSOS DE LA FIDUCIA**

17. Como he indicado en los párrafos **14** y **16** *supra*, VP Colombia, a través de sus representantes, sustrajo la totalidad de los recursos administrados por la Fiduciaria Itaú, sin haberlos aplicado antes al cumplimiento de sus obligaciones contractuales frente a los Solicitantes.

18. Al producirse el embargo de todas las cuentas nacionales de VP Colombia en virtud de los Procedimientos Ejecutivos iniciados por los Solicitantes, solamente se encontró una cuantía de COP$1.445.811,00 (aproximadamente US$350). Teniendo en cuenta que VP Colombia es una empresa dedicada al comercio de hidrocarburos y sus derivados líquidos y gaseosos a nombre propio o de terceros, actividades que implican operar con importantes cantidades de dinero, el hallazgo de esta cantidad ínfima de dinero indica que VP Colombia está tratando de eludir el cumplimiento de sus obligaciones económicas y el pago de deudas para con CNE y CNEOG mediante la ocultación de sus bienes.

19. Dado que no ha sido posible localizar los recursos y activos de VP Colombia en Colombia, es altamente probable que estos hayan sido desviados, por medio de dividendos, préstamos u otras figuras jurídicas, a su matriz, VP USA, en Estados Unidos.

**IV. NI VP USA Y NI EL SR. VARGAS PEÑA, RESIDENTES EN ESTE DISTRITO, SON PARTE DE LOS PROCEDIMIENTOS COLOMBIANOS**

20. Ni VP USA ni el Sr. Vargas Peña son parte de los Procedimientos Penales ni en general de los Procedimientos Colombianos.

**V. LA SOLICITUD NO ES CONTRARIA AL DERECHO COLOMBIANO Y LOS JUZGADOS COLOMBIANOS ADMITIRÍAN LOS DOCUMENTOS RECABADOS COMO PRUEBA EN ESTE DISTRITO**

21. La prueba que sea generada en los Estados Unidos que pueda orientar el descubrimiento de la verdad en el proceso penal colombiano sin duda podrá ser utilizada como elemento de prueba ante la Fiscalía General de la Nación y, eventualmente, en un proceso penal

ante un Juez de la República.  Para ello, se requerirá explicar cómo se obtuvo el elemento y qué explica o demuestra.  De cualquier forma, no existe ningún tipo de limitación en cuanto a los medios de prueba, pues es un proceso regido por la libertad probatoria.  En ese sentido, si se descubriese que el dinero ha sido desviado a Estados Unidos, podría orientarse la actuación de los peritos contables de la Fiscalía en ese sentido para corroborar dicha hipótesis.

22. Atendiendo a que la solicitud de *discovery* en Estados Unidos es un procedimiento independiente en una jurisdicción ajena a la colombiana, el sistema legal colombiano no prevé ninguna regla, norma o similar que impida o prohíba la solicitud mencionada.

23. Así mismo, dicha solicitud no tiene por objeto eludir ninguna norma del ordenamiento jurídico colombiano.  De hecho, esto apoyaría la gestión en el marco de la investigación de la Fiscalía.  Aunque los jueces colombianos podrían solicitar la obtención de estas pruebas a través de una carta rogatoria, en línea con lo dispuesto en el Convenio de la Haya del 18 de marzo de 1970 sobre la Obtención de Pruebas en el Extranjero en Materia Civil o Comercial, este procedimiento es muy lento y poco eficiente.  En cualquier caso, esta no es una vía que las partes de un procedimiento en Colombia hayan de agotar antes de recurrir a la solicitud de asistencia judicial de la Sección 1782.

24. En ese sentido, los elementos de prueba que surjan producto del mencionado *discovery,* podrán ser utilizados ante la Fiscalía y ésta, a su vez, directamente o a través de solicitud de la representación de víctimas, podrá presentarla como prueba luego de la debida traducción oficial, por lo cual las autoridades colombianas deberían aceptar su uso en el juicio.

## VI. SOLICITUD DE *DISCOVERY* EN ESTE DISTRITO

25. Como se adelantó en los párrafos **8** y **19** *supra*, es altamente probable que la información y documentos concernientes al desvío de recursos de VP Colombia se encuentre en este distrito.  Por este motivo, los Solicitantes piden a la Corte de Distrito de los Estados Unidos

para el Distrito Sur de Florida que ordene las declaraciones y exhibición de documentos de VP USA y del Sr. Vargas Peña, incluyendo:

    a.    La estructura societaria y de administración de VP Colombia y VP USA, incluyendo estatutos, acuerdos operativos, actas de reuniones o resoluciones;

    b.    Documentos relativos a los estados financieros, extractos bancarios, declaraciones de impuestos, arrendamientos, garantías o ventas de activos de VP USA;

    c.    Documentos relativos a operaciones (ej.: préstamos, pagos, dividendos, salarios o transferencias) entre VP USA y sus miembros, y entre VP USA y sus afiliadas (incluyendo VP Colombia) u otras entidades relacionadas; y

    d.    Las responsabilidades del Sr. Vargas Peña como gestor de VP USA, así como su conocimiento, opinión y recomendaciones respecto de las operaciones, contratos y/o relación entre VP USA y VP Colombia.

26. Las pruebas solicitadas en la Solicitud se enfocan en la identificación de los fondos desviados fuera de Colombia a efectos de evitar las obligaciones legales de VP Colombia, así como las comunicaciones internas y externas sobre este extremo. Esta información es directamente relevante a los puntos sobre los cuáles tendrán que decidir los juzgados colombianos en los Procedimientos Penales.

27. De acuerdo con 28 U.S.C. § 1746, declaro bajo pena de perjurio a tenor de las leyes de Estados Unidos de América que lo que antecede es fiel y exacto.

Firmo esta declaración en Bogotá (Colombia), el 21 de marzo de 2025.

                                                          David Espinosa Acuña