# EXHIBIT 1

**DAVID ESPINOSA ACUÑA & ASOCIADOS**



SUBDIRECCION DE GESTION DOCUMENTAL
SGD - No. 20246110019282
Fecha Radicado: 2024-02-01 16:01:51
Anexos: DP.14+123 FOLIOS.

SEÑORES
FISCALÍA GENERAL DE LA NACIÓN
BOGOTÁ D.C.

REF.   DENUNCIA POR LA PRESUNTA COMISIÓN DEL DELITO DE ESTAFA (ART. 246 C.P.) EN CIRCUNSTANCIAS DE AGRAVACIÓN POR SUPERAR 100 SMLMV (ART. 267) EN CONTRA DE LOS SEÑORES ÁLVARO AUGUSTO VARGAS BRAVO Y DARLYN YESENIA NEIRA CARO

**DAVID ESPINOSA ACUÑA**, identificado como aparece al pie de mi firma, obrando como **APODERADO** de **CANACOL ENERGY COLOMBIA S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S**[1], persona jurídica de nacionalidad colombiana identificada con el NIT 830.095.563-3[2], identificado con cédula de ciudadanía 79.657.288, comparezco ante ustedes respetuosamente en aras de presentar **DENUNCIA** en contra de los señores **ÁLVARO AUGUSTO VARGAS BRAVO, DARLYN YESENIA NEIRA CARO y PATRICIA CRISTINA PEÑA ANAYA** en calidad de presunto **AUTORES** del delito de **ESTAFA** (ART. 246 C.P.) **EN CIRCUNSTANCIAS DE AGRAVACIÓN POR SUPERAR 100 SMLMV** (ART. 267 C.P.).

I.   IDENTIFICACIÓN DE LAS PERSONAS DENUNCIADAS

La noticia criminal que aquí se somete al conocimiento de la Fiscalía General de la Nación referirá hechos jurídicamente relevantes que podrían involucrar el comportamiento del ciudadano **ÁLVARO AUGUSTO VARGAS BRAVO**, quien se identifica con la cédula de ciudadanía 91.241.213 y puede ser ubicado en la Avenida Carrera 9 #115-06 oficina 801 de la ciudad de Bogotá, así como en el correo electrónico financiera@vpsa.com.

Así mismo, se resalta la intervención de la señora **DARLYN YESENIA NEIRA CARO**, quien se identifica con la cédula de ciudadanía 1.095.808.726 y con correo electrónico financiera@vpsa.com.

Finalmente, la señora **PATRICIA CRISTINA PEÑA ANAYA**, quien se identifica con cédula de ciudadanía es 63.351.231 y puede ser ubicada en la Avenida Carrera 9 #115-06 oficina 801 de la ciudad de Bogotá, correo electrónico financiera@vpsa.com

---

[1] Conforme a poder especial que acompaño como ANEXO 1
[2] Conforme a certificado de existencia y representación legal que adjunto como ANEXO 2.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

## II. TEORÍA DEL CASO

En la presente denuncia la Fiscalía General de la Nación se percatará de la utilización de un mecanismo contractual por parte de los aquí denunciados como un **medio fraudulento** con el propósito de **inducir en error** a la compañía privada reconocida como la mayor productora de gas en Colombia como es **CANACOL ENERGY** y así (i) obtener de éstos la entrega de una cantidad de gas avaluada en **DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000)** y, posteriormente, (ii) obtener el provecho ilícito para sí en tanto **DISFRUTARON DEL GAS ENTREGADO POR CANACOL ENERGY** y **NO PAGARON -FRAUDULENTAMENTE- EL DINERO EQUIVALENTE AL PRODUCTO EFECTIVAMENTE ENTREGADO**, pero, además, ordenando expresamente a un patrimonio autónomo el no pago de la obligación consolidada y sustrayendo los recursos propios de la fiducia que debían tener constituida para la efectiva administración de los recursos.

En resumen, este es un caso en el que los denunciados:

1. Contratan la compraventa de gas con CANACOL ENERGY.

2. Efectivamente reciben el gas comprado por parte de CANACOL ENERGY, avaluado en DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000).

3. Comercializan el gas comprado con destinatarios finales como la termoeléctrica TERMOBARRANQUILLA.

4. Reciben el pago del gas entregado a los destinatarios finales, como TERMOBARRANQUILLA.

5. Sin embargo, no pagan los DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000) aproximadamente a CANACOL por la efectiva prestación del servicio.

6. Rechazan la factura emitida por CANACOL ENERGY sin justa causa.

7. Dan orden de no pago en la fiducia que debían tener constituida para la administración de los recursos.

8. Sustraen, fraudulentamente, los recursos de la fiducia para que CANACOL ENERGY no tuviera como hacer efectivo el pago por el servicio efectivamente prestado.



T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





### III.   HECHOS JURÍDICAMENTE RELEVANTES

1. Las sociedades CANACOL ENERGY COLOMBIA S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S. son personas jurídicas de nacionalidad colombiana cuyo objeto social principal es la exploración y producción de gas natural convencional en Colombia.

2. De otro lado, los aquí denunciados, ÁLVARO AUGUSTO VARGAS BRAVO y DARLYN YESENIA NEIRA CARO y ANA CRISTINA PEÑA ANAYA han representado y representan legalmente a la compañía **VP INGENERGÍA S.A.S. E.S.P**, identificada con el NIT 900.305.404-7, sociedad que tiene por objeto social la <u>comercialización de gas natural</u>, hidrocarburos y sus derivados.

3. Consecuencia de lo anterior, las sociedades CANACOL ENERGY COLOMBIA S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S. producen gas, mientras que los denunciados, a través de <u>VP INGENERGÍA S.A.S. E.S.P. lo compran para su posterior comercialización con destinatarios finales</u>.

4. En el marco de dicha relación contractual, las sociedades antes mencionadas suscribieron los contratos de (i) <u>suministro de gas en firme</u>[3] No. CNEOG-CF-VP-01-2022 y; (ii) de <u>suministro de gas interrumpible</u>[4] No. CNEOG-CI-VP-01-2022, mediante los cuales las sociedades **CANACOL ENERGY COLOMBIA S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S se obligaban a entregar el gas y VP INGENERGÍA se obligaba a la respectiva contraprestación económica acordada bilateralmente como "precio"**.

5. La cuantía de la ejecución de dichos contratos ascendía a DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000) aproximadamente, los cuales debían ser pagados por los denunciados, a través de la sociedad VP INGENERGÍA S.A.S luego de la efectiva entrega del gas por parte de CANACOL.

6. **Como garantía para respaldar la seriedad del negocio**, se imponía la obligación en cabeza de los denunciados de constituir una garantía bancaria o una póliza de seguro que amparara el incumplimiento de cada una de las obligaciones derivadas del negocio jurídico, así:

---

[3] Cfr. Decreto 2225 de 2000, artículo 1, compilado en el artículo 2.2.2.1.4 del Decreto de 1073 de 2015: "<u>Contrato Firme o que Garantiza Firmeza</u>: *Contrato escrito en el que un Agente garantiza el servicio de suministro de una cantidad máxima de gas natural y/o de capacidad máxima de transporte, sin interrupciones, durante un período determinado, excepto en los días establecidos para mantenimiento y labores programadas. Esta modalidad de contrato requiere de Respaldo Físico*".

[4] Cfr. Decreto 2100 de 2011, artículo 2, compilado en el artículo 2.2.2.1.4 del Decreto de 1073 de 2015: "<u>Contrato Interrumpible o que no Garantiza Firmeza</u>: *Contrato escrito en el que un Agente no asume compromiso de continuidad del servicio de suministro de un volumen máximo de gas natural y/o de capacidad máxima de transporte de gas natural. Este servicio puede ser interrumpido por cualquiera de las partes, en los términos definidos en el contrato*"

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

> "**5.5. GARANTÍAS**[5].
>
> 5.5.1. El comprador deberá constituir por su cuenta y a favor del vendedor, a más tardar, dentro de los 20 días calendario anteriores a la fecha de inicio del suministro, **el original de una garantía bancaria o póliza de seguro** (la garantía), **que ampare el cumplimiento de todas y cada una de las obligaciones derivadas del presente contrato** y deberá indicar expresamente en la carátula de la misma que se garantiza el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, cargos y sobrecostos en que incurra el vendedor por el incumplimiento del comprador. El monto agregado de la garantía será equivalente a sesenta (60) días de suministro de la CDGF. **La garantía deberá tomarse con vigencia desde la fecha de inicio de suministro <u>hasta el 30 de noviembre de 2023</u> y renovarse sucesivamente, 30 días antes de su vencimiento con una vigencia de 12 meses y actualizarse atendiendo al cambio de la CDGF conforme a la tabla y al numeral 3.1. y en total deberán extenderse por el término duración del presente contrato y sesenta (60) días más (...)**" (Énfasis suplido).

7. Adicionalmente, como otra muestra del **mecanismo fraudulento** del que se valieron los denunciados, existía la obligación de constituir una FIDUCIA IRREVOCABLE, ANTES DE CUALQUIER ENTREGA DE GAS POR PARTE DE CANACOL, con el propósito de recaudar los pagos de los destinatarios finales, **lo que en últimas le daba la apariencia de seriedad del negocio a mi representada, ya que el manejo de los recursos y el pago del gas efectivamente entregado se encontraba respaldado por una fiducia irrevocable.** Obsérvese:

> "**5.5.2. FIDUCIA**: previo a cualquier entrega de gas por parte del vendedor y dentro de los treinta (30) días siguientes a la firma del presente contrato, el comprador deberá incorporar el contrato firmado con el destinatario final al contrato de fiducia mercantil de administración y pagos **de carácter irrevocable** existente, suscrito y el cual consistentemente tenga por objeto principal **recaudar los pagos que el destinatario final haga al comprador en virtud del contrato de suministro suscrito entre el comprador y el destinatario final y pagar al vendedor las facturas que por concepto del presente contrato se genere**. El comprador enviará certificación al vendedor emitida por entidad financiera que conste

---

[5] Cfr. Contrato de suministro de gas en firme No. CNEOG-CF-VP-01-2022.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





*(i) que el comprador tiene un contrato de fiducia con duración igual al presente contrato y dos veces más, **(ii) que estén expresamente incluidas las instrucciones de pago en favor del vendedor**, (iii) la cuenta bancaria determinada por el vendedor en el numeral 8.1. para la recepción de los pagos y **(iv) que existe un compromiso de la compañía fiduciaria de informar cualquier evento que pueda afectar los derechos del vendedor**.*

*En todo caso, el contrato de fiducia mercantil no se podrá modificar después de que el comprador entregue la certificación de que trata el inciso anterior [...]".*

8. Sustentado en el supuesto cumplimiento de los denunciados, tanto de las garantías bancarias o pólizas, como de la fiducia correspondiente, **mis representadas, de buena fe, pero, en todo caso, inducidas en error por los aquí denunciados, procedieron a cumplir con la entrega de gas con destino a su sociedad** y, en consecuencia, a expedir las facturas correspondientes con la debida antelación, así:

| NÚMERO DE FACTURA | SUMA FACTURADA POR CONCEPTO DE LA EFECRTIVA PRESTACIÓN DEL SERVICIO DE GAS |
|---|---|
| CNEG-511 | COP 4.481.879.333 |
| CNEG-514 | COP$38.605.509 |
| CNEG-524 | COP$16.793.643.567 |
| CNEG-550 | COP$109.725.984 |
| CNEG-551 | COP$275.489.032 |
| CNEG-553 | COP$847.741.949 |
| CNEG-562 | COP$38.130.184 |
| CNSC-431 | COP$876.059.559 |
| CNSC-384 | COP$77.345.041 |
| CNSC-405 | COP$2.438.237.867 |
| CNSC-445 | COP$ 8.864.702.285 |
| CNSC-407 | COP$11.095.414.235 |
| CNSC-420 | COP$1.864.555.188 |
| CNSC-450 | COP$4.926.832.176 |
| CNSC-444 | COP$18.190.207.599 |
| TOTAL | COP. 70.918.569.508 (USD 17.729.642.377) |

9. A pesar de lo anterior, en ejercicio de **un comportamiento absolutamente fraudulento** por parte de los denunciados, **el 15 de diciembre de 2023, cuando**

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

ya se encontraban fenecidas las garantías o pólizas bancarias que cubrían el primer año de ejecución del contrato, acusaron recibo de TODAS las facturas en el sistema RADIAN de la DIAN e inmediatamente y SIN SUSTENTO LEGAL NINGUNO, la señora PATRICIA CRISTINA PEÑA ANAYA LAS RECHAZÓ EN SU TOTALIDAD, bloqueando así la exigibilidad de los valores facturados por el servicio efectivamente prestado.

10. Adicionalmente, de forma ilegal, la sociedad VP INGENERGÍA S.A.S, representada por los aquí denunciados, **dio instrucción expresa a la fiduciaria de no pagar las facturas de octubre y noviembre de 2023 las cuales ascendían a DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000), ello muy a pesar de haber disfrutado el gas entregado por las sociedades aquí víctimas.**

11. En consonancia con lo anterior, la fiduciaria expidió DOS COMUNICACIONES en donde indicó que recibió **instrucciones por parte del fideicomitente, es decir, la sociedad de los aquí denunciados, en donde SE INSTRUYÓ IRREVOCABLEMENTE EL NO PAGO DE NINGUNA SUMA DE DINERO Y/O BIEN FIDEICOMITIDO EN FAVOR DE LOS BENEFICIARIOS DE PAGO**, sustentado en que el 15 de diciembre de 2023 dicha persona jurídica rechazó las facturas presentadas por mis poderdantes.

12. De igual manera, las sociedades por mi representadas se comunicaron con la termoeléctrica TERMOBARRANQUILLA o TEBSA con el propósito de indagar acerca del pago efectivo por parte de ésta a VP INGENERGÍA, como destinatario final del gas producido por CANACOL. Sobre esta situación particular TEBSA informó haber ejecutado todos los pagos a la sociedad de los aquí denunciados[6], **lo que demuestra que VP INGENERGÍA S.A.S (i) efectivamente recibió el gas de CANACOL; (ii) lo comercializó con destinatarios finales; (iii) recibió el pago por la prestación de dichos servicios y; (iv) fraudulentamente y despues de haber conseguido su cometido ilegal, no pagó los montos económicos correspondientes a CANACOL por concepto del precio acordado.**

13. Como una de las mayores muestras de la inducción y el posterior mantenimiento en error por parte de los aquí denunciados, el banco ITAÚ profirió comunicación el 2 de enero de 2024 comunicándole a mi representada que los aquí denunciados habían proferido la instrucción de no pago, pues éstos instruyeron irrevocablemente la instrucción de pago que garantizaba la seriedad del negocio y que era garantía para mis poderdantes:

---

[6] Cfr. Comunicación de TEBSA del 5 de enero de 2024. *"TEBSA se encuentra al día con sus obligaciones de pago frente a VP; cumplimiento que el mismo VP certificó a través de un documento emitido a instancia de TEBSA el 19 de diciembre de 2023"*.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





"En atención a la petición efectuada a través de la Superintendencia Financiera de Colombia radicada el pasado 26 de diciembre de 2023 en la cual solicita lo siguiente:

1. Se nos remita el estado de cuenta del fideicomiso a la fecha y atendiendo lo previsto en el numeral 5 de la Cláusula Duodécima, se solicite al FIDEICOMITENTE que sitúe los recursos necesarios para efectuar los pagos a favor CNE.

Adjunto a esta comunicación encontrará el extracto de los últimos tres meses del Fideicomiso en referencia, igualmente informo que a hoy el FIC No. 81700338 presenta un saldo de $1,376,543,604.93.

2. Se nos informe la razón por la cual no se han realizado los pagos referidos en el numeral 3 del acápite anterior.

Nos permitimos reiterar que de acuerdo con lo informado mediante comunicación de fecha 21 de diciembre de 2023, el Fideicomiso de Administración y Pagos VP-CNE-TEBSA constituido en virtud del contrato de fiducia celebrado el 24 de febrero de 2016 y modificado posteriormente (el "Contrato de Fiducia"), recibió comunicación por parte del Fideicomitente, esto es, la sociedad VP INGENERGIA S.A. ESP en la que instruyó "irrevocablemente el no pago de ninguna suma de dinero y/o bien fideicomitido en favor de los Beneficiarios de Pago, toda vez que, el pasado 15 de diciembre de 2023 el Fideicomitente rechazó las facturas presentadas por el Beneficiario de Pago.

Es menester indicar que el Contrato de Fiducia en la sección 15 de la Primera Parte (Cuadro de Declaraciones) establece como condición especial de pago a los beneficiarios de pago que el Fideicomitente apruebe la factura presentada por los beneficiarios, condición que se reitera en la cláusula duodécima – (procedimiento para efectuar pagos), en la que adicionalmente se estipula que, para la realización del pago al Beneficiario del Pago el fideicomitente deberá instruir a la Fiduciaria mediante comunicación escrita enviada con tres días de antelación indicando los pagos a realizar a su favor.

En atención a lo indicado, para proceder con los pagos solicitados por el peticionario es necesario cumplir con los requisitos mencionados, en este sentido se debe recibir instrucción del

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

> *Fideicomitente en la que conste la aceptación de las facturas que serán canceladas con los recursos disponibles del Fideicomiso.*
>
> *4. Se nos informe los pagos que hayan hecho la sociedad TERMOBARRANQUILLA SAS ESP al fideicomiso en los dos últimos meses.*
>
> *Se confirma que en los últimos dos meses el fideicomiso ha recibido los siguientes aportes:*
>
> *MES VALOR DE INGRESOS*
> *Octubre $ 58,004,438,180.77*
> *Noviembre $ 49,932,710,240.00"*

A propósito de los hechos previamente relatados, se observa que los aquí denunciados crearon toda una pantomima para ESTAFAR a las sociedades que represento y así obtener el gas que éstas producen para luego, artificiosamente, manipular las garantías constituidas como seriedad del negocio y eludir el pago de los DIECIOCHO MILLONES DE DÓLARES (US$ 18'000.000) aproximadamente de forma dolosa y fraudulenta.

### IV. FUNDAMENTOS JURÍDICOS

Una vez expuestos los supuestos fácticos del caso, se puede resaltar que los mismos podrán encuadrarse dentro del siguiente tipo penal consagrado en la Ley 599 de 2000, razón por la cual, se solicitará que se investigue penalmente a los aquí denunciados y se reconozca la calidad de víctima de mi representada.

**DEL DELITO DE ESTAFA**

El delito de estafa se encuentra descrito en el artículo 246 del Código Penal en los siguientes términos:

> *"**Artículo 246. Estafa.** El que obtenga provecho ilícito para sí o para un tercero, con perjuicio ajeno, induciendo o manteniendo a otro en error por medio de artificios o engaños, incurrirá en prisión de treinta y dos (32) a ciento cuarenta y cuatro (144) meses y multa de sesenta y seis punto sesenta y seis (66.66) a mil quinientos (1.500) salarios mínimos legales mensuales vigentes.*

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





> *En la misma pena incurrirá el que en lotería, rifa o juego, obtenga provecho para sí o para otros, valiéndose de cualquier medio fraudulento para asegurar un determinado resultado.*
>
> *La pena será de prisión de dieciséis (16) a treinta y seis (36) meses y multa hasta de quince (15) salarios mínimos legales mensuales vigentes, cuando la cuantía no exceda de diez (10) salarios mínimos legales mensuales vigentes."*

En este orden de ideas, de acuerdo a lo dispuesto en el citado artículo, para que se estructure el tipo penal de estafa, se requiere que un **sujeto activo no calificado induzca o mantenga en error por medio de artificios o engaños al sujeto pasivo no calificado y que, con ese error, obtenga un provecho para sí o para un tercero, con perjuicio ajeno**.

Como se puede observar, de la sola descripción típica se evidencia la existencia de varios elementos estructurales de la estafa, pues se requiere de varias condiciones para poder encuadrar la conducta al referido tipo penal.

De esta manera, atendiendo la complejidad de la estructura del tipo, la Sala de Casación Penal de la Corte Suprema de Justicia y la doctrina, han establecido de la siguiente manera los elementos de la conducta en estudio:

> *"(...) (i) que el sujeto agente utilice artificios o engaños sobre una persona determinada, (ii) que estas maniobras artificiosas o engañosas generen un error en la víctima, (iii) que debido a esta falsa representación de la realidad el sujeto agente obtenga un provecho económico ilícito para sí o para un tercero, y (iv) que este desplazamiento patrimonial cause un perjuicio ajeno correlativo."[7]*

En este orden de ideas, se procederá a estudiar cómo, en el presente caso, se configuraron cada uno de los elementos señalados por la Sala de Casación Penal de la Corte Suprema de Justicia para la tipificación de delito de estafa.

a) **"Que el sujeto agente utilice artificios o engaños sobre una persona determinada" y b) "Que estas maniobras artificiosas o engañosas generen un error en la víctima"**

---

[7] CORTE SUPREMA DE JUSTICIA, Casación 29.891, 8 de octubre de 2008.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





Este es el elemento característico del delito de estafa y se define como:

> "***El artificio*** es la habilidosa, astuta y calculada transformación de la verdad. Es el intencional despliegue de artimaña por parte del sujeto agente, con la finalidad de mostrar ante otro como verdadera una situación falsa. ***El engaño*** consiste en darle a la mentira la apariencia de verdad. Éste no exige tanto despliegue como el artificio"[8]. (Énfasis suplido).

En el caso en concreto, los señores **ÁLVARO AUGUSTO VARGAS BRAVO** y **DARLYN YESENIA NEIRA CARO**, a través de su sociedad VP INGENERGÍA S.A.S, crearon un escenario artificioso en el que plantearon la existencia de un negocio jurídico con las sociedades aquí víctimas para que éstas, de buena fe pero inmersas en el error al cual se les indujo por el engaño, entregaran una cantidad de gas avaluada en DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000), mientras que, en la realidad, una vez fuera entregado el producto, el mismo no sería pagado como bien se acordó.

De esta manera, el artificio atribuible a los aquí denunciados consistió en la promesa de constituir pólizas o garantías bancarias, así como una fiducia que recibiría los pagos de los destinatarios finales que, en últimas, respaldaría lo adeudado a CANACOL como productor del gas. Sin embargo, una vez se le dotó de la seguridad correspondiente para lograr que entregaran el gas, se realizaron las maniobras antes relatadas para <u>dejar sin garantías e impedir cualquier posibilidad de pago judicial</u> a las sociedades aquí víctimas.

### c) *"Que debido a esta falsa representación de la realidad el sujeto agente obtenga un provecho económico ilícito para sí o para un tercero"*

Consecuencia de lo anterior, es claro que los aquí denunciados, a través de la sociedad VP INGENERGÍA, en virtud de <u>la falsa representación de la realidad a la cual fueron inducidas mis poderdantes</u>, lograron (i) recibir gas avaluado en DIECIOCHO MILLONES DE DÓLARES; (ii) comercializarlo con los destinatarios finales; (iii) recibir el pago de los destinatarios finales a los cuales se les entregó el

---

[8] ALBERTO SUÁREZ SÁNCHEZ. *Delitos contra el patrimonio económico*, 2ª ed., Bogotá, Universidad Externado de Colombia, 2000, p. 196.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com



11



producto efectivamente y; (iv) no pagar el precio del gas que fue efectivamente comercializado.

De esta manera, los aquí denunciados se beneficiaron de forma doble, pues disfrutaron del gas entregado por CANACOL mientras se encontraba inmersa en el engaño, recibieron el pago de los destinatarios finales y no pagaron ningún precio a mis poderdantes, lucrándose injustificada e ilícitamente de esta operación que pone en peligro la prestación del servicio de gas en el país.

De lo anterior se colige que los denunciados, en calidad de directivos y representantes legales de las sociedades aquí señaladas, <u>obtuvieron un provecho económico ilícito a partir de la mercancía que recibieron por parte de mi representada y que, de forma engañosa decidieron no pagar.</u>

### d) *"Que este desplazamiento patrimonial cause un perjuicio ajeno correlativo"*

De los hechos narrados, es palpable que hubo un detrimento patrimonial, en la medida que mi representada no ha podido percibir el dinero pactado como precio y que equivale a DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US 18'000.000).

### e) *"Sucesión causal entre el artificio o engaño y el error, y entre éste y el provecho injusto que refluye en daño patrimonial ajeno"*

Entre los elementos anteriormente enunciados, existe una estricta relación de causalidad que se puede señalar así:

**El engaño y los artificios** empleados por los <u>denunciados indujeron y mantuvieron en error</u> al grupo de CANACOL ENERGY, razón por la cual ésta entregó el gas producido amparada en una serie de garantías que respaldaban la seriedad del negocio. Dichas muestras de buena voluntad no fueron más que artificios engañosos para después no cumplir con el pago del monto acordado por concepto de precio, causando entonces un daño patrimonial a las sociedades por mi representadas.

De igual forma, el capítulo noveno del Título VII del Código Penal, consagra unas circunstancias genéricas de agravación para los Delitos Contra el Patrimonio Económico. En este sentido, el artículo 267 C.P. dispone lo siguiente:

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com



DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

> *"Artículo 267. Circunstancias de agravación. Las penas para los delitos descritos en los capítulos anteriores, se aumentarán de una tercera parte a la mitad, cuando la conducta se cometa:*
>
> *1. <u>Sobre una cosa cuyo valor fuere superior a cien (100) salarios mínimos legales mensuales vigentes, o que siendo inferior, haya ocasionado grave daño a la víctima, atendida su situación económica</u>.*
>
> *2. Sobre bienes del Estado."* (Énfasis suplido).

Finalmente, es de vital importancia para esta representación exponer el criterio acogido por la Sala de Casación Penal de la Honorable Corte Suprema de Justicia respecto al delito de **estafa en escenarios contractuales**.

De antaño, la judicatura ha sido clara en reconocer que un contrato legalmente constituido puede ser un medio engañoso idóneo para inducir en error a un ciudadano y, de esta forma, obtener un provecho económico ilícito. Sin embargo, la alta corporación ha sido enfática en diferenciar el escenario aludido con el incumplimiento doloso de un contrato, pues en el segundo evento, aunque exista un perjuicio patrimonial para una parte y una ganancia para la otra, no hay cabida para la configuración del delito de estafa.

Particularmente, la jurisprudencia ha establecido que el tipo penal de estafa, en escenarios contractuales, se configura cuando, **al momento de celebrar el contrato y con ánimo engañoso y defraudatorio**, se miente sobre alguno de los elementos del contrato como: la capacidad de pago, el objeto, el consentimiento, etc. Veamos:

> *"No se desconoce que un contrato puede ser el medio utilizado como artificio o engaño para obtener provecho ilícito constitutivo de la estafa, habida cuenta que una parte puede inducir en error a la otra frente a cualquiera de los elementos de la respectiva obligación (capacidad, consentimiento, objeto y causa lícitos), con el ánimo de obtener así un provecho patrimonial ilícito con perjuicio correlativo. <u>Empero, como igual lo ha señalado esta Sala, ello no ocurre cuando esa lesión y ganancia análogas sobrevienen a raíz del incumplimiento, no precedido de engaño, de las cláusulas inherentes al contrato</u>:*
>
> *<u>Situación distinta se presenta cuando no habiendo engaño sobre los elementos del contrato, una de las partes se sustrae a su cumplimiento, lo cual sucede en una fase posterior a la contractual y puede obedecer a varias causas no necesariamente vinculadas al delito de estafa pero sí con consecuencias adversas</u>*

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





*en el ámbito civil, en tanto no siempre el incumplimiento malicioso o voluntario de una obligación comporta el delito de estafa, puesto que puede estar ausente el ánimo engañoso y fraudulento.*

*Así lo ha entendido la Corte:*

*Resulta diáfano que bajo la óptica penal y civil se presenta una acción del contratante al incumplir lo pactado que acarrea perjuicio para el otro, sin embargo, en sede penal el análisis ha de ser cuidadoso ya que **no se trata de confirmar el simple nexo causal entre el incumplimiento con el consecuente daño como para predicar el ilícito, sino que es necesario para verificar la existencia de la inducción en error por la prestación negocial del agente sea a la postre la motivadora de la desposesión patrimonial de la víctima**. (CSJ SP, 30 nov. 2006, rad. 21902)*

*Es claro que al incumplir lo pactado el contratante realiza un proceder antijurídico en cuanto el contrato es ley de las partes pero dado el carácter subsidiario y de ultima ratio del derecho penal, tales incumplimientos no ingresan en la órbita protectora del ius puniendi del Estado y en ese orden de ideas, no se debe confundir el nexo de causalidad (engaño o inducción en error y provecho ilícito) que se debe dar entre los elementos configuradores de la estafa, con la existente entre el incumplimiento del deudor y el consecuente daño para el acreedor. (CSJ SP, 8 oct. 2014, rad. 44504)"* [III] *(Énfasis suplido).*

## V.    ANEXOS

1. Poder especial conferido a mi nombre.

2. Contrato de suministro de gas en firme No. CNEOG-CF-VP-01-2022.

3. Contrato de suministro de gas interrumpible No. CNEOG-CI-VP-01-2022.

4. Constancia de la emisión de facturas por parte de las sociedades aquí víctimas para el correspondiente pago de los aquí denunciados a través de su sociedad.

5. Constancia del rechazo de las facturas por parte de VP INGENERGÍA S.A.S.

6. Comunicaciones emitidas por TERMOBARRANQUILLA o TEBSA en donde, en su calidad de destinatario final, certifica el cumplimiento de los pagos con los aquí denunciados.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com



14



DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

7. Comunicaciones emitidas por la fiduciaria en donde consta la instrucción de no pago.

## VI. COMUNICACIONES

Las recibiré en la carrera 16A No. 79-48, piso 7 de Bogotá D.C, correo electrónico contacto@deaa.com.co

Cordialmente,

DAVID ESPINOSA ACUÑA
C.C. 11.202.888
T.P. 134.189



T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com