# EXHIBIT 3

1



DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

*Rdo
Claudia P
3-09-2024*

**SEÑORES**
**FISCALÍA 69 LOCAL**
**UNIDAD DE ESTAFAS PRIORIZADAS**
**DIRECCIÓN SECCIONAL DE BOGOTÁ**
**BOGOTÁ D.C**

**REF.**   **RAD. 110016000049-2024-31894**
**AMPLIACIÓN DE DENUNCIA POR LA PRESUNTA COMISIÓN DEL**
**DELITO DE ESTAFA (ART. 246 C.P.) EN CIRCUNSTANCIAS DE**
**AGRAVACIÓN POR SUPERAR 100 SMLMV (ART. 267) EN**
**CONTRA DE LOS SEÑORES ÁLVARO AUGUSTO VARGAS BRAVO,**
**DARLYN YESENIA NEIRA CARO Y PATRICIA CRISTINA PEÑA**
**ANAYA**

**DAVID ESPINOSA ACUÑA**, identificado como aparece al pie de mi firma, **APODERADO** de **CANACOL ENERGY COLOMBIA S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S**, con el habitual respeto acudo ante Ustedes, a efectos de **AMPLIAR LA DENUNCIA** presentada el pasado 1 de febrero de 2024, en contra de los señores **ÁLVARO AUGUSTO VARGAS BRAVO, DARLYN YESENIA NEIRA CARO Y PATRICIA CRISTINA PEÑA ANAYA** en calidad de presuntos autores del delito de **ESTAFA (ART. 246 C.P.) EN CIRCUNSTANCIAS DE AGRAVACIÓN POR SUPERAR 100 SMLMV (ART. 267)**, así como todas aquellas otras conductas delictivas que lleguen a configurarse conforme a la actividad investigativa avance.

### I.   EN CUANTO A LA TEORÍA DEL CASO

Tal como se manifestó en la denuncia radicada el pasado 1 de febrero de 2024 y que por reparto le correspondió a su Despacho, los aquí denunciados han utilizado herramientas jurídicas contractuales como un **MEDIO FRAUDULENTO** para **inducir y mantener en error** a mis representadas y así obtener de éstas la entrega de una cantidad de gas avaluada en **DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000)** y, posteriormente, obtener un provecho ilícito para sí en tanto **disfrutaron del gas entregado por CANACOL y no pagaron -fraudulentamente- el dinero equivalente al producto efectivamente entregado**.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





No satisfechos con lo anterior, los aquí denunciados **impartieron instrucciones expresas de NO PAGO a un patrimonio autónomo constituido como garantía de la seguridad y seriedad del negocio, así como el mecanismo acordado para pagar los precios causados por la entrega efectiva del gas**. No siendo suficiente lo anterior, los aquí denunciados procedieron a **SUSTRAER LOS RECURSOS** del patrimonio autónomo que tenían como única finalidad el pago del gas efectivamente entregado.

Continuando con su actuar delictivo, recientemente decidieron **DESAPARECER DEL DOMICILIO COMERCIAL REGISTRADO ANTE LA CÁMARA DE COMERCIO** Y **RECHAZAR LAS FACTURAS QUE ACREDITAN LA ENTREGA DEL GAS** avaluado en DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000), con la manifestación de desconocer cualquier obligación de pago a cargo de la sociedad VP INGENERGÍA S.A.S, a sabiendas de la efectiva entrega del producto.

Por lo dicho, es claro que los denunciados continúan ejecutando un **comportamiento sistemático** tendiente a defraudar patrimonialmente a mis representadas con la finalidad de sustraerse de las obligaciones que contractualmente le corresponden, por supuesto, **desplegando maniobras y engaños que se salen de la esfera comercial y se tipifican perfectamente en conductas delictivas reprochadas por el Derecho Penal**.

## II.  HECHOS JURÍDICAMENTE RELEVANTES NOVEDOSOS

**Hechos relativos a las garantías contractuales como medios idóneos para inducir y mantener en engaño a CANACOL ENERGY COLOMBIA S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S**

1.  Como fue manifestado en la denuncia, se suscribieron los contratos de **(i)** suministro de gas en firme[1] No. CNEOG-CF-VP-01-2022 y; **(ii)** de suministro de gas interrumpible[2] No. CNEOG-CI-VP-01-2022, mediante los cuales las

---

[1] **Cfr. Decreto 2225 de 2000, artículo 1, compilado en el artículo 2.2.2.1.4 del Decreto de 1073 de 2015:** "**Contrato Firme o que Garantiza Firmeza**: *Contrato escrito en el que un Agente garantiza el servicio de suministro de una cantidad máxima de gas natural y/o de capacidad máxima de transporte, sin interrupciones, durante un período determinado, excepto en los días establecidos para mantenimiento y labores programadas. Esta modalidad de contrato requiere de Respaldo Físico*".

[2] **Cfr. Decreto 2100 de 2011, artículo 2, compilado en el artículo 2.2.2.1.4 del Decreto de 1073 de 2015:** "**Contrato Interrumpible o que no Garantiza Firmeza**: *Contrato escrito en el que un Agente no asume compromiso de continuidad del servicio de suministro de un volumen máximo de gas natural y/o de capacidad máxima de transporte de gas natural. Este servicio puede ser interrumpido por cualquiera de las partes, en los términos definidos en el contrato*"

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com







DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

sociedades **CANACOL ENERGY COLOMBIA S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S se obligaban a entregar el gas y VP INGENERGÍA se obligaba a la respectiva contraprestación económica acordada bilateralmente como "precio"**.

2. La cuantía de la ejecución de dichos contratos ascendía a DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000) aproximadamente, los cuales debían ser pagados por los denunciados, a través de la sociedad VP INGENERGÍA S.A.S luego de la efectiva entrega del gas por parte de CANACOL.

3. **Como <u>condición</u> para celebrar el contrato** No. CNEOG-CF-VP-01-2022, **se impuso la obligación en cabeza de los denunciados de constituir una garantía para respaldar su seriedad y cumplimiento** de cada una de las obligaciones derivadas del negocio jurídico, así:

    "**5.5. GARANTÍAS**[3].

    5.5.1. *El comprador deberá constituir por su cuenta y a favor del vendedor, a más tardar, dentro de los 20 días calendario anteriores a la fecha de inicio del suministro,* **el original de una garantía bancaria o póliza de seguro** *(la garantía),* **que ampare el cumplimiento de todas y cada una de las obligaciones derivadas del presente contrato** *y deberá indicar expresamente en la carátula de la misma que se garantiza el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, cargos y sobrecostos en que incurra el vendedor por el incumplimiento del comprador. El monto agregado de la garantía será equivalente a sesenta (60) días de suministro de la CDGF.* **La garantía deberá tomarse con vigencia desde la fecha de inicio de suministro <u>hasta el 30 de noviembre de 2023</u> y renovarse sucesivamente, 30 días antes de su vencimiento con una vigencia de 12 meses y actualizarse atendiendo al cambio de la CDGF conforme a la tabla y al numeral 3.1. y en total deberán extenderse por el término duración del presente contrato y sesenta (60) días más (...)**" (Énfasis suplido).

4. En supuesto cumplimiento de dicha obligación, los aquí denunciados, para el primer año del contrato, constituyeron la garantía bancaria No. 10090004337 de Bancolombia. Dicha garantía fue aceptada, en virtud del principio de buena fe que regía las relaciones entre las empresas.

---

[3] Cfr. Contrato de suministro de gas en firme No. CNEOG-CF-VP-01-2022.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

5. A pesar de lo anterior, dicha garantía realmente no cumplía el cometido contractual, por los siguientes motivos:

   a. No cubría el contrato No. CNEOG-CF-VP-01-2022, sino el contrato entre TERMOBARRANQUILLA S.A. y VP INGENIERÍA S.A.S.
   b. No obligaba expresamente a VP INGENIERÍA S.A.S., sino a TERMOBARRANQUILLA S.A., con quien no se tenía vínculo contractual.
   c. Limitaba injustificadamente la responsabilidad del banco emisor.
   d. No cubría la totalidad de obligaciones del contrato No. CNEOG-CF-VP-01-2022.
   e. El titular de la garantía era TERMOBARRANQUILLA S.A. y no mis poderdantes.

6. Todo lo anterior fue comunicado a los denunciados al momento de renovar las garantías en las mismas condiciones para el segundo año de contrato el 2 de noviembre de 2023, como respuesta a la constitución de la garantía bancaria No.07002026101061412 del Banco Davivienda

7. Ante dicha situación los denunciados respondieron de forma hostil, pero "aceptando" las condiciones, pues remitieron la garantía bancaria No. 07002026101065306 del Banco Davivienda, la cual, tampoco cumplía las condiciones contractuales, dando lugar a la terminación del contrato No. CNEOG-CF-VP-01-2022, conforme al parágrafo segundo del numeral 5.5 y de la cláusula 6.1(a).

8. Dicha respuesta de parte de los denunciados da cuenta del medio fraudulento, pues nunca fue su intención otorgar garantías que permitieran ejecutar las obligaciones a cargo de VP INGENIERÍA S.A.S.

9. En últimas, esto fue lo que permitió que se apropiaran de los recursos destinados al pago del gas suministrado, sin posibilidad en cabeza de mis representadas para hacer cumplir las obligaciones contractuales, como efectivamente está ocurriendo en este momento.

10. En efecto, para conocimiento del despacho, el 30 de noviembre mis representadas intentaron solicitar el pago de la garantía bancaria No. 10090004337 de Bancolombia por el incumplimiento de VP INGENIERÍA S.A.S. de sus obligaciones contractuales, para encontrarse con que el banco no accedía a la solicitud, pues no había incumplimiento por parte de TERMOBARRANQUILLA S.A.

11. Efectivamente, en términos reales, dicha garantía jamás amparó el cumplimiento de las obligaciones contractuales del contrato No. CNEOG-CF-VP-01-2022, sino

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

que amparaba la relación contractual entre TERMOBARRANQUILLA S.A. y VP INGENIERÍA S.A.S.

12. En segundo lugar, como otra muestra del **mecanismo fraudulento** del que se valieron los denunciados, existía la <u>condición</u> de constituir una FIDUCIA IRREVOCABLE, ANTES DE CUALQUIER ENTREGA DE GAS POR PARTE DE CANACOL, con el propósito de recaudar los pagos de los destinatarios finales, **lo que en últimas le daba la apariencia de seriedad del negocio a mi representada, ya que el manejo de los recursos y el pago del gas efectivamente entregado se encontraba respaldado por una fiducia irrevocable**. Obsérvese:

> "**5.5.2. FIDUCIA**: previo a cualquier entrega de gas por parte del vendedor y dentro de los treinta (30) días siguientes a la firma del presente contrato, el comprador deberá incorporar el contrato firmado con el destinatario final al contrato de fiducia mercantil de administración y pagos **de carácter irrevocable** existente, suscrito y el cual consistentemente tenga por objeto principal **recaudar los pagos que el destinatario final haga al comprador en virtud del contrato de suministro suscrito entre el comprador y el destinatario final y pagar al vendedor las facturas que por concepto del presente contrato se genere**. El comprador enviará certificación al vendedor emitida por entidad financiera que conste (i) que el comprador tiene un contrato de fiducia con duración igual al presente contrato y dos veces más, **(ii) que estén expresamente incluidas las instrucciones de pago en favor del vendedor**, (iii) la cuenta bancaria determinada por el vendedor en el numeral 8.1. para la recepción de los pagos y **(iv) que existe un compromiso de la compañía fiduciaria de informar cualquier evento que pueda afectar los derechos del vendedor**.
>
> En todo caso, el contrato de fiducia mercantil no se podrá modificar después de que el comprador entregue la certificación de que trata el inciso anterior (...)".

13. Esta exigencia también existía en una relación contractual anterior, esto es, el Contrato de Suministro de Gas en Firme No. CNEGN-01-2016, por lo cual ya existía una fiducia con esto fines desde el 24 de febrero de 2016, al cual se le hizo un Otrosí que incluyó en el contrato de fiducia la administración y pagos del contrato No. CNEOG-CF-VP-01-2022, en supuesto cumplimiento de los fines de la cláusula antes transcrita.

14. Lo anterior evidencia que el *modus operandi* de los denunciados fue valerse de un **mecanismo fraudulento** para **(i) inducir** en error a través de la constitución de una fiducia en 2016 la cual no cumplía con las condiciones que previo a la

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com



6



proporción del gas debían cumplir los denunciados, lo que conllevó a su efectiva entrega por parte de mis representados y; **(ii) mantenimiento en error**, pues lo que se hizo fue ampararse en la garantía mal constituida para hacer que el negocio se extendiera en el tiempo.

15. Dicho contrato de fiducia, que daba una apariencia de administración transparente de los recursos (y que así fue vendido a mis representados), al contener una metodología de recaudo y pago, en realidad era equivalente a una cuenta bancaria que podía ser utilizada sin restricciones y sin control por parte de los denunciados.

16. En efecto, los aquí denunciados presentaron un contrato de fiducia que supuestamente ampararía su relación con mis poderdantes (VP-Canacol) pero que en realidad su clausulado permite observar que TERMOBARRANQUILLA S.A, un tercero ajeno a mis mandantes, estaba obligada a pagarle a VP INGENERGÍA S.A.S., a través de la fiducia, pero no imponía ninguna restricción al manejo de los recursos por parte de esta última, quien quedaba con la facultad o no de ordenar el pago a favor mis representadas. De hecho, podía ordenar a la fiduciaria no pagarles a éstas y sacar los recursos para sí misma, como efectivamente ocurrió.

17. Es importante resaltarle al despacho que, a pesar de ser beneficiarias de pago del contrato de fiducia, mis representadas no eran parte del contrato de fiducia, por lo que nunca concurrió a la negociación de sus condiciones. Recuérdese que el contrato No. CNEOG-CF-VP-01-2022 solo exigía una certificación de parte de la entidad financiera, la cual efectivamente fue allegada y cumplía con los mínimos que imponía la buena fe con la que actuaron mis representadas.

18. Recuérdese que la constitución del Fideicomiso de administración y pagos VP-CNE-TEBSA se instituyó como una herramienta que garantizara el cumplimiento de las obligaciones que surgieran de la relación comercial entre la sociedad VP INGENERGÍA S.A.S y mis representadas. Sin embargo, **LA SOCIEDAD FIDUCIARIA ITAÚ FIDUCIARIA COLOMBIA S.A HA DESPLEGADO COMPORTAMIENTOS QUE POSIBILITARON LA DEFRAUDACIÓN DE QUE FUERON VÍCTIMAS MIS REPRESENTADAS**, pues permitieron que VP INGENERGÍA S.A.S sustrajera los recursos provenientes del pago de TERMOBARRANQUILLA S.A y con destino a mis poderdantes a propósito de la efectiva prestación del servicio.

19. En este sentido, tal como lo establece el contrato de fiducia, **es deber de la fiduciaria presentar una rendición de cuentas**, misma que fue remitida el pasado 26 de enero de 2024 a las sociedades CNE OIL & GAS S.A.S. y CNEOG COLOMBIA SUCURSAL COLOMBIA en calidad de beneficiarias, sin embargo, en

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

la misma se pudo constatar una serie de irregularidades que contribuyen a que mis representadas continúen sufriendo un **detrimento patrimonial** a propósito de la relación comercial con VP INGENERGÍA S.A.S. Así pues, a continuación, se relacionan las irregularidades advertidas:

- En la rendición de cuentas presentada por la Fiduciaria, únicamente se remitió el estado de la situación financiera del mes de diciembre de 2023 del Fideicomiso VP-CNE-TEBSA, cuando debió haber remitido el del periodo completo debido a que la misma correspondía a los meses en los cuales no se ha cumplido la obligación legal y contractual de pago.

- No se presentó un informe o listado de los pagos efectuados por el pagador TERMOBARRANQUILLA SA ESP al Fideicomiso durante el año 2023, situación que no permite a las beneficiarias ejercer sus derechos frente a la exigibilidad de los pagos adeudados.

20. Adicionalmente, de forma ilegal, la sociedad VP INGENERGÍA S.A.S, representada por los aquí denunciados, **dio instrucción expresa a la fiduciaria de no pagar las facturas de octubre y noviembre de 2023 las cuales ascendían a DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$ 18'000.000), ello muy a pesar de haber disfrutado el gas entregado por las sociedades aquí víctimas**.

21. En consonancia con lo anterior, la fiduciaria expidió DOS COMUNICACIONES en donde indicó que recibió **instrucciones por parte del fideicomitente, es decir, la sociedad de los aquí denunciados, en donde SE INSTRUYÓ IRREVOCABLEMENTE EL NO PAGO DE NINGUNA SUMA DE DINERO Y/O BIEN FIDEICOMITIDO EN FAVOR DE LOS BENEFICIARIOS DE PAGO**, sustentado en que el 15 de diciembre de 2023 dicha persona jurídica rechazó las facturas presentadas por mis poderdantes.

22. De igual manera, las sociedades por mi representadas se comunicaron con la termoeléctrica TERMOBARRANQUILLA S.A. con el propósito de indagar acerca del pago efectivo por parte de ésta a VP INGENERGÍA, como destinatario final del gas producido por CANACOL. Sobre esta situación particular aquella informó haber ejecutado todos los pagos a la sociedad de los aquí denunciados, **lo que demuestra que VP INGENERGÍA S.A.S (i) efectivamente recibió el gas de CANACOL; (ii) lo comercializó con destinatarios finales; (iii) recibió el pago por la prestación de dichos servicios y; (iv) fraudulentamente y después de haber conseguido su cometido ilegal, no pagó los montos económicos correspondientes a CANACOL por concepto del precio acordado**.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com







23. Por si fuera poco, se tiene conocimiento que casi la totalidad de los recursos depositados por TERMOBARRANQUILLA SA ESP fueron retirados por parte de los denunciados.

24. Sustentado en el supuesto cumplimiento de los denunciados, tanto de las garantías bancarias o pólizas, como de la fiducia correspondiente, **mis representadas, de buena fe, pero, en todo caso, inducidas en error por los aquí denunciados, procedieron a cumplir con la entrega de gas con destino a su sociedad; gas que a la fecha no ha sido pagado y no se tiene conocimiento dónde están los recursos destinados a su pago.**

**Hechos relativos a la inexistencia de una operación comercial en la dirección reportada para el efecto y el desconocimiento de la existencia de obligaciones claras, expresas y exigibles**

25. Dentro del giro normal del funcionamiento empresarial de mis representadas y cumpliendo con el conducto regular de facturación de los servicios efectivamente prestados, el 6 de febrero de 2024 acudieron a la **dirección comercial registrada ante la Cámara de Comercio** por la sociedad VP INGENERGÍA S.A.S, con la finalidad de radicar las facturas donde se consigna la efectiva entrega del GAS por parte de la sociedad CANACOL por valor de DIECIOCHO MILLONES DE DÓLARES AMERICANOS (US$18'000.000).

26. No obstante, se pudo corroborar que no existe funcionamiento alguno de la sociedad VP INGENERGÍA S.A.S en el domicilio consignado en el Certificado de Existencia y Representación Legal en el que habitualmente se radicaban las facturas, constituyéndose así **una auténtica modalidad de estafa en la cual quien es el titular de la obligación resulta alzándose de sus bienes o domicilio para evitar ser ubicado**.

27. Sumado a lo dicho, mediante comunicación del 7 de febrero de 2024, la sociedad VP INGENERGÍA S.A.S, a través de la denunciada PATRICIA CRISTINA PEÑA ANAYA, en calidad de vicepresidente y Representante Legal, realizó manifestaciones que acreditan expresamente el comportamiento fraudulento que vienen ejecutando en contra de mi representada, pues recuérdese que CANACOL entregó el gas efectivamente pactado. Sin embargo, la señora PEÑA ANAYA manifestó, sorprendentemente, que VP INGENERGÍA **desconocía cualquier obligación de pago en cabeza de VP INGENERGÍA S.A.S que tenga origen en los vínculos contractuales sostenidos entre las partes**.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

"En primer lugar desconocemos la existencia de cualquier derecho que pretenda ser reclamado por parte de CANACOL a través de las facturas antes relacionadas o que esté incorporado en ellas, así como la exigibilidad de cualesquiera obligaciones a que se refiera o estén contenidos en dichas facturas. Reiteramos que no hay obligaciones pendientes de pagos a cargo de VP ni ningún tipo de obligación existentes que tenga su origen en los vínculos contractuales sostenidos entre las partes".

## III.   FUNDAMENTOS JURÍDICOS

### - EL CONTRATO COMO MEDIO FRAUDULENTO IDÓNEO PARA INDUCIR EN ERROR

Particularmente, la jurisprudencia ha establecido que el tipo penal de estafa, en escenarios contractuales, se configura cuando **al momento de celebrar el contrato y con ánimo engañoso y defraudatorio**, se miente sobre alguno de los elementos del contrato como: la capacidad de pago, el objeto, el consentimiento, etc. Veamos:

> **"No se desconoce que un contrato puede ser el medio utilizado como artificio o engaño para obtener provecho ilícito constitutivo de la estafa, habida cuenta que una parte puede inducir en error a la otra frente a cualquiera de los elementos de la respectiva obligación (capacidad, consentimiento, objeto y causa lícitos), con el ánimo de obtener así un provecho patrimonial ilícito con perjuicio correlativo.** Empero, como igual lo ha señalado esta Sala, ello no ocurre cuando esa lesión y ganancia análogas sobrevienen a raíz del incumplimiento, no precedido de engaño, de las cláusulas inherentes al contrato:
>
> Situación distinta se presenta cuando no habiendo engaño sobre los elementos del contrato, una de las partes se sustrae a su cumplimiento, lo cual sucede en una fase posterior a la contractual y puede obedecer a varias causas no necesariamente vinculadas al delito de estafa pero sí con consecuencias adversas en el ámbito civil, en tanto no siempre el incumplimiento malicioso o voluntario de una obligación comporta el delito de estafa, puesto que puede estar ausente el ánimo engañoso y fraudulento.
>
> Así lo ha entendido la Corte:
>
> Resulta diáfano que bajo la óptica penal y civil se presenta una acción del contratante al incumplir lo pactado que acarrea perjuicio

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

*para el otro, sin embargo, en sede penal el análisis ha de ser cuidadoso ya que **no se trata de confirmar el simple nexo causal entre el incumplimiento con el consecuente daño como para predicar el ilícito, sino que es necesario para verificar la existencia de la inducción en error por la prestación negocial del agente sea a la postre la motivadora de la desposesión patrimonial de la víctima**. (CSJ SP, 30 nov. 2006, rad. 21902)*

En suma, la Sala Penal de la Corte Suprema de Justicia ha verificado la existencia de dos premisas bajo las cuales debe analizarse un asunto contractual, una relevante para el derecho privado (civil y comercial) y otra para el derecho penal. En efecto, será relativa a las primeras cuando en la ejecución del contrato se encuentre que una de las obligaciones no ha sido atendida por alguno de los contratantes. De cualquier forma, este no es el supuesto en el que se desarrollaron los hechos objeto de la presente denuncia.

En lo que tiene que ver a lo relevante para el poder punitivo, el contrato se puede utilizar como medio fraudulento, si a través de este se realiza la inducción en error, con miras a lograr la celebración del negocio y, en últimas, obtener el provecho ilícito. **En el caso concreto, recuérdese que la constitución de las garantías bancarias y de la fiducia eran condición necesaria, no solo para celebrar el contrato, sino para la entrega del gas contratado**.

Naturalmente, una garantía debe cumplir su cometido, por lo que constituirla con miras a que sea imposible su ejecución es un medio fraudulento idóneo no solo para inducir en error, sino para garantizar, eso sí, el provecho ilícito. En otras palabras, al constituir garantías que no cubrían efectivamente las obligaciones contractuales, no solo se dio un cumplimiento fraudulento del requisito contractual, sino que se aseguró la consumación del delito de estafa.

Tal como se describió en los hechos, ante el incumplimiento contractual de los denunciados, se intentó ejecutar las garantías bancarias, así como cobrarle directamente al patrimonio autónomo. El resultado fue absolutamente infructuoso, pues, se reitera, ninguna de las formas de garantizar el cumplimiento contractual servía para dicho fin.
De esta manera, la actuación de los aquí denunciados tendientes a entregar garantías que en apariencia cumplían los requisitos para salvaguardar los posibles incumplimientos en que pudieran incurrir y así lograr que se celebrara el contrato por mis representadas y obtener el gas es la evidencia de que este asunto no se cobija por el escenario relevante para el derecho privado, sino para el derecho penal, pues se observa

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

Por si fuera poco, al advertir sobrevinientemente el yerro al que fueron inducidas, incluso desde 2016 por observar la inutilidad de las garantías y consecuentemente la imposibilidad de ejecutarlas, mis representadas hicieron un requerimiento a los denunciados para que constituyeran garantías adecuadas, a lo cual no sólo se respondió de forma hostil, sino que igualmente se allegaron supuestas nuevas garantías en donde en apariencia nuevamente se subsanaba el error, pero que evidentemente no corregían lo requerido, de modo que esto, <u>lejos de tratarse de un asunto meramente contractual, refleja la existencia de un actuar doloso que sólo pretendía allegar documentos errados para obtener un lucro económico ilícito</u>.

## IV.   ANEXOS

- Requerimientos de pago garantía bancaria No. 10090004337 de Bancolombia.
- Respuesta al requerimiento de pago garantía bancaria No. 10090004337 de Bancolombia.
- Contrato de fiducia mercantil de administración y pagos celebrado entre VP Ingenergía S.A. y Helm Fiduciaria S.A y Otrosí No. 1 a dicho contrato.
- Certificado expedido por Itaú Fiduciaria Colombia S.A.
- Garantía bancaria No.07002026101061412 del Banco Davivienda
- Comunicación solicitando la constitución de garantía que cumpla los requisitos contractuales.
- Comunicación allegando la nueva garantía.
- Garantía bancaria No. 07002026101065306 del Banco Davivienda
- Comunicación de terminación del contrato por incumplimiento de la constitución de la garantía bancaria.
- Comunicación de parte de TEBSA sobre el estado de la ejecución contractual con VP INGENERGIA.
- Objeción a la rendición de cuentas del Contrato de fiducia mercantil de administración y pagos celebrado entre VP Ingenergía S.A. y Itaú Fiduciaria Colombia S.A.
- Comunicación del 7 de febrero de 2024 emitida por la sociedad VP INGENERGIA S.A.S.

## V.   COMUNICACIONES

Las recibiré en la Carrera 16A No. 79-48, piso 7 de la ciudad de Bogotá, correo electrónico <u>contacto@deaa.com.co</u>

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

## VI.   PETICIÓN

Atendiendo la gravedad de los hechos denunciados, con el mayor respeto solicito que, a la mayor brevedad, se proceda a **FORMULAR IMPUTACIÓN** en contra de los señores ÁLVARO AUGUSTO VARGAS BRAVO, DARLYN YESENIA NEIRA CARO Y PATRICIA CRISTINA PEÑA ANAYA.

Cordialmente,

**DAVID ESPINOSA ACUÑA**
**C.C 11.202.888**
**T.P 134.189**

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com

