# EXHIBIT 4



DAVID
ESPINOSA
ACUÑA
& ASOCIADOS

SUBDIRECCION DE GESTION DOCUMENTAL
SGD - No. 20246110240742
FISCALIA
Fecha Radicado: 2024-10-21 12:20:51
Anexos: DP.12+1 FOLIO.

**SEÑORES**
**FISCALÍA GENERAL DE LA NACIÓN**
**BOGOTÁ D.C.**

**REF.** **DENUNCIA EN CONTRA DEL SEÑOR ÁLVARO AUGUSTO VARGAS BRAVO POR LA PRESUNTA COMISIÓN DEL DELITO DE ALZAMIENTO DE BIENES (ART. 253 C.P.) Y LAVADO DE ACTIVOS (ART. 323 C.P.)**

**DAVID ESPINOSA ACUÑA**, identificado como aparece al pie de mi firma, **APODERADO** de las sociedades CANACOL ENERGY COLOMBIA S.A.S y CNE OIL & GAS S.A.S, como consta en poder especial adjunto a esta noticia criminal, comparezco ante ustedes respetuosamente para presentar **DENUNCIA** en contra del señor **ÁLVARO AUGUSTO VARGAS BRAVO**, **DARLYN YESENIA NEIRA CARO**, **PATRICIA CRISTINA PEÑA ANAYA** y **ÁLVARO VARGAS GRASS** por la presunta comisión de los delitos de ALZAMIENTO DE BIENES (artículo 253 C.P.) en concurso heterogéneo con el de LAVADO DE ACTIVOS (artículo 323 C.P.) y los demás que puedan configurarse, de conformidad con lo que se expone en el presente documento.

## I. IDENTIFICACIÓN DE LAS PERSONAS DENUNCIADAS

La noticia criminal que aquí se somete al conocimiento de la Fiscalía General de la Nación referirá hechos jurídicamente relevantes que podrían involucrar el comportamiento del ciudadano **ÁLVARO AUGUSTO VARGAS BRAVO**, quien se identifica con la cédula de ciudadanía 91.241.213 y puede ser ubicado en la Avenida Carrera 9 #115-06 oficina 801 de la ciudad de Bogotá, así como en el correo electrónico financiera@vpsa.com.

Así mismo, se resalta la intervención de la señora **DARLYN YESENIA NEIRA CARO**, quien se identifica con la cédula de ciudadanía 1.095.808.726 y con correo electrónico financiera@vpsa.com.

RESEARCH
EVIDENCE
TRUTH



la señora **PATRICIA CRISTINA PEÑA ANAYA**, quien se identifica con cédula de ciudadanía es 63.351.231 y puede ser ubicada en la Avenida Carrera 9 #115-06 oficina 801 de la ciudad de Bogotá, correo electrónico financiera@vpsa.com

Finalmente, **ÁLVARO VARGAS GRASS**, quien se identifica con cédula de ciudadanía 17.019.542 y puede ser ubicado la Avenida Carrera 9 #115-06 oficina 801 de la ciudad de Bogotá, correo electrónico financiera@vpsa.com.

## II. HECHOS JURÍDICAMENTE RELEVANTES

El presente acápite tiene como propósito exponer cuáles son los hechos relatados por mis poderdantes que deberán ser indagados por la Fiscalía General de la Nación ya que, una vez verificados junto con los elementos materiales probatorios, posiblemente se adecúan a los descritos por el Código Penal en la normativa previamente traída a colación como los delitos de ALZAMIENTO DE BIENES y/o LAVADO DE ACTIVOS.

De esta manera, los hechos narrados por mis poderdantes son los siguientes:

1. Las sociedades CANACOL ENERGY COLOMBIA S.A.S y CNE OIL & GAS S.A.S. son personas jurídicas de nacionalidad colombiana cuyo objeto social principal es la exploración y producción de gas natural convencional en Colombia.

2. De otro lado, la sociedad VP INGENERGÍA S.A.S E.S.P, representada legalmente por los aquí denunciados, tiene por objeto social la **comercialización de gas natural**, hidrocarburos y sus derivados.

3. Consecuencia de lo anterior, las sociedades CANACOL ENERGY COLOMBIA S.A.S. y CNE OIL & GAS S.A.S. producen gas, mientras que los denunciados, a través de VP INGENERGÍA S.A.S. E.S.P. lo compran para su posterior comercialización con destinatarios finales.

4. En el marco de dicha relación contractual se presentó una controversia que sobrepasó los límites del ámbito negocial, pues mientras CANACOL ENERGY entregó el gas requerido por la sociedad VP INGENERGÍA SAS, ésta resolvió no pagarlo, apoderándose de DIECIOCHO MILLONES DE DÓLARES AMERICANOS (USD$ 18'000.000), situación que fue puesta en conocimiento de la Fiscalía





General de la Nación y se encuentra en etapa de indagación preliminar al interior del proceso de radicado 110016000049-2024-31894.

5. Esta irregular situación también suscitó el inicio de diversos procesos civiles de carácter ejecutivo identificados bajo los radicados 110013103032202400151, 110013103045202400142 y 110013103047202400034, de los cuales conocen los Juzgados 32 Civil del Circuito, 45 Civil del Circuito y 47 Civil del Circuito de Bogotá, respectivamente.

6. Como es propio de dichos pleitos judiciales, las sociedades allí demandantes, esto es, CANACOL ENERGY COLOMBIA S.A.S y CNE OIL & GAS S.A.S, solicitaron a los jueces de la República correspondientes la emisión de decisiones tendientes a imponer medidas cautelares en búsqueda de congelar los recursos que la sociedad VP INGENERGÍA S.A.S E.S.P, representada por los aquí denunciado, en aras de evitar que se insolventaran en el transcurso del proceso ejecutivo.

7. Dichas medidas cautelares relativas al embargo y secuestro de los recursos económicos que reposaran en las cuentas bancarias de titularidad de VP INGENERGÍA S.A.S E.S.P fueron decretadas por los respectivos despachos, razón por la cual se emitieron los oficios correspondientes dirigidos a todas las entidades financieras del país.

8. Una vez las entidades financieras oficiadas por los Juzgados pudieron verificar si VP INGENERGÍA S.A.S E.S.P tenía cuentas bancarias a su nombre y, en caso afirmativo, se embargaran los recursos para garantizar los posibles resultados del proceso ejecutivo, se encontró que, de la totalidad de entidades financieras del país, únicamente fue posible encontrar un saldo de titularidad de VP INGENERGÍA S.A.S. ESP equivalente a UN MILLÓN CUATROCIENTOS CUARENTA Y CINCO MIL OCHECIENTOS ONCE PESOS M/CTE ($ 1'445.811).

9. Evidentemente, encontrar una suma de dinero tan ínfima en las cuentas bancarias de la sociedad VP INGENERGÍA S.A.S ESP, cuyo objeto social es relativo a la comercialización de gas en Colombia, no se correspondía con la realidad y desde luego que encendía todas las alertas sobre la pregunta ¿dónde se encuentran los recursos de propiedad de VP INGENERGÍA?

10. Hasta la fecha, dicha pregunta no encontraba respuesta, pues aparentemente ante la inminencia de los pleitos judiciales que se suscitaban en contra de VP



INGENERGÍA S.A.S ESP y la certeza de la relación jurídica obligacional, esta sociedad a través de sus representantes legales optó por la fuga de los recursos que se encontraban en sus cuentas bancarias.

**11.** Sin embargo, de forma simultánea a los pleitos judiciales previamente relatados, ambas compañías han promovido litigios arbitrales, pues sus contratos también cuentan con cláusulas compromisorias. Estos escenarios suponen, por mandato legal, el pago de los honorarios de los árbitros y los gastos administrativos del tribunal como una de las cargas de las partes.

**12.** Fue así como la sociedad VP INGENERGÍA S.A.S ESP promovió un Tribunal de Arbitramento Nacional en contra de CANACOL ENERGY. Atendiendo a las pretensiones que allí se expusieron, los árbitros tasaron sus honorarios en un total de **CINCO MIL SEISCIENTOS TREINTA Y CINCO MILLONES OCHOCIENTOS TREINTA Y UN MIL SEISCIENTOS SETENTA PESOS M/CTE ($ 5.635'831.670)**, suma que le corresponde, naturalmente, cubrir a cada una de las partes en fragmentos iguales.

**13.** A partir de allí, le correspondía la carga a VP INGENERGÍA S.A.S ESP de pagar el CINCUENTA POR CIENTO (50%) de los honorarios del Tribunal y a CANACOL ENERGY el restante CINCUENTA POR CIENTO (50%), es decir, a cada una de las partes le correspondía pagar **DOS MIL OCHOCIENTOS DIECISIETE MILLONES NOVECIENTOS QUINCE MIL OCHOCIENTOS TREINTA Y CINCO PESOS M/CTE ($2.817'915.835)**.

**14.** Así mismo, la legislación también establece la posibilidad de que, si uno de los extremos convocados al litigio no paga en la oportunidad procesal establecida, lo podrá hacer la parte interesada para propiciar el escenario judicial requerido.

**15.** A propósito de lo anterior, cumplido el término para pagar los honorarios del tribunal arbitral por las partes, la sociedad VP INGENERGÍA S.A.S ESP pagó el monto de los honorarios correspondientes a su fragmento inicialmente exigible, esto es, al 50% de los honorarios equivalentes a **DOS MIL OCHOCIENTOS DIECISIETE MILLONES NOVECIENTOS QUINCE MIL OCHOCIENTOS TREINTA Y CINCO PESOS M/CTE ($2.817'915.835)**.

**16.** Resulta llamativo que VP INGENERGÍA S.A.S ESP hubiera podido sufragar los gastos por valor de **DOS MIL OCHOCIENTOS DIECISIETE MILLONES**

**NOVECIENTOS QUINCE MIL OCHOCIENTOS TREINTA Y CINCO PESOS M/CTE ($2.817.915.835)**, que suponía la mitad de los honorarios arbitrales, pues las entidades financieras han reportado un saldo de **poco más de un millón de pesos colombianos en sus cuentas bancarias**, siendo evidente el ocultamiento de los recursos de su propiedad tendientes a evadir la obligación existente con CANACOL ENERGY y defraudarlos en su condición de acreedor.

A propósito de lo anterior, resulta inexplicable que la sociedad VP INGENERGÍA S.A.S ESP hubiera podido sufragar dichos costos a sabiendas de que en su cuenta bancaria reporta un saldo de poco más de un millón de pesos m/cte, pero resulta pagando una suma por valor de **DOS MIL OCHOCIENTOS DIECISIETE MILLONES NOVECIENTOS QUINCE MIL OCHOCIENTOS TREINTA Y CINCO PESOS M/CTE ($2.817.915.835)** en favor del Tribunal arbitral, sin que sea explicable de dónde salen esos recursos.

A partir de lo anterior, emergen posibles dos hipótesis principalmente:

1. VP INGENERGÍA S.A.S ESP optó por esconder sus recursos económicos con la finalidad de defraudar los intereses de CANACOL en tanto su calidad de acreedor le permitía presentar demandas ejecutivas, como en efecto ocurrió. Lo anterior, con la finalidad de que los procesos judiciales no surtieran su efecto o,

2. La sociedad VP INGENERGÍA S.A.S ESP realizó un pago de honorarios al panel arbitral con recursos cuya procedencia no es explicable ni demostrable en fuentes lícitas.

Los anteriores son los hechos que se **SOLICITA** respetuosamente a la Fiscalía General de la Nación sean investigados de forma célere.

## III. FUNDAMENTOS JURÍDICOS

### - EL TIPO PENAL DE ALZAMIENTO DE BIENES

El tipo penal de alzamiento de bienes se encuentra contemplado en la ley 599 de 2000 al interior del artículo 253, el cual establece:



DAVID ESPINOSA ACUÑA & ASOCIADOS

"**ARTÍCULO 253. ALZAMIENTO DE BIENES.** *El que alzare con sus bienes o los ocultare o cometiere cualquier otro fraude para perjudicar a su acreedor, incurrirá en prisión de dieciséis (16) a cincuenta y cuatro (54) meses y multa de trece punto treinta y tres (13.33) a trescientos (300) salarios mínimos legales mensuales vigentes*".

*Grosso modo*, lo que el legislador pretende disuadir a partir de este tipo penal es que una persona, con el propósito de evadir sus obligaciones económicas y así defraudar a su acreedor, se insolvente real o ficticiamente, evitando así que su acreedor acuda ante las autoridades jurisdiccionales correspondientes para hacer valer con éxito los derechos económicos que le corresponden.

A este respecto, la Corte Suprema de Justicia ha establecido que el alzamiento de bienes tiene lugar en el evento en que la obligación sea determinada o determinable y pueda ser objeto de materialización por los medios del derecho civil:

"*La existencia del delito depende de que medie una relación jurídica obligacional en el momento de la realización de la acción. La obligación debe estar, por tanto, determinada o ser determinable y poder ser objeto de materialización por los medios del derecho civil de ejecución, razón por la cual se excluyen las reclamaciones no realizables como, por ejemplo, las provenientes de los negocios ilícitos*[1]".

Como se desprende de los fundamentos fácticos relatados inicialmente, las obligaciones existentes en cabeza de VP INGENERGÍA S.A.S son exigibles en el ámbito civil, tanto así que diversos juzgados civiles del circuito han optado por librar el mandamiento de pago respectivo. De esta manera, es evidente que la relación jurídica obligacional se encuentra perfectamente determinada y que, desde luego, su carácter de exigibilidad es indubitado.

En todo caso, una sociedad que se dedica a la comercialización de gas natural, que no se encuentra inmersa en un proceso de insolvencia (pues así no está reportado en su Certificado de Existencia y Representación Legal), no puede tener un millón de

[1] Corte Suprema de Justicia, Sala de Casación Penal. SP923-2019, rad. 51.683 del 20 de marzo de 2019.



pesos de recursos en sus cuentas bancarias, pues no se corresponde con su objeto social, mucho menos cuando tiene cuentas por pagar.

Incluso, su Certificado de Existencia y Representación Legal evidencia un capital suscrito y pagado de DOCE MIL CIENTO OCHENTA Y NUEVE MILLONES OCHOCIENTOS MIL PESOS ($12.189.800.000), de modo que tener un flujo de caja de un millón de pesos es absolutamente absurdo.

Aunque dicha situación resultara ser llamativa, es concluyente en el momento en que VP INGENERGÍA S.A.S ESP resuelve acudir ante un panel arbitral a pagar casi TRES MIL MILLONES DE PESOS M/CTE (3.000'000.000), cuando sus cuentas bancarias no evidencian dichos recursos, muestra más que suficiente para colegir que, de alguna manera, ocultaron su patrimonio.

- **EL TIPO PENAL DE LAVADO DE ACTIVOS**

El tipo penal de lavado de activos se encuentra contemplado en la ley 599 de 2000, título X, "delitos contra el orden económico y social, capítulo V "del lavado de activos", artículo 323 y en su tenor literal reza:

> "***ARTICULO 323. LAVADO DE ACTIVOS***. *El que adquiera, resguarde, invierta, transporte, transforme, almacene, conserve, custodie o administre bienes que tengan su origen mediato o inmediato en actividades de tráfico de migrantes, trata de personas, extorsión, enriquecimiento ilícito, secuestro extorsivo, rebelión, tráfico de armas, tráfico de menores de edad, financiación del terrorismo y administración de recursos relacionados con actividades terroristas, tráfico de drogas tóxicas, estupefacientes o sustancias sicotrópicas, delitos contra el sistema financiero, delitos contra la administración pública, contrabando, contrabando de hidrocarburos o sus derivados, fraude aduanero o favorecimiento y facilitación del contrabando, favorecimiento de contrabando de hidrocarburos o sus derivados, en cualquiera de sus formas, o vinculados con el producto de delitos ejecutados bajo concierto para delinquir, o les dé a los bienes provenientes de dichas actividades apariencia de legalidad o los legalice, oculte o encubra la verdadera naturaleza, origen, ubicación, destino, movimiento o derecho sobre tales bienes , incurrirá por esa*



*sola conducta, en prisión de diez (10) a treinta (30) años y multa de mil (1.000) a cincuenta mil (50.000) salarios mínimos legales mensuales vigentes.*

*La misma pena se aplicará cuando las conductas descritas en el inciso anterior se realicen sobre bienes cuya extinción de dominio haya sido declarada.*

*El lavado de activos será punible aun cuando las actividades de que provinieren los bienes, o los actos penados en los apartados anteriores, se hubiesen realizado, total o parcialmente, en el extranjero.*

*Las penas privativas de la libertad previstas en el presente artículo se aumentarán de una tercera parte a la mitad cuando para la realización de las conductas se efectuaren operaciones de cambio o de comercio exterior, o se introdujeren mercancías al territorio nacional¨.*

Un análisis de la tipicidad objetiva del delito de Lavado de Activos supone evidenciar, por lo menos, dos elementos claros: **(i)** la conjugación de alguno de los verbos rectores descritos allí como comportamiento penalmente relevante ¨*adquirir, resguardar, invertir, transportar, transformar, custodiar o administrar bienes*¨) y; (ii) que la conducta del numeral primero recaiga sobre bienes que tengan origen mediato o inmediato en alguna de las actividades delictivas incluidas en dicha disposición.

Como punto inicial para abordar el estudio de este delito en su tipicidad objetiva, debe señalarse que el sujeto activo, es decir, quien lleva a cabo el comportamiento, es de índole indeterminada o simple, lo que quiere decir que cualquier individuo es susceptible de desplegar este actuar.

El sujeto pasivo, es decir, el individuo o la entidad sobre la cual recae el actuar del sujeto activo, para este caso, es el orden económico y social, quiere decir, en principio el comportamiento recae sobre esta categoría jurídica y no frente a una persona o grupo de ellas determinada.

Interesante resultará comprender cuál es la naturaleza de los comportamientos que pretende disuadir el legislador a propósito de esta normativa.





Sin embargo, como definición principalísima, el lavado de activos consiste en que un individuo realiza cualquier tipo de acto para ocultar o encubrir el origen ilícito de los bienes o activos que, provenientes del ejercicio de determinadas conductas punibles, se incorporan a la economía nacional para hacerlos lucir como legítimos.

En tal virtud, el legislador contempla como verbos rectores del tipo penal del lavado de activos los siguientes: **adquirir, resguardar, invertir, transportar, transformar, almacenar, conservar, custodiar, administrar** (bienes cuyo origen mediato o inmediato fuera alguno de los delitos que se enuncian en el artículo 323 del C.P., como, por ejemplo, el tráfico de migrantes, enriquecimiento ilícito, trata de personas, secuestro extorsivo, tráfico de drogas tóxicas, entre otras.

Ahora, la diferencia entre lo preceptuado en el primer inciso y el segundo consiste en que "*Si observan las conductas descritas en el inciso 1º se concluye que en todos los casos el autor debe conocer el origen ilícito de los bienes. Pero sucede que en la práctica, quienes cometen estos delitos crean verdaderas empresas criminales en donde no sólo se mezclan varios métodos para lavar activos, sino que intervienen cadenas de autores innumerables que impiden o dificultan la investigación criminal (...) Por esta razón, el legislador consagra una nueva conducta: comete delito de lavado quien, no obstante no conocer el origen ilícito de los bienes, conoce el pronunciamiento judicial que así lo declaró en un proceso de extinción de dominio*[2]".

Importante es resaltar que el delito de lavado de activos es autónomo respecto de las actividades delictivas que dan origen, mediato o inmediato, a los bienes sobre los que recae la conducta.

El tipo de blanqueo de capitales en el derecho comparado, tiene una estrecha relación con la criminalidad organizada y si bien tuvo un vínculo estrecho a propósito del negocio del tráfico de estupefacientes en su origen, lo cierto es que con la diversidad delictiva que abarca a nuestras sociedades se ha expandido a otros tipos penales.

De esta manera, para que se consume la comisión del delito de lavado de activos, es indispensable que se presente con antelación un delito **subyacente**, es decir, ***para ocultar dineros de origen ilegal y darles posterior apariencia de legalidad***

---

[2] Varios, Derecho Penal Parte General, Bogotá, Universidad Externado de Colombia, 2011.

TRUTH • RESEARCH • EVIDENCE

DAVID ESPINOSA ACUÑA & ASOCIADOS

***inmiscuyéndolos en el tráfico económico normal, <u>debe existir de manera anterior una actividad delictiva fuente de los recursos ilícitos</u>.***

Dichas actividades delictivas anteriores al lavado de activos, también denominadas delitos fuente o delitos subyacentes, se encuentran determinadas en el art. 323 del Código Penal, que tipifica precisamente el delito de lavado de activos. De la lectura de este artículo se desprenden los siguientes delitos fuentes, entre otros:

- Tráfico de migrantes.
- Trata de personas.
- Extorsión.
- Enriquecimiento ilícito.
- Financiación de terrorismo y administración de recursos relacionados con actividades terroristas.
- Tráfico de drogas tóxicas, estupefacientes o sustancias psicotrópicas.
- Delitos contra el sistema financiero: artículos 314 a 317 del código penal.
- Secuestro extorsivo.
- Rebelión.
- Tráfico de armas.
- Tráfico de menores de edad.
- Delitos contra la administración pública: artículo 397 al 433 del código penal.
- Actividades vinculadas con el producto de delitos ejecutados bajo el concierto para delinquir.

Ahora bien, ha existido un debate respecto de si es necesario contar con la sentencia ejecutoriada del delito subyacente para que sea posible juzgar por el delito de lavado de activos. Al respecto es imperativo señalar que la postura de la Sala Penal de la Corte Suprema de Justicia ha sido consistente en que el individuo debe probar el origen lícito de los recursos objeto de debate.

Si bien la postura genera mucha polémica al controvertir uno de los principios rectores del proceso penal relativos a la prohibición de la inversión de la carga de la prueba, lo cierto es que esta discusión ha tomado un tinte más académico que busca que el Alto Tribunal cambie su postura. No obstante, ha dicho la Sala:

> *"No es dable asociar la demostración "con certeza" de la actividad ilícita antecedente, o la "prueba" de la conducta subyacente o el*

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





DAVID ESPINOSA ACUÑA & ASOCIADOS

*como los demás, debe demostrarse en el nivel de certeza -racional- (Ley 600 de 2000) o convencimiento más allá de duda razonable (Ley 906 de 2004)*[5]".

Sobre la base de lo aquí ocurrido está claro que una hipótesis subsidiaria que podría encuadrarse como consecuencia de los hechos denunciados se fundamenta en el origen de los recursos que fueron invertidos para pagar al Tribunal Arbitral, pues no es razonable la consecución de recursos tan altos por una sociedad que, si bien tiene un alto capital suscrito y pagado de acciones, cuenta con un millón de pesos en caja.

Esta situación hace indispensable que la Fiscalía General de la Nación indague acerca del origen de los recursos, su trazabilidad y paso por el sistema financiero colombiano.

## IV. SOLICITUD

Con lo anterior, SOLICITO se investiguen estos hechos jurídicamente relevantes en una célere etapa de indagación preliminar en la que se pueda tener una oportuna respuesta de la administración de justicia y evitar una mayor impunidad por parte de los aquí denunciados.

## V. ANEXOS

Acompaño los documentos relacionados en los hechos de esta noticia crimianl.

## VI. COMUNICACIONES

Las recibiremos en el correo electrónico contacto@deaa.com.co , dirección física: carrera 16A No. 79-48, piso 7 de Bogotá D.C.

Cordialmente,

**DAVID ESPINOSA ACUÑA**
**C.C. 11.202.888**
**T.P. 134.189**

[5] **Corte Suprema de Justicia.** CSJ SP-282-2017



**SEÑORES**
**FISCALÍA GENERAL DE LA NACIÓN**
**BOGOTÁ D.C.**

**REF. OTORGAMIENTO DE PODER ESPECIAL**

**ANDRÉS VALENZUELA PACHÓN**, identificado como aparece al pie de mi firma, representante legal de CANACOL ENERGY COLOMBIA S.A.S y CNE OIL & GAS S.A.S., personas jurídicas identificadas con los NIT 900.276.770-2 y 900.713.658-0, respectivamente, por medio del presente escrito manifiesto que confiero **PODER ESPECIAL, AMPLIO Y SUFICIENTE** al doctor **DAVID ESPINOSA ACUÑA**, identificado con cédula de ciudadanía 11.202.888 y Tarjeta Profesional 134.189 del Consejo Superior de la Judicatura para que presente DENUNCIA en contra de los señores ÁLVARO AUGUSTO VARGAS BRAVO, DARLYN YESENIA NEIRA CARO, PATRICIA CRISTINA PEÑA ANAYA y ÁLVARO VARGAS GRASS, por la presunta comisión de los delitos de ALZAMIENTO DE BIENES (artículo 253 C.P.) en concurso heterogéneo con el de LAVADO DE ACTIVOS (artículo 323 C.P.) y los demás que puedan configurarse.

Mi apoderado queda facultado para: recibir, transigir, conciliar, desistir, sustituir, reasumir, otorgar suplencias y, en general, realizar todas aquellas acciones necesarias para el cumplimiento del presente mandato.

Conforme con lo establecido en el artículo 5 de la Ley 2213 del 13 de junio de 2022, el presente poder se emite sin ninguna presentación personal o reconocimiento, indicándose, en todo caso, que la dirección de correo electrónico del apoderado que se encuentra inscrita en el Registro Nacional de Abogados es contacto@deaa.com.co[1].

Cordialmente,

**ANDRÉS VALENZUELA PACHÓN**
**C.C. 79.657.288**

Acepto,

**DAVID ESPINOSA ACUÑA**
**C.C. 11.202.888**
**T.P. 134.189**

[1] **Ley 2213 de 2022. "ARTÍCULO 5. PODERES.** Los poderes especiales para cualquier actuación judicial se podrán conferir mediante mensaje de datos, sin firma manuscrita o digital, con la sola antefirma, se presumirán auténticos y no requerirán de ninguna presentación personal o reconocimiento.

En el poder se indicará expresamente la dirección de correo electrónico del apoderado que deberá coincidir con la inscrita en el Registro Nacional de Abogados.

Los poderes otorgados por personas inscritas en el registro mercantil deberán ser remitidos desde la dirección de correo electrónico inscrita para recibir notificaciones judiciales".