# EXHIBIT 5

1



DAVID
ESPINOSA
ACUÑA
& ASOCIADOS



SUBDIRECCION DE GESTION DOCUMENTAL

SGD - No. 20246110071922
Fecha Radicado: 2024-04-08 15:41:57
Anexos: 85 FOLIOS INCLUYE D.P

FISCALIA

**SEÑORES**
**FISCALÍA GENERAL DE LA NACIÓN**
**CIUDAD**

REF.          DENUNCIA POR LA PRESUNTA COMISIÓN DEL DELITO DE
              CONCIERTO PARA DELINQUIR

**DAVID ESPINOSA ACUÑA**, identificado como aparece al pie de mi firma, **APODERADO** de las sociedades **CNE OIL & GAS S.A.S.** y **CNEOG COLOMBIA SUCURSAL COLOMBIA**, me dirijo ante usted de forma respetuosa en aras de presentar DENUNCIA por la presunta comisión del delito **CONCIERTO PARA DELINQUIR (ART. 340 C.P.)** en contra de los señores **ÁLVARO AUGUSTO VARGAS BRAVO, DARLYN YESENIA NEIRA CARO, PATRICIA CRISTINA PEÑA ANAYA** y **LUIS MIGUEL FERNÁNDEZ ZAHER**, así como las demás personas que pudieran encontrar comprometida su responsabilidad penal conforme con los hechos que a continuación se relacionan y que han sido referenciados expresamente así por mis poderdantes:

## I.     IDENTIFICACIÓN DE LAS PERSONAS DENUNCIADAS

La noticia criminal que aquí se somete al conocimiento de la Fiscalía General de la Nación referirá hechos jurídicamente relevantes que podrían involucrar el comportamiento del ciudadano **ÁLVARO AUGUSTO VARGAS BRAVO**, quien se identifica con la cédula de ciudadanía 91.241.213 y puede ser ubicado en la Avenida Carrera 9 #115-06 oficina 801 de la ciudad de Bogotá, así como en el correo electrónico financiera@vpsa.com.

Así mismo, se resalta la intervención de la señora **DARLYN YESENIA NEIRA CARO**, quien se identifica con la cédula de ciudadanía 1.095.808.726 y con correo electrónico financiera@vpsa.com.

**PATRICIA CRISTINA PEÑA ANAYA**, quien se identifica con cédula de ciudadanía es 63.351.231 y puede ser ubicada en la Avenida Carrera 9 #115-06 oficina 801 de la ciudad de Bogotá, correo electrónico financiera@vpsa.com.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

**LUIS MIGUEL FERNÁNDEZ ZAHAR**, quien se identifica con la cédula de ciudadanía 73.156.820 y puede ser ubicado en la Calle 18 No. 39-250 de Soledad, Atlántico, correo electrónico tebsa@tebsa.com.co

Funcionarios de la sociedad ITAÚ FIDUCIARIA S.A en averiguación de responsables.

## I.   HECHOS JURÍDICAMENTE RELEVANTES

1. Las sociedades CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S. son personas jurídicas de nacionalidad colombiana cuyo objeto social principal es la exploración y producción de gas natural convencional en Colombia.

2. De otro lado, los aquí denunciados, de una parte, ÁLVARO AUGUSTO VARGAS BRAVO y DARLYN YESENIA NEIRA CARO y ANA CRISTINA PEÑA ANAYA han representado y representan legalmente a la compañía **VP INGENERGÍA S.A.S. E.S.P**, identificada con el NIT 900.305.404-7, sociedad que tiene por objeto social la **comercialización de gas natural**, hidrocarburos y sus derivados.

3. Así mismo, **LUIS MIGUEL FERNÁNDEZ ZAHAR** funge como representante legal de la compañía TERMOBARRANQUILLA S.A (TEBSA), compañía distribuidora de gas en Colombia.

4. En el marco de lo anterior, las personas jurídicas antes mencionadas (cuya representación está en cabeza de las personas naturales denunciadas) constituyen una parte de la cadena de suministro de gas en Colombia, así:

    a. CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS exploran, explotan y producen gas.

    b. VP INGENERGÍA S.A.S E.S.P. adquiere el gas de CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS y lo comercializa con sus distribuidores.

    c. TERMOBARRANQUILLA S.A, a su vez, compra el gas proveniente de CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS que, para llegar a ella, pasa a través de la comercializadora VP INGENERGÍA S.A.S E.S.P. De esta manera, TERMOBARRANQUILLA S.A. (TEBSA) se

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

configuraba como el **BENEFICIARIO REAL** del gas proveniente de CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS.

5. Dicha relación comercial se materializó al interior de los contratos CNEGN-01-2016, CNEOG-CF-VP-01-2022 y CNEOG-CI-VP-01-2022, a partir de los cuales VP INGENERGÍA (distribuidor) y TEBSA (**BENEFICIARIO REAL**) **debían pagar un precio por la adquisición de dicho producto**.

6. Ahora bien, atendiendo la relevancia y magnitud del negocio de venta de gas aquí referido, se imponía entre las obligaciones de los denunciados **la constitución de garantías bancarias** en distintas entidades financieras, **ello con el propósito de amparar un eventual incumplimiento que perjudicara a CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS**.

7. En virtud de lo anterior, se constituyeron las garantías bancarias por los aquí denunciados, __autorizados por los miembros de Junta Directiva de TERMOBARRANQUILLA S.A__[1] con miras a generar seguridad en CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS respecto del cumplimiento del pago del gas que fue entregado por éstas últimas y en donde el BENEFICIARIO REAL es TEBSA a través de VP INGENERGÍA.

8. Adicionalmente, como otra de las garantías para cumplirle a CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS y garantizarles que el gas entregado sería efectivamente pagado, voluntariamente o a través de canales que aseguraran el cumplimiento de los denunciados, se impuso la necesidad de constituir un FIDEICOMISO DE ADMINISTRACIÓN Y PAGOS a instancias de la fiduciaria ITAÚ FIDUCIARIA COLOMBIA S.A, SOCIEDAD FIDUCIARIA.

9. En virtud de lo anterior, el FIDEICOMISO DE ADMINISTRACIÓN Y PAGOS tenía las siguientes partes:

   a. **BENEFICIARIOS**: CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS

   b. **PAGADOR**: TERMOBARRANQUILLA S.A

---

[1] Conforme obligación que consta en el Certificado de existencia y Representación Legal consistente en que la Junta Directiva de TEBSA tiene como función autorizar o aprobar los contratos que celebre el Representante Legal de más de SESENTA MIL DÓLARES (US$ 60.000). **Con base en esta situación, también debe investigarse a los miembros de junta de TEBSA.**

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com



`



**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

**c. FIDEICOMITENTE**: VP INGENERGÍA.

10. Dichas garantías fueron efectivamente constituidas por los aquí denunciados, quienes en un comportamiento mancomunado y sincronizado resolvieron dar apariencia de legalidad a su comportamiento con miras a generar seguridad en las sociedades CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS para así obtener la entrega del gas por ellas producido.

11. Amparado en esa seguridad, CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS entregaron gas avaluado en la suma aproximada a DIECIOCHO MILLONES DE DÓLARES (US 18'000.000) en donde **el beneficiario real es TEBSA** a través de VP INGENERGÍA (con participación directa de los aquí denunciados).

12. Sin embargo, las sociedades CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS no recibieron el pago por el suministro de gas, lo que a la postre derivó en un provecho económico ilícito en cabeza de los aquí denunciados que obtuvieron en detrimento de mis representadas y producto de sus mecanismos engañosos, lo cual está siendo investigado por la Fiscalía General de la Nación a través del CUI 110016000049-2024-31894.

13. Lo que empezó como un incumplimiento contractual se confirmó como delito de estafa al momento de intentar ejecutar las garantías bancarias y fiduciarias (que fueron aprobadas mientras se indujo en error a mis mandantes), pues las entidades financieras manifestaron que dichos mecanismos jurídicos <u>no tenían la capacidad de amparar el cumplimiento de lo pretendido al no demostrarse que había un incumplimiento de TERMOBARRANQUILLA S.A</u>, quien era el ordenante de las garantías y el pagador de la fiducia.

14. De hecho, vale la pena destacar que TERMOBARRANQUILLA S.A emitió comunicación con destino a mis mandantes en donde confirmó la emisión de nuevas garantías en favor de VP que a la postre fueron de imposible cobro ante el incumplimiento (para que mis mandantes se mantuvieran en dicho error y encubrir a las personas de VP INGENERGÍA)

> "… En razón a lo anterior, solicitamos a CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S como Beneficiarios de la Garantía Bancaria No. 0700202610106 1412, que envíen una

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

*comunicación dirigida a DAVIVIENDA en la que rechacen expresamente dicha garantía.*

*TERMOBARRANQUILLA S.A. E.S.P. procederá a entregar a VP INGENERGÍA S.A.S. E.S.P una nueva garantía bancaria que incluya las condiciones señaladas por usted en la comunicación antes referenciada, incluyendo la cesión y la aceptación del banco em sor ..."*

15. Dicha situación sobreviniente permite observar que <u>las conductas desplegadas por los aquí denunciados son inescindibles, prueba inequívoca de una concertación dirigida a cometer delitos en contra de CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS</u>, lo anterior se soporta en tanto que:

   a. TEBSA, como ordenante VP INGENERGÍA como beneficiario de las garantías bancarias incluyeron en el articulado de dichos instrumentos los contratos con CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS a sabiendas que no era lo realmente amparado.

   b. TEBSA, como pagador y VP INGENERGÍA como fideicomitente, incluyeron en el articulado del contrato de fiducia los contratos con CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS a sabiendas que era un patrimonio autónomo que VP INGENERGÍA podía utilizar a su antojo y que no brindaba garantía alguna de cumplimiento de las obligaciones de ésta.

   c. Por su parte, los miembros de la FIDUCIARIA ITAÚ tenían la obligación de administrar responsablemente los recursos dirigidos al beneficiario de pago (mis representadas). Sin embargo, en una clara vulneración de sus deberes contractuales y legales, permitieron que VP sustrajera la totalidad de los recursos, denominándolos como "excedentes", sin verificar el cumplimiento de las obligaciones contractuales (o más aún, a pesar del incumplimiento de las obligaciones contractuales). Es importante indicar que en sus comunicaciones, ITAÚ se ha limitado a indicar que no le fueron presentadas facturas por pagar por parte de VP, lo que implica un evasión dolosa del objeto real de la fiducia, pues las obligaciones garantizadas a través de ésta son aquellas plasmadas en los contratos suscritos con mis poderdantes que no pueden ser limitadas a la existencia o no de facturas

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

de venta. (aquí se verifica la participación en el concierto para delinquir de diversos miembros de la FIDUCIARIA ITAÚ, pues concurren al comportamiento delictivo con los demás denunciados al constituir una fiducia que da apariencia de garantía, pero que claramente contraviene cualquier fundamento legal de dicha institución y permite la sustracción de recursos con los que se debía pagar a mis poderdantes).

De hecho, otro factor relevante de cara a la participación de miembros de ITAÚ FIDUCIARIA aún por determinar es que mientras en las audiencias de conciliación tendientes a entablar esta reclamación han sostenido que <u>desconocían los contratos de VP con mis representadas, esta situación se configuraba como un factor determinante en el contrato de fiducia, tanto así que eran mis mandantes las beneficiarias del pago de las obligaciones contenidas en dichos contratos, evidenciándose un ánimo de encubrimiento en los miembros de ITAÚ para respaldar el comportamiento de sus concertadas VP y TEBSA.</u>

**d.** En cumplimiento de los buenos oficios de mis representadas, se ha intentado por múltiples medios obtener la intervención y apoyo de TEBSA en cabeza de su representante legal con el propósito de solventar esta situación tan gravosa, encontrándose con respuestas evasivas, hostiles y amenazantes, que evidencian el ánimo de encubrir mancomunadamente la sustracción del pago de DIECIOCHO MILLONES DE DÓLARES (US 18'000.000) en perjuicio de mi representada, lo que a la postre únicamente beneficia a los aquí denunciados.

**e.** Vale resaltar que las respuestas no sólo pretenden evadir cualquier tipo de responsabilidad mancomunada, sino que también procura la obstaculización al acceso de cualquier tipo de documentación vital para el esclarecimiento de los hechos.

Colofón de lo anterior, es claro que los aquí denunciados concurren en un comportamiento tendiente a hacerse con el gas proveniente de mis poderdantes (TEBSA), sustraerse del pago (VP), encubrir la insatisfacción de sus obligaciones económicas por valores astronómicos a través de obstáculos que impiden el esclarecimiento de hechos (VP, TEBSA e ITAÚ), lo cual sólo ha redundado en el detrimento patrimonial de CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS SAS.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

## II. FUNDAMENTOS JURÍDICOS

El tipo penal de Concierto para Delinquir se encuentra consagrado en el artículo 340 del código penal colombiano y se describe, en lo que aquí interesa, en los siguientes términos:

> *"ART. 340. CONCIERTO PARA DELINQUIR. Cuando varias personas se concierten con el fin de cometer delitos, cada una de ellas será penada, por esa sola conducta, con prisión de tres (3) a seis (6) años.*
>
> *[...]*
>
> *La pena privativa de libertad se aumentará en la mitad para quienes organicen, fomenten, promuevan, dirijan, encabecen, constituyan o financien el concierto para delinquir".*

Respecto de la norma en cita debe tenerse en cuenta que cualquier individuo es susceptible de cometer este comportamiento, quiere decir lo anterior que no se exige una calificación especial respecto de sus calidades. Sin embargo, claro es que el número de participantes para su configuración ha de ser plural pues se requiere una coparticipación en sentido amplio.

De este modo, lo que se demanda para la consumación del delito de concierto para delinquir, no es la producción de un resultado cierto como consecuencia del acuerdo, sino la simple reunión de un conjunto plural de individuos con la finalidad de ejecutar ilícitos indeterminados, sin que para ello importe si la adhesión se produce en el momento de la creación de la organización o tiempo después.

Por otra parte, el comportamiento que se pretende disuadir con la consagración de esta norma punitiva es el de *concertarse*, de donde se desprende que es un tipo penal conocido técnicamente como 'de mera conducta', ya que se consuma en el momento en que dos o más individuos simplemente acuerdan cometer un número plural de delitos indeterminados con vocación de permanencia en el tiempo.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com





**DAVID
ESPINOSA
ACUÑA
& ASOCIADOS**

En lo que respecta al delito en comento, la H. Sala Penal de la Corte Suprema de Justicia

> "[...] *En suma, el delito de concierto para delinquir requiere: Primero: Un acuerdo de voluntades entre varias personas; segundo: Una organización que tenga como propósito la comisión de delitos indeterminados, aunque pueden ser determinables en su especie; tercero: La vocación de permanencia y durabilidad de la empresa acordada; y cuarto: Que la expectativa de realización de las actividades propuestas permita suponer fundadamente que se pone en peligro la seguridad pública*[2]"

## III.   COMUNICACIONES

Las recibiré en la Carrera 16A No. 79-48, piso 7 de Bogotá D.C., correo electrónico contacto@deaa.com.co

Cordialmente,

**DAVID ESPINOSA ACUÑA
C.C. 11.202.888
T.P. 134.189**

---

[2] Sentencia del 25 de septiembre de 2013, Rad. 40.545.

T. +57 1 7451037
E. contacto@deaa.com.co
D. Cra 16A # 79-48, Piso 7.
Bogotá, COL.

www.davidespinosayasociados.com



Case 0:25-mc-60796-AHS    Document 3-16    Entered on FLSD Docket 04/24/2025    Page 18 of 171

Firmado electrónicamente. Documento No. 7bdcf20a-b1e1-43fa-8267-603fa044bf5

9

**≋Bancolombia**

Cordial saludo,

Te informamos que Bancolombia S.A. procesó exitosamente la solicitud asociada al p. ducto de Garantía Bancaria, para lo cual adjuntamos a esta comunicación el texto generado para la operación.

Dando cumplimiento a la reglamentación de la Superintendencia Financiera de Colombia relativo a la expedición o modificación de Garantías Bancarias, podrás consultar la veracidad del contenido del texto escaneando el código QR que aparece en el documento, o digitando el código alfanumérico (Documento No.) que aparece el texto de la Garantía Bancaria, en el campo "Id. del documento" en el sitio web "AutenticSign" de Certicámara, quien ha sido contratado por Bancolombia S.A. para la verificación en línea de las Garantías. Esta página web es administrada por Certicámara y se regirá por los términos y condiciones de la misma.

A través de la siguiente ruta podrás encontrar la opción para ser redirigido al sitio web "AutenticSign" de Certicámara:

1. Ingresa a nuestro portal web www.grupoBancolombia.com

2. Selecciona la opción "Empresas" → "Productos y servicios" → "Créditos"

3. Ingresa a la opción "servicios de Respaldo" y selecciona el producto "Garantías bancarias locales" si la Garantía emitida es en pesos colombianos o "Garantías bancarias locales en moneda extranjera" si la Garantía emitida es en moneda extranjera.

4. Una vez seleccionado el producto, debes dar clic en la opción "Consultar", en donde serás redirigido al sitio de consulta para validar la autenticidad de la Garantía bancaria.

En esta misma ruta encontrarás el buzón de correo electrónico por medio del cual podrás escalarnos inquietudes asociadas al contenido del texto generado para esta operación en donde recibirás respuesta dentro del día hábil siguiente al que nos escales la consulta

Cordialmente,

BANCOLOMBIA S.A.




**⊜ Grupo Bancolombia**

Firmado electrónicamente. Documento No. 7bdcf20a-b161-43fa-8267-603ffa044bf5

**≋Bancolombia**

Garantía Bancaria Independiente a Primer Requerimiento

Garantía Bancaria No. 10090004337

BANCOLOMBIA S.A., con NIT 890.903.938-8, establecimiento bancario con domicilio principal en Medellín (en adelante "EL BANCO"), obrando por cuenta y orden de TERMOBARRANQUILLA S.A. E.S.P., con NIT 800245746-1 (en adelante "EL ORDENANTE"), otorga la presente garantía bancaria independiente a primer requerimiento irrevocable (en adelante la "Garantía") a favor de CNE OIL & GAS S.A.S. Y CNEOG COLOMBIA SUCURSAL COLOMBIA, con NIT 900713658 y 900276770 (en adelante "EL BENEFICIARIO"), que se regirá por las siguientes cláusulas:

Primera. EL BANCO se constituye en garante hasta por el monto establecido en la cláusula segunda de la presente Garantía y garantiza a TERMOBARRANQUILLA S.A. E.S.P., con NIT 800245746-1 (en adelante "EL GARANTIZADO") ante EL BENEFICIARIO el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, multas, cargos y sobrecostos en que incurra EL VENDEDOR por el incumplimiento de EL COMPRADOR (la "Garantía"). Según la cláusula 5.5 del contrato VP-0515, los Beneficiarios Finales de la presente Garantía son CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S., acorde a lo señalado en el contrato de suministro de Gas Natural en firme Nro. CNEGN-01-2016 firmado el 2 de febrero de 2016 - OBSERVACION: La garantía no expirará por falta de pago de la prima o por revocatoria unilateral y ello deberá constar en su texto. (en adelante la "Operación Subyacente").

Segunda. El valor máximo que cubre esta Garantía es de $COP 40.835.657.750 (Cuarenta mil ochocientos treinta y cinco millones seiscientos cincuenta y siete mil setecientos cincuenta Pesos Colombianos) . La vigencia de la Garantía iniciará el 31 de Marzo de 2023 y expirará el 30 de Noviembre de 2023. Si hasta el día de expiración de la Garantía EL BANCO no hubiere recibido los documentos mencionados en la cláusula tercera para requerir el pago de esta Garantía, cesará toda obligación de EL BANCO en lo pasado y para el futuro y la Garantía quedará total y definitivamente cancelada, así EL BENEFICIARIO la retenga y cualquier requerimiento de pago después de esa fecha no tendrá efecto alguno. En ningún caso la responsabilidad de EL BANCO ante EL BENEFICIARIO excederá el valor máximo que cubre esta Garantía.

Tercera. Para requerir el pago de la Garantía EL BENEFICIARIO deberá presentar en cualquier sucursal de EL BANCO en Colombia a más tardar en la fecha de expiración



Firmado electrónicamente. Documento No. 7bdcf20a-b161-4310-8287-603fa044bf5

**Bancolombia**

de la Garantía y en el horario bancario de atención al público, los siguientes documentos:

i. Original del requerimiento de pago por escrito firmado por un representante legal de EL BENEFICIARIO indicando el número de esta Garantía y declarando que EL GARANTIZADO incumplió las obligaciones de la Operación Subyacente, la forma en que han sido incumplidas y el monto reclamado.

ii. Original del documento que acredite la existencia y representación legal de EL BENEFICIARIO.

Cuarta. Cumplidos los anteriores requisitos, EL BANCO pagará la suma requerida por EL BENEFICIARIO dentro de los ocho (8) días hábiles siguientes a aquel en que reciba de éste los documentos indicados en la cláusula tercera.

Quinta. EL BENEFICIARIO no podrá transferir esta Garantía o cualquier suma a la que tenga o pueda tener derecho en virtud de la misma.

Sexta. Para la interpretación y resolución de cuestiones que no estén reguladas en esta Garantía, habrán de tenerse en cuenta las reglas y usos internacionales generalmente aceptados en la práctica de las garantías independientes o autónomas a primer requerimiento.

Séptima. Toda mención relativa a la Operación Subyacente es solamente para información y no conlleva ningún compromiso ni responsabilidad de EL BANCO en relación con dicha operación subyacente.

En los términos anotados se expide la presente Garantía el 31 de Marzo de 2023.

Pagado el impuesto de timbre: $ 1.107.100,00

John Fredy Mantilla Garzón
CC 71.709.513 de Medellín
Apoderado especial, Bancolombia S.A.




**Grupo Bancolombia**



Verificado y firmado con

**CertiFirma**
By AutenTIC

Documento No.
7bdcf20a-b161-43fa-8267-603ffa044bf5

Creado el:
31/03/2023 06:31 PM

Este documento es la representación de un documento original en formato electrónico. Para validar el estado actual del documento ingrese a consulta.autenticsign.com/y/o escanee el código QR



Este documento esta firmado electrónicamente, enmarcado en la **ley 527 de 1999 y decreto 2364 de 2012** de la normatividad colombiana, cumpliendo además con los estandares internacionales de firma.



Nombre(s): JOHN FREDY
Apellido(s): MANTILLA GARZON
Identificación No. 71706613
Firmó el: 31/03/2023 06:31 PM

Firmado digitalmente por:
Fecha: 31-03-2023
06:31:21 PM
Razón: Firma Electronica
de prod
Ubicación: Colombia

*Radicado 3000176403*

 

Bogotá D.C., 11 de enero del 2024

Señores

**Bancolombia S.A.**
Bogotá D.C.

E.                          S.                          D.

**Asunto:** Derecho de Petición (art. 23 Constitución Política)

**ANDRÉS VALENZUELA PACHÓN,** Representante Legal de las sociedades **CNE OIL & GAS SAS**[1] y **CNEOG COLOMBIA SUCURSAL COLOMBIA**[2] (en adelante las "Compañías") por medio del presente escrito acudo ante usted(es) con el fin de solicitar **DERECHO FUNDAMENTAL DE PETICIÓN** consagrado en el artículo 23 de la Constitución Política de Colombia en virtud de los siguientes

### I.   HECHOS

1.1  Las Compañías tuvieron conocimiento de información compartida en medios públicos relacionada con presuntas actividades ilícitas adelantadas por el señor Álvaro Augusto Vargas Bravo como se evidencia en las siguientes noticias:

a.  Noticia "Acción de tutela intenta proteger el servicio de gas domiciliario en Cundinamarca, Antioquia y Tolima" publicada por el diario "La Nueva Prensa" de fecha 24 de diciembre del 2023[3].

> *"(...) Álvaro Augusto Vargas Bravo, gerente general y representante legal de la empresa VP Ingenergia S.A.S. E.S.P., (quien saldría favorecido con la multimillonaria suma por el Laudo Arbitral proferido por la Cámara de Comercio de Bogotá) ,hace más de quince años tuvo que huir del país porque hombres del capo del narcotráfico del cartel del Norte del Valle, Wilber Varela, alias Jabón, lo buscaban, al parecer, para un ajuste de cuentas (...)contra Álvaro Augusto Vargas Bravo, estaría avanzando muy secretamente un proceso por lavado de activos".*

b.  Noticia "Ganaron los Pillos" publicada por el diario "La Nueva Prensa" de fecha 29 de diciembre del 2023[4].

> *"(...) Álvaro Augusto Vargas Bravo con su empresa es una de las letrinas más grandes en materia de corrupción en Colombia '(...)*

---

[1] Nit. 900713658 – 0
[2] Nit. 900276770 – 2
[3] https://www.lanuevaprensa.com.co/component/k2/accion-de-tutela-amenaza-con-dejar-sin-gas-domiciliario-a-cundinamarca-antiquia-y-tolima
[4] https://www.lanuevaprensa.com.co/component/k2/ganaron-los-pillos

 

*También se especula en el sector gasífero del país que Álvaro Augusto Vargas Bravo de VP Ingenería S.A.S., fue testaferro de uno de ellos grandes capos del narcotráfico del Norte del Valle y el propio Vargas Bravo les habría contado a unos de sus pares en el sector que lo estaban buscando para matarlo", comentó la fuente. "*

1.2 Las Compañías tienen conocimiento que la sociedad VP Ingenería SAS ESP tiene relaciones comerciales y posee algunos productos financieros con su entidad financiera.

Como lo anterior tiene relación con el sistema integral de gestión y prevención del riesgo de lavado de activos, financiamiento al terrorismo y financiamiento y proliferación de armas de destrucción masiva- LA/FT/FPADM ("SAGRILAFT"), las Compañías solicitan de manera respetuosa lo siguiente:

## II.    PETICIÓN

En atención a la Ley 2591 de 2022, las circulares Básica Jurídica, Externa 100-000016 del 24 de diciembre de 2020 y 100- 000011 del 9 de agosto de 2021, todas emitidas por la Superintendencia de Sociedades, las Compañías solicitan:

2.1    `Informe qué gestión se ha adelantado por parte de su entidad financiera para atender las alertas relacionadas con el señor Álvaro Augusto Vargas Bravo.

2.2 En el evento en que se haya adelantado algún tipo de gestión solicitamos entregar los soportes de éstas.

## III.    NOTIFICACIONES

Se recibirán en los correos electrónicos notificacionesjudiciales@canacolenergy.com y avalenzuela@canacolenergy.com

Atentamente,

ANDRÉS VALENZUELA PACHÓN
CC 79.657.288
Representante Legal





# Acción de tutela intenta proteger el servicio de gas domiciliario en Cundinamarca, Antioquia y Tolima

24 Diciembre, 2023

TAMAÑO DE LETRA ⊖ ⊕    ⋮ IMPRIMIR

12/1/24, 11:53   Acción de tutela intenta proteger el servicio de gas domiciliario en Cundinamarca, Antioquia y Tolima





Por ALFREDO SERRANO ZABALA

**U**na Acción de Tutela interpuesta por la empresa Turgas S.A. E.S.P., contra los árbitros Jorge Santos Ballesteros (presidente), Jorge Suescún Melo y Sergio Muñoz Laverde, miembros del panel arbitral, que dirimió la disputa entre las sociedades: VP IngenergiaS.A.S. E.S.P., y TurgasS.A. E.S.P., formulada ante el Centro de Arbitraje y

## la Nueva Prensa
— La verdad sea dicha —

2023, intenta frenar la consumación de un daño antijurídico irreparable de graves consecuencias para usuarios del servicio del gas domiciliario en municipios de los departamentos de Antioquia, Cundinamarca y Tolima.

El viacrucis generado en contra de TurgasS.A. ESP por Álvaro Augusto Vargas Bravocomienza cuando las empresas; TurgasS.A. ESP y VP Ingenergia S.A.S. E.S.P., celebraron, el 30 de diciembre de 2011, un Contrato de Cuentas en Participación TURVP 01/12, cuyo objeto inicial consistía en la construcción de una conexión dedicada de 41 kilómetros, en partes iguales, 50% cada una.

Adicional también celebraron el Contrato de Venta de Gas número CVG-001-2012, a través el cual Turgas S.A. ESP, vendía gas a Ingenergia S.A.S. E.S.P.

Los dos contratos en mención se celebraron para el cumplimiento de un Contrato de suministro de gas que previamente había celebrado VP Ingenergia S.A.S. E.S.P y Cemex de Colombia S.A. (Oferta No. 3122 de 30 de noviembre de 2011– Aceptación de Oferta Mercantil OPE 439-2011 de 30 de noviembre de 2011). Para cumplir este último contrato de suministro de gas, las partes construyeron conjuntamente 34 kilómetros y utilizaron, en el período del primero de enero de 2012 al 30 de septiembre 2017, un tramo existente de propiedad de Turgasde 9,2 kilómetros.

Acción de tutela intenta proteger el servicio de gas domiciliario en Cundinamarca, Antioquia y Tolima

## la Nueva Prensa
— La verdad sea dicha —

noviembre de 2011– aceptación de oferta mercantil OPE 439-2011 de 30 de noviembre de 2011) y de Venta de Gas No. CVG-001-2012, de Turgas a VP IngenergiaS.A.S. E.S.P., el 30 de septiembre de 2017, Turgas, por su propia cuenta, inició el primerode octubre de 2017, la ejecución del Contrato de Suministro número ENE 393-2017, celebrado con Cemex, y usar la conexión dedicada construida conjuntamente con VP Ingenergia S.A.S. E.S.P en desarrollo del Contrato de Cuentas de Participación TURV 01/12 (34 KM), por valor de $5.060.363.166 y el tramo de 9,2 kilómetros de su propiedad.

La empresa Turgas, igualmente utilizó una infraestructura adicional. El valor de esta infraestructura adicional ascendió a $14.122.589.204 (Gasoducto Virtual), inversión asumida exclusivamente por Turgas para realizar el suministro y transporte del gas hasta la planta denominada Carocolito de Cemex. Este gas a partir del año 2018 provenía de diversas fuentes, no sólo la del pozo Toqui como ocurrió desde el año 2012 al 2017.

Volviendo al fallo en contra de TurgasS.A. E.S.P., las medidas cautelares de embargo afectaríanel cumplimiento de sus obligaciones laborales, comerciales y financieras, relacionadas con el desarrollo de su objeto social, llevando a la parálisis a la empresa de servicios públicos, con la afectación de la continuidad y calidad en

## la Nueva Prensa
— La verdad sea dicha —

Valdivia, Yarumal, Llanos de Cuivá, Santa Rosa de Osos, Don Matías, San Jerónimo, Sopetrán, Olaya, Sabanalarga, Sucre, Liborina, Toledo, Santa Fe de Antioquia, Cañas Gordas, Frontino, Dabeiba, Nueva Colonia, El Zungo, Nueva Colonia, Ciudad Bolívar, Hispania, Jardín, Concordia, Salgar, Santa Bárbara, Andesademás de otros municipios como Sutatausa en Cundinamarca y Guamo y Coyaima en Tolima.

El primero de septiembre de 2023, la Sala Civil del Tribunal Superior del Distrito Judicial de Bogotá fijó un aviso (por un día) en la página de la Rama Judicial/Tribunal Superior del Distrito Judicial de Bogotá, el cual indicaba que mediante providencia del 31 de agosto de 2023, la magistrada Aída Victoria Lozano Rico, había admitido una acción de tutela radicada con el No. 11001-2203-000-2023-02000- 00 formulada por la empresa Turgas S.A. ESP, contra el Tribunal de Arbitramento – Centro de Arbitraje y Conciliación de la Cámara de Comercio de Bogotá -CCB-.

La intención de la acción de tutela interpuesta por Turgas, entre otros aspectos,pretendía que se admitiera su pretensión contra el Tribunal de Arbitramento compuesto por los Árbitros Jorge Santos Ballesteros, Jorge Suescún Melo y Sergio Muñoz Laverde. Además, vincular al Juzgado Dieciséis Civil del Circuito de Bogotá.Ordenar a los demandados que, en el término perentorio de un día, presentaran un informe

Acción de tutela intenta proteger el servicio de gas domiciliario en Cundinamarca, Antioquia y Tolima

## la Nueva Prensa
— La verdad sea dicha —

solicitada, al no configurarse los presupuestos exigidos en el artículo 7º del Decreto 2591 de 1991, toda vez que no se advertía que se pudiesen causar perjuicios inminentes; lo anterior, al margen de la decisión de fondo que oportunamente se profiera y en la que, de ser el caso, se adoptarán las medidas pertinentes para la protección de los derechos fundamentales de la accionante.

En este litigio en calidad de Accionante figura la sociedad Turgas S.A. E.S.P., sociedad constituida mediante escritura pública No 1378 de 19 de mayo de 2005, otorgada en la Notaría 63 de Bogotá D.C., identificada con NIT 900.028111-6, tal como consta en el certificado de existencia y representación legal expedido por la Cámara de Comercio de Bogotá. Turgas actuó a través de su abogado Hernando Castro Nieto, quién recibió poder de parte del representante legal de Turgas, Elkin Yepes Ceballos, para presentar acción de tutela como mecanismo principal y de forma directa y en subsidio si el juez constitucional así lo considera, como mecanismo transitorio para evitar un perjuicio irremediable, contra la autoridad judicial accionada.

El tercer y crucial actor en este pleito es la empresa VP IngenergiaS.A.S. E.S.P., sociedad constituida mediante escritura pública número 1999 de 29 de julio de 2009, otorgada en la Notaría 11 de Bogotá

15

## la Nueva Prensa
— La verdad sea dicha —

La medida provisional se solicita con el fin de que en un eventual fallo favorable en la acción de tutela no sea ineficaz; teniendo en cuenta que bajo el radicado número 110013103016202300 31600, la sociedad VP Ingenergia S.A.S. E.S.P., inició un proceso ejecutivo ante la juez Dieciséis Civil del Circuito de Bogotá, para hacer cumplir forzadamente el laudo arbitral proferido el 21 de julio de 2023, decisión respecto de la cual la empresa Turgas colocó una acción de tutela, y que la práctica de medidas cautelares en este proceso ejecutivo puede hacer ineficaz cualquier decisión favorable que se llegue a adoptar en la presente acción de tutela.Turgas solicitó con fundamento en el artículo 7 del decreto 2591 de 1991, que mientras se adopta una decisión de la acción de tutela, se suspenda la ejecución del laudo arbitral de 21 de julio de 2023, en su contra.

Vale recordar, que las medidas cautelares de embargo libradas por la juez Dieciséis Civil del Circuito de Bogotá pueden hacer ilusoria una eventual decisión favorable en la presente acción de tutela. El mandamiento de pago y las medidas cautelares fueron proferidas y libradas el 29 de agosto de 2023 y notificada el 30 de agosto de 2023.

La medida en contra de la empresa TurgasS.A. ESP, consiste en que pague a favor de VP Ingeniería S.A.S.

∧

# la Tueva Prensa
— La verdad sea dicha —

ejecutoriado el 4 de agosto del año en
curso: $10.265.489.998 millones de pesos por concepto
de utilidades del Contrato de Cuentas de Participación
TURVP 01/12, causadas desde el 1 de octubre del 2017 y
hasta el 31 de agosto de 2022, ordenado en el numeral 4
de la parte resolutiva del laudo arbitral.

Que pague $4.932.841.889,26 millones de pesos por
concepto de intereses moratorios comerciales, liquidados
hasta la fecha del laudo.

Que pague $2.530.181.583 millones de pesos por concepto
de clausula penal pactada en el Contrato de Cuentas de
Participación TURVP 01/12.

Y que cancele $579.058.312 millones de pesos por
concepto de costas y agencias en derecho.

La eifra que Turgas, vía embargo, deberá pagar
a VF Ingenergia S.A.S. E.S.Pasciende a
los $18.307.571.782,26 millones de pesos, (dieciocho mil
trescientos siete millones quinientos setenta y un mil
setecientos ochenta y dos pesos con veintiséis, millones
de pesos) guarismo que afectaría gravemente todas las
operaciones de la compañía relacionadas con la
prestación del servicio público de gas en los municipios a
los que Turgaslleva el producto para su consumo; de
igual manera, se afectaría gravemente lo conexo con el
cumplimiento de sus obligaciones laborales, comerciales
y financieras, relacionadas con el desarrollo de su objeto

16

## la Nueva Prensa
— La verdad sea dicha —

El derecho que se pudiese estar violado por parte de los
árbitros sería el del debido proceso, consagrado en el
artículo 29 de la Carta Política, y este se aplicará a toda
clase de actuaciones judiciales y administrativas... y
califica de nula, de pleno derecho, la prueba obtenida con
violación del debido proceso.

La fuente de gas utilizada para el desarrollo de los
contratos de suministro de gas Contrato de Venta de
Gas No. CVG-001-2012,
entre Turgasy VP Ingenergia S.A.S. E.S.P y el Contrato
de Suministro de Gas entre VP Ingenergia S.A.S. E.S.P y
Cemex de Colombia S.A., en el periodo de: 1 de enero de
2012, a 30 de septiembre de 2017, fue exclusivamente el
Pozo Toqui y la planta de Turgas, ubicada en el municipio
de Piedras en departamento del Tolima; mientras que
para el periodo 2018 a 2022, se utilizaron varias fuentes
de gas,además del Pozo Toqui, se tomó gas de la planta
ubicada en Mariquita, Tolima, el cual se transportó a
través del Gasoducto Virtual antes de ser inyectado en el
tramo de 34 Kilómetros.

La celebración del Contrato de Suministro Número ENE
393-2017, dio lugar a una primera controversia
arbitral, iniciada el 16 de agosto de 2018, con una
demanda de parte de Turgas, la cual buscaba la nulidad
de una cláusula de protección comercial del Contrato de
Cuentas en Participación TURV 01/12 que le prohibía

## la Nueva Prensa
— La verdad sea dicha —

pretensiones de Turgas no prosperaron y al haber sido demandado en reconvención por VP Ingenergia S.A.S. E.S.P., fue condenada, mediante laudo de 8 de junio de 2020, a pagar en favor de VP Ingenergia S.A.S. E.S.P., una cláusula penal sancionatoria de $5.060.363.166, costas y agencias en derecho, más intereses moratorios.

Luego, elprimero de octubre de 2021, VP Ingenergia S.A.S. E.S.P., inició un segundo proceso arbitral, cuyo laudo se profirió el pasado 21 de julio de 2023, con

providencia de 4 de agosto de 2023, por medio de la cual se resolvieron unas solicitudes de aclaración y adición presentadas por Turgas, laudo que es la decisión objeto de la presente acción de tutela, y que condenó a Turgasa pagar en favor de VP Ingenergia S.A.S. E.S.P., las sumas ya mencionadas que ascienden a $18.307.571.782 millones de pesos.

La tutela objeto de este artículo periodístico se sustenta en la posible violación al debido proceso por parte del equipo de árbitros de la Cámara de Comercio de Bogotá, al haber expedido el laudo arbitral que resolvería el litigio entre Turgas y VP IngenergiaS.A.S. E.S.P., por la indebida valoración de las pruebas, y la forma como el Tribunal adoptó la decisión contenida en el laudo arbitral de 21 de julio de 2023, por arbitraria, porque da un valor absoluto al dictamen de parte de VP Ingenergia S.A.S. E.S.P., sin considerar las demás pruebas de manera

## la Nueva Prensa
— La verdad sea dicha —

conjunto se hace conforme a las participaciones, siendo por tanto esta valoración probatoria violatoria de la constitución.

El laudo arbitral expedido el 21 de julio de 2023, concluye arbitrariamente, y contraria lo acordado contractualmente, que se debían seguir distribuyendo utilidades en las mismas condiciones pactadas, para el período 2012 a 2017, en el Contrato de Cuentas en Participación TURVP 01/12, después de terminados los contratos de suministro de gas, el 30 de septiembre de 2017, para cuyo cumplimiento se celebró y establecieron condiciones de ejecución en el período 2012 a 2017, en el contrato de cuentas en participación, sin que las partes VP Ingenergia S.A.S. E.S.P. y Turgas previamente se pusieran de acuerdo y hubiesen pactado las nuevas condiciones aplicables después de terminados dichos contratos de suministro de gas a partir del 1 de octubre de 2017 (período 2017 a 2022); desconociendoarbitrariamente las estipulaciones contractuales que expresamente señalan que una vez terminados los contratos de suministro de gas que dieron origen al Contrato de Cuentas en Participación TURVP 01/12, celebrado entre VP Ingenergia S.A.S. E.S.P. y Cemex y entre Turgas y VP Ingenergia S.A.S. E.S.P., las partes debían ponerse de acuerdo sobre nuevas condiciones para la explotación del activo construido


**la Nueva Prensa**
— La verdad sea dicha —

De igual manera, la decisión arbitral, desconoce las
estipulaciones contractuales que señalan que en todo
caso la participación en las utilidades será a prorrata de
lo realmente aportado. De tal manera que la decisión del
equipo de árbitros de la Cámara de Comercio de
Bogotá, estaría viciada por caprichosa.

Los árbitros también desconocenque, para el período
desde el 1 de octubre de 2017,a 30 de agosto de 2022
(periodo de la controversia), las inversiones realizadas
por cada una de las partes:Turgas: 16.652 millones de
pesos, que representa el 86,81% y VP IngenergiaS.A.S.
E.S.P., 2.530 millones de pesos que representa el 13,19%
del total de la inversión necesaria para cumplir el
Contrato ENE 393 –2017, asignando de
manera arbitrariael 50% de las utilidades
a VP Ingenergia S.A.S. E.S.P., propiedad del controvertido
personaje Álvaro Augusto Vargas Bravo.

Lo anterior, contra toda regla de la experiencia y de la
lógica que indica que las utilidades se reparten en función
de la inversión realizada y de la participación de cada
parte en los negocios, de tal manera que la participación
real de VP Ingenergia S.A.S. E.S.P., sólo del 13,19% no
puede dar lugar a una participación y reparto de utilidad
del 50% como se lo reconoció
a VP Ingenergia S.A.S. E.S.P., el Tribunal en su laudo del
21 de julio de 2023.

Acción de tutela intenta proteger el servicio de gas domiciliario en Cundinamarca, Antioquia y Tolima

## la Nueva Prensa
— La verdad sea dicha —

de VP Ingenergia S.A.S. E.S.P, se funda en suposiciones fácticas no probadas o demostradas en el proceso, como por ejemplo que los beneficios a VP Ingenergia S.A.S. E.S.P., derivados del contrato de cuentas en participación debían supuestamente seguirse causando después del 1 de octubre de 2017 y bajo las mismas condiciones que en su momento se pactaron con ocasión al Contrato celebrado por VP Ingenergia S.A.S. E.S.P., con Cemex para el periodo contractual de 2012 a 2017, incurriendo así en un colosal error que no fue evidenciado por el Tribunal, en tanto que el contrato con Cemex finalizó al 30 de septiembre de 2017 y por tanto cualquier otro nuevo acuerdo con Cemex, como por ejemplo, el Contrato ENE-393 2017, obligaba a VP Ingenergia S.A.S. E.S.P y a Turgasa acordar y reconfigurar unas nuevas condiciones, términos y beneficios contractuales entre estos, conforme con su Contrato de Cuentas en Participación".

Además, dice Turgas que: "sin sustento probatorio y desconociendo el contenido del mismo contrato, el laudo arbitral con apoyo en el peritaje de VP Ingenergia S.A.S. E.S.P., avalado ilegal e inconstitucionalmente en sus conclusiones por el Tribunal Arbitral, determinó en sus cálculos de forma abrupta y arbitraria que los beneficios a favor de VP Ingenergia S.A.S. E.S.P., debían continuar a partir del 1 de octubre de 2017, en las mismas condiciones y

## la Nueva Prensa
—— La verdad sea dicha ——

razón de ser pero que lamentablemente fue acogida por el Tribunal Arbitral para condenar a Turgas al pago de las "utilidades" desde el 1 de octubre de 2017 al mes de agosto de 2022".

En resumen, los hechos que sustentan la acción de tutela contra el equipo de árbitros de la Cámara de Comercio de Bogotá, es que el 1 de octubre de 2021, VP Ingenergia S.A.S. E.S.P., presentó demanda arbitral contra Turgas, buscando que se declarara que Turgasadeuda a VP Ingenergia S.A.S. E.S.P., la suma de $7.906.566.702, bajo el Contrato de Cuentas en Participación TURVP 01/12; y que se condenara a Turgasa pagar intereses moratorios que se estimaron en $4.270.056.000, hasta la fecha de presentación de la demanda.

También se solicitaron otras pretensiones subsidiarias dirigidas a que se declarara que Turgastiene la obligación de dividir las utilidades del negocio en la proporción convenida y repartir a VP Ingenergia S.A.S. E.S.P su parte; además, que se declare que Turgas incumplió la obligación antes dicha; que consecuencialmente se declare que Turgasdebe pagar a VP Ingenergia S.A.S. E.S.P., las utilidades del Contrato de Cuentas en Participación TURVP 01/12, en la cantidad que resulte probada en el proceso, causadas desde el 1 de octubre del 2017, o la fecha que se pruebe en el proceso, hasta la fecha del laudo y que se condene a ello; que se

19

## la Nueva Prensa
— La verdad sea dicha —

comerciales liquidados a la máxima tasa legal permitida o a la tasa que fije el Tribunal.

La empresa Turgas S.A. E.S.P., pretende que se le conceda la acción de tutela de la referencia, como mecanismo principal, por violación del derecho constitucional fundamental aldebido proceso de Turgas S.A. E.S.P. También que se declare que los árbitros Jorge Santos Ballesteros (presidente), Jorge Suescún Melo y Sergio Muñoz Laverde, violaron el debido proceso. La sociedad Turgas S.A. E.S.P., aspira a que se deje sin efectos el laudo arbitral expedido el pasado 21 de julio de 2023.

La empresa Turgasanhela que se le conceda la tutela como mecanismo transitorio, para evitar un perjuicio irremediable, hasta tanto se resuelvan los Recursos de Anulación y Revisión. Requiere,además, "la adopción de medidas urgentes para dar respuesta adecuada a la inminencia del perjuicio, es decir, que se adopten con prontitud, ya que el daño está por consumarse, de manera que es necesario e inaplazable prevenir o mitigar la ocurrencia del perjuicio que se avizora".

La firma Turgascorre el riesgo que con ocasión de la demanda ejecutiva que la conmina a pagar $18.307.571.782,26,millones de pesos más intereses moratorios, se le cause un enorme daño, lo que


## la Nueva Prensa
— La verdad sea dicha —

acarrearía a las comunidades afectadas que hoy gozan del servicio de gas domiciliario en los departamentos de Antioquia, Cundinamarca y Tolima.

Para la empresa Turgas S.A. E.S.P., las medidas de protección deben ser impostergables, urge la protección inmediata e impostergable por parte del Estado a fin de evitar la consumación de un daño antijurídico irreparable, que, para el asunto en cuestión,se evidencia con el trámite que viene surtiéndose con el embargo de sus cuentas que se sustenta en la equivocada decisión de los árbitros.

Como corolario de este oscuro episodio, una fuente que solicitó la reserva de su nombre, indicó que Álvaro Augusto Vargas Bravo, gerente general y representante legal de la empresa VP Ingenergia S.A.S. E.S.P., (quien saldría favorecido con la multimillonaria suma por el Laudo Arbitral proferido por la Cámara de Comercio de Bogotá),hace más de quince años tuvo que huir del país porque hombres del capo del narcotráfico del cartel del Norte del Valle, Wilber Varela, alias Jabón, lo buscaban, al parecer, para un ajuste de cuentas, aspecto que, en su momento, causó gran dolor y consternación a los padres, familiares y amigos de Álvaro Augusto Vargas Bravo en la élite social de Bucaramanga.

Igual,indicó la fuente quecontra Álvaro Augusto Vargas Bravo, estaría avanzando muy secretamente un


— La verdad sea dicha —

E.S.P., están de pelea a tal punto que ni siquiera se dirigen la palabra.

La Fiscalía General de la Nación investiga la penetración del narcotráfico en el sector gasífero de Colombia.El tema también está en estudio por parte del

Sistema de Administración del Riesgo de Lavado de Activos y Financiación al TerrorismoSARLAFT.De hecho, el gobierno de los Estados Unidos también ha recabado información sobre el tema.

volver arriba

Tweets by lanuevaprensaco



Prohíbese su reproducción parcial o total, así como su traducción
a cualquier idioma sin autorización escrita de su titular.

12/1/24, 11:54

Ganaron los pillos





# Ganaron los pillos

29 Diciembre, 2023

TAMAÑO DE LETRA  IMPRIMIR



Ganaron los pillos


La verdad sea dicha

Por ALFREDO SERRANO

Con respecto al controvertido fallo que dejó en muy malas condiciones a la empresa Turgas S.A. E.S.P., una de las fuentes aseveró que "detrás de este fallo hay un cartel de sinvergüenzas que vienen estafado al país desde hace mucho tiempo con el tema de las restricciones y Álvaro Augusto Vargas Bravo, participa en eso, tiene que corromper a todo el mundo para hacer sus negocios".

La fuente indica que: "Todo lo que antecedió al fallo en contra de Turgas está enlodado con la multinacional Cemex. Álvaro Augusto Vargas Bravo, corrompió a la alta dirección de Cemex y se coló en la mitad de un negocio firmado entre Turgas S.A. E. S.P. y Cemex e hicieron, todo lo humanamente posible, para tumbar a Turgas y a través de esa fraudulenta maniobra, Álvaro Augusto Vargas Bravo, desangro a Cemex."

"La junta directiva de Cemex tardíamente descubrió y expulsó a Álvaro Augusto Vargas Bravo, advirtiéndole que no volvía a negociar con él, sin embargo, una cláusula que había quedado consignada en un contrato que decía que la empresa Turgas S.A. E.S.P. no podía contratar con Cemex, durante cinco años y cinco años más". En ese momento Cemex se cerró y no quiso seguir negociando con Álvaro Augusto Vargas Bravo y con su empresa VP Ingenergia S.A.S. E.S.P., y los únicos que podía entregar el gas a Cemex era la empresa Turgas S.A. E.S.P., porque

## la Nueva Prensa
— La verdad sea dicha —

"En vista de lo anterior Cemex se acerca a Turgas y le insiste para que le venda el gas. Turgas consultó con un bufete muy prestigioso de abogados el tema de la cláusula de prohibición y los abogados dijeron que la figura era ilegal e ilícita y que no podía pasar en ningún tribunal... Lo cierto es que Turgas S.A. E.S. P., se fue a un tribunal y allí perdió". De acuerdo al testimonio de la fuente, esa derrota en la Cámara de Comercio de Bogotá, le significó a Turgas pagar la suma de 23 mil millones de pesos a favor de la empresa VP Ingenergia S.A.S. E.S.P., propiedad de Álvaro Augusto Vargas Bravo.

Turgas debió pagar, en primera instancia una multa de $5 mil millones de pesos y luego los restantes $18 mil millones de pesos; "porque esos sinvergüenzas árbitros así lo quisieron y fuera de eso, detrás de todo hay otras cosas anómalas y fue que los socios del señor Elkin Darío Yepes Ceballos, gerente general de Turgas S.A. E.S.P., resultaron ser del mismo bufete de abogados del ladrón Álvaro Augusto Vargas Bravo, y los socios de Yepes se confabularon con Vargas Bravo le hicieron la tramoya grande a Yepes Ceballos", enfatizó la fuente.

"El caso del litigio entre Turgas S.A. E.S.P., y Álvaro Augusto Vargas Bravo con su empresa es una de las letrinas más grandes en materia de corrupción en Colombia y en el fondo está el hecho en que los tribunales de arbitramiento se convirtieron en la letrina del

## la Nueva Prensa
—— La verdad sea dicha ——

"Turgas S.A. E.S.P., estaba esperando que el Tribunal Superior de Bogotá fallara a su favor. Mientras tanto Yepes Ceballos en contra de sus socios y ya en pelea con ellos alcanzó a meter el recurso de anulación y ese recurso y la tutela permitió que los mismos socios de Yepes Ceballos en Turgas, le hicieran la tramoya de negociar por debajo de la mesa con Álvaro Augusto Vargas Bravo, darle más plata de la que el tipo pedía, en un negocio de corrupción aberrante y en una asamblea general extraordinaria de Turgas S.A. E.S.P., obligaron a Elkin Darío Yepes Ceballos, su gerente general, a negociar con Vargas Bravo. Los socios de Yepes ganaron por mayoría", reveló la fuente que solicitó proteger su nombre por la peligrosidad de los actores que se movieron en este litigio.

"Entonces a nombre de Turgas S.A. E.S.P., negoció un socio diferente a Yepes Ceballos con Álvaro Augusto Vargas Bravo, propietario de VP Ingenergia S.A.S. E.S.P. El negocio pactó que Turgas debía retirar todos sus recursos de defensa, entonces a Yepes Ceballos le tocó retirar esas pretensiones porque así se lo ordenó la asamblea de Turgas. Con esta decisión Turgas S.A., perdió la suma de $23 mil millones de pesos", rememora la fuente consultada del sector gasífero de Colombia.

"En consecuencia, los socios de Yepes Ceballos en Turgas prestaron la plata para pagarle a Álvaro Augusto Vargas

## la Nueva Prensa
— La verdad sea dicha —

la Cámara de Comercio de Bogotá fueron profesores de la esposa de uno de los socios del señor Elkin Darío Yepes Ceballos, por ese conducto se fue ese fallo en contra de la empresa Turgas S.A. E.S.P., y particularmente en contra de los intereses económicos del Yepes Ceballos", confesó la fuente.

Apropósito de las comunidades que con el fallo en contra de Turgas S.A. E.S.P., se afectaría gravemente con la afectación de la continuidad y calidad en la prestación del servicio público de transporte de gas a cargo de Turgas en los municipios y localidades, como Valdivia, Yarumal, Llanos de Cuivá, Santa Rosa de Osos, Don Matías, San Jerónimo, Sopetrán, Olaya, Sabanalarga, Sucre, Liborina, Toledo, Santa Fe de Antioquia, Cañas Gordas, Frontino, Dabeiba, Nueva Colonia, El Zungo, Nueva Colonia, Ciudad Bolívar, Hispania, Jardín, Concordia, Salgar, Santa Bárbara, Andes además de otros municipios como Sutatausa en Cundinamarca y Guamo y Coyaima en Tolima, no se han visto afectadas y están recibiendo actualmente con normalidad la prestación de ese servicio público esencial.

"Ahora, el gerente general de Turgas S.A. E.S.P., Elkin Darío Yepes Ceballos le quedó debiendo el dinero de la sanción a sus socios en la empresa. Lo que se interpreta es que los socios de Yepes Ceballos quieren ahogar al gerente general con esa multimillonaria deuda para

12/1/24, 11:54                                    Ganaron los pillos

## la Nueva Prensa
── La verdad sea dicha ──

La misión de Turgas S.A., desde el año 2006, es comprar gas de teas, del gas que votan las empresas petroleras a la atmosfera, lo que se llama la reducción de emisiones para evitar el calentamiento global. Turgas le compra a Ecopetrol las teas y ese gas luego de ser tratado se reinserta al sistema. En el departamento del Tolima, la empresa Turgas eran los únicos que podían suminístrale el gas a Cemex por la cercanía que tenían los dos proyectos, y allí se metió como un intermediario obligado el señor Álvaro Augusto Vargas Bravo de VP Ingenergia S.A.S.

"Turgas le iba a vender a Cemex a cierto precio, Vargas Bravo firma un contrato con Cemex y se va a buscar a Yepes Ceballos y le pide que le venda el gas a él, gas que Turgas le tenía vendido a Cemex. Vargas Bravo le ofrece más plata que Cemex por el gas a la empresa Turgas quien termina negociando con Vargas Bravo la venta del insumo. Al final se pactó un precio de venta del gas entre Turgas y Vargas Bravo, luego éste último terminó vendiéndoselo a Cemex por el doble de dicho valor, la diferencia se la repartían entre el administrador de Cemex y Álvaro Augusto Vargas Bravo de VP Ingenergia S.A.S".., reveló la fuente.

"De Álvaro Augusto Vargas Bravo de VP Ingenergia S.A.S., se sabe que está radicado en Estados Unidos, importando gas en grandes cantidades y de pelea también con

## la Nueva Prensa
— La verdad sea dicha —

corruptor tremendo. Expertos abogados que leyeron los laudos no se explican como que los árbitros fallaron a favor de VP Ingenergia S.A.S. El primer fallo es de junio 8 de 2020, en plena pandemia, allí hicieron y deshicieron". Argumentó la fuente. De Yepes y Vargas Bravo se sabe que fueron amigos, y ambos se invitaron a almorzar a sus casas en Bogotá y Bucaramanga.

"También se especula en el sector gasífero del país que Álvaro Augusto Vargas Bravo de VP Ingenergia S.A.S., fue testaferro de uno de ellos grandes capos del narcotráfico del Norte del Valle y el propio Vargas Bravo les habría contado a unos de sus pares en el sector que lo estaban buscando para matarlo", comentó la fuente.

"De Yepes se conoció que buscó a uno de los abogados más prestigiosos del país para demandar a Álvaro Augusto Vargas Bravo de VP Ingenergia S.A.S., y a los árbitros. El abogado estructuró el caso y al final le dijo a Yepes que él no se metía en eso..., consígase otro abogado que pueda frentear ese tema tan delicado, a Vargas yo se lo meto a la cárcel, le dijo, pero yo no me meto con esos árbitros del primer y del segundo tribunal... allí hay ex magistrados y rectores de universidades, diría el prestigioso abogado", aseguró la fuente.

Lo único cierto es que la empresa Turgas S.A. E.S.P., quedo financieramente muy lesionada y es la única compañía en Colombia que está introduciendo la

Ganaron los pillos

## la Nueva Prensa
— La verdad sea dicha —

económico frena esa estrategia en Turgas. Lo único que le queda a Turgas es la vía de las instancias penales. A no ser que una de las tutelas sea seleccionada y revisada por la Corte Constitucional.

En el sector del gas en Colombia el fallo en contra de la empresa Turgas S.A. E.S.P., todo el mundo quedó grogui. El caso quedó en poder de la Procuraduría que le ordenó a la Superintendencia de Servicios Públicos Domiciliarios que iniciara una investigación contra Álvaro Augusto Vargas Bravo de VP Ingenergia S.A.S., porque el fallo lesiona el espíritu de la norma de los servicios públicos.

Con este oscuro episodio y la forma en que se dirimió por parte de los cuestionados jueces queda en un mal ambiente en el sector del gas en Colombia.

12/1/24, 11:55                                                    Ganaron los pillos



volver arriba

Tweets by lanuevaprensaco



Prohíbese su reproducción parcial o total, así como su traducción
a cualquier idioma sin autorización escrita de su titular.

  

Bogotá D.C., 15 de enero del 2024

Señores

**Banco Davivienda**
Bogotá D.C.

E.                                    S.                                    D.

**Asunto:** Derecho de Petición (art. 23 Constitución Política)

**ANDRÉS VALENZUELA PACHÓN**, Representante Legal de las sociedades **CNE OIL & GAS SAS**[1] y **CNEOG COLOMBIA SUCURSAL COLOMBIA**[2] (en adelante las "Compañías") por medio del presente escrito acudo ante usted(es) con el fin de solicitar **DERECHO FUNDAMENTAL DE PETICIÓN** consagrado en el artículo 23 de la Constitución Política de Colombia en virtud de los siguientes:

## I.   HECHOS

1.1  Las Compañías tuvieron conocimiento de información compartida en medios públicos relacionada con presuntas actividades ilícitas adelantadas por el señor Álvaro Augusto Vargas Bravo, identificado con cédula de ciudadanía No. 91.241.213 de Bucaramanga, como se evidencia en las siguientes noticias:

a.  Noticia "Acción de tutela intenta proteger el servicio de gas domiciliario en Cundinamarca, Antioquia y Tolima" publicada por el diario "La Nueva Prensa" de fecha 24 de diciembre del 2023[3].

> *"(...) Álvaro Augusto Vargas Bravo, gerente general y representante legal de la empresa VP Ingenería S.A.S. E.S.P., (quien saldría favorecido con la multimillonaria suma por el Laudo Arbitral proferido por la Cámara de Comercio de Bogotá) ,hace más de quince años tuvo que huir del país porque hombres del capo del narcotráfico del cartel del Norte del Valle, Wilber Varela, alias Jabón, lo buscaban, al parecer, para un ajuste de cuentas (...)contra Álvaro Augusto Vargas Bravo, estaría avanzando muy secretamente un proceso por lavado de activos".*

b.  Noticia "Ganaron los Pillos" publicada por el diario "La Nueva Prensa" de fecha 29 de diciembre del 2023[4].

---

[1] Nit. 900713658 – 0
[2] Nit. 900276770 – 2
[3] https://www.lanuevaprensa.com.co/component/k2/accion-de-tutela-amenaza-con-dejar-sin-gas-domiciliario-a-cundinamarca-antioquia-y-tolima
[4] https://www.lanuevaprensa.com.co/component/k2/ganaron-los-pillos

 

*"(...) Álvaro Augusto Vargas Bravo con su empresa es una de las letrinas más grandes en materia de corrupción en Colombia (...) También se especula en el sector gasífero del país que Álvaro Augusto Vargas Bravo de VP Ingenergia S.A.S., fue testaferro de uno de ellos grandes capos del narcotráfico del Norte del Valle y el propio Vargas Bravo les habría contado a unos de sus pares en el sector que lo estaban buscando para matarlo", comentó la fuente."*

1.2 Las Compañías tienen conocimiento que la sociedad VP Ingenergía SAS ESP tiene relaciones comerciales y posee algunos productos financieros con su entidad financiera.

Como lo anterior tiene relación con el sistema integral de gestión y prevención del riesgo de lavado de activos, financiamiento al terrorismo y financiamiento y proliferación de armas de destrucción masiva- LA/FT/FPADM ("SAGRILAFT"), las Compañías solicitan de manera respetuosa lo siguiente:

## II.   PETICIÓN

En atención a la Ley 2591 de 2022, las circulares Básica Jurídica, Externa 100-000016 del 24 de diciembre de 2020 y 100- 000011 del 9 de agosto de 2021, todas emitidas por la Superintendencia de Sociedades, las Compañías solicitan:

2.1   Informe qué gestión se ha adelantado por parte de su entidad financiera para atender las alertas relacionadas con el señor Álvaro Augusto Vargas Bravo.

2.2 En el evento en que se haya adelantado algún tipo de gestión solicitamos entregar los soportes de éstas.

## III.   NOTIFICACIONES

Se recibirán en los correos electrónicos notificacionesjudiciales@canacolenergy.com y avalenzuela@canacolenergy.com

Atentamente

ANDRES VALENZUELA PACHÓN
CC 79.657.288
Representante L█████

2 7

**COPIA**

Señores,
Banco Davivienda S.A.
Ciudad

Ref. Garantía Bancaria No. 07002026100924719 con fecha de vencimiento del 30 de noviembre de 2023.

Apreciados señores:

En respuesta a su comunicación del 20 de noviembre de 2023 sobre la garantía de la referencia, les informamos que esta garantía ampara las obligaciones adquiridas por VP INGENERGÍA S.A.S. E.S.P. en favor de CNE OIL & GAS S.A.S. originadas en el Contrato CNEGN-01-2016.

En este sentido, les reiteramos nuevamente el pago por un valor de $188.758.410.000 por concepto del incumplimiento de VP INGENERGÍA S.A.S. E.S.P., cifra que fue cobrada en nuestra solicitud inicial; y adicionalmente les requerimos el pago de $22.585.215.558, por concepto de otros incumplimientos de VP INGENERGÍA S.A.S. E.S.P en el pago del suminisro de gas suministrado en los meses de octubre y noviembre de 2023 bajo el contrato referido. De ahí que la suma solicitada asciende a un valor de $211.343.625.558 ("Suma Incumplida").

El pago deberá efectuarse mediante transferencia bancaria a la cuenta de ahorros No. 4828-000-5274 a nombre de CNE OIL & GAS S.A.S. (NIT 900.713.658-0) abierta en el Banco Davivienda, domiciliado en Bogotá, por la totalidad de la Suma Incumplida.

Anexamos copia de: (i) la Garantía Bancaria, cuyo pago solicitamos con el código QR legible y (ii) certificado de existencia y representación de CNE OIL & GAS S.A.S.

En los términos de las cláusulas 11 y 12 de la Garantía Bancaria, radicaremos en original esta solicitud de pago y sus anexos, en la dirección del Banco Davivienda: Avenida el Dorado No. 68C Piso 10 de Bogotá D.C., dentro de los días y horarios bancarios hábiles.

Cordialmente,

**ANDRÉS VALENZUELA PACHÓN**
Representante legal de las siguientes sociedades:
CNE OIL & GAS S.A.S. (NIT 900.713.658-0)



DAVIVIENDA
RCCI04172120223
Fecha: Dic 18 2023  5:02PM
Folios: 1 Anexos:0
Tipo Documental: Correspondencia Informativa
Remitente: ANDRES VALENZUELA PACHON
Destino: 1005 - Depto. De Operaciones De Desembolso Empresari

[Firmado con Certifirma. Documento No.] c3ba8e07-8135-47ee-9630-69a2do83dcfa



## GARANTÍA BANCARIA No.07002026100924719

| | |
|---|---|
| **FECHA DE EMISIÓN** | : 02 de noviembre  de 2022 |
| **MONTO** | : COP $78.931.611.900 |
| **FECHA DE VENCIMIENTO** | : 30 de noviembre de 2023. |
| **ORDENANTE** | : TERMOBARRANQUILLA S.A. E.S.P. |
| **BENEFICIARIO** | : CNE OIL & GAS S.A.S. Nit: 900.713.658-0 |
| | CANACOL ENERGY COLOMBIA S.A.S. Nit: 830.095.563-3 |

Por cuenta y orden de la TERMOBARRANQUILLA S.A. E.S.P. ,(en adelante, "EL Ordenante"), con domicilio legal en Barranquilla, República de Colombia, identificada con NIT 800.245.746 - 1, Banco Davivienda S.A., identificado con NIT 860.034.313-7, establecimiento bancario legalmente constituido bajo las leyes de la República de Colombia, con domicilio principal en en Bogotá, (en adelante, "el Banco"), por medio del presente instrumento constituye garantía bancaria irrevocable a primer requerimiento,en adelante, ("Garantía Bancaria"), a favor de CNE OIL & GAS S.A.S. identificada con NIT 900.713.658-0 y CANACOL ENERGY COLOMBIA S.A.S. identificada con NIT 830.095.563-3, ("el Beneficiario" y/o "los Beneficiarios"), la cual se regirá por las siguientes:

### CLÁUSULAS

**Primera.- Objeto:** La Garantía Bancaria ampara el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, multas, cargos y sobrecostos en que incurra EL VENDEDOR por el incumplimiento de EL COMPRADOR (la "Garantía"). Según la cláusula 5.5 del contrato VP-0515, los Beneficiarios Finales de la presente Garantía son CNE OIL & GAS SAS y CANACOL ENERGY COLOMBIA SAS, acorde a lo señalado en el contrato de suministro de Gas Natural en firme Nro. CNEGN- 01-2016 firmado el 2 de febrero de 2016.

**Segunda.- Beneficiarios:** Esta Garantía Bancaria se extiende únicamente a favor de los Beneficiarios, quienes, al momento de la reclamación de exigibilidad, parcial o total, de la presente Garantía Bancaria, podrán actuar individual y/o conjuntamente ambos o alguno de ellos, requiriendo hasta el 100% del Monto Máximo Garantizado (según se define este término más adelante en la cláusula tercera) y cualquier acción tomada por cualquiera de los Beneficiarios bajo la presente Garantía Bancaria será vinculante para cada uno de ellos.

[Firmado con Certifirma. Documento No.] c3b_8o07-8l35-47ao-9630-69a2da83dcfa



## GARANTÍA BANCARIA No.07002026100924719

**Tercera.- Cuantía:** La cuantía de la Garantía Bancaria será de hasta la suma de setenta y ocho mil novecientos treinta y un millones seiscientos once mil novecientos pesos, moneda legal colombiana ($78.931.611.900) (el "Monto Máximo Garantizado").

En ningún caso la responsabilidad del Banco ante el Beneficiario o los Beneficiarios de la Garantía Bancaria excederá el Monto Máximo Garantizado. El Banco se obliga a pagar en forma total o parcial hasta el Monto Máximo Garantizado únicamente durante la vigencia de la Garantía Bancaria.

**Cuarta.- Requisitos de exigibilidad:** Para la reclamación de exigibilidad y pago de la Garantía Bancaria, cualquiera de los Beneficiarios o conjuntamente todos ellos, deberán presentar al Banco dentro de su vigencia los siguientes documentos: (i)Copia de la Garantía Bancaria con el código QR legible , y (ii) declaración escrita firmada por el funcionario autorizado de cualquiera de los Beneficiario o de ambos,, donde manifieste que el Ordenante ha incumplido cualquiera de las obligaciones garantizadas con la Garantía Bancaria.

El Beneficiario deberá presentar los documentos mencionados en las oficinas del Banco señaladas en la cláusula décima primera.

Una vez presentados dichos documentos dentro del término de vigencia de la Garantía Bancaria, el Banco procederá a primer requerimiento, al pago de las sumas que no excedan la cuantía total garantizada por la Garantía Bancaria. En caso de que el Beneficiario o los Beneficiarios no presente solicitud de pago alguna dentro del término de vigencia de la Garantía Bancaria, así se hubiese generado el incumplimiento dentro de dicho término, la Garantía Bancaria se extinguirá automáticamente y el Banco libre de todo compromiso.

**Quinta.- Moneda de pago:** El Banco pagará a cualquiera de los Beneficiarios hasta el Monto Máximo Garantizado en la presente Garantía Bancaria en pesos colombianos.

**Sexta.- Término para el pago:** El Banco se obliga a realizar el pago de la Garantía Bancaria que solicite el Beneficiario, dentro de los cinco (5) días hábiles siguientes a aquel en que el Banco reciba del Beneficiario los documentos indicados en la cláusula tercera a satisfacción.

**Séptima- Vigencia:** La Garantía Bancaria se mantendrá vigente desde el primero (01) de diciembre de 2022 hasta el treinta (30) de noviembre de 2023.

[Firmado con Certifirma. Documento No.] c3ba8a07-8135-47aa-9630-69a2da83dafa



## GARANTÍA BANCARIA No.07002026100924719

La Garantía Bancaria no expirará por falta de pago de la prima o por revocatoria unilateral, por lo que el Banco renuncia expresamente a invocar dichas figuras. La Garantía Bancaria es irrevocable.

Si hasta el último día de vigencia de la Garantía Bancaria, el Banco no hubiera recibido por escrito algún aviso o reclamo en el sentido de haberse producido responsabilidad de parte del Banco originada en la Garantía Bancaria, cesará por esta misma circunstancia toda responsabilidad derivada de las obligaciones garantizadas y la Garantía Bancaria quedará total y definitivamente cancelada.

**Octava.- Legislación aplicable:** La Garantía Bancaria se rige por la normatividad Colombiana. Todas las obligaciones aquí contenidas serán pagaderas por el Banco con sujeción a la normatividad colombiana vigente aplicable a esta clase de actos.

**Novena.- Cesión:** Ninguno de los Beneficiarios podrá ceder la Garantía Bancaria, caso en el cual cesará cualquier responsabilidad a cargo del Banco derivada de las obligaciones garantizadas con la Garantía Bancaria.

**Décima.- Beneficio de excusión:** El Banco renuncia expresamente al beneficio de excusión establecido en el artículo 2383 del Código Civil.

**Décima Primera.- Autonomía:** La Garantía Bancaria es totalmente autónoma e independiente del negocio causal, así como de los derechos y obligaciones derivados del mismo y con ella garantizados.

**Décima Segunda.- Dirección del Banco y horario de reclamación:** El Banco recibirá los documentos de que trata la cláusula tercera en sus oficinas ubicadas en la Avenida El Dorado No. 68 C - 61 Piso 10, de Bogotá D.C. Toda diligencia o petición relacionada con la Garantía Bancaria deberá ser realizada en los días bancarios hábiles desde las 8:30 a.m. a 12:00 m. y de 2:00 p.m. a 5:00 p.m.

La Garantía Bancaria se emite en el Distrito Capital de Bogotá, el dos (02) de noviembre del año dos mil veintidós (2022), en un ejemplar con destino a los Beneficiarios.

Atentamente,


**KARINA AFRICANO MOLINA**
C. de C. No. 32.737.957 de Barranquilla
Apoderada especial
**BANCO DAVIVIENDA S. A.**

29

Verificado y firmado con

Documento No.
c5ba9a02h51d5a47ee49a39h69h2da83dada

Creado el
04/11/2022 11:53 AM

Este documento es la representación de
un documento original informata
electronica. Para validar el estado actual
del documento puede escanear el código QR

Este documento esta firmado electrónicamente, enmarcado en la **ley 527 de 1999 y decreto 2364 de 2012** de la normatividad colombiana, cumpliendo además con los estandares internacionales de firma.

3 Páginas

## HOJA DE APROBACIÓN Y FIRMAS



**Nombre(s): Karina Nelly**
**Apellido(s): Africano Molina**
**Identificación No. 52737987**
**Firmó el : 04/11/2022 11:53 AM**

Firmado digitalmente por:
Fecha: 04-11-2022
11:53:13 AM
Razón: Firma Electronica
de prod
Ubicación: Colombia

**Itaú**FiduciariaColombia

Calle 12 · 7-32 Piso 1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

## FIDEICOMISO DE ADMINISTRACIÓN Y PAGOS VP-CNE-TEBSA

### Rendición de cuentas

### Período: del 01 de febrero al 31 de julio de 2023

En desarrollo del Contrato de Fiducia Mercantil Irrevocable de Administración y Pagos suscrito mediante documento privado del 24 de febrero de 2016, y modificado mediante otrosí N° 1 del 12 de abril de 2023 y de conformidad con la obligación establecida en la Cláusula Décima Cuarta, numeral cinco "obligaciones del fiduciario", del citado contrato, a continuación, presentamos la rendición de cuentas correspondiente al período comprendido entre el 01 de febrero al 31 de julio de 2023

### PARTES DEL CONTRATO

**Fideicomitentes**

| | |
|---|---|
| Nombre: | VP Ingeniería S.A. ESP. |
| Documento de identificación: | 900.305.404-7 |
| Porcentaje de participación | 100% |

**Fiduciaria**

| | |
|---|---|
| Entidad: | Itaú Fiduciaria Colombia S.A. Sociedad Fiduciaria |
| Identificación: | 800.141.021-1 |

**Beneficiario de la Fuente de Pago**

| | |
|---|---|
| Nombre: | Cne Oil & gas S.A.S. |
| Documento de identificación: | 900.713.658-0 |

| | |
|---|---|
| Nombre: | CNEOG Colombia Sucursal Colombia |
| Documento de identificación: | 900.276.770-2 |
| Porcentaje de participación | 50% |

**Pagador**

| | |
|---|---|
| Nombre: | Termobarranquilla S.A. ESP |
| Documento de identificación: | 800.245.746-1 |

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

### I.    OBJETO Y FINALIDAD DEL NEGOCIO

El objeto del contrato consiste en que el fideicomitente transfiere al fiduciario, a título de fiducia mercantil irrevocable, el activo y demás bienes fideicomitidos a fin de que tales recursos sean administrados e invertidos por el fiduciario. Tales recursos servirán de pago de las obligaciones que contraiga el fideicomitente con el beneficiario de pago. Igualmente, previa la constitución de las provisiones establecidas más adelante, en caso de existir excedentes se atenderán las instrucciones de pago del fideicomitente. En todo caso, contra el flujo de caja del patrimonio autónomo no podrán respaldarse nuevas operaciones, salvo que medie la previa, expresa y escrita autorización de el beneficiario de pago. Se deja expresa constancia del hecho que el contrato de fiducia servirá de pago de todas las obligaciones presentes y futuras que tengan o lleguen a adquirir el fideicomitente, individualmente con el beneficiario de pago.

La finalidad del Contrato de Fiducia es que el fiduciario, reciba los recursos provenientes del activo, para que el fiduciario los invierta en la participación del fondo de inversión colectiva abierto Money Market administrada por el fiduciario, y realice la entrega de los recursos que conforman el fideicomiso y hasta concurrencia de ellos, de conformidad con las órdenes de pago que efectúe el fideicomitente y/o realice la restitución de recursos a su favor.

### II.    BIENES QUE CONFORMAN EL FIDEICOMISO

Tipo de Bien: Dinero

Corresponde a los recursos dinerarios o derechos económicos derivados del contrato de suministro de gas en Firme suscrito entre Termobarranquilla S.A. ESP con el fideicomitente, los cuales serán transferidos al fideicomiso que se constituye mediante el contrato de suministro de gas en firme No CNEGN-01-2016, en el cual CNE OIL & GAS S.A.S es el vendedor, VP Ingeniería S.A. ESP es el comprador y Termobarranquilla S.A. es el destinatario final, este contrato se constituyó 12 de enero de 2016.

La unidad monetaria definida para el precio de venta del Gas en este contrato es: dólares constantes de los Estados Unidos de América. El precio de venta del Gas se incrementará en un 2% con respecto al precio vigente en el año fiscal inmediatamente anterior. Dicho incremento se realizará cada primero (1) de diciembre empezando el primero (1) de diciembre del año 2017.

Dichos recursos serán transferidos directamente por el pagador al fideicomiso, con el fin de que sirvan de pago de la deuda adquirida por el fideicomitente para que sean administrados y se realicen pagos por parte del fideicomiso de acuerdo con las instrucciones que al respecto manifieste el fideicomitente o las condiciones de pagos que para el efecto remita el beneficiario de pago registrado en el fideicomiso.

**Estado actual, localización e identificación de los bienes:**

Los recursos del Fideicomiso se administran en:

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso1
Bogotá  Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

31

> Encargo Money Market No. 81700338-7- Aportes – Activo

Que el saldo a 31 de julio de 2023 es de $ 1,637,675,042.45

### III. EVOLUCIÓN DE LOS APORTES Y DEL PATRIMONIO DEL FIDEICOMISO

Recursos dinerarios:

Durante el periodo objeto de la presente rendición de cuenta se recibieron recursos en el negocio, tal como se detalla a continuación:

| Mes | Valor de los recursos dinerarios |
|---|---|
| feb-23 | $69,870,282,062.00 |
| mar-23 | $82,978,140,939.00 |
| abr-23 | $77,574,605,655.00 |
| may-23 | $75,705,261,929.00 |
| jun-23 | $96,947,245,228.00 |
| jul-23 | $ 79,749,598,156.00 |

### IV. DETALLE DE FUENTES Y USOS

A continuación, se adjunta el anexo "361818_HC_CH" en ambiente "PDF que detalla las fuentes y usos del encargo a nombre del negocio, (ver nota).

Se precisa que:

Número de Pagos: 35

Mecanismo utilizado: ACH

Nota: Los extractos asociados a los movimientos del Fideicomiso del periodo objeto de rendición se encuentran disponibles en nuestro portal bancario www.itau.co. Si no cuenta con usuario activo por favor remitir su solicitud al buzón operaciones.fiduciaria@itau.co detallando la siguiente información:

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

VIGILADO

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso 1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

| Información Solicitud. ||
|---|---|
| Entidad / Banco: | |
| Nit de la Banca.: | |
| N° Documento | |
| Nombre y Apellidos Usuario y/o Cód. Sifi: | |
| Correo electrónico: | |
| Número Telefónico y/o Extensión: | |
| Tipo de Cuenta: | |
| Número de Cuenta: | |
| Tipo de Cuenta: | |
| Número de Cuenta: | |
| Tino de Solicitud | CLIENTE - CONSULTA |

- **Anticipos a contratos y proveedores por legalizar:** El Fideicomiso objeto de esta rendición no presenta anticipos pendientes por legalizar.

- **Rechazos sin procesar:** El Fideicomiso objeto de esta rendición no presenta rechazos sin procesar

- **Órdenes causadas pendientes por pagar:** El Fideicomiso objeto de esta rendición no presenta órdenes causadas.

- **Cheques en caja sin reclamar:** El Fideicomiso objeto de esta rendición no presenta cheques sin reclamar.

### V.  COMISIONES FIDUCIARIAS

Estado actual de las Comisiones:

| | |
|---|---|
| Comisiones totales facturadas | $ 172,804,820.00 |
| Comisiones facturadas durante el periodo | $ 18,635,400.00 |
| Facturas pendientes de pago0 | $  2,760,800.00 |

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

Detalle de las comisiones facturadas durante el periodo de la presente rendición:

| Período | Estado | Fecha | Vr.Comi.Liq. | Vr.Adicional | Vr. IVA | Vr. Total |
|---|---|---|---|---|---|---|
| 202302 | Pagada | 26/02/2023 | $ 2,320,000.00 | $ 0.00 | $ 440,800.00 | $ 2,760,800.00 |
| 202303 | Pagada | 29/03/2023 | $ 2,320,000.00 | $ 0.00 | $ 440,800.00 | $ 2,760,800.00 |
| 202304 | Pagada | 26/04/2023 | $ 2,320,000.00 | $ 1,740,000.00 | $ 771,400.00 | $ 4,831,400.00 |
| 202305 | Pagada | 29/05/2023 | $ 2,320,000.00 | $ 0.00 | $ 440,800.00 | $ 2,760,800.00 |
| 202306 | Pagada | 26/06/2023 | $ 2,320,000.00 | $ 0.00 | $ 440,800.00 | $ 2,760,800.00 |
| 202307 | Autorizada | 27/07/2023 | $ 2,320,000.00 | $ 0.00 | $ 440,800.00 | $ 2,760,800.00 |
| Total | | | $ 13,920,000.00 | $ 1,740,000.00 | $ 2,975,400.00 | $ 18,635,400.00 |

**Nota:**  La comisión se cobra mes vencido por lo cual en julio 2023 se paga el periodo de agosto de 2023.

Comisiones facturadas durante la vigencia del Fideicomiso:

Para las comisiones fiduciarias acumuladas en el desarrollo del presente negocio, remitirse al Anexo "361818_HC_CH" en ambiente "PDF" adjunto a la presente rendición de cuentas"

## VI.   DESCRIPCIÓN DEL DESARROLLO Y EJECUCIÓN DEL NEGOIO

A continuación, se efectúa una descripción de las obligaciones más importantes de las partes para la ejecución óptima del negocio:

**Obligaciones de la fiduciaria**

| Descripción de la obligación | Observaciones / y o gestión |
|---|---|
| Mantener los dineros con sus rendimientos y las inversiones separados de los suyos y de los que correspondan a otros negocios fiduciarios. | |
| Producir la información financiera aplicable de acuerdo con lo que establecido por la Superintendencia Financiera de Colombia. | |
| Suministrar una clave de consulta que le permita a el fideicomitente, en tiempo real, conocer el estado de el(los) encargo(s) fiduciario(s) que sean abiertos en el fondo Money Market y/o de las cuentas corrientes y/o de ahorros abiertas en las entidades financieras que presten este servicio y cuyo titular sea el patrimonio autónomo que por este documento se constituye. | |

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú** Fiduciaria Colombia

Calle 12 #7-32 Piso 1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com



| Descripción de la obligación | Observaciones / y o gestión |
|---|---|
| Elaborar mensualmente el estado de ingresos y egresos y el Balance General del Patrimonio autónomo, los cuales quedarán a disposición de el fideicomitente vía correo electrónico o por el medio seleccionado por el fiduciario siempre contando con firma digital | |
| Rendir, cuentas comprobadas de su gestión al Fideicomitentes y a los Beneficiarios o sus cesionarios, dentro de los quince (15) Días Hábiles siguientes, con una periodicidad semestral, contados a partir de la fecha de Suscripción del Contrato de Fiducia Inicial, con sus respectivos soportes documentales de las actividades que ha llevado a cabo en cumplimiento del Contrato y las Leyes Aplicables. Una vez recibida cada rendición de cuentas, el Fideicomitente y los Beneficiarios tendrán un plazo de diez (10) Días Hábiles para revisarla y objetarla. Transcurrido este plazo sin que se reciba pronunciamiento alguno, se entenderá que han aceptado en su totalidad el contenido de la rendición de cuentas | |
| Cumplir con las disposiciones que sean aplicables a este tipo de contratos, en especial las de índole tributaria. | |
| Cumplir con el procedimiento para efectuar los pagos, establecida en la cláusula décima segunda del contrato. | |

**Facultades del fiduciaria**

| Descripción de la obligación | Observaciones / y o gestión |
|---|---|
| Realizar la apertura de una cuenta bancaria en banco Itaú Colombia S.A para recibir los recursos que constituyen el activo del fideicomiso, y administrarlos conforme a las condiciones del contrato y a las instrucciones del fideicomitente. | |
| Recibir en la cuenta bancaria que se abra para el efecto en el banco Itaú Colombia S.A y/o en el fondo de inversión Money Market, los demás recursos que hagan parte de los bienes fideicomitidos, y administrarlos conforme a las instrucciones señaladas en el contrato. | |

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso 1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

| Descripción de la obligación | Observaciones / y o gestión |
|---|---|
| Invertir, de conformidad con la instrucción expresa recibida de el fideicomitente, los dineros recibidos en desarrollo del contrato en el fondo de inversión colectiva Money Market, con sujeción al reglamento aprobado por la Superintendencia Financiera e Colombia, el cual se anexa y hace parte integral del contrato, reglamento que el fideicomitente declara haber recibido, conocer y aceptar. | |
| Verificar la disponibilidad de recursos suficientes para cumplir con el pago de las obligaciones a favor de el beneficiario de pago.  En caso en que dentro de los siete (7) días hábiles anteriores a la fecha prevista para el pago de las obligaciones, no hubiere recursos suficientes, el fiduciario informará de este hecho a el fideicomitente para que aporte de manera oportuna el dinero faltante. en todo caso llegada la fecha de vencimiento de las obligaciones, el fiduciario transferirá los recursos disponibles a el beneficiario de pago, sin perjuicio de las acciones legales que éste último pueda ejercer en contra de el fideicomitente | |
| En la fecha prevista para realizar el pago de las obligaciones a favor de el beneficiario de pago, el fiduciario realizará la transferencia de los recursos para atender los pagos de la deuda, hasta concurrencia de los recursos disponibles en el fideicomiso. | |
| Provisionar los recursos necesarios y suficientes para atender el servicio de la deuda a cargo de el fideicomitente y a favor de el beneficiario de pago, de conformidad con las instrucciones de el fideicomitente. | |
| En caso de que existan recursos en el fideicomiso y luego de atender los costos y gastos del mismo, realizar el pago de las obligaciones a favor de el beneficiario de pago y constituir el fondo de provisión del fideicomiso, restituir los excedentes a el fideicomitente y/o efectuar con ellos los pagos que éste libre y autónomamente le ordene, conforme a lo establecido en la cláusula décima cuarta del contrato. | |
| Recibir y exigir los informes establecidos en el numeral 6 del capítulo segundo del Cuadro de Declaraciones | |
| Descontar prioritariamente las erogaciones, incluidos gastos, contribuciones e impuestos a que haya lugar, de conformidad con lo convenido en el documento. | |
| Cobrar la comisión a que tiene derecho de conformidad con el contrato. | |

VIGILADO   SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

| Descripción de la obligación | Observaciones / y o gestión |
|---|---|
| Al finalizar el contrato entregar a el fideicomitente toda suma de dinero remanente, una vez hayan sido pagadas las obligaciones de el fideicomitente con el beneficiario de pago del contrato | |
| Renunciar a su gestión por los motivos taxativamente contemplados en la Ley. | |
| Mantener los dineros con sus rendimientos y las inversiones separados de los de el fiduciario y de los que correspondan a otros negocios fiduciarios | |
| Llevar la contabilidad del fideicomiso en la forma y términos establecidos por la Ley y por la Superintendencia Financiera de Colombia. | |
| Pedir instrucciones a la Superintendencia Financiera de Colombia cuando tenga fundadas dudas acerca de la naturaleza y alcance de sus facultades y obligaciones, o cuando deba apartarse de las autorizaciones contenidas en contrato, o cuando las circunstancias así lo exijan. En todo caso, la actuación de el fiduciario quedará en suspenso, mientras se resuelva definitivamente el tema, sin que se genere responsabilidad alguna a cargo de el fiduciario por tal hecho | |
| Solicitar a EL FIDEICOMITENTE la actualización periódica de su información financiera con el objeto de dar cumplimiento a las normas y políticas de Sistema de Administración de Riesgo de Lavado de Activos y Financiamiento del Terrorismo (SARLAFT). | |
| Las demás señaladas y por la Ley y que resulten necesarias para el cumplimiento del objeto del contrato | |

**Obligaciones del fideicomitente**

| Descripción de la obligación | Observaciones y / o gestión. |
|---|---|
| Transferir y entregar en forma irrevocable los derechos económicos objeto de este contrato para el cumplimiento de la finalidad del mismo. | |
| Instruir en forma irrevocable a el pagador para que consigne en la cuenta y/o encargo fiduciario del fideicomiso la totalidad de los derechos económicos derivados del activo que efectúe el fideicomitente de conformidad con el procedimiento señalado en el contrato. En caso de que el fideicomitente reciba el pago de los recursos vinculados a este contrato deberá entregarlos mediante consignación a el fiduciario en forma inmediata. | |

VIGILADO [vertical text, illegible]

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

ItaúFiduciariaColombia

Calle 12 #7-32 Piso1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

| Descripción de la obligación | Observaciones y / o gestión. |
|---|---|
| Asumir con sus propios recursos, en caso que el FIDEICOMISO que por el Contrato se constituye no cuente con los recursos y/o estos no sean suficientes, el pago de las obligaciones a favor de EL BENEFICIARIO y a su cargo. | |
| Cumplir todas las obligaciones derivadas de los contratos suscritos con los terceros con quienes se obligue en desarrollo de las actividades relacionadas con el activo | |
| Remitir con tres (3) días hábiles de antelación a EL FIDUCIARIO, toda la información necesaria a efectos de que este pueda proceder a realizar los pagos y/o las restituciones. | Los pagos han sido realizadas de acuerdo a los tiempos establecidos |
| Informar a el fiduciario sobre cualquier cambio material o legal en la situación financiera o de otra índole que pueda afectar las condiciones en que debe mantenerse el fideicomiso y los flujos de fondos provenientes de los recursos Fideicomitidos. | |
| Reconocer todos los costos y gastos en que incurra EL fiduciario para dar cumplimiento al contrato, para lo cual autoriza desde ya al fiduciario a descontarlos de los recursos administrados en virtud del contrato | |
| Pagar la comisión fiduciaria | |
| No gravar los recursos y sumas derivadas del activo, cuyos derechos económicos se ceden, sin el consentimiento previo y escrito del beneficiario de pago. | |
| Cumplir a cabalidad las obligaciones y deberes derivados de su actividad y de la ejecución de su objeto social. | |
| Actualizar periódicamente su información financiera con el objeto de dar cumplimiento a las normas y políticas de Sistema de Administración de Riesgo de Lavado de Activos y Financiamiento del Terrorismo (SARLAFT). | |
| Las demás establecidas en la ley y en otras cláusulas de este contrato. | |

VII. HECHOS RELEVANTES

El 12 de abril de 2023 se suscribió la firma del otrosí No. 2 en el cual se modificó los siguientes temas.

- Se incluye como beneficiario de pago a CNEOG Colombia Sucursal Colombia
- Se amplia la vigencia del contrato
- Las partes acuerdan modificar el numeral 5 de la cláusula décima cuarta (Obligaciones de la Fiduciaria)

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA



Calle 12 #7-32 Piso1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com



### VIII. ESTADO DEL CONTRATO DE FIDUCIA

El citado Fideicomiso se ha ejecutado de manera satisfactoria, cumpliendo con ello la finalidad por el cual fue constituido, y a la fecha de la presente rendición se encuentra en estado vigente.

### IX.  RELACIÓN DE PROCESOS, QUEJAS Y/O RECLAMOS

Durante el periodo objeto de la presente rendición de cuentas no se recibieron quejas o reclamos

### X.  ACREEDORES GARANTIZADOS Y ESTADO DE GARANTÍAS

El Fideicomiso no cuenta con acreedores garantizados.

### XI.  CESIONES

Durante el periodo objeto de la rendición no se presentaron cesiones.

### XII.  ESTADO DE CONDICIONES SUSPENSIVAS O RESOLUTORIAS

A la fecha no existen condiciones suspensivas o resolutorias.

### XIII. ÓRGANOS DE ADMINISTRACIÓN Y/O CONTROL

El presente fideicomiso no registra órganos de administración y/o control.

### XIV. VIGENCIA DEL CONTRATO

El contrato tendrá una duración hasta el 30 de noviembre de 2026 y dos meses más, el cual podrá ser prorrogado por acuerdo entre las partes debidamente instrumentalizado mediante la suscripción de un otrosí al contrato de fiducia. Lo anterior acorde al otrosí del contrato entre Fideicomitente y beneficiario del pago, allegado por el Fideicomitente. En todo caso, el contrato permanecerá vigente mientras existan obligaciones a cargo del El Fideicomitente a favor del beneficiario de pago.

### XV. ESTADOS FINANCIEROS

Adjunto a la presente rendición de cuentas encontrara los estados financieros del fideicomiso. De igual manera, le recordamos que la contabilidad del fideicomiso, los comprobantes y demás soportes de la misma, están a disposición del Fideicomitente y de los Beneficiarios en las oficinas de la Fiduciaria.

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com

**Itaú**

## XVI. CONTACTOS EN LA FIDUCIARIA

Para brindar un mejor servicio, a continuación, le informamos las personas que se encuentran a cargo del negocio fiduciario y por tanto las autorizadas para entregar y recibir cualquier tipo de información:

| Nombre | Cargo | Teléfono | Correo Electrónico |
|--------|-------|----------|--------------------|
| Katherine Alarcon Beltran | Líder Gestión Fiduciaria | Cel3142420558 6015818181 | Katherine.Alarcon@itau.co |
| Catherin Ocampo Murillo | Líder Estructuración | Cel: 3125452663 6015818181 | Catherin.ocampo@itau.co |
| Andres Eduardo Peña Baquero | Líder Aseguramiento y Control | Cel: 3003284806 6015818181 | Andres.pena@itau.co |
| Juan Sebastian Tovar Romero | Líder Aseguramiento y Control | Cel: 3183355029 6015818181 | juan.tovar@itau.co |
| Yessica Urrego | Rol de Experiencia | Cel: 3153315352 6015919191 | yessica.urrego@itau.co |

Quedamos pendientes de los comentarios y observaciones con respecto al presente informe mensual, las cuales deben presentarse por parte del Fideicomitente y/o Beneficiarios, dentro de los diez (10) días hábiles siguientes al recibo del presente informe. De lo contrario se entenderá como aprobada.

Cordialmente

Firmado electrónicamente por Maria Fernanda Morales Carrillo el 2023-08-22 16:48:01 COT

**Maria Fernanda Morales**
Representante Legal

E: Maritza Manyoma Álvarez

Anexos:

i. 361818_AP_CH
2. 361818_HC_CH
3. 361818_EEFF_CH

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A. Sociedad Fiduciaria

**Itaú**FiduciariaColombia

Calle 12 #7-32 Piso1
Bogotá - Colombia
Teléfono (601) 581 8181
www.itau.com



Si al revisar este documento tiene alguna observación por favor envíe un correo electrónico a: clienteitaufiduciaria@itau.co y con gusto será atendida en el menor tiempo posible.

Si al revisar la información sobre la rendición de cuentas encuentra alguna inconformidad, comuníquese si lo considera necesario a revisoría fiscal Pricewaterhousecoopers Ltda al correo Revisoria.FiscalPwc@itau.co

Pablo Valencia Agudo – Defensor del Consumidor Financiero principal, Ana María Giraldo Rincón – Suplente. Carrera 10 No. 97A – 13 Oficina 502, Bogotá D.C., teléfono 6108161/4. Horario: lunes a viernes de 8:00 am a 6:00 pm en jornada continua, correo electrónico defensoriaitau@legalcrc.com, página web www.ustarizabogados.com. Funciones: dar trámite a las quejas contra las entidades vigiladas en forma objetiva y gratuita, actuar como conciliador entre los consumidores financieros y la entidad, de los asuntos de su competencia, es decir, aquellos que no se encuentren dentro del artículo 14 de la Ley 1328 de 2009, servicio gratuito, que podrá solicitar de manera explícita directamente ante el Defensor sin formalidad alguna, de conformidad con lo previsto en el numeral 11 del artículo 2.34.2.1.5 del Decreto 2555 de 2010 y la Ley 640 de 2001, el documento en el cual conste la conciliación realizada entre las partes prestará mérito ejecutivo y hará tránsito a cosa juzgada. Ser vocero de los consumidores financieros ante la Institución, lo cual implica la posibilidad de dirigir en cualquier momento a las Juntas Directivas o Consejos de Administración de las entidades recomendaciones, propuestas y peticiones

**Gerencia de Operaciones**
Itaú Fiduciaria Colombia S.A.
601 5818181
operaciones.fiduciaria@itau.co
Calle 12 No. 7-32 Piso 5
Bogotá – Colombia

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**ACUERDO DE GAS ENTRE CANACOL ENERGY COLOMBIA S.A., CNE OIL & GAS S.A.S. Y VP INGENERGIA S.A.S. E.S.P.**

El presente Acuerdo se celebra el 30 de noviembre de 2021 entre:

Por una Parte:

**CANACOL ENERGY COLOMBIA S.A. Y CNE OIL & GAS S.A.S** (en adelante "CANACOL"), compañías constituidas de conformidad con las leyes de Colombia, identificada con NIT 830.095.563-3 y 900.713.658-0, que desarrollan la actividad de producción y comercialización de gas natral, respectivamente, representadas legalmente en este acto por ANDRÉS VALENZUELA PACHÓN, mayor de edad, identificado con cédula de ciudadanía No. 79.657.288 con domicilio y residencia en Bogotá D.C., y con dirección electrónica de notificaciones jlinero@canacolenergy.com.

Por otra Parte:

**VP INGENERGIA S.A.S. E.S.P.** (en adelante "VP"), compañía constituida de conformidad con las leyes de Colombia, identificada con el NIT 900.305.404-7 , empresa de servicios públicos privada, que desarrolla las actividades de comercialización de gas natural, hidrocarburos y sus derivados, representada legalmente en este acto por Darlyn Yesenia Neira Caro, identificado con la cédula de ciudadanía No. 1.095.808.726 con domicilio y residencia en Bucaramanga., o quien haga sus veces y con dirección electrónica de notificaciones financiera@vpsa.co.

Conjuntamente denominadas las "Partes", hemos decidido celebrar el presente Acuerdo, que se regirá por las cláusulas que a continuación se estipulan, atendiendo a las siguientes consideraciones que, para todos los efectos, forman parte integral del presente Acuerdo.

**CONSIDERACIONES**

1. Las Partes declaran que el presente acuerdo es el resultado de un proceso de negociación que se ha ejecutado de buena fe de principio a fin, de un lado, por CANACOL y del otro lado, por VP. Por lo anterior, manifiestan que este Acuerdo se celebra con base en la voluntad conjunta de obtener la preaprobación de los términos y condiciones de la venta de gas por parte de CANACOL a VP, de los negocios detallados en el objeto de este acuerdo; lo cual es requerido por el cliente de VP (Destinatario Final) para surtir los procedimientos de aprobación en la Junta Directiva del Destinatario Final.



2. Las Partes manifiestan que, con la suscripción de este Acuerdo, se generarán compromisos para suscribir nuevos contratos de suministro y realizar ajustes mediante un Otrosí al Contrato CNEGN-01-2016.

3. Que, CANACOL es el titular del 100% de los Contratos de Exploración y Producción de Hidrocarburos provenientes del Bloque VIM-5 y VIM 21 y del Contrato de exploración y explotación ESPERANZA, en adelante el Contrato E&P, suscritos con la Agencia Nacional de Hidrocarburos.

4. Que, en virtud del Contrato E&P, el VENDEDOR ostenta el 100% de los derechos de exploración y producción de dichos Bloques y los Campos son menores, se encuentran en pruebas extensas de producción y no se les ha declarado comercialidad al momento de la suscripción del presente Contrato.

5. Que, las excepciones regulatorias establecidas en el literal a) del numeral 1 del artículo 19 y en el parágrafo del artículo 20 de la Resolución CREG 186 de 2020, permite que el Gas objeto del presente Acuerdo se puede comercializar libre y directamente en cualquier momento del año y las Partes pueden definir las condiciones de los contratos que celebren.

6. Que, con fines de realizar el correspondiente registro ante el Gestor del Mercado, así como con el fin de determinar las compensaciones que dieran a lugar de conformidad con lo establecido en la Resolución 186 de 2020 y/o cualquier norma que la modifique, derogue o sustituya, el Gas Natural adquirido por el COMPRADOR a través de este Acuerdo será para la atención de Plantas Térmicas del Mercado No Regulado.

7. Que, las Partes, garantizan y declaran que cuentan con las autorizaciones corporativas y de autoridades necesarias y han realizado todos los procedimientos necesarios para celebrar el presente Acuerdo y cumplir con las obligaciones establecidas en el mismo, así como para su validez.

8. Que entre el 05 y 06 de octubre VP presentó a CANACOL cuatro ofertas de compra de gas para el período diciembre de 2021 a noviembre 30 de 2036, la cuales tienen como propósito la compra de gas para atender clientes del sector eléctrico de VP, cuyas necesidades se enmarcaron en el suministro de gas para atender un posible fenómeno El Niño, cubrir nuevas necesidades de gas por la entrada en operación comercial de la modernización de la Planta Termocandelaria, la extensión del contrato CNEGN-01-2016 para los años 2025 y 2026 y el remplazo del gas importado por SPEC por gas nacional de CANACOL para el período diciembre de 2026 a noviembre de 2036.



2

9. Considerando lo relacionado en los numerales anteriores, las Partes han decidido celebrar este Acuerdo, a través de las siguientes:

### CLÁUSULAS

**PRIMERA. Objeto.** El presente Acuerdo de voluntades tiene por objeto la preaprobación de los términos y condiciones de la venta de gas por parte de CANACOL a VP, condición requerida para que VP pueda avanzar en el cierre de los negocios con sus clientes (Destinatario(s) Final(es)), de acuerdo con lo indicado en las consideraciones de este Acuerdo. Las condiciones preaprobadas para el cierre de los negocios de VP en este Acuerdo son los siguientes:

I. Nuevo contrato de gas con los siguientes términos y condiciones. Las Partes acuerdan que los términos descritos en este numeral I. no están sometidos a la aprobación de la Junta Directiva del Destinatario Final y por lo tanto se comprometen a firmar el Contrato de Venta en estos términos, a más tardar a los 3 días hábiles de la firma de este Acuerdo:

| Tipo Contrato | Contrato firme CF 62 | |
|---|---|---|
| CDGF | 40.000 MBTUD | |
| Compromiso de pago - CDmin | 25.000 MBTUD | |
| Período de suministro: | Diciembre 01 de 2021 a noviembre 30 de 2022 | |
| Destinatario Final | TEBSA | |
| Destinatario Ocasional | Mercado secundario | |
| Punto de entrega: | SNT Cartagena MBTUD | 25.000 |
| | SNT Jobo MBTUD | 15.000 |
| | El Punto de Entrega de los primeros 10.000 MBTU de la CDMin será el 50% en la Brida de Salida ubicada en Jobo y el 50% restante en SNT Cartagena. <br><br> Para cantidades superiores a 10.000 MBTU, la CDmin restante se entregará en SNT Cartagena y la diferencia entre la CDGF y la CDmin se entregará en SNT Jobo, no obstante, si Canacol tiene capacidad de transporte adicional a la CDmin, podrá entregar cantidades adicionales a la CDMin en SNT Cartagena hasta completar la CDGF. | |
| Precio en SNT Jobo: | 5,25 USD/MBTU | |



3

| Transporte | Se pagará, mediante el reembolso de los costos facturados por el Transportador teniendo en cuenta la CDSA liquidados con la pareja de cargos 100% fija – 0% variable, la cual debe incluir los impuestos de transporte, la cuota de fomento y las pérdidas de gas aplicables. |
|---|---|
| Condiciones Particulares: | Forma de Pago:<br>• VP pagará mensualmente la CDSA en los plazos acordado en el respectivo contrato.<br>• En octubre 01 de 2022 se realizará la comprobación del pago de la CDmin, comparando los saldos acumulados a septiembre 30 de 2022 de las cantidades entregadas en CDSA y Gas en Reposición con la Obligación de Pago - CDmin. En caso de que la sumatoria de la CDSA y el gas en Reposición sea inferior a la Obligación de Pago, Canacol facturará en el mes de diciembre de 2022 la cantidad correspondiente para que VP proceda con su pago a más tardar el 31 de enero de 2023.<br>• A partir del 01 de enero de 2022, EL VENDEDOR podrá proponerle a EL COMPRADOR la disminución de la CDGF del Contrato, en la que manifieste que cuenta con una oferta de compra de un tercero para la suscripción de un contrato en firme del tipo CF100 en el que requiera tomar de la diferencia entre la CDGF y la CDmin del nuevo contrato. Una vez recibida la propuesta del VENDEDOR, el COMPRADOR para evitar la disminución de la CDGF tendrá la opción de aumentar la CDmin de Contrato hasta la cantidad que el tercero solicite al VENDEDOR. De no hacerlo, EL VENDEDOR unilateralmente podrá disminuir dicha cantidad hasta en 7.500 MBTUD, es decir la CDGF del Contrato nunca podrá ajustarse bajo esta regla a una cantidad inferior a 32.500 MBTUD. De manera correspondiente, la CDmin se reducirá en un 50% de la cantidad CDGF que se ajuste. |

4



**II.** Modificación mediante Otrosí al contrato CNEGN-01-2016

| Tipo Contrato | Contrato firme |
|---|---|
| Modificación de la Vigencia del Contrato, CDGF y Obligación de Pago. | <table><tr><td>AÑO</td><td>CDGF MBTUD</td><td>Obligación de Pago</td></tr><tr><td>22-26</td><td>100.000</td><td>60.000</td></tr></table> La vigencia del contrato se modifica, de tal forma que la Fecha de Terminación del Suministro será noviembre 30 de 2026. Los períodos de reposición del Contrato CNEGN-01-2016 se deben modificar para garantizar la compensación del gas pagado y no tomado, adicionando la condición de compensación para los períodos 24-25 y 25-26. |
| Punto de entrega: | <table><tr><td>AÑO</td><td>SNT Cartagena</td><td>SNT Jobo</td></tr><tr><td>22-26</td><td>60.000</td><td>40.000</td></tr></table> La CDmin se entregará en SNT Cartagena y la diferencia entre la CDGF y la CDmin se entregará en SNT Jobo, no obstante, si Canacol tiene capacidad de transporte adicional a la CDmin, podrá entregar cantidades adicionales a la CDMin en SNT Cartagena hasta completar la CDGF. |
| Precio Boca de Pozo SNT Jobo USD/MBTU: | <table><tr><td>AÑO</td><td>Precio USD/MBTU</td></tr><tr><td>22-23</td><td>5,305</td></tr><tr><td>23-24</td><td>5,358</td></tr><tr><td>24-25</td><td>5,358</td></tr><tr><td>25-26</td><td>5,358</td></tr></table> Los precios del gas descritos en la tabla no tendrán indexación y corresponde a los definidos en el Contrato CNEGN-01-2016. |
| Transporte | Se pagará, mediante el reembolso de los costos facturados por el Transportador teniendo en cuenta la CDmin contratada, |



| | |
|---|---|
| | liquidados con la pareja de cargos 100% fija – 0% variable, la cual debe incluir los impuestos de transporte, la cuota de fomento y las pérdidas de gas aplicables. |
| Condiciones particulares: | 1. A partir del 01 de diciembre de 2022, EL VENDEDOR podrá proponerle a EL COMPRADOR la disminución de la CDGF del Contrato, en la que manifieste que cuenta con una oferta de compra de un tercero para la suscripción de un contrato en firme del tipo CF100 en el que requiera tomar total o parcialmente de las cantidades diferencia entre la CDGF y la CDmin del Contrato CNEGN-01-2016. Una vez recibida la propuesta del VENDEDOR, el COMPRADOR para evitar la disminución de la CDGF tendrá la opción de aumentar la CDmin de Contrato parcialmente o hasta la cantidad que el tercero solicite al VENDEDOR, de no hacerlo EL VENDEDOR unilateralmente podrá disminuir dicha cantidad hasta en 25.000 MBTUD, es decir la CDGF del Contrato nunca podrá ajustarse bajo esta regla a una cantidad inferior a 75.000 MBTUD. Lo anterior aplicara cuando el vendedor tenga comprometido la totalidad del gas disponible para la venta PTDV.<br>La cantidad a reducir no podrá dar como resultado una CDGF inferior al promedio anual de la CDSA (Incluidas las cantidades de Gas entregadas en reposición).<br><br>Nota: si pasados 30 días de la disminución de la CDGF, el VENDEDOR no presenta soporte que ha celebrado el contrato con el Tercero referido, las CDGF se restablecerá automáticamente.<br><br>2. Dar alcance a cláusula de ajuste regulatorio, para incorporar específicamente una condición que contemple cambios regulatorios que afecten el despacho eléctrico en la generación por seguridad. Esto aplica en las cantidades nuevas adicionales contratadas: (i) Desde el 1 de diciembre de 2022 hasta el 30 de noviembre de |

6



|  | 2024 y (ii) desde 1 de diciembre de 2024 a 30 de noviembre de 2026.<br><br>Nota: Para el numeral (i) se aclara que, para el periodo comprendido entre el 1 de diciembre de 2022 a 30 de noviembre de 2024, aplicara para cantidades superiores a 45.000 MBTUD.<br><br>3.  Ajuste a cantidades del contrato (CDGF y CDMin) en caso de cambios en la topología eléctrica, incluyendo la entrada de nueva infraestructura, consistentes por períodos de seis meses, que modifiquen las necesidades de generación de seguridad. Esto aplica desde 1 de diciembre de 2024 a 30 de noviembre de 2026 en las cantidades nuevas adicionales contratadas.<br>4.  Cláusula de ampliación a discreción de EL COMPRADOR, en la que 4 años antes de la Fecha de Terminación del Suministro manifieste por escrito su decisión de prorrogar el contrato por un año más. Las cantidades del año prorrogado serán las mismas del ultimo año contractual y el precio de gas será el mismo del último año contractual indexado en un 1%. Siempre y cuando el productor disponga de reservas para comercializar (Respaldo físico). |
|---|---|

III.    Contrato de gas para viabilizar las Compras Cruzadas con ECOPETROL

| Tipo Contrato | Contrato firme CF 100 |
|---|---|
| CDGF | 55.000 MBTUD |
| Período de suministro: | Diciembre 01 de 2022 a noviembre 30 de 2026 |
| Destinatario Final | A) EPM (Termosierra/Distribuidor – Comercializador)<br><br>B) VANTI |
| Destinatario Ocasional | Refinería Cartagena - ECOPETROL |



| Punto de entrega: | SNT Cartagena |
|---|---|
| Precio en SNT Jobo: | 4,80 USD/MBTU |
| Transporte | Se pagará, mediante el reembolso de los costos facturados por el Transportador, liquidados con la pareja de cargos 100% fija – 0% variable, la cual debe incluir los impuestos de transporte, la cuota de fomento y las pérdidas de gas aplicables. |
| Condiciones Precedentes: | • La viabilidad de la compra "cruzada" de gas a ECOPETROL desde de sus campos de producción y que tenga viabilidad de transporte hasta Termosierra. La compra "cruzada" significa que por cada MBTU que VP compre a CNE y entregue a ECOPETROL, ECOPETROL venderá a VP otro MBTU de alguno de sus campos que presente viabilidad de transporte a Termosierra. <br> • La viabilidad de la compra "cruzada" de gas a ECOPETROL desde un campo del interior y que tenga viabilidad de transporte hasta VANTI. La compra "cruzada" significa que por cada MBTU que VP compre a CNE y que entregue a ECOPETROL, ECOPETROL venderá a VP otro MBTU en el interior del país que presente viabilidad de transporte a VANTI. |
| Cláusula resolutoria | En caso de no lograr la realización de lo previsto en la condición precedente el 31 de octubre de 2022, El contrato se dará por terminado sin penalidades o cargos a ninguna de las partes. No obstante, las Partes podrán evaluar condiciones y hacer ajustes al contrato acorde a la evolución del negocio. |

**SEGUNDA. Obligaciones de las Partes.**

**2.1   Obligaciones conjuntas de las Partes**

2.1.1 Las Partes se obligan a más tardar en un plazo de 3 días hábiles, posteriores a la suscripción del presente documento, a la firma de un contrato que permita desarrollar el negocio preaprobado en los términos y condiciones establecidos en el numeral I de la Cláusula Primera del presente Acuerdo, y se obligan al registro de dicho contrato ante el Gestor del Mercado .

8



2.1.2 ~~...y obtenga aprobación de su propuesta por la Junta directiva del Destinatario Final.
En seguida a EL VENDEDOR las Partes se obligan a suscribir el Otrosí No 4 al Contrato
BIEN EN SU PLAZO y los demás términos establecidos en el numeral III de la Cláusula
Primera del presente Acuerdo.~~

2.1.3 Las Partes se obligan en un plazo de 15 días hábiles posteriores a la suscripción del presente documento a la firma del contrato en los términos y condiciones establecidos en el numeral III de la Cláusula Primera del presente Acuerdo.

**TERCERA. Mérito Ejecutivo.** El presente Acuerdo prestará mérito ejecutivo. Por lo tanto, cualquiera de las Partes podrá hacer efectivas las prestaciones a su favor, sin necesidad de requerimiento judicial alguno para constituir en mora, al cual renuncian mutuamente las Partes con la suscripción de este Acuerdo.

**CUARTA. Nulidad.** Si alguna cláusula de este Acuerdo se declara nula, total o parcialmente, las partes restantes de tales acuerdos de voluntades seguirán siendo válidas y exigibles entre las Partes.

**QUINTA. Confidencialidad.** Las Partes acuerdan que los términos de este Acuerdo gozan de confidencialidad, razón por la cual se obligan a garantizar su reserva.

**SEXTA. LEY APLICABLE.** El presente Acuerdo se regirá por las Leyes de la República de Colombia.

**SEPTIMA. CLÁUSULA COMPROMISORIA.** Toda controversia o diferencia relativa a este Acuerdo se resolverá por un Tribunal Arbitral que sesionará en el Centro de Arbitraje y Conciliación de la Cámara de Comercio de Bogotá, de acuerdo con las siguientes reglas:

1.  El Tribunal estará integrado por 3 árbitros designados por las Partes de común acuerdo. En caso de que no sea posible, los árbitros serán designados por el Centro de Arbitraje y Conciliación de la Cámara de Comercio de Bogotá, a solicitud de cualquiera de las Partes.

2.  El procedimiento aplicable será el contenido en la ley 1563 de 2012, en lo correspondiente a arbitraje nacional.

3.  El Tribunal decidirá en derecho.



[*Sigue Página de Firmas*]

**10**

41

En constancia de lo anterior, el Acuerdo se suscribe en dos (2) copias del mismo tenor literal y contenido en el día y año indicado en el encabezado del Acuerdo.

**CANACOL ENERGY COLOMBIA S.A. Y CNE OIL & GAS S.A.S**

Representante Legal

Andrés Valenzuela Pachón

[Página de firmas del Acuerdo]

En constancia de lo anterior, el Acuerdo se suscribe en dos (2) copias del mismo tenor literal y contenido en el día y año indicado en el encabezado del Acuerdo.

**VP INGENERGÍA S.A.S. E.S.P.**

Representante Legal
Darlyn Yesenia Neira Caro

[Página de firmas del Acuerdo]

**VP** INGENERGÍA

VP- 2442

Bogotá, 09 de noviembre de 2023

Señor:
**ANDRÉS VALENZUELA PACHÓN**
CNEOG COLOMBIA SUCURSAL COLOMBIA
CNE OIL & GAS S.A.S.
Representante Legal
avalenzuela@canacolenergy.com
*Enviado por correo electrónico*

**Asunto:**    Comunicación COE_202301359 enviada por Tebsa.

Mediante el presente escrito VP INGENERGIA S.A.S. E.S.P (en adelante "VP") manifiesta tener pleno conocimiento y da total aprobación al contenido de la comunicación COE_202301359 enviada hoy vía correo electrónico por TERMOBARRANQUILLA S.A. E.S.P. (en adelante "Tebsa") a CNEOG COLOMBIA SUCURSAL COLOMBIA y a CNE OIL & GAS S.A.S. (en adelante y en conjunto "Canacol").

VP solicita a Canacol atender integralmente la solicitud de Tebsa, con el fin de viabilizar los ajustes requeridos en la comunicación S-CNO-20231313-RNN.

Atentamente,

Patricia Cristina Peña Anaya
Vicepresidente y Representante Legal.

**OFICINA PRINCIPAL:** AK. 9 # 115-06 / Oficina 801 / (1) 4624673 / Bogotá Colombia ● **CENTRO DE DOCUMENTACIÓN:** Cra. 29 # 45-45 / Oficina 603 / (7) 6476968 / Bucaramanga

**W W W . V P S A . C O**

43

**Itaú**FiduciariaColombia



ITAÚ FIDUCIARIA
Obrando única y exclusivamente como administrador del
"FIDEICOMISO DE ADMINISTRACIÓN Y PAGOS VP-CNE-TEBSA"

### CERTIFICA:

1. Que el día 24 de febrero de 2016, mediante documento privado suscribió el contrato de fiducia mercantil denominado **FIDEICOMISO DE ADMINISTRACIÓN Y PAGOS VP-CNE-TEBSA.**, modificado mediante Otrosi No. 01 de fecha 12 de abril de 2023.

2. Que el objeto del contrato consiste en que **VP INGENERGIA S.A. ESP** en adelante EL **FIDEICOMITENTE** transfiere al **FIDUCIARIO**, a título de Fiducia Mercantil Irrevocable, el **ACTIVO** y demás **BIENES FIDEICOMITIDOS** a fin de que tales recursos sean administrados e invertidos por **EL FIDUCIARIO**. Tales recursos servirán de pago de las obligaciones que contraiga **EL FIDEICOMITENTE** con **EL BENEFICIARIO DE PAGO**. Igualmente, previa la constitución de las provisiones establecidas más adelante, en caso de existir excedentes se atenderán las instrucciones de pago de EL FIDEICOMITENTE. En todo caso, contra el flujo de caja del patrimonio autónomo no podrán respaldarse nuevas operaciones, salvo que medie la previa, expresa y escrita autorización de **EL BENEFICIARIO DE PAGO**. Se deja expresa constancia del hecho que el contrato de fiducia servirá de pago de todas las obligaciones presentes y futuras que tengan o lleguen a adquirir **EL FIDEICOMITENTE**, individualmente con **EL BENEFICIARIO DE PAGO**

3. Que los beneficiarios de Pagos son las compañías CNE Oil & Gas S.A.S. identificada con NIT. 900.713.658 – 0 y CNEOG Colombia Sucursal Colombia identificada con NIT. 900.276.770 – 2, quienes suscribieron con el Fideicomitente los contratos (i) Contrato de Suministro de Gas en Firme No. CNEGN-01-2016 ; (ii) Contrato de Suministro de Gas en Firme No. CNEOG-CF-VP-01-2022.

4. Que el activo corresponde a los recursos dinerarios o derechos económicos derivados del **CONTRATO DE SUMINISTRO DE GAS** en Firme suscrito entre **TERMOBARRANQUILLA S.A. ESP** con **EL FIDEICOMITENTE**, los cuales serán transferidos al **FIDEICOMISO** que se constituye mediante el contrato fiduciario.

   Los recursos serán transferidos directamente por el **PAGADOR** al **FIDEICOMISO**, con el fin de que sirvan de pago de la Deuda adquirida por **EL FIDEICOMITENTE** para que sean administrados y se realicen pagos por parte del **FIDEICOMISO** de acuerdo con las instrucciones que al respecto manifieste **EL FIDEICOMITENTE** o las condiciones de pagos que para el efecto remita el **BENEFICIARIO DE PAGO** registrado en **EL FIDEICOMISO**.

5. El contrato de Fiducia Mercantil tendrá una duración hasta el 30 de noviembre de 2026 y dos meses mas el cual podrá ser prorrogada por acuerdo entre las partes debidamente instrumentalizado mediante la suscripción del otro si al Contrato de Fiducia. En todo caso, el contrato permanecerá vigente mientras existan obligaciones a cargo de **EL FIDEICOMITENTE**

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria.

**Itaú**FiduciariaColombia

**Itaú**

a favor de **EL BENEFICIARIO DE PAGO,** por lo cual a la fecha de la presente certificación se encuentra activo y vigente.

6. Que para la realización de los pagos que debe hacer el fideicomiso al **BENEFICIARIO DE PAGO,** la Fiduciaria procederá siempre y cuando existan recursos en el Fideicomiso.

7. Que actualmente se encuentra aperturada la participación en el Fondo de Inversión Colectiva Itaú Money Market No. 81700338-7 donde son administrados los recursos del Fideicomiso de Administración y Pagos VP-CNE-TEBSA identificado con NIT 830.053.963-6.

La presente certificación se expide a los Dieciséis (16) días del mes de agosto de 2023 a solicitud del Fideicomitente.

Cordialmente,

Andres Peña Boquero

**Andres Eduardo Peña**
**Apoderado General**
**Itaú Fiduciaria Colombia S.A., Sociedad Fiduciaria,** actuando como vocero y administrador del Fideicomiso de Administración y pagos VP-CNE - TEBSA

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Fiduciaria Colombia S.A.
Sociedad Fiduciaria

**TEBSA**
Energía disponible

COE_202301359

Barranquilla, 09 de noviembre de 2023

Doctor
Andrés Valenzuela Pachón
Representante Legal
CNEOG COLOMBIA SUCURSAL COLOMBIA
CNE OIL &GAS S.A.S
Calle 113 No. 7-45 Torre B – Oficina 1501
Bogotá D.C.

**Asunto:** Garantía Bancaria No. 07002026101061412 expedida por Banco Davivienda

Respetados señores,

Hemos recibido de nuestro proveedor de gas VP INGENERGIA S.A.S E.S.P, la comunicación emitida por CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S referenciada con el número S-CNO-20231313-RNN, mediante la cual informan que la misma no es aceptada y la devuelven para que se proceda con ciertos ajustes. Sin entrar a discutir sobre las consideraciones expuestas en su comunicación, TERMOBARRANQUILLA S.A. E.S.P, como Otorgante de la garantía en su calidad de Destinatario Final del gas objeto del contrato de suministro No. CNEOG-CF-VP-2022, nos permitimos informarle que, con el fin de viabilizar los ajustes requeridos por usted, procedimos a solicitar al banco una nueva garantía.

Al respecto, DAVIVIENDA nos ha informado, que toda vez que la Garantía Bancaria No. 07002026101061412 se encuentra debidamente otorgada, la nueva garantía que emita no la sustituye, por lo tanto, se debe proceder el rechazo formal por parte de CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S de la Garantía Bancaria No. 07002026101061412 directamente a DAVIVIENDA como banco emisor.

En razón a lo anterior, solicitamos a CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S como Beneficiarios de la Garantía Bancaria No. 07002026101061412, que envíen una comunicación dirigida a DAVIVIENDA en la que rechacen expresamente dicha garantía.



TERMOBARRANQUILLA S.A. E.S.P procederá a entregar a VP INGENERGIA S.A.S E.S.P una nueva garantía bancaria que incluya las condiciones señaladas por

Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4d4490ed

**TEBSA**
Energía disponible

COE_202301359

usted en la comunicación antes referenciada, incluyendo la cesión y la aceptación del banco emisor.

Para el efecto, agradecemos que dicha comunicación sea enviada el día de hoy a DAVIVIENDA a la siguiente atención, con copia al suscrito en calidad de representante legal de TERMOBARRANQUILLA S.A. E.S.P y a su comprador de gas, VP INGENERGIA S.A.S E.S.P:

**Nazly Bendek Gómez**
Gerente de Relación Corporativa
**BANCO DAVIVIENDA S.A.**
nbendekg@davivienda.com

De esta solicitud tiene conocimiento VP INGENERGIA S.A.S E.S.P, quien aparece en copia en esta comunicación.

Atentamente,

LUIS MIGUEL FERNANDEZ ZAHER
Presidente

Copia: Darlyn Yesenia Neira Cano - Representante Legal - VP INGENERGIA SAS E.S.P.

Elaborado por: HERNANDO RAMIREZ

Archívese en:



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4d4490ed



COE_202301531

Barranquilla, 21 de diciembre de 2023

Doctor
Andrés Valenzuela Pachón
Representante Legal
CNE OIL & GAS SAS
CNEOG COLOMBIA SUCURSAL COLOMBIA
Calle 113 No. 7 - 45 Torre B Piso 15 Ed. Teleport
Bogotá

Asunto: Respuesta a su comunicación S-CON-20231528-VLG del 19 de diciembre de 2023.

Respetado doctor Valenzuela:

Acusamos recibo de la comunicación del asunto, en la cual las empresas por Usted representadas nos solicitan (i) le sea suministrada una determinada información y (ii) le sean efectuados unos pagos. Al respecto damos respuesta en los siguientes términos:

1. **TERMOBARRANQUILLA S.A. E.S.P.** (en adelante "TEBSA") conoce de la existencia de los Contratos CNEGN-01- 2016, CNEOG-CF-VP-01-2022 y CNEOG-VI-VP-01-2022 (en adelante los Contratos VP – Canacol), de los cuales son parte **CNE OIL & GAS S.A.S.** y **CNEOG COLOMBIA SUCURSAL COLOMBIA** (en adelante "CANACOL") y la sociedad **VP INGENIERÍA S.A.S.** (en adelante "VP").[1]

2. El conocimiento de TEBSA de las anteriores relaciones comerciales no es ajeno a CANACOL[2], pues esta conoce perfectamente que TEBSA y VP son parte del Contrato de Suministro de Gas No. VP-0515 (el Contrato TEBSA – VP), en virtud del cual VP se obliga a suministrar gas a TEBSA -entre otras fuentes posibles-, el gas que CANACOL suministra a VP.

---

[1] TEBSA desconoce los términos y condiciones de dichos contratos.
[2] No de otra manera se explica que CANACOL hubiese copiado a TEBSA de múltiples comunicaciones en las cuales ha declarado la terminación unilateral de los Contratos VP – Canacol y/o se han alegado presuntos incumplimientos de VP bajo dichos contratos: *inter alia* comunicaciones S-COG-20231564-RNN y D-CON-2023-1366-VLG.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

f13cd1c0



COE_202301531

3. La circunstancia antes mencionada genera que las vicisitudes que ocurran en los Contratos VP-Canacol tengan un evidente impacto técnico, operativo, jurídico y financiero respecto del Contrato TEBSA - VP.

En efecto, es tal el impacto que generan los Contratos VP – Canacol en relación con el Contrato TEBSA - VP, que la conducta de CANACOL en el marco de los Contratos VP – Canacol, está afectando el suministro de gas que debería recibir TEBSA bajo el Contrato TEBSA – VP, causando a nuestra compañía cuantiosos perjuicios económicos, de los cuales tampoco es ajena CANACOL.

4. Al margen de lo anterior, y en lo que respecta a su solicitud de información acerca de (i) si TEBSA fue el destinatario del gas que CANACOL suministró VP, (ii) si TEBSA pagó o no dicho gas a VP y (iii) si el pago se efectuó al Fideicomiso de Administración y Pagos VP-CNE-TEBSA administrado por ITAÚ FIDUCIARIA COLOMBIA S.A. (en adelante "ITAÚ"), la misma es improcedente ya que:

    I.    TEBSA no se encuentra obligada legalmente a proporcionar dicha información a CANACOL, y además,

    II.    Existe una cláusula de confidencialidad bajo el Contrato TEBSA – VP, que impide revelar los términos y condiciones particulares de dicho negocio jurídico, así como los pormenores de su ejecución.

5. Ahora bien, respecto de su solicitud de que TEBSA pague directamente a CANACOL por el gas que esta ha suministrado a VP, le informamos que también es improcedente porque:

    I.    TEBSA se encuentra al día con sus obligaciones de pago frente a VP; cumplimiento que el mismo VP certificó a través de un documento emitido a instancia de TEBSA el pasado 19 de diciembre del presente.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

f13cd1c0

46



COE_202301531

II.   TEBSA tiene la obligación de cumplir con los términos y condiciones pactados en el Contrato TEBSA-VP, incluyendo, sin limitarse, aquellas relacionadas con el monto, oportunidad y lugar en que debe hacer el pago bajo dicho negocio jurídico.

Le aclaramos que en dicho negocio jurídico no existe provisión alguna que permita a CANACOL dar instrucciones a TEBSA para el pago que debe hacerle a VP, so pena de que TEBSA se vea envuelta en un incumplimiento de su propio contrato procurado por CANACOL.

III.   TEBSA no puede instruir a ITAÚ para que gire recursos de ninguna índole en favor de CANACOL pues, del conocimiento que tiene TEBSA de dicho negocio fiduciario, es VP quien debe impartir las instrucciones y no TEBSA.

De nueva cuenta le ponemos de presente a CANACOL que la controversia que parecen tener su compañía con VP está impactando a TEBSA, quien se reserva todos los derechos de reclamar al directo e indirecto responsable de los daños causados por la misma y, de forma particular, de los efectos de la terminación unilateral que ha declarado CANACOL a VP -y que nos fuera informada por ustedes- bajo los Contratos VP – Canacol

Atentamente,

LUIS MIGUEL FERNANDEZ ZAHER
Presidente

CC: Patricia Peña – VP Ingenergía SAS ESP

Elaborado por: HERNANDO RAMIREZ

Archívese en:



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

f13cd1c0

47

**TEBSA**
Energía disponible

COE_202400006

Barranquilla, 05 de enero de 2024

Doctor
ANDRÉS VALENZUELA PACHÓN
CNEOG COLOMBIA SUCURSAL COLOMBIA
CNE OIL & GAS
CALLE 113 N° 7-45 TORRE B PISO 15 ED TELEPORT
BOGOTÁ

Asunto: Respuesta a su comunicación S-COG-20231773-VLG del 29 de diciembre de 2023.

Respetado doctor Valenzuela

Por medio de la presente damos respuesta a la comunicación de la referencia en la cual **CNE OIL & GAS S.A.S.** y **CNEOG COLOMBIA SUCURSAL COLOMBIA** (en adelante "CANACOL"), manifiestan que, en su opinión, **TERMOBARRANQUILLA S.A. E.S.P.** (en adelante "TEBSA") es garante de las obligaciones asumidas por **VP INGENERGÍA S.A. E.S.P.** (en adelante "VP") bajo los Contratos de Suministro de Gas CNEGN-01-2016, CNEOG-CI-VP-01-2022 y CNEOG-CF-VP-01-2022 (en adelante los "Contratos VP – Canacol").

Al respecto, sea lo primero recordarles, que TEBSA no es parte de los Contratos VP – Canacol y, por lo mismo, desconoce los términos y condiciones de estos. Si en algún momento Canacol o VP consideraron que TEBSA era garante de las obligaciones de VP bajo los mismos, le informo que dicha estipulación no fue consentida por representante legal alguno de TEBSA; mucho menos por algún otro órgano social, ya que el objeto social de TEBSA no permite que sea garante de obligaciones de terceros.

En el mismo sentido, TEBSA tampoco es fiador, codeudor, mucho menos avalista de las obligaciones que VP haya contraído para con CANACOL bajo los contratos antes mencionados.

Por el contrario, y como CANACOL conoce, TEBSA y VP suscribieron el Contrato de Suministro de Gas en Firme No. VP – 0515 del 2 de febrero de 2016 (en adelante el "Contrato VP – TEBSA"), y, es bajo dicho contrato que TEBSA ha honrado de forma escrupulosa sus obligaciones, tal y como VP mismo ha certificado.



---

Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

6c4dd544

COE_202400006

No puede considerar CANACOL que la cesión de una garantía a CANACOL (en su condición de Proveedor de Gas[1]), originalmente emitida por TEBSA a VP bajo el Contrato VP-TEBSA, implica entonces que TEBSA, de forma personal y directa, pasaría a ser, como lo pretende ilusoriamente CANACOL, garante de VP bajo los contratos VP-CANACOL. Una posición de tal naturaleza desconoce la propia institución de la cesión de contratos.

Dicho de otra forma, la sola cesión de los derechos económicos derivados de dicha garantía que podía efectuar el garantizado (VP) en favor del Proveedor de Gas (CANACOL), no convierte a TEBSA en garante de ninguna de las obligaciones de VP bajo los Contratos VP – Canacol.

En suma, TEBSA nunca adquirió obligación de garantía frente a CANACOL bajo el Contrato VP – TEBSA, y mucho menos pudo haberlo hecho bajo los Contratos VP – Canacol, ya que TEBSA no es parte de estos, ni ha consentido en garantizar las obligaciones de VP bajo dichos contratos, ni tiene la capacidad para hacerlo.

Por tal motivo de manera respetuosa pero categórica, rechazamos la manifestación hecha en la comunicación de la referencia de que *"ustedes garantizaron, de diferentes formas las obligaciones asumidas por VP INGENGERÍA SAS ESP como comprador de dichos contratos"*, pues ello no corresponde a la realidad.

Corolario de lo anterior, TEBSA itera su rechazo frente al requerimiento del pago de las facturas CNEG-511, CNEG-514, CNEG-524, CNEG-550, CNEG-551, CNEG-553, CNEG-562, CNSC-431, CNSC-384 CNSC-405, CNSC-445, CNSC-407, CNSC-420, CNSC-450 y CNSC-444 (mencionadas todas ellas en la comunicación que aquí respondemos[2]), ya que TEBSA ni es obligado directo del pago del suministro efectuado por CANACOL a VP, ni es garante, fiador o codeudor ni avalista de dichas obligaciones.

Ahora bien, en cuanto a las preguntas que formula acerca de (i) si TEBSA ha hecho pagos VP por concepto del gas que esta le suministró y dónde y cuándo se han hecho esos pagos, y (ii) si TEBSA ha recibido alguna instrucción de no pagar dicho gas, insistimos en lo manifestado en nuestra comunicación del 21 de diciembre de 2023; comunicación que incluye las respuestas a estos interrogantes. A fuerza de ser reiterativos, a continuación, sintetizamos las respuestas allí contenidas, y agregamos:

---

[1] Como este término se encuentra definido en el Contrato VP – TEBSA.
[2] Y en aquella otra comunicación del 19 de diciembre de 2023 a la cual dimos respuesta mediante la misiva COE_202301531 del 21 de diciembre de 2023.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

6c4dd544



COE_202400006

1. TEBSA se encuentra al día con sus obligaciones de pago frente a VP; cumplimiento que el mismo VP certificó a través de un documento emitido a instancia de TEBSA el 19 de diciembre de 2023

2. TEBSA y VP pactaron una cláusula de confidencialidad en el Contrato VP - TEBSA, que impide revelar los términos y condiciones particulares de dicho negocio jurídico, así como los pormenores de su ejecución.

3. TEBSA no se encuentra obligada legalmente a proporcionar dicha información a CANACOL, por ser parte de los libros y papeles de comercio de TEBSA; además de estar cubierta por la confidencialidad antes mencionada. Revelar tal información implica un incumplimiento grave de TEBSA al Contrato VP-TEBSA.

En los anteriores términos damos respuesta a su comunicación S-COG-20231773-VLG del 29 de diciembre de 2023, poniendo de presente una vez más a CANACOL que la controversia que parece tener su compañía con VP está impactando negativamente a TEBSA, quien se reserva todos los derechos de reclamar al directo e indirecto responsable de los daños causados por la misma y, de forma particular, de los efectos de la terminación unilateral que ha declarado CANACOL a VP -y que nos fuera informada por ustedes- bajo los Contratos VP – Canacol.

Atentamente,

LUIS MIGUEL FERNANDEZ ZAHER
Presidente

Copia: VP INGENERGÍA SAS ESP

Elaborado por: VIRGILIO DIAZ GRANADOS PERDOMO
Revisado por:

Archívese en:



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

6c4dd544

99

COE_202400287

Barranquilla, 13 de marzo de 2024

Señores
CNE OIL & GAS S.A.S
CNEOG COLOMBIA SUCURSAL COLOMBIA
Atn. DAVID ESPINOSA ACUÑA
Apoderado
Al correo electrónico: contacto@deaa.com.co

Asunto: Respuesta a su derecho de petición del 22 de febrero de 2024

Respetado señor:

Por medio del presente, damos respuesta a su derecho de petición del 22 de febrero de 2024. Para tal fin, *primero* nos referiremos a unas breves consideraciones sobre el acto de apoderamiento con base en el cual usted presentó el derecho de petición en nombre de CNE OIL & GAS S.A.S y CNEOG COLOMBIA SUCURSAL COLOMBIA; *segundo,* por el carácter de las afirmaciones contenidas en los antecedentes contenidos en el derecho de petición, haremos claridad y precisión sobre las imprecisiones allí incluidas y, *tercero,* responderemos, con los precisos límites que trae la ley, a sus solicitudes.

**PRIMERO. CONSIDERACIONES PRELIMINARES**

**1.     En relación con el acto de apoderamiento:**

Revisado el acto de apoderamiento presentado como anexo al derecho de petición, consideramos que no fue otorgado en debida forma para que usted actúe en representación de los peticionarios **CNE OIL & GAS S.A.S.** (en adelante "CNE"), y **CNEOG COLOMBIA SUCURSAL COLOMBIA** (en adelante "CNEOG" y en conjunto con CNE "CANACOL" o el "Proveedor de Gas"[1]).

En efecto, como anexo al derecho de petición únicamente allegó copia del poder especial otorgado por el señor ANDRÉS VALENZUELA PACHÓN a usted como abogado, pero no fue adjuntado como prueba la calidad de representante legal de dicha persona respecto de CNE y CNEOG, de modo tal que no es posible validar la afirmación sobre la representación ejercida por el Sr. VALENZUELA PACHÓN y, en caso de que tal verificación fuere positiva, si

---

[1] Según este término se encuentra definido en el Contrato No. VP – 0515 del 2 de febrero de 2016.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16

**TEBSA**
Energía disponible

COE_202400287

dicha persona estaba o no facultada para constituir apoderados especiales para elevar peticiones como la enviada a nuestro conocimiento.

Sin perjuicio de lo anterior, bajo el principio de buena fe y de la prevalencia de la sustancia sobre las formas que debe campear el ejercicio del derecho fundamental de petición, TERMOBARRANQUILLA S.A. ESP ("TEBSA") entenderá que usted es el peticionario y, en consecuencia, procederá a dar respuesta a sus interrogantes en los términos que se exponen más adelante.

**2. En relación con algunas afirmaciones contenidas en los "Antecedentes"del derecho de petición:**

Los "Antecedentes" de su petición contienen protuberantes imprecisiones que TEBSA considera pertinente y útil aclarar desde ya pues las mismas inciden en el sentido y alcance tanto de las solicitudes como de las respuestas brindadas más adelante.

*Primero*, TEBSA no conoce los términos, condiciones o clausulado del "*contrato de gas*" celebrado en el año 2016 entre CANACOL y la empresa VP INGENERGÍA S.A.S. E.S.P. (en adelante "VP") como tampoco un "*acuerdo de gas*" ejecutado "*en el marco de la ejecución de dicho negocio jurídico*". En consecuencia, TEBSA desconoce los pormenores de dicha relación comercial, en tanto no es parte, ni tercero vinculado a dicho negocio jurídico. En consecuencia, los antecedentes numerados como 1, 2 y 3 son desconocidos por TEBSA.

*Segundo*, TEBSA no conoce los términos, condiciones y/o estipulaciones del contrato de fiducia mercantil en garantía al que hace referencia el peticionario (en adelante la "Fiducia") en el ordinal 4 de los "Antecedentes", pues TEBSA no es parte de dicho contrato, ni tiene la calidad de fideicomitente, fideicomisario y/o beneficiario de este. Tampoco prestó su consentimiento para quedar "involucrada" en la fiducia indicada en el ordinal 3.

En cuanto a las afirmaciones posteriores, numeradas 4 a siguientes, aclaramos lo siguiente, así:

*Tercero*, los pagos bajo el Contrato de Suministro de Gas No. VP – 0515 (en adelante el "Contrato VP – TEBSA") los hizo TEBSA a órdenes de VP conforme a sus instrucciones y que, en síntesis, implicaban pagar prestaciones dinerarias en la Fiducia antes mencionada. Desde luego que el cumplimiento de la prestación bajo el contrato indicado por parte de TEBSA en la Fiducia no implica obligación alguna ni para con la Fiducia, ni con la sociedad fiduciaria, ni para con ninguna de las partes del contrato de fiducia, ni mucho menos para con sus beneficiarios.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16

50

TEBSA
Energía disponible

COE_202400287

*Cuarto*, TEBSA no es garante de las obligaciones contractuales que pudo haber consentido VP respecto de CANACOL en el marco del **"contrato de gas"** celebrado en el año 2016 como tampoco del **"acuerdo de gas"** suscrito entre tales partes, independientes y ajenas a TEBSA. Reiteramos que TEBSA nunca asumió obligación de garantía frente a CANACOL, tal como se explica más adelante en nuestra repuesta a las preguntas 6 a 11 de su petición.

En síntesis, TEBSA no tiene -ni ha tenido- obligación frente a CANACOL y rechaza cualquier afirmación del peticionario que pretenda generar obligaciones que TEBSA jamás ha consentido y/o asumido. En este sentido, como podrá advertir el peticionario, deben ser observadas las respuestas a las solicitudes que a continuación proveemos:

**SEGUNDO. RESPUESTA DE FONDO A CADA UNA DE LAS SOLICITUDES**

1. **INFORME si la sociedad TERMOBARRANQUILLA S.A. E.S.P. efectivamente recibió el gas proveniente de CNE OIL & GAS S.A.S. y CNEOG COLOMBIA SUCURSAL COLOMBIA, a través de la sociedad VP INGENERGÍA S.A.S. E.S.P.**

Para dar respuesta a su pregunta, lo primero que debemos precisar es que TEBSA adquiría el gas de VP. Adicionalmente, TEBSA no es comprador del gas de CNE o de CNEOG porque, como lo advertimos en los antecedentes, en el Contrato de Suministro de Gas No. VP – 0515 la parte vendedora es VP. Desconocemos si CNE o CNEOG actuaban por conducto de o "a través de la sociedad" VP como parece afirmarlo su pregunta. Lo cierto es que TEBSA no consintió en celebrar un contrato con CNE o CNEOG con el objeto y para los propósitos indicados en el Contrato VP – TEBSA.

Adicionalmente, desde el mes de septiembre de 2023 VP dejó de entregar a TEBSA la totalidad de los volúmenes de gas que fueron nominados; y desde el mes de diciembre de ese mismo año cesaron por completo las entregas de gas a TEBSA.

Las circunstancias antes mencionadas han ocasionados graves perjuicios económicos a TEBSA que esta no se encuentra en el deber de soportar; perjuicios que no han sido debidamente compensados o resarcidos a la fecha, razón por la que TEBSA se reserva el derecho de exigir, frente a quien corresponda, la indemnización integral de perjuicios.

Con lo anterior damos respuesta clara, completa y de fondo a su pregunta.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16

**TEBSA**
Energía disponible

COE_202400287

**2. A propósito de lo anterior, INFORME si TERMOBARRANQUILLA S.A. E.S.P. efectivamente pagó el gas con destino a ITAÚ FIDUCIARIA COLOMBIA S.A. SOCIEDAD FIDUCIARIA**

TEBSA no tiene obligación dineraria frente a VP por el suministro de gas bajo el Contrato de Suministro de Gas No. VP – 0515 pues ha cumplido escrupulosamente con sus obligaciones de pago del suministro.

Adicionalmente, y como fue afirmado al hacer algunas precisiones sobre los "Antecedentes", TEBSA tampoco tiene obligación respecto de la Fiducia, ni frente a la sociedad Fiduciaria, ni de ninguna de las partes del contrato de fiducia ni su(s) beneficiario(s). Reiteramos que TEBSA no fue parte del mentado contrato de fiducia.

Con la anterior precisión, TEBSA manifiesta que los pagos efectuados por concepto de suministro de gas bajo el Contrato VP – TEBSA, se efectuaron a VP, como titular único y exclusivo del derecho, en la forma, condiciones y oportunidad indicada por aquel como acreedor.

Con lo anterior damos respuesta clara, completa y de fondo a su pregunta.

**3. En caso de que la respuesta al numeral anterior sea afirmativa, entregue copia de las constancias de pago de cada cantidad de producto proveniente de mis representadas, a través de VP INGENERGÍA S.A.S. E.S.P.**

TEBSA y CANACOL no tienen una relación comercial y/o contractual en virtud de la cual TEBSA se encuentre obligada a entregar a CANACOL constancias de cantidades recibidas, ni constancia de pago por dichas cantidades. La información que solicita el peticionario goza de reserva y confidencialidad.

En efecto, la información solicitada se encuentra cobijada por la cláusula de confidencialidad pactada en el Contrato VP – TEBSA, que impide a mi representada revelar los términos y condiciones particulares de dicho negocio jurídico, así como los pormenores de su ejecución, incluido, pero no limitado a, las cantidades de gas nominadas, las cantidades de gas entregadas, las facturas y soportes de pago, etc.

Las facturas emitidas por VP a TEBSA, su aceptación por parte de esta última, y el pago de estas (incluidos sus comprobantes), corresponden a información que se encuentra sujeta a reserva conforme al artículo 61 del Código de Comercio, pues dichos documentos conforman los libros y papeles del comerciante que gozan de protección legal[2].

---

[2] ARTÍCULO 61. <EXCEPCIONES AL DERECHO DE RESERVA>. Los libros y papeles del comerciante no podrán examinarse por personas distintas de sus propietarios o personas autorizadas para ello, sino para los fines indicados en la Constitución Nacional y mediante orden de autoridad competente.
Lo dispuesto en este artículo no restringirá el derecho de inspección que confiere la ley a los asociados sobre libros y papeles de las compañías comerciales, ni al que corresponda a quienes cumplan funciones de vigilancia o auditoría en las mismas.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16

5)



COE_202400287

De igual manera, la información solicitada por la peticionaria es de tipo comercial, financiera y/o de servicios, por lo que goza de la confidencialidad que otorga la Ley 1266 de 2008[3]. Sumado a lo anterior, los documentos objeto de la petición son catalogados como reservados por la Ley 1755 de 2015 por ser protegidos por el secreto comercial o industrial de TEBSA.

En igual sentido, por tratarse de documentos protegidos por el secreto comercial o industrial, a dichos documentos les es aplicable la protección contemplada por el artículo 260 de la Decisión 486 de 2000 de la Comunidad Andina de Naciones, por lo que los documentos solicitados gozan de carácter reservado y confidencial[4].

Con lo anterior damos respuesta clara, completa y de fondo a su pregunta.

4. **INFORME si TERMOBARRANQUILLA S.A. E.S.P. conoce o fue enterada de que VP INGENERGÍA S.A.S E.S.P. sustrajo los recursos de la fiducia que contenía los pagos en favor de CNE OIL & GAS S.A.S y CNEOG COLOMBIA SUCURSAL COLOMBIA.**

TEBSA le reitera que no conoce ni los términos, ni las condiciones, ni las estipulaciones propias del contrato de Fiducia y que carece de precisión sobre quiénes son las partes del contrato de Fiducia, en tanto que no hace parte de este, ni asumió obligación alguna bajo o en relación con dicho contrato.

En este sentido, TEBSA no tiene conocimiento respecto operaciones, actuaciones o comportamientos de VP realizadas al amparo de dicho contrato de fiducia, mucho menos de alguna sustracción indebida de recursos o de sumas de dinero que allí se hubieren depositado.

Con lo anterior damos respuesta clara, completa y de fondo a su pregunta.

5. **INFORME si TERMOBARRANQUILLA S.A. E.S.P. conoce, fue enterada o participó de la instrucción irrevocable de no pago que impartió a VP INGENERGÍA S.A.S. E.S.P. que derivó en el no pago a CNE OIL & GAS S.A.S y CNEOG COLOMBIA SUCURSAL COLOMBIA por el gas efectivamente entregado.**

---

[3] Por la cual se dictan las disposiciones generales del hábeas data y se regula el manejo de la información contenida en bases de datos personales, en especial la financiera, crediticia, comercial, de servicios y la proveniente de terceros países y se dictan otras disposiciones.
[4] Artículo 260.- Se considerará como secreto empresarial cualquier información no divulgada que una persona natural o jurídica legítimamente posea, que pueda usarse en alguna actividad productiva, industrial o comercial, y que sea susceptible de transmitirse a un tercero, en la medida que dicha información sea: a) secreta, en el sentido que como conjunto o en la configuración y reunión precisa de sus componentes, no sea generalmente conocida ni fácilmente accesible por quienes se encuentran en los círculos que normalmente manejan la información respectiva; b) tenga un valor comercial por ser secreta; y c) haya sido objeto de medidas razonables tomadas por su legítimo poseedor para mantenerla secreta. La información de un secreto empresarial podrá estar referida a la naturaleza, características o finalidades de los productos; a los métodos o procesos de producción; o, a los medios o formas de distribución o comercialización de productos o prestación de servicios.

Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 Nº. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16



COE_202400287

TEBSA reitera que no tiene conocimiento de los términos, condiciones, estipulaciones, ni de las partes del contrato de Fiducia, ni conoce los pormenores de su operación y funcionamiento por cuanto no es parte de tal contrato. Me remito a lo afirmado en respuestas anteriores, incluyendo los comentarios incluidos como precisiones al capítulo "Antecedentes" del derecho de petición.

Cualquier información propia sobre instrucciones impartidas a la Fiduciaria deberán ser consultadas directamente a VP y/o a la Fiduciaria misma.

En consecuencia, en la hipótesis planteada en la solicitud, afirmo tajantemente que TEBSA *no conoció, ni fue enterada, ni participó* en una *"instrucción irrevocable de no pago... que derivó en el no pago a CNE OIL & GAS S.A.S. y CNEOG COLOMBIA SUCURSAL COLOMBIA"*. TEBSA entiende que esto es un asunto que concierne a las partes del contrato de fiducia que el peticionario identifica en su solicitud y, en consecuencia, es un tema que debe ser ventilado, aclarado y dirimido entre ellas.

Con lo anterior damos respuesta clara, completa y de fondo a su pregunta.

**6. Informe si según su comunicación del 5 de enero del presente año afirma que "Si en algún momento Canacol o VP consideraron que TEBSA era garante de las obligaciones de VP bajo los mismos, le informo que dicha estipulación no fue consentida por representante legal alguno de TEBSA; mucho menos por algún otro órgano social, ya que el objeto social de TEBSA no permite que sea garante de obligaciones de terceros", entonces, ¿Por qué TEBSA figura como ORDENANTE de la Garantía Bancaria No. 07002026100924719 de Davivienda, emitida el 2 de noviembre de 2022 por valor de COP $78.931.611.900, con vencimiento 30 de noviembre de 2023, en la que como beneficiarios figuran CNE OIL & GAS S.A.S. Nit. 900.713.658-0 y CANACOL ENERGY COLOMBIA S.A.S. Nit. 830.095.563-3?**

TEBSA ratifica en su integridad el contenido de su comunicación del 5 de enero de 2024, en la cual de manera diáfana y contundente expresó a CANACOL que TEBSA no es garante, fiador, codeudor, ni avalista de las obligaciones que VP hubiese contraído para con CANACOL bajo los contratos suscritos entre estas últimas.

Ahora bien, frente a su pregunta concreta, la Garantía Bancaria No. 07002026100924719, emitida el 2 de noviembre de 2022 (en adelante la "Garantía Bancaria No. 4719"), tenía por objeto amparar el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, multas, cargos y sobrecostos **a raíz del incumplimiento de las obligaciones contractuales de TEBSA bajo el Contrato No. VP – 0515 de 2016**. En otras palabras, el Contrato garantizado con la Garantía Bancaria No.

Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16

52

**TEBSA**
Energía disponible

COE_202400287

4719 fue el Contrato VP – TEBSA, y no los contratos celebrados entre VP y CANACOL.

No cambia la anterior manifestación un escenario bajo el cual la Garantía Bancaria tuviera como "Beneficiarios Finales" a CANACOL. Al efecto, reiteramos que TEBSA NO asumió la posición de garante de las obligaciones de un tercero – VP –; mucho menos que TEBSA estuviese asumiendo obligación de garantía frente al Proveedor de Gas. Por el contrario, la mención a CNE y CNEOG se trataba de un instrumento a través del cual TEBSA habilitaba la cesión a favor del Proveedor de Gas de los derechos económicos que se originaran en el evento de ejecutarse la garantía, por incumplimiento de TEBSA de sus obligaciones propias dentro del Contrato VP-TEBSA, conforme a las previsiones del mismo.

En suma, el objeto de que TEBSA figurara como Otorgante de la Garantía Bancaria No. 4719, y que a su vez CANACOL figurara como "Beneficiarios Finales" de esta, no era otra cosa que cubrir el riesgo de que TEBSA incumpliera sus obligaciones frente a VP -hipótesis que no se dio- y que, a su vez, VP incumpliera sus propias obligaciones frente a CANACOL por cuenta del incumplimiento de TEBSA. Y en este evento, podría materializase la cesión de los derechos económicos derivados de la ejecución de la garantía, conforme los acuerdos contenidos en el Contrato VP-TEBSA.

Finalmente, TEBSA reitera que no es garante, fiador, codeudor, ni avalista de las obligaciones que VP hubiese contraído para con CANACOL bajo los contratos suscritos entre estas últimas.

En los anteriores términos damos respuesta clara, completa y de fondo a su pregunta.

7. **¿Por qué TEBSA figuraba como ORDENANTE de la Garantía Bancaria No 07002026101061412 de Davivienda, emitida el 31 de octubre de 2023, por valor de COP $102.332.916.000, con vencimiento 30 de noviembre de 2024, en la que como beneficiarios figuraban CNE OIL & GAS S.A.S. Nit. 900.713.658-0 y CNEOG Colombia Sucursal Colombia, Nit.900.276.770-2?**

TEBSA manifiesta una vez más que no es garante, fiador, codeudor, ni avalista de las obligaciones que VP hubiese contraído para con CANACOL bajo los contratos suscritos entre estas últimas.

Ahora bien, frente a su pregunta concreta, es pertinente recordar que la Garantía Bancaria No. 07002026101061412, emitida el 31 de octubre de 2023 (en adelante la "Garantía Bancaria No. 1412"), tenía por objeto amparar el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, multas, cargos y sobrecostos a raíz del incumplimiento de las obligaciones contractuales de TEBSA bajo el Contrato



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16



COE_202400287

No. VP – 0515 de 2016. Es decir, que el Contrato garantizado con la Garantía Bancaria No. 1412 fue el Contrato VP – TEBSA, y no los contratos celebrados entre VP y CANACOL, y, por ende, CANACOL no puede desprender de ello consecuencias legales que no corresponde, como de manera bastante sugestiva lo hace en su pregunta.

Por lo demás, y con relación a esta garantía, reiteramos lo indicado en respuesta anterior, que explica la circunstancia presentada en su pregunta respecto de la Garantía Bancaria No. 4719.

En cualquier caso, es importante tener en cuenta que la Garantía Bancaria No. 1412 fue rechazada expresamente por CANACOL, tal como consta en la comunicación S-CON-20231366-VLG del 14 de noviembre de 2023, y que la misma fue reemplazada por las Garantías Bancarias No. 07002026101065306 y 07002026101065314, en las que figura como Otorgante TEBSA y Beneficiario VP.

Así las cosas, TEBSA reitera que no es garante, fiador, codeudor, ni avalista de las obligaciones que VP hubiese contraído para con CANACOL bajo los contratos suscritos entre estas últimas.

En los anteriores términos damos respuesta clara, completa y de fondo a su pregunta.

**8. ¿Las garantías bancarias referidas en las dos preguntas anteriores se emitieron por cuenta y orden de TERMOBARRANQUILLA S.A. E.S.P.?**

Como se señaló en la respuesta a las preguntas 6 y 7, TEBSA reitera que la condición de Ordenante de las Garantías Bancarias se basó en que lo garantizado era el Contrato No. VP – 0515 de 2016, del cual eran partes TEBSA y VP, y que con dichas Garantías se daba cumplimiento al otorgamiento de las mismas y con la habilitación para la cesión de la garantía, de conformidad con el Contrato VP – TEBSA, sin que por ello TEBSA adquiriera la condición de garante frente a CANACOL, cosa que reiteramos, nunca sucedió.

**9. ¿Las garantías bancarias 07002026100924719, 07002026101061412 tenían como beneficiarios a CNE OIL & GAS S.A.S. Nit. 900.713.658-0 y CANACOL ENERGY COLOMBIA S.A.S. Nit. 830.095.563-3, y CNEOG Colombia Sucursal Colombia, Nit. 900.276.770-2?**

Las Garantías Bancarias tenían como "Destinatarios Finales" a CANACOL, conforme al entendimiento y alcance expuesto en la respuesta a las preguntas 6, 7 y 8.



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16

**TEBSA**
Energía disponible

COE_202400287

Nuevamente reiteramos que la Garantía Bancaria No. 1412 fue rechazada expresamente por CANACOL, tal como consta en la comunicación S-CON-20231366-VLG del 14 de noviembre de 2023.

Por lo tanto, de la presente respuesta CANACOL no puede colegir nada distinto que lo expresado en dichas respuestas y rechaza cualquier interpretación que en contrario pretenda darle CANACOL.

**10. ¿Si según su comunicación del 5 de enero de 2024, TEBSA no era garante de ninguna obligación a favor de mis representadas, por qué estas aparecían como beneficiarias de las Garantías Bancarias de Davivienda ya mencionadas?**

TEBSA reitera que no es garante de ninguna obligación respecto de CANACOL y le solicita remitirse a la respuesta a las preguntas número 6, 7, 8 y 9 donde explicamos a espacio lo relativo a las Garantías Bancarias.

**11. Si según su comunicación del 5 de enero de 2024, TEBSA no era garante de ninguna obligación a favor de mis representadas, ¿las Garantías Bancarias de Davivienda identificadas en preguntas anteriores, en las que TEBSA tenía la calidad de Ordenante no se correspondían con la realidad?**

TEBSA reitera que no es garante de ninguna obligación respecto de CANACOL y le solicita remitirse a la respuesta a las preguntas anteriores donde explicamos lo relativo a las Garantías Bancarias.

Atentamente,

LUIS MIGUEL FERNANDEZ ZAHER
Presidente

Elaborado por: ISAMARY BARRIOS ALVARADO
Revisado por:



Termobarranquilla S.A. E.S.P. • Dir.: Calle 18 N°. 39 – 250 – Soledad – Atlántico – Colombia • PBX.: 375 99 00
www.tebsa.com.co • NIT: 800.245.746-1

4520ff16

**VP** INGENERGÍA

VP-2067

Bogotá, 13 de julio de 2022

Señores:
**CNE OIL & GAS S.A.S.**
**CANACOL ENERGY COLOMBIA S.A.**
Att. Andrés Valenzuela Pachón
Representante Legal
Att. Jorge Linero
Presidente de Gas
Calle 113 No. 745 Torre B Piso 15. Edifico Teleport
Bogotá

**Asunto:**     Acuerdo de Gas entre Canacol Energy Colombia S.A., CNE Oil & Gas S.A.S. Y VP Ingenería S.A.S. E.S.P.

En atención al Acuerdo de Gas suscrito el pasado 30 de noviembre de 2021, donde se pactó la suscripción de un Otrosí al contrato CNEGN-01-2016 en los términos y condiciones establecidos en el numeral II de la Cláusula Primera de dicho documento, con cláusula suspensiva sujeta a la aprobación por parte de la Junta Directiva del Destinatario Final a las modificaciones del contrato de suministro vigente entre VP y TEBSA, nos permitimos notificar, en los términos de numeral 2.1.2 de la Cláusula Segunda del Acuerdo de Gas, que VP cuenta con la aprobación que materializa el negocio jurídico correspondiente.

En virtud de lo anterior damos cabal cumplimiento al Acuerdo, no obstante haber sido manifiesto previamente en las múltiples revisiones documentales, conversaciones telefónicas y reuniones sostenidas desde el pasado 9 de mayo de 2022, agradecemos en consecuencia se proceda con la suscripción y envío para nuestra firma y custodia del Otrosí No 4 al Contrato CNEGN-01-2016 para así perfeccionar lo pactado en el Acuerdo de Gas firmado el 30 de noviembre de 2021.

Cordial saludo,

**DARLYN YESENIA NEIRA CARO**
Representante Legal

**OFICINA PRINCIPAL:** Calle 93 #17-23 / Oficina 801 / (1) 4624673 / Bogotá Colombia  ●  **CENTRO DE DOCUMENTACIÓN:** Cra 29 # 45-45 / Oficina 1112 / (7) 6476968 / Bucaramanga

**W W W . V P S A . C O**



CONTRATOS DE FIDUCIA

*0978*



Fiduciaria

NIT. 800.141.021-1

**CONTRATO DE FIDUCIA MERCANTIL DE ADMINISTRACIÓN Y PAGOS CELEBRADO ENTRE VP INGENIERIA S.A. E.S.P. y HELM FIDUCIARIA S.A.**

Este Contrato de Fiducia se suscribe entre **EL FIDEICOMITENTE** y **EL FIDUCIARIO** determinados de acuerdo con lo señalado en el Cuadro de Declaraciones, en sus numerales uno (1) y dos (2) del Capítulo Segundo del Cuadro de Declaraciones, quienes conjuntamente se denominarán "Las Partes" y quienes hemos acordado celebrar un **CONTRATO DE FIDUCIA MERCANTIL DE ADMINISTRACIÓN Y PAGOS**, el cual se regirá por el Estatuto Orgánico del Sistema Financiero y demás normas concordantes y en especial por las condiciones especiales y definiciones establecidas en el Cuadro de Declaraciones y las Cláusulas que a continuación se señalan.

**PRIMERA PARTE**
**CUADRO DE DECLARACIONES**

El presente Cuadro de Declaraciones señala las condiciones particulares y especiales del presente contrato y en caso de conflicto entre los términos señalados en las Cláusulas y este Cuadro de Declaraciones prevalecerán estas últimas.

I.    **CAPÍTULO PRIMERO**

**DEFINICIONES**

Los términos que comiencen con mayúsculas en el presente contrato tendrá el significado que se le asigna en este documento:

* **ACTIVO:** Corresponde a los recursos dinerarios o derechos económicos derivados del **CONTRATO DE SUMINISTRO DE GAS** en Firme suscrito entre **TERMOBARRANQUILLA S.A. ESP** con **EL FIDEICOMITENTE**, los cuales serán transferidos al **FIDEICOMISO** que se constituye mediante el presente documento.

  Dichos recursos serán transferidos directamente por el **PAGADOR** al **FIDEICOMISO**, con el fin de que sirvan de pago de la Deuda adquirida por **EL FIDEICOMITENTE** para que sean administrados y se realicen pagos por parte del **FIDEICOMISO** de acuerdo con las instrucciones que al respecto manifieste **EL FIDEICOMITENTE** o las condiciones de pagos que para el efecto remita el **BENEFICIARIO DE PAGO** registrado en **EL FIDEICOMISO**.

  El **ACTIVO** conforma los **BIENES FIDEICOMITIDOS**.

  **BENEFICIARIO DE PAGO:** Será la compañía CNE OIL & GAS S.A.S., entidad que ha suscrito un contrato de suministro de gas en firme No. CNEGN-01-2016 con **EL FIDEICOMITENTE** y que se encuentra(n) identificado(s) en el numeral tercero (3º) del capítulo segundo de este CUADRO DE DECLARACIONES.

  **BIENES FIDEICOMITIDOS:** Son el **ACTIVO** y los demás bienes muebles y/o cosas corporales y/o incorporales en los términos del Código Civil que son transferidos por **EL FIDEICOMITENTE** al **FIDEICOMISO**.

  **CLÁUSULAS:** Corresponde al texto donde se incluyen todas las cláusulas generales del presente negocio jurídico.

M1
Fitch Ratings
Colombia S.A.



ISO 9001
icontec
SC 3846-1

IQNet

Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3855020

*Helm.*

Fiduciaria

NIT. 800.141.021-1

- **CONTRATO DE FIDUCIA:** Es el presente contrato suscrito entre **HELM FIDUCIARIA S.A.** y **EL FIDEICOMITENTE** y el cual regula íntegramente las relaciones jurídicas entre **EL FIDEICOMITENTE, EL FIDUCIARIO** y **EL BENEFICIARIO DE PAGO**. El Contrato de Fiducia está integrado por el presente Cuadro de Declaraciones, las Cláusulas y todos los anexos señalados en este documento.

- **CUADRO DE DECLARACIONES:** Corresponde a esta primera parte del Contrato de Fiducia, en la cual se señalan las condiciones particulares o especiales del contrato de fiducia mercantil de administración y pagos. Las disposiciones establecidas en este definen el contenido del contrato de fiducia y forman parte del Contrato de Fiducia.

- **FECHA DEL CONTRATO DE FIDUCIA:** Es la fecha en la cual se perfecciona y celebra el contrato por concurrir la voluntad de todas las partes que en él intervienen. Esta fecha corresponde a la fecha en la que **EL FIDUCIARIO** suscribe el **CONTRATO DE FIDUCIA**.

- **FIDEICOMISO O PATRIMONIO AUTÓNOMO:** Es el conjunto de bienes, derechos y obligaciones que conforman el patrimonio autónomo que por este documento se constituye.

- **FIDEICOMITENTE:** Es (son) la(s) persona(s) natural(es) y/o jurídica(s) que mediante este documento transfiere(n) los BIENES FIDEICOMITIDOS con el fin de cumplir el objeto y finalidad de este Contrato de Fiducia y que se encuentra(n) identificado(s) en el numeral primero (1º) del capítulo segundo de este CUADRO DE DECLARACIONES.

- **OTROS ACTIVOS:** Corresponde a aquellos derechos o sumas de dinero que ante el evento de una disminución de los ingresos producidos por el ACTIVO, deban ser incorporados con el objetivo de poder continuar pagando LA DEUDA.

- **PAGADOR:** Es TERMOBARRANQUILLA S.A. ESP, quien ha suscrito un contrato de suministros de gas con **EL FIDEICOMITENTE**, a quien **EL FIDEICOMITENTE** se obliga a instruir para que el pago por la compra del gas directamente ingresen al FIDEICOMISO, conforme al "Modelo de Notificación de Cesión de Derechos Económicos" de este contrato y que remitirán "Aceptación de la Cesión de Derechos Económicos".

- **DEUDA:** Es la suma de dinero que adeudará **EL FIDEICOMITENTE** al BENEFICIARIO DE PAGO correspondiente al contrato suscrito entre las partes, y que **EL FIDEICOMITENTE** y/o El FIDEICOMISO debe pagar a **EL BENEFICIARIO PAGO**, de acuerdo con las facturas presentadas por **EL FIDEICOMITENTE** A LA **FIDUCIARIA** .

- **CONTRATO DE SUMINISTRO DE GAS:** Es el contrato de suministro de gas suscrito entre TERMOBARRANQUILLA S.A. ESP y VP INGENERGÍA S.A. E,S,P, el día de Febrero 02 de 2016.

- **SERVICIO DE TRANSPORTE:** Cuando el punto de entrega del suministro de gas sea el Sistema de Transporte – SNT Cartagena, VP INGENERGIA S.A. ESP, tendrá a cargo el transporte del gas hasta el sistema de Transporte – SNT Cartagena, pero el responsable frente a TERMOBARRANQUILLA S.A. ESP por la entrega del gas será VP INGENERGIA S.A. ESP.



**M1**
Fitch Ratings
Colombia S.A.



ISO 9001

● icontec
SC 3846-1





Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Fax: (P.B.X.) 3851818 Fax: 3585020

*Helm.*
Fiduciaria

NIT. 800.141.021-1

II.   CAPÍTULO SEGUNDO

**CONDICIONES DEL CONTRATO DE ADMINISTRACIÓN Y PAGOS**

**1. EL FIDUCIARIO:**

| | |
|---|---|
| RAZON O DENOMINACION SOCIAL: | **HELM FIDUCIARIA S.A.** |
| CONSTITUCIÓN: | Escritura pública número 6128 del 23 de septiembre de 1991 otorgada en la Notaría 18 del Circulo de Bogotá D.C. |
| NACIONALIDAD: | Colombiana |
| DOMICILIO PRINCIPAL: | Bogotá D.C. |
| NOMBRE REPRESENTANTE LEGAL: | **ANGELA ISABEL RIVERA CORREA** |
| IDENTIFICACIÓN REPRESENTANTE LEGAL: | C.C. 39.791.361 de Usaquén |
| DIRECCIÓN: | Carrera 7 Número 27-18 Piso 19 |
| TELÉFONO: | 5 81 81 81 |
| FAX: | 3 27 67 32 |
| CIUDAD: | Bogotá D.C. - Colombia |

**2. EL(LOS) FIDEICOMITENTE(S):**

| | |
|---|---|
| RAZÓN O DENOMINACIÓN SOCIAL: | **VP INGENERGIA S.A. ESP** |
| CONSTITUCIÓN: | Escritura Pública No. 1106 de Julio 29 de 1.927 en la Notaria 3 del Circulo Notarial de Bogotá D.C |
| NACIONALIDAD: | Colombiana |
| DOMICILIO PRINCIPAL: | Bogotá D.C. |
| AUTORIZACIÓN PARA CELEBRAR EL CONTRATO: | N.A. |
| NIT: | 900305404-7 |
| NOMBRE REPRESENTANTE LEGAL: | **ALVARO AUGUSTO VARGAS BRAVO** |
| IDENTIFICACIÓN REPRESENTANTE LEGAL: | C.C. 91.241.213 de Bucaramanga |
| OBJETO SOCIAL: | Comercialización Gas Natural |
| DIRECCIÓN: | Calle 122 No. 51-07 Of. 503 Bogotá |
| DIRECCION DE NOTIFICACION: | Carrera 29 No. 45-45 Of. 1112 Bucaramanga |
| TELÉFONO: | (7) 6476968 |
| CORREO ELECTRÓNICO: | alvarovargas@vpsa.co |

**3. EL BENEFICIARIO DE PAGO:**

| | |
|---|---|
| RAZON O DENOMINACION SOCIAL: | **CNE OIL & GAS S.A.S.** |
| CONSTITUCIÓN: | Por acta sin número de accionista único del 25 de febrero de 2014, inscrita el 3 de marzo de 2014 bajo el Número 01812358 del libro IX el 3 de marzo de 2014. |
| NACIONALIDAD: | Colombiana |
| DOMICILIO PRINCIPAL: | Bogotá D.C. |
| NIT: | 900.713.658-0 |
| DIRECCION: | Calle 113 No. 7-45 Torre B Of. 1501 |



M1
Fitch Ratings
Colombia S.A.

ISO 9001
iconfec
SC 3846-1



Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica  Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 2016
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3685020

*Helm.*

Fiduciaria

NIT. 800.141.021-1

TELEFONO:                              (1) 6210067
CIUDAD:                                Bogotá D.C.

4. **EL PAGADOR:**

RAZON O DENOMINACION SOCIAL:         **TERMOBARRANQUILLA S.A. ESP**
CONSTITUCIÓN:                        Escritura Pública No. 9994 otorgada el 14 de Octubre de 1994
                                     en la Notaría 1 del círculo notarial de Soledad.
NACIONALIDAD:                        Colombiana
DOMICILIO PRINCIPAL:                 Soledad (Atlántico)
NIT:                                 800.245.746-1
DIRECCION:                           Kilómetro 2 antigua vía a Soledad, Atlántico
TELEFONO:                            (57)3759821
CIUDAD:                              Soledad (Atlántico)

5. **DENOMINACIÓN DEL FIDEICOMISO:** Para todos los efectos, el FIDEICOMISO se denominará **"FIDEICOMISO DE ADMINISTRACIÓN Y PAGOS VP-CNE-TEBSA"** Este FIDEICOMISO operará bajo el NIT 830.053.963-6.

6. Con la suscripción del presente contrato el fideicomitente certifica que los recursos provenientes del activo se encuentran libres de cualquier gravamen o limitación sobre su destinación.

7. **DESCRIPCIÓN DE LOS BIENES FIDEICOMITIDOS:**

   a) La totalidad de los recursos dinerarios transferidos por **EL PAGADOR** derivados del **CONTRATO DE SUMINISTRO DE GAS** suscrito con **EL FIDEICOMITENTE.**
   b) Los rendimientos financieros generados por los bienes fideicomitidos.
   c) Los demás bienes que **EL FIDEICOMITENTE** transfiera, previa suscripción de un otrosí donde se regule la transferencia.

8. **DURACIÓN DEL CONTRATO DE FIDUCIA:** El presente contrato tendrá una duración hasta el 30 de noviembre de 2022 y dos meses más, el cual podrá ser prorrogada por acuerdo entre las partes debidamente instrumentalizado mediante la suscripción del otro sí al Contrato de Fiducia. En todo caso, el contrato permanecerá vigente mientras existan obligaciones a cargo de **EL FIDEICOMITENTE** a favor de **EI BENEFICIARIO DE PAGO.**

9. **FIRMAS AUTORIZADAS:** Es la persona o personas que tienen las facultades conferidas por **EL FIDEICOMITENTE** para instruir a **EL FIDUCIARIO** en la realización de pagos. Las firmas autorizadas son las contenidas en la Tarjeta de Firmas que suministrará **EL FIDUCIARIO**, las cuales podrán ser modificadas mediante comunicación enviada por **EL FIDEICOMITENTE** con las nuevas instrucciones, salvo que en este Cuadro de Declaraciones se exprese lo contrario.

10. **FONDO DE RESERVA:** Si aplica _____     No aplica ___X___

11. **REMUNERACIÓN DEL FIDUCIARIO:** EL FIDEICOMITENTE pagará a EL FIDUCIARIO, por sus servicios, las siguientes comisiones:



**M1**
Fitch Ratings
Colombia S.A.

ISO 9001
icontec
SC 3846-1

IQNet



---

Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



Fiduciaria

NIT. 800.141.021-1

**A. COMISIÓN DE ESTRUCTURACIÓN:** Por la estructuración del **FIDEICOMISO**, **EL FIDEICOMITENTE** pagará a **EL FIDUCIARIO** la suma de **TRES MILLONES DE PESOS MONEDA CORRIENTE ($3.000.000)**. Esta comisión genera IVA y será cancelada por **EL FIDEICOMITENTE**, por una única vez, dentro de los cinco (5) días siguientes a la firma del contrato de fiducia.

**B. COMISIÓN DE ADMINISTRACIÓN:** Por concepto de la administración del contrato de fiducia mercantil, **EL FIDUCIARIO** tendrá derecho a recibir una remuneración mensual equivalente a **DOS PUNTO CERO (2.0) SALARIOS MÍNIMOS MENSUALES LEGALES VIGENTES.** Esta comisión será pagadera por mensualidades vencidas e incluye la realización de hasta un máximo de QUINCE (15) pago mensuales. A partir del pago DIEZ Y SEIS (16) dentro del mismo mes, EL FIDUCIARIO cobrará la suma de VEINTE MIL PESOS (COP$20.000) por cada pago adicional, más IVA. Esta suma se ajustará anualmente de acuerdo con el incremento anual del IPC.

**C. COMISIÓN DE ADMINISTRACIÓN DE RECURSOS:** Por la inversión de los recursos en la Cartera Colectiva Abierta CREDIFONDO, **EL FIDUCIARIO** cobrará la comisión estipulada en el Reglamento de dicha Cartera Colectiva.

**D. COMISIÓN POR MODIFICACIÓN:** Cualquier modificación al presente contrato generará a favor del FIDUCIARIO y a cargo de **EL FIDEICOMITENTE** el pago de una comisión equivalente a **UNO PUNTO CINCO (1.5)** salarios mínimos mensuales legales vigentes.

12. **DOMICILIO:** Para todos los efectos legales y contractuales las partes fijan como domicilio la ciudad de Bogotá D.C.

13. **ANEXOS:**

Son anexos del Contrato de Fiducia los siguientes documentos:

a)   Los certificados de existencia y representación de las partes.
b)   **Anexo No. 1 "Modelo de Notificación de cesión de derechos Económicos".**
c)   **Anexo No. 2 "Aceptación de cesión de derechos Económicos".**
d)   Todas las comunicaciones que se generen en desarrollo del presente contrato.
e)   El reglamento de la Cartera Colectiva Abierta CREDIFONDO, el cual EL FIDEICOMITENTE declara conocer y aceptar.
f)   Pagare en Blanco con Carta de Instrucción debidamente firmada.
g)   Fotocopia de la cédula de ciudadanía del Representante Legal de EL FIDEICOMITENTE.
h)   Tarjeta de Firmas.
i)   Formato Único de Vinculación.
j)   Poder especial para la suscripción de este contrato, si aplicare.

14. **MANIFESTACIÓN DE ACEPTACIÓN DEL CONTENIDO:** Con la firma del Contrato de Fiducia, las partes declaran que han concurrido voluntariamente a su suscripción, conocen y aceptan las previsiones contenidas en este Cuadro de Declaraciones y en las Cláusulas, los cuales conforman en un solo cuerpo el **CONTRATO DE FIDUCIA MERCANTIL DE ADMINISTRACION y PAGOS** y reconocen los derechos y obligaciones que se derivan de dicho contrato los cuales se obligan a ejecutar y cumplir a cabalidad.



**M1**
Fitch Ratings
Colombia S.A.



ISO 9001
icontec
SC 3846-1





Bogotá: Carrera 7 No. 27-18 Piso 19 Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2 Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497 Medellín: Calle 7 No. 39-215 Oficina 20
Teléfono: (4) 6041818 Fax: (4) 3105057 Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239 Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020

*Helm.*

Fiduciaria

NIT. 800.141.021-1

**15. CONDICIONES ESPECIALES**

- Para la realización de los pagos que debe hacer el Fideicomiso al **BENEFICIARIO DE PAGO, EL FIDEICOMITENTE** deberá presentar a **LA FIDUCIARIA** la factura debidamente aprobada por las partes. Dentro de los documentos que debe adjuntar **EL FIDEICOMITENTE** debe adjuntarse la aceptación de la factura por parte de él.

- **LA FIDUCIARIA** realizará el pago siempre y cuando existan recursos en el fideicomiso al **BENEFICIARIO DE PAGO** en la siguiente cuenta:

  ENTIDAD: **BANCO DE OCCIDENTE**
  TIPO DE CUENTA: **AHORROS**
  NOMBRE DE LA CUENTA: **HELM FIDUCIARIA – FIDEICOMISO PA CANACOL**
  NUMERO DE CUENTA: **270-87746-7**

- Para la realización del pago del **SERVICIO DE TRANSPORTE, EL BENEFICIARIO DE PAGO** enviará al **FIDEICOMITENTE** una cuenta de cobro, documento que será enviado a **LA FIDUCIARIA** para que realice el pago de acuerdo con las instrucciones impartidas por **EL FIDEICOMITENTE.**

- **LA FIDUCIARIA** deberá  emitir certificación, al **BENEFICIARIO DE PAGO** que contenga: (i) que **EL FIDEICOMITENTE** ha suscrito un contrato de Fiducia, con duración hasta el 30 de Noviembre de 2022 y dos meses más, (ii) que estén expresamente incluidas las instrucciones de pago en favor del **BENEFICIARIO DE PAGO**, (iii) que la cuenta bancaria determinada por el **BENEFICIARIO DE PAGO**  para la recepción de los pagos se encuentra inscrita en el Fideicomiso y (iv) que existe compromiso de la compañía fiduciaria de informar cualquier evento que pueda afectar los derechos del **BENEFICIARIO DE PAGO** en cuanto a recibir procesos de embargo o falta de recursos de pago para las facturas que presente el **FIDEICOMITENTE.**

**SEGUNDA PARTE**
**CLÁUSULAS**

I.     **CAPÍTULO PRIMERO**

**RESTRICCIONES, LIMITACIONES, INSTRUCCIONES Y OBLIGACIONES GENERALES DEL FIDEICOMITENTE**

1. **EL FIDEICOMITENTE** ASUMIRÁN EL PAGO DE LAS COMISIONES FIDUCIARIAS Y LOS COSTOS Y GASTOS ESTABLECIDOS EN ESTE CONTRATO.
2. **EL FIDEICOMITENTE** DEBERÁ TRANSFERIR LOS BIENES FIDEICOMITIDOS E INFORMAR PERIÓDICAMENTE, CONFORME A LO ESTABLECIDO EN ESTE CONTRATO, SU COMPORTAMIENTO.
3. **EL FIDEICOMITENTE** CONOCE Y ACEPTA QUE LA DECLARACIÓN DE INCUMPLIMIENTO DEL CONTRATO SERÁ CALIFICADA POR EL **FIDUCIARIO**, CONFORME A LO ESTABLECIDO EN ESTE CONTRATO.
4. LAS OBLIGACIONES DE EL **FIDUCIARIO** SON DE MEDIO Y NO DE RESULTADO.
5. **EL FIDEICOMITENTE** ES RESPONSABLE DEL CUMPLIMIENTO DE LAS CONDICIONES REQUERIDAS PARA EL PERFECCIONAMIENTO DE LA TRANSFERENCIA DE LOS RECURSOS AL FIDEICOMISO A






M1
Fitch Ratings
Colombia S.A.

ISO 9001
icontec
SC 3846-1

IQNet

---

Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



*Helm.*

Fiduciaria

NIT. 800.141.021-1

TRAVÉS ANEXO NO. 1 "Modelo de Notificación de cesión de derechos Económicos" Y ANEXO NO. 3 "Aceptación de cesión de derechos Económicos".

6.  MEDIANTE LA SUSCRIPCIÓN DEL CONTRATO DE FIDUCIA EL FIDEICOMITENTE INSTRUYE EXPRESAMENTE AL FIDUCIARIO PARA QUE ABRA UNA CUENTA BANCARIA EN BANCO CORPBANCA COLOMBIA S.A., A TRAVÉS DE LA CUAL SE ADMINISTREN LAS ACEPTANTES TRANSFERIRÁN AL FIDEICOMISO.

## CAPÍTULO SEGUNDO

## CONSIDERACIONES

1.  Que EL FIDEICOMITENTE tiene por objeto social, entre otros, lo indicado en el numeral segundo del capítulo segundo del Cuadro de Declaraciones.
2.  Que EL FIDEICOMITENTE, con la suscripción del presente certifica que los recursos correspondientes al **ACTIVO** se encuentran libres de todo gravamen y/o de cualquier limitación a su libre destinación.
3.  Que a EL FIDEICOMITENTE a suscrito un contrato de suministro de gas en firme con EL **BENEFICIARIO DE PAGO.**
4.  Que, EL FIDEICOMITENTE constituye EL **FIDEICOMISO DE ADMINISTRACIÓN Y PAGOS VP-CNE-TEBSA,** que se constituye mediante el presente documento para que con los recursos que conforman el **ACTIVO** se pague la obligación adquirida por EL FIDEICOMITENTE con el BENEFICIARIO DE PAGO.
5.  Que HELM FIDUCIARIA S.A. es una entidad debidamente facultada por el Estatuto Orgánico del Sistema Financiero para realizar el objeto del presente contrato.

## CAPÍTULO TERCERO

## CLÁUSULADO

**CLAUSULA PRIMERA.- OBJETO:** El objeto del presente contrato consiste en que EL **FIDEICOMITENTE** transfiere al FIDUCIARIO, a título de Fiducia Mercantil Irrevocable, el **ACTIVO** y demás **BIENES FIDEICOMITIDOS** a fin de que tales recursos sean administrados e invertidos por EL FIDUCIARIO. Tales recursos servirán de pago de las obligaciones que contraiga EL FIDEICOMITENTE con EL BENEFICIARIO DE PAGO. Igualmente, previa la constitución de las provisiones establecidas más adelante, en caso de existir excedentes se atenderán las instrucciones de pago de EL **FIDEICOMITENTE.** En todo caso, contra el flujo de caja del patrimonio autónomo no podrán respaldarse nuevas operaciones, salvo que medie la previa, expresa y escrita autorización de EL BENEFICIARIO DE PAGO. Se deja expresa constancia del hecho que el presente contrato de fiducia servirá de pago de todas las obligaciones presentes y futuras que tengan o lleguen a adquirir EL FIDEICOMITENTE, individualmente con EL BENEFICIARIO DE PAGO.

**Parágrafo Primero:** En todo caso, EL FIDEICOMITENTE, se compromete desde ya, a través de la suscripción de este contrato, a transferir al Patrimonio Autónomo otros **ACTIVOS** en la medida en que se genere una disminución en los ingresos del FIDEICOMISO, cuando así lo solicite EL **BENEFICIARIO DE PAGO** y sea aceptado por EL FIDEICOMITENTE.

**Parágrafo Segundo:** De conformidad con los artículos 1227 y siguientes del Código de Comercio con la celebración del presente contrato y la transferencia que de los bienes se haga al FIDUCIARIO y de aquellos que accedan, adhieran o destinen conforme a los términos del Código Civil, se constituye un Patrimonio Autónomo cuya finalidad se estipula en este contrato. Este patrimonio autónomo actúa con plenos efectos jurídicos frente a EL FIDEICOMITENTE y terceros,





ISO 9001





Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3855020



Fiduciaria

NIT. 800.141.021-1

mediante la representación que del mismo ejerce EL FIDUCIARIO. Este patrimonio autónomo se denominará en el texto de este contrato EL FIDEICOMISO y para efectos de identificación se llamará como se indica en el numeral quinto del capítulo segundo del Cuadro de Declaraciones.

**CLÁUSULA SEGUNDA.- BIENES FIDEICOMITIDOS: EL FIDEICOMITENTE**, por medio de la suscripción del presente contrato, transfiere a título de fiducia mercantil de administración y pagos al FIDUCIARIO los recursos correspondientes al **ACTIVO**, cuya transferencia se perfecciona una vez se cumplan las condiciones indicadas en la definición de **PAGADOR** del Capítulo I – Definiciones del presente contrato.

**Parágrafo Primero:** Por el presente contrato no se cede ninguna de las obligaciones a cargo de **EL FIDEICOMITENTE**, pues, es este directamente el obligado a cumplir a cabalidad todos los compromisos derivados de su actividad y en general **EL FIDEICOMITENTE** está directa y exclusivamente comprometido a cumplir las obligaciones adquiridas en desarrollo de su objeto social. Por lo anterior, **EL FIDUCIARIO** no responderá por la calidad de las prestaciones y el cumplimiento de las obligaciones que adquiera **EL FIDEICOMITENTE** con los terceros con quienes se obligue en desarrollo de sus actividades sociales.

**Parágrafo Segundo:** Si por cualesquiera circunstancia, **EL FIDEICOMITENTE** llegare a recibir el pago de los recursos dinerarios cedidos, éste se compromete desde ahora a consignarlos en la cuenta bancaria y/o en el encargo FIDUCIARIO abiertos a nombre del FIDEICOMITENTE, a más tardar, al siguiente día hábil a la fecha en que estos fueron recibidos y a reiterarle a la franquicia correspondiente las condiciones de la cuenta recaudadora y del contrato de pignoración de la misma.

**Parágrafo Tercero: EL FIDEICOMITENTE** será el encargado del cobro, presente y futuro de los recursos dinerarios cedidos y en consecuencia, EL FIDUCIARIO no será responsable de la cartera que pueda surgir con ocasión de la mora en el pago de los mismos, ni de su cobro jurídico o pre jurídico. EL FIDUCIARIO delega en cabeza de EL FIDEICOMITENTE el cobro jurídico y pre jurídico de los recursos dinerarios cedidos.

**Parágrafo Cuarto: EL FIDEICOMITENTE** se obliga a no negociar total ni parcialmente los recursos dinerarios cedidos a título de Fiducia Mercantil a EL FIDUCIARIO. Igualmente, se obliga a informar cualquier hecho que pudiere afectar la ejecución de las obligaciones a su cargo y que pudiera comprometer el recaudo de los derechos económicos y cualquier gravamen que llegare a afectar los recursos derivados de los mismos.

**CLÁUSULA TERCERA.- FINALIDAD:** La finalidad del presente contrato es que EL FIDUCIARIO, (i) reciba los recursos provenientes de la totalidad de los recursos económicos derivados del **ACTIVO**, así como los demás **BIENES FIDEICOMITIDOS**, los cuales servirán de pago de las obligaciones contraídas por **EL FIDEICOMITENTE** con EL **BENEFICIARIO DE PAGO**, (ii) invierta dichos recursos en el Fondo de Inversión Colectivo Abierto Credifondo y (iii) atienda, con los excedentes, si los hubiera, las órdenes de pago que efectúe **EL FIDEICOMITENTE** y/o realice la restitución de recursos a su favor.

**CLÁUSULA CUARTA.- TRADICION:** Los derechos económicos o patrimoniales que son objeto de la presente transferencia, fueron y serán adquiridos por **EL FIDEICOMITENTE** con ocasión de la ejecución presente y futura de su objeto social.

**CLÁUSULA QUINTA.- DECLARACIONES DEL FIDEICOMITENTE: a). EL FIDEICOMITENTE** declara expresamente mediante este documento, bajo la gravedad del juramento, que con la constitución del presente **FIDEICOMISO** no se produce un desequilibrio en su patrimonio que le impida satisfacer las obligaciones contraídas en el pasado y garantiza



M1
Fitch Ratings
Colombia S.A.

ISO 9001
iconlec
SC 3846-1



IQNet

Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax 3585020



Fiduciaria

NIT. 800.141.021-1

que no tiene como causa ni produce como efecto, la defraudación de derechos de terceros porque con su constitución no se genera deterioro de la prenda general de sus acreedores. b) **EL FIDEICOMITENTE** de manera expresa, exonera al **FIDUCIARIO** de toda responsabilidad respecto de las obligaciones, deberes, y responsabilidades que en general le correspondan a **EL FIDEICOMITENTE** frente a terceros, por concepto de las obligaciones derivadas de la suscripción del presente contrato y de aquellas otras que se les llegare a originar en razón de la entrega de los bienes fideicomitidos. c). **EL FIDEICOMITENTE** autoriza mediante la firma del presente contrato, de manera expresa a **EL FIDUCIARIO**, a recibir los recursos correspondientes al **ACTIVO**. Así mismo autoriza al **FIDEICOMITENTE** a invertir los dineros del **FIDEICOMISO** en la Cartera Colectiva Abierta Credifondo. Igualmente manifiesta que conoce y acepta que estas instrucciones podrían generar situaciones que configuren conflictos de interés de acuerdo con lo establecido en el numeral 2.2.6 del Capítulo Primero, Título Quinto de la Circular Básica Jurídica, pero que, en atención a su instrucción, las Partes entienden que este ha sido superado.

**CLÁUSULA SEXTA.- FACULTADES DEL FIDUCIARIO:** Son funciones del **FIDUCIARIO** las siguientes:

1. Realizar la apertura de una cuenta bancaria en **BANCO CORPBANCA COLOMBIA S.A.** (antes **HELM BANK S.A.**) para recibir los recursos que constituyen **EL ACTIVO** del presente fideicomiso, y administrarlos conforme a las condiciones del presente contrato y a las instrucciones del **FIDEICOMITENTE.**
2. Recibir en la cuenta bancaria que se abra para el efecto en el **BANCO CORPBANCA COLOMBIA S.A.** (antes **HELM BANK S.A.**) y/o en el Fondo de Inversión Colectiva Credifondo, los demás recursos que hagan parte de los **BIENES FIDEICOMITIDOS,** y administrarlos conforme a las instrucciones señaladas en este contrato.
3. Invertir, de conformidad con la instrucción expresa recibida de **EL FIDEICOMITENTE,** los dineros recibidos en desarrollo del presente contrato en el Fondo de Inversión Colectiva Credifondo, con sujeción al reglamento aprobado por la Superintendencia Financiera de Colombia, el cual se anexa y hace parte integral del presente contrato, reglamento que **EL FIDEICOMITENTE** declara haber recibido, conocer y aceptar.
4. Verificar la disponibilidad de recursos suficientes para cumplir con el pago de las obligaciones a favor de **EL BENEFICIARIO DE PAGO.** En caso en que dentro de los siete (7) días hábiles anteriores a la fecha prevista para el pago de las obligaciones, no hubiere recursos suficientes, **EL FIDUCIARIO** informará de este hecho a **EL FIDEICOMITENTE** para que aporte de manera oportuna el dinero faltante. En todo caso llegada la fecha de vencimiento de las obligaciones, **EL FIDUCIARIO** transferirá los recursos disponibles a **EL BENEFICIARIO DE PAGO,** sin perjuicio de las acciones legales que éste último pueda ejercer en contra de **EL FIDEICOMITENTE.**
5. En la fecha prevista para realizar el pago de las obligaciones a favor de **EL BENEFICIARIO DE PAGO, EL FIDUCIARIO** realizará la transferencia de los recursos para atender los pagos de la **DEUDA,** hasta concurrencia de los recursos disponibles en el **FIDEICOMISO.**
6. Provisiona. los recursos necesarios y suficientes para atender el servicio de la deuda a cargo de **EL FIDEICOMITENTE** y a favor de **EL BENEFICIARIO DE PAGO,** de conformidad con las instrucciones de **EL FIDEICOMITENTE.**
7. En caso que existan recursos en **EL FIDEICOMISO** y luego de atender los costos y gastos del mismo, realizar el pago de las obligaciones a favor de **EL BENEFICIARIO DE PAGO** y constituir el **FONDO DE PROVISIÓN** del **FIDEICOMISO,** restituir los excedentes a **EL FIDEICOMITENTE** y/o efectuar con ellos los pagos que éste libre y autónomamente le ordene, conforme a lo establecido en la cláusula décima cuarta de este contrato.
8. Recibir y exigir los informes establecidos en el numeral 6 del capítulo segundo del Cuadro de Declaraciones.
9. Descontar prioritariamente las erogaciones, incluidos gastos, contribuciones e impuestos a que haya lugar, de conformidad con lo convenido en el presente documento.
10. Cobrar la comisión a que tiene derecho de conformidad con el presente contrato.
11. Al finalizar el contrato entregar a **EL FIDEICOMITENTE** toda suma de dinero remanente, una vez hayan sido pagadas las obligaciones de **EL FIDEICOMITENTE** con **EL BENEFICIARIO DE PAGO** del presente contrato.



**M1**
Fitch Ratings
Colombia S.A.

ISO 9001
icontec
SC 3846-1



IQNet

Bogotá: Carrera 7 No. 27-18 Piso 19 Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2 Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497 Medellín: Calle 7 No. 39-215 Oficina 201 Teléfono: (4) 6041818 Fax: (4) 3105057 Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239 Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585021



Fiduciaria

NIT. 800.141.021-1

12. Renunciar a su gestión por los motivos taxativamente contemplados en la Ley.
13. Mantener los dineros con sus rendimientos y las inversiones separados de los de **EL FIDUCIARIO** y de los que correspondan a otros negocios fiduciarios.
14. Llevar la contabilidad del **FIDEICOMISO** en la forma y términos establecidos por la Ley y por la Superintendencia Financiera de Colombia.
15. Pedir instrucciones a la Superintendencia Financiera de Colombia cuando tenga fundadas dudas acerca de la naturaleza y alcance de sus facultades y obligaciones, o cuando debe apartarse de las autorizaciones contenidas en este contrato, o cuando las circunstancias así lo exijan. En todo caso, la actuación de **EL FIDUCIARIO** quedará en suspenso, mientras se resuelva definitivamente el tema, sin que se genere responsabilidad alguna a cargo de **EL FIDUCIARIO** por tal hecho.
16. Solicitar a **EL FIDEICOMITENTE** la actualización periódica de su información financiera con el objeto de dar cumplimiento a las normas y políticas de Sistema de Administración de Riesgo de Lavado de Activos y Financiamiento del Terrorismo (SARLAFT).
17. Las demás señaladas y por la Ley y que resulten necesarias para el cumplimiento del objeto del contrato.

**CLÁUSULA SÉPTIMA.- OBLIGACIONES DEL FIDEICOMITENTE:** Además de las obligaciones establecidas en la ley, **EL FIDEICOMITENTE** se obliga para con **EL FIDUCIARIO** a:

1. Transferir y entregar en forma irrevocable los derechos económicos objeto de este contrato para el cumplimiento de la finalidad del mismo.
2. Instruir en forma irrevocable a **EL PAGADOR** para que consigne en la cuenta y/o encargo **FIDUCIARIO** del Fideicomiso la totalidad de los derechos económicos derivados del **ACTIVO** que efectúe **EL FIDEICOMITENTE** de conformidad con el procedimiento señalado en este contrato. En caso de que **EL FIDEICOMITENTE** reciba el pago de los recursos vinculados a este contrato deberá entregarlos mediante consignación a **EL FIDUCIARIO** en forma inmediata
3. Asumir con sus propios recursos, en caso que el **FIDEICOMISO** que por el presente contrato se constituye no cuente con los recursos y/o estos no sean suficientes, el pago de las obligaciones a favor de **EL BENEFICIARIO** y a su cargo.
4. Cumplir todas las obligaciones derivadas de los contratos suscritos con los terceros con quienes se obligue en desarrollo de las actividades relacionadas con el **ACTIVO**.
5. Remitir mensualmente a **EL FIDUCIARIO** los informes y certificaciones establecidos en el numeral 6 del capítulo segundo del Cuadro de Declaraciones.
6. Remitir con tres (3) días hábiles de antelación a **EL FIDUCIARIO**, toda la información necesaria a efectos de que este pueda proceder a realizar los pagos y/o sus restituciones.
7. Informar a **EL FIDUCIARIO** sobre cualquier cambio material o legal en la situación financiera o de otra índole que pueda afectar las condiciones en que debe mantenerse el **FIDEICOMISO** y los flujos de fondos provenientes de los recursos fideicomitidos.
8. Reconocer todos los costos y gastos en que incurra **EL FIDUCIARIO** para dar cumplimiento al presente contrato, para lo cual autoriza desde ya al **FIDUCIARIO** a descontarlos de los recursos administrados en virtud del presente contrato.
9. Pagar la comisión fiduciaria.
10. No gravar los recursos y sumas derivadas del **ACTIVO**, cuyos derechos económicos se ceden, sin el consentimiento previo y escrito de **EL BENEFICIARIO DE PAGO**.
11. Cumplir a cabalidad las obligaciones y deberes derivados de su actividad y de la ejecución de su objeto social.
12. Actualizar periódicamente su información financiera con el objeto de dar cumplimiento a las normas y políticas de Sistema de Administración de Riesgo de Lavado de Activos y Financiamiento del Terrorismo (SARLAFT).





M1
Fitch Ratings
Colombia S.A.

ISO 9001
icontec
SC 3846-1

IQNet

Bogotá: Carrera 7 No. 27-18 Piso 19 Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2 Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497 Medellín: Calle 7 No. 39-215 Oficina 20
Teléfono: (4) 6041818 Fax: (4) 3105057 Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239 Piso 3 Teléfono: (P.B.X.) 3851818 Fax:



*Helm.*

Fiduciaria

NIT. 800.141.021-1

13. Las demás establecidas en la ley y en otras cláusulas de este contrato.

**CLÁUSULA OCTAVA.- DERECHOS DEL FIDEICOMITENTE:** Además de los que la ley consagra a su favor, **EL FIDEICOMITENTE** tendrá derecho a examinar en cualquier momento los documentos relacionados con el presente contrato, tal como la contabilidad que al respecto lleva **EL FIDUCIARIO.**

**CLÁUSULA NOVENA.- BENEFICIARIOS DE PAGO:** Será BENEFICIARIO DE PAGO del presente contrato quien así se establezca en el numeral tercero (3°) del capítulo segundo del Cuadro de Declaraciones. Así mismo, una vez finalice el contrato, será BENEFICIARIO de los remanentes del patrimonio, si los hubiere, EL FIDEICOMITENTE.

**Parágrafo:** Dentro de las obligaciones del BENEFICIARIO DE PAGO se encuentran la de remitir periódica y oportunamente la información sobre el servicio de la deuda y asumir los costos y gastos que se generen por la celebración, desarrollo, ejecución y liquidación de este Contrato de Fiducia en el evento en que EL FIDEICOMITENTE no los pagare, sin perjuicio de la acción de repetición que podrá ejercer contra EL FIDEICOMITENTE.

**CLÁUSULA DÉCIMA.- GASTOS DEL FIDEICOMISO:** Estarán a cargo del FIDEICOMISO y/o de EL FIDEICOMITENTE, quienes responderán solidariamente, los siguientes gastos:

1. Los gastos, honorarios, costos, pagos e impuestos y erogaciones bancarias necesarias para el cumplimiento de este contrato y los que se generen por su constitución, disolución o liquidación, sean ellos de origen contractual, reglamentario o legal.
2. Los gastos, comisiones y demás erogaciones que se generen con ocasión de la ejecución del presente contrato.
3. Los gastos necesarios para la defensa, recuperación, recaudo y mantenimiento de los bienes fideicomitidos y la ejecución del FIDEICOMISO.
4. Los gastos bancarios que se generen por cualquier índole (cuenta recaudadora, transferencias por ACH, cheques girados, convenios que se establezcan para la realización de pagos y recaudos nacionales o al exterior o recibir los recursos correspondientes, cuentas de compensación, etc.), en el normal desarrollo del contrato.
5. Los viajes y hospedaje que se realicen por EL FIDUCIARIO para el desarrollo de este contrato, con la aprobación de EL FIDEICOMITENTE, en caso de ser necesarios.
6. Los impuestos, tasas y contribuciones nacionales, departamentales y municipales y cualquier otro gasto que grave los bienes fideicomitidos que aún no hayan sido transferidos al beneficiario, durante el término de duración del presente contrato.
7. La retribución de EL FIDUCIARIO prevista en este contrato.
8. Cualquier otro gasto que no estuviere previsto en el presente contrato y que resulte necesario para la ejecución del objeto del mismo, siempre y cuando sea aceptado y aprobado por **EL FIDEICOMITENTE.**

**CLÁUSULA UNDÉCIMA.- PRELACIÓN DE PAGOS:** La prioridad u orden de aplicación de los pagos será el siguiente:

i)   En primer orden todos los costos y gastos del FIDEICOMISO incluida la remuneración de EL FIDUCIARIO, los gastos en que haya incurrido o deba incurrir en cumplimiento del presente negocio FIDUCIARIO y defensa de los bienes fideicomitidos y los impuestos, que por cualquier concepto deba pagar este FIDEICOMISO.

ii)  En segundo orden y siguiendo en estricto orden la fecha en que fueron registrados por EL FIDUCIARIO, éste cancelará total o parcialmente, hasta concurrencia del valor de LOS BIENES FIDEICOMITIDOS, las obligaciones existentes a favor de EL BENEFICIARIO DE PAGO y constituirá las provisiones establecidas en este contrato, si aplicaren.

**M1**
Fitch Ratings
Colombia S.A.



ISO 9001
icontec
SC 3846-1

IQNet



Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497 Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6043118 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020

*Helm.*
Fiduciaria

NIT. 800.141.021-1

iii)  En tercer orden, y si quedare algún remanente después de haber efectuado las aplicaciones comentadas, EL FIDUCIARIO atenderá otras instrucciones de pago de EL FIDEICOMITENTE.

**CLÁUSULA DUODÉCIMA.- PROCEDIMIENTO PARA EFECTUAR PAGOS:**

1.  EL FIDEICOMITENTE podrá instruir a EL FIDUCIARIO  para que realice pagos,  para el efecto se seguirá el siguiente procedimiento:

    i)  Para la realización del pago al BENEFICIARIO DE PAGO, EL FIDEICOMITENTE deberá informar a EL FIDUCIARIO mediante comunicación escrita enviada con tres (3) días de antelación indicando los pagos a realizar. EL ORDENADOR DEL GASTO  radicará la Orden de Pago en las oficinas de EL FIDUCIARIO, la cual deberá contener como mínimo la siguiente información:
    - Concepto del Pago.
    - Monto por pagar (valores bruto y neto).
    - Fecha de la Orden de Pago.
    - Comunicación aceptando las facturas por parte del FIDEICOMITENTE
    - La firma de la(s) persona(s), que será(n) EL ORDENADOR DEL GASTO.

    ii)  Los pagos que debe efectuar EL FIDUCIARIO a terceros, deberán ser informados según el caso por EL FIDEICOMITENTE mediante comunicación escrita enviada con tres (3) días de antelación indicando los pagos a realizar. EL ORDENADOR DEL GASTO  radicará la Orden de Pago en las oficinas de EL FIDUCIARIO, la cual deberá contener como mínimo la siguiente información:
    - Nombre e identificación del destinatario del pago.
    - Concepto del Pago.
    - Número de la(s) Cuenta(s) del destinatario del pago, en la entidad financiera y sucursal en la cual se deben depositar los recursos.
    - Monto por pagar (valores bruto y neto).
    - Fecha de la Orden de Pago.
    - Modalidad de Pago.
    - La firma de la(s) persona(s), que será(n) EL ORDENADOR DEL GASTO.

2.  EL FIDUCIARIO por su parte, procederá a efectuar los pagos por cuenta de EL FIDEICOMITENTE en las fechas establecidas por él y hasta el monto de los recursos que existiesen en el FIDEICOMISO. EL FIDUCIARIO realizará únicamente los traslados de recursos o pagos que le indique EL FIDEICOMITENTE a través de EL ORDENADOR DEL GASTO que han sido designadas por el representante legal de EL FIDEICOMITENTE. Así mismo, EL FIDEICOMITENTE deberá informar de manera oportuna cualquier cambio en las firmas registradas, las cuales operarán a partir de las veinticuatro (24) horas siguientes a la fecha de radicación de la carta que contenga dicha información.

3.  Los pagos se realizarán únicamente mediante abono en cuenta a través del Sistema Electrónico ACH.

4.  EL FIDUCIARIO procederá a efectuar los pagos y/o traslados de recursos por cuenta de EL FIDEICOMITENTE, hasta el monto de los recursos que existiesen en el patrimonio y hasta el límite que corresponda a cada uno de ellos, razón por la cual no realizará pagos sobre cheques en canje.

5.  Si los recursos existentes en el patrimonio no alcanzaren para atender las obligaciones a favor de EL BENEFICIARIO DE PAGO, EL FIDUCIARIO le informará  este hecho a EL FIDEICOMITENTE, para que dentro de los siete (7) días hábiles anteriores al vencimiento de las obligaciones, EL FIDEICOMITENTE sitúe los recursos necesarios para completar el pago que debe efectuarse.



M1
Fitch Ratings
Colombia S.A.

ISO 9001
icontec
SC 3846-1

IQNet



Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497 Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



Fiduciaria

NIT. 800.141.021-1

6. EL FIDUCIARIO no efectuará pagos parciales respecto de las Órdenes de Pago y no incurrirá en responsabilidad alguna frente a EL FIDEICOMITENTE o a los terceros, por este hecho.

7. Al finalizar el contrato, EL FIDUCIARIO realizará los pagos que se encuentren pendientes de hacer, con cargo a los recursos entregados si los hubiere, y dejará constancia de este hecho en el acta de liquidación.

8. El numeral 5 del artículo 102 del Estatuto Tributario establece que, con relación a cada uno de los Patrimonios Autónomos administrados por EL FIDUCIARIO, está en la obligación de cumplir con los compromisos señalados en las normas legales para los contribuyentes, retenedores y responsables, según sea el caso. Para tal efecto se le asignara un NIT diferente al de la sociedad fiduciaria, que identifique en forma global a todos los FIDEICOMISOS que administra en desarrollo de su objeto social. Por lo anterior, sin perjuicio de lo dispuesto en el artículo 23-1 del Estatuto Tributario, EL FIDUCIARIO deberá practicar retención en la fuente sobre los valores pagados o abonados en cuenta, susceptibles de constituir ingreso tributario para los beneficiarios de los mismos, a las tarifas que correspondan a la naturaleza de los respectivos ingresos, de acuerdo con las disposiciones vigentes.

**PARÁGRAFO: EL FIDUCIARIO** no será responsable de que las facturas remitidas como soportes para la realización de los pagos cumplan los requisitos de Ley para efectos del artículo 617 del Estatuto Tributario. Dicha verificación será responsabilidad exclusiva de **EL FIDEICOMITENTE.**

**CLÁUSULA DÉCIMA TERCERA.- FUNCIONAMIENTO DEL FIDEICOMISO:** Las reglas especiales de funcionamiento del presente contrato son las siguientes:

1. **PAGOS:** Una vez realizado el pago mensual al **BENEFICIARIO DE PAGO** de acuerdo con las condiciones establecidas en este **CONTRATO**, EL FIDUCIARIO pondrá a disposición de **EL FIDEICOMITENTE** los excedentes de los recursos con el fin de ser restituidos a éste o atenderá las órdenes de pago que le indique **EL FIDEICOMITENTE.**

2. **INVERSIONES:** En desarrollo del presente contrato EL FIDUCIARIO, de conformidad con las instrucciones recibidas de **EL FIDEICOMITENTE,** invertirá los recursos objeto de la Fiducia Mercantil en el Fondo de Inversión Colectivo Credifondo por ella administrada, mientras dichas sumas son destinadas al cumplimiento del objeto del presente contrato.

**CLÁUSULA DÉCIMA CUARTA.- OBLIGACIONES DEL FIDUCIARIO:** Además de las consagradas en la Ley, **EL FIDUCIARIO** tendrá en especial las siguientes obligaciones:

1. Mantener los dineros con sus rendimientos y las inversiones separados de los suyos y de los que correspondan a otros negocios **FIDUCIARIOS.**

2. Producir la información financiera aplicable de acuerdo con lo que establecido por la Superintendencia Financiera de Colombia.

3. Suministrar una clave de consulta que le permita a EL FIDEICOMITENTE, en tiempo real, conocer el estado de el(los) encargo(s) FIDUCIARIO(s) que sean abiertos en el Fondo de Inversión Colectivo CREDIFONDO y/o de las cuentas corrientes y/o de ahorros abiertas en las entidades financieras que presten este servicio y cuyo titular sea el patrimonio autónomo que por este documento se constituye.

4. Elaborar mensualmente el estado de ingresos y egresos y el Balance General del Patrimonio autónomo, los cuales quedarán a disposición de EL FIDEICOMITENTE vía correo electrónico o por el medio seleccionado por EL FIDEICOMITENTE siempre contando con firma digital

5. Rendir cuentas comprobadas de su gestión a EL FIDEICOMITENTE y al BENEFICIARIO con una periodicidad no superior a seis (6) meses, dentro de los diez (10) días hábiles siguientes al vencimiento del respectivo semestre, por correo electrónico o a la dirección registrada o por el medio seleccionado por EL FIDUCIARIO.







Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020

*Helm.*

Fiduciaria

NIT. 800.141.021-1

6.  Cumplir con las disposiciones que sean aplicables a este tipo de contratos, en especial las de índole tributaria.
7.  Cumplir con el procedimiento para efectuar los pagos, establecida en la cláusula décima segunda.

**CLÁUSULA DÉCIMA QUINTA.- DURACION:** El presente contrato tendrá la duración señalada en el numeral 8 del capítulo segundo del Cuadro de Declaraciones. No obstante, podrá ser prorrogado de mutuo acuerdo por las partes. Sin perjuicio de la duración aquí pactada, el presente contrato de fiducia mercantil estará vigente, si vencido el término antes mencionado subsistieren saldos pendientes por amortizar para cancelar la totalidad de las obligaciones a cargo de EL FIDEICOMITENTE y a favor de EL BENEFICIARIO.

**CLÁUSULA DÉCIMA SEXTA.- IRREVOCABILIDAD:** El presente contrato es **IRREVOCABLE,** porque así lo establecen las partes y por cuanto se celebra a favor de EL BENEFICIARIO.  En consecuencia no podrá darse por terminado ni modificarse total o parcialmente, ni en sus transferencias, ni en su objeto o instrucciones de manera unilateral por EL FIDEICOMITENTE.

**CLÁUSULA DÉCIMA SÉPTIMA.- REMUNERACIÓN DEL FIDUCIARIO:** Por sus servicios, EL FIDUCIARIO  tendrá derecho a las comisiones establecidas en el numeral 11 del capítulo segundo del Cuadro de Declaraciones.

**Parágrafo Primero:** Las comisiones mencionadas en la presente cláusula no incluyen el Impuesto al Valor Agregado (IVA), que se cobrará adicionalmente, si es el caso.

**Parágrafo Segundo:** La totalidad de los gastos de administración del encargo, así como todos los resultantes de la suscripción, desarrollo y liquidación del presente contrato, serán de cargo de EL FIDEICOMITENTE.

**Parágrafo Tercero:** La comisión fiduciaria aquí pactada será descontada de los recursos que se encuentren en el FIDEICOMISO y si estos no fueran suficientes los pagará directamente EL FIDEICOMITENTE. Cuando suceda el anterior evento, EL FIDEICOMITENTE autoriza a LA FIDUCIARIA para que dichos recursos sean descontados de las cuentas bancarias que tenga a su nombre en el BANCO CORPBANCA COLOMBIA S.A. En el evento que no existan recursos para el pago de las mismas o éstas no sean canceladas dentro de los cinco (5) días siguientes a la fecha de presentación de la cuenta de cobro, se causarán intereses de mora a la tasa más alta permitida por la ley. EL FIDEICOMITENTE acepta expresamente que la certificación sobre el monto de la remuneración adeudada a EL FIDUCIARIO suscrita por el Representante Legal y el Revisor Fiscal de EL FIDUCIARIO junto con este contrato, tendrán mérito ejecutivo suficiente para ser efectivo su cobro al FIDEICOMISO y/o a EL FIDEICOMITENTE y renuncia desde ya a que se le requiera para constituirlo en mora.

**Parágrafo Cuarto: Pagaré de Contragarantía.-** EL FIDEICOMITENTE otorgará a favor de EL FIDUCIARIO un pagaré con espacios en blanco y una carta de instrucciones, para atender cualquier obligación generada en desarrollo de este contrato, siempre y cuando EL FIDEICOMITENTE haya autorizado por escrito dichas gestiones.

**Parágrafo Quinto:** Las gestiones adicionales que lleve a cabo EL FIDUCIARIO  y que no se encuentren comprendidas dentro de las expresamente previstas en este contrato se facturarán de manera separada siempre y cuando EL FIDEICOMITENTE haya autorizado por escrito dichas gestiones.

**CLÁUSULA DÉCIMA OCTAVA.- CAUSALES DE TERMINACION DEL CONTRATO:** Las causales de terminación del presente contrato, son las establecidas en la Ley y en especial las siguientes:

1.  El vencimiento del plazo o sus renovaciones.

**M1**
Fitch Ratings
Colombia S.A.



ISO 9001
icontec
SC 3846-1

IQNet

Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



Fiduciaria

NIT. 800.141.021-1

2. La liquidación de EL FIDUCIARIO y las demás causas establecidas en la Ley en especial las indicadas en el artículo 1232 del Código de Comercio.

3. Por cumplimiento de los fines establecidos en el presente contrato.

4. Por mutuo acuerdo de las partes, previa aprobación de EL BENEFICIARIO DE PAGO.

5. EL FIDUCIARIO podrá dar por terminado el Contrato de Fiducia por incumplimiento por parte de EL FIDEICOMITENTE de las obligaciones a su cargo, previa notificación a EL BENEFICIARIO DE PAGO, calificación que será dada por EL FIDUCIARIO.

6. Por incumplimiento por parte de EL FIDEICOMITENTE en el pago de las comisiones fiduciarias por un término igual o superior a seis (6) meses. En este evento la terminación operará de manera automática, bastando solo la certificación del Representante Legal y el Revisor Fiscal acerca de este hecho, certificación que se dirigirá a EL FIDEICOMITENTE y a EL BENEFICIARIO DE PAGO.

7. Terminación unilateral por parte de EL FIDUCIARIO caso en el cual no habrá lugar a indemnización alguna a favor de EL FIDEICOMITENTE y/o de EL BENEFICIARIO DE PAGO. Las causales de terminación serán notificadas por escrito a EL FIDEICOMITENTE para que un término máximo de treinta (30) días hábiles proceda a subsanarlas, a satisfacción de EL FIDUCIARIO.

**CLÁUSULA DÉCIMA NOVENA.- LIQUIDACIÓN DEL CONTRATO:** Acaecida la terminación del contrato por cualquier circunstancia, perderán vigencia el objeto y las instrucciones del mismo y la gestión de EL **FIDUCIARIO** deberá dirigirse exclusivamente a realizar aquellos actos directa o indirectamente relacionados con la liquidación del **FIDEICOMISO**. Para ese efecto EL **FIDUCIARIO** procederá a:

1. El pago de las sumas que se le deban por concepto de comisiones fiduciarias.

2. Entregar las cuentas de su gestión y el acta de liquidación del FIDEICOMISO de conformidad con el mecanismo que haya empleado para rendir los informes periódicos de gestión, entendiéndose que diez (10) días hábiles después de haberse presentado dichas cuentas a EL FIDEICOMITENTE sin que se haya recibido observaciones o diez (10) días hábiles después que EL FIDUCIARIO haya resuelto las mismas sin que exista pronunciamiento alguno por parte de EL FIDEICOMITENTE, se entenderá que se habrán aprobado la rendición de cuentas y el acta de liquidación; se habrá terminado satisfactoriamente la liquidación y en consecuencia el vínculo contractual que se generó con este contrato.

3. En el evento de que en el patrimonio autónomo quedaran bienes fideicomitidos y no se hubieren cancelado la totalidad de las obligaciones a favor de EL BENEFICIARIO DE PAGO, EL FIDUCIARIO dentro de los quince (15) días hábiles siguientes a la fecha en que se hubiere determinado la terminación del contrato procederá a pagar tales obligaciones, hasta por el monto de los recursos líquidos disponibles para ello en el FIDEICOMISO. EL FIDUCIARIO no responderá por el contenido de las liquidaciones que se le presenten, sólo EL BENEFICIARIO DE PAGO responderá por su exactitud. Cualquier reclamación producto de una liquidación errónea deberá adelantarse directamente por EL FIDEICOMITENTE ante EL BENEFICIARIO DE PAGO, de acuerdo con el procedimiento previsto en la ley.

4. Entregar a EL FIDEICOMITENTE el excedente del FIDEICOMISO si lo hubiere, luego de haber pagado las obligaciones a que se refieren los numerales 1° y 3° de la presente cláusula.

**M1**
Fitch Ratings
Colombia S.A.



ISO 9001

icontec
SC 3846-1



Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



Fiduciaria

NIT. 800.141.021-1

**Parágrafo Primero:** Durante el período de la liquidación, EL FIDUCIARIO sólo podrá, en desarrollo de este contrato, realizar las gestiones necesarias para este fin.

**Parágrafo Segundo:** Si al terminar esta liquidación por algún motivo quedare a cargo de EL FIDEICOMITENTE alguna suma a favor de EL FIDUCIARIO, éste se compromete de manera clara y expresa a pagarlo a la orden de EL FIDUCIARIO el segundo (2º) día hábil siguiente al que se le presente la cuenta respectiva.

**Parágrafo Tercero:** En el evento en que existiere un remanente a la liquidación del FIDEICOMISO y hubiere transcurrido más de un (1) mes, contado a partir de la fecha en que EL FIDEICOMITENTE fuere notificado a la dirección registrada, sin que EL FIDEICOMITENTE lo reclame, EL FIDEICOMITENTE, mediante la suscripción del presente contrato, otorga poder especial, pero amplio y suficiente, a EL FIDUCIARIO para que, en su nombre, con dichos recursos, efectúe la apertura de una participación en la Cartera Colectiva Abierta Credifondo o en cualquiera de las carteras colectivas administradas por EL FIDUCIARIO. Los recursos permanecerán en esta participación, sujetos a la reglamentación vigente para las carteras colectivas, hasta la fecha en que EL FIDEICOMITENTE, expresamente y por escrito, disponga lo contrario.

**CLÁUSULA VIGÉSIMA.- DIRECCIONES DE LAS PARTES:** Para todos los efectos de este contrato, las partes registran las direcciones establecidas en el numeral segundo del capítulo segundo del Cuadro de Declaraciones.

**CLÁUSULA VIGÉSIMA PRIMERA.- RESPONSABILIDAD DEL FIDUCIARIO:** Por disposición legal la responsabilidad del FIDUCIARIO es de medio y no de resultado de la cual responderá hasta de la culpa leve, por lo tanto la responsabilidad del FIDUCIARIO se extiende a la diligencia y poner los medios adecuados para lograr un resultado sin que en ningún momento se entienda que EL FIDUCIARIO garantiza la consecución del mismo, por lo que no será responsable de las pérdidas que se llegaren a ocasionar en desarrollo del presente contrato.

**Parágrafo Primero:** Los pagos que debe efectuar EL FIDUCIARIO a nombre del EL FIDEICOMITENTE serán hechos hasta concurrencia de los recursos que se encuentren en EL FIDEICOMISO.

**Parágrafo Segundo:** EL FIDUCIARIO no es responsable por el cobro prejurídico, ni jurídico que se puedan derivar de la facturación o cobro del ACTIVO ni de ninguna otra que, en desarrollo de su objeto social, realice EL FIDEICOMITENTE, ni es responsable por el cumplimiento de la obligación de pago y transferencia a cargo de EL PAGADOR.

**Parágrafo Tercero:** Queda claramente entendido que para efectos jurídicos y de responsabilidad EL FIDUCIARIO no es coadministrador, ni codirector de EL FIDEICOMITENTE, bajo ninguna circunstancia.

**Parágrafo Cuarto:** EL FIDUCIARIO no contrae responsabilidad alguna por las fluctuaciones, desvalorizaciones, bajas en los valores de las inversiones, disminución en los rendimientos, modificación o pérdida de bondades o privilegios financieros por causas ajenas a su voluntad o que le hubieran sido desconocidas en su oportunidad.

**Parágrafo Quinto:** EL FIDUCIARIO se obliga a realizar diligentemente todos los actos necesarios para el cabal cumplimiento del objeto de este contrato, y no será responsable por caso fortuito, fuerza mayor, el hecho de un tercero o la violación de deberes contractuales o legales por parte de EL FIDEICOMITENTE. En este sentido la finalidad del contrato es la administración de los recursos entregados para el cumplimiento de los fines aquí establecidos.

**M1**
Fitch Ratings
Colombia S.A.



ISO 9001

◇icontec
SC 3846-1

IQNet

Bogotá: Carrera 7 No. 27-18 Piso 19 Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2 Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497 Medellín: Calle 7 No. 39-215 Oficina 205
Teléfono: (4) 6041818 Fax: (4) 3105057 Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239 Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



Fiduciaria

NIT. 800.141.021-1

**Parágrafo Sexto:** EL FIDUCIARIO no será responsable de que las facturas remitidas como soporte para la realización del pago cumplan con los requisitos legales según lo establecido en el artículo 617 del Estatuto Tributario. Dicha responsabilidad es exclusiva del FIDEICOMITENTE.

**CLÁUSULA VIGÉSIMA SEGUNDA.- AUTORIZACION:** EL FIDEICOMITENTE autoriza al FIDUCIARIO, esto es, a HELM FIDUCIARIA S.A., a su matriz y a las filiales y subsidiarias de ésta o a quien en el futuro represente sus derechos u ostente la calidad de acreedor, de manera irrevocable, para reportar, procesar, solicitar y divulgar a la Central de Información Financiera, administrada por la Asociación Bancaria y de Entidades Financieras de Colombia, a DATACREDITO o a cualquier otra entidad que maneje o administre bases de datos que tengan fines de información, financieros estadísticos, de control, supervisión, gerenciales y de consolidación de información, todos mis(nuestros) datos personales económicos, incluyendo la información referente a mi(nuestro) comportamiento comercial y crediticio, tales como el nacimiento, modificación o extinción de obligaciones contraídas con anterioridad o que se llegaren a contraer fruto de contratos financieros o bursátiles celebrados con la sociedad fiduciaria HELM FIDUCIARIA S.A., su matriz y las filiales o subsidiarias de ésta. Como consecuencia de esta autorización la sociedad fiduciaria HELM FIDUCIARIA S.A, su matriz y las filiales o subsidiarias de ésta podrán consultar e incluir mis(nuestros) datos financieros y comerciales en las bases de datos mencionadas, en las cuales se verá reflejado mi(nuestro) actual y pasado comportamiento en relación con el cumplimiento o incumplimiento de mis obligaciones o el manejo dado a los servicios que presta el sector financiero, bursátil y asegurador, la cual permanecerá durante el término establecido por la ley y en su defecto por la jurisprudencia de la H. Corte Constitucional. Así mismo, la presente autorización implica que la sociedad fiduciaria HELM FIDUCIARIA S.A., su matriz y las filiales o subsidiarias de ésta podrán circular y compartir con propósitos gerenciales, comerciales, de control de riesgos, consolidación de información, estadísticos y de servicio, los datos suministrados por mi(nosotros) a que la sociedad fiduciaria HELM FIDUCIARIA S.A, su matriz y las filiales o subsidiarias de ésta con ocasión de una vinculación contractual o los relacionados con la situación propia del suscriptor(es) que conozcan en desarrollo de la actividad financiera que prestan, así como la información que se genere en virtud de los contratos financieros celebrados o que se celebren en el futuro entre el(los) suscriptor(es) y la sociedad fiduciaria HELM FIDUCIARIA S.A y/o su matriz y/o las filiales o subsidiarias de ésta.

**CLÁUSULA VIGÉSIMA TERCERA.- MODIFICACIONES:** Todas las adiciones y modificaciones deberán constar por escrito firmado debidamente por las partes, esto es, EL FIDEICOMITENTE y EL FIDUCIARIO, previa aprobación de EL BENEFICIARIO DE PAGO.

**CLÁUSULA VIGÉSIMA CUARTA.- CESIÓN:** El presente contrato no podrá ser cedido parcial o totalmente por ninguna de las partes, ni a ninguna persona, sin la previa, expresa, escrita aceptación de la otra parte, esto es, EL FIDEICOMITENTE, EL BENEFICIARIO DE PAGO y EL FIDUCIARIO. En todo caso la cesión deberá contener como mínimo la manifestación expresa del cesionario de conocer y aceptar el presente contrato y EL FIDUCIARIO se reserva el derecho de solicitar que se incluyan modificaciones al texto de los documentos que la contienen.

**CLÁUSULA VIGÉSIMA QUINTA.- VALOR:** Para todos los efectos legales incluidos los fiscales, el valor del presente contrato es el estipulado por las partes como monto total de las comisiones que devengará EL FIDUCIARIO. En todo caso el valor de las comisiones no supera la base gravable actualmente establecida para que se origine impuesto de timbre. Sin embargo, en el evento de que el valor de este contrato supera dicha cuantía y en consecuencia se llegare a causar el impuesto de que trata la presente cláusula, este será pagado en su totalidad por EL FIDEICOMITENTE.

**CLÁUSULA VIGÉSIMA SEXTA.- RIESGO CREDITICIO (SARC):** Con el fin de dar cumplimiento a las normas sobre gestión del riesgo crediticio emanadas de la Superintendencia Financiera de Colombia, EL FIDEICOMITENTE manifiesta expresamente que tanto por su objeto social como por el tipo de bienes fideicomitidos, no considera necesario aplicar



M1
Fitch Ratings
Colombia S.A.

ISO 9001

icontec
International
SC 3846-1

IQNet

---

Bogotá: Carrera 7 No. 27-18 Piso 19 Teléfono: (P.B.X.) 5818181 Fax: 3276732 A.A. 241644
Cali: Calle 22 N No. 6 A-24 Piso 2 Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497 Medellín: Calle 7 No. 39-215 Oficina 201-2
Teléfono: (4) 6041818 Fax: (4) 3105057 Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239 Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



Fiduciaria

NIT. 800.141.021-1

elementos de gestión y medición del riesgo crediticio y exonera a **EL FIDUCIARIO** de cualquier responsabilidad emanada de esta declaración.

**CLÁUSULA VIGÉSIMA SÉPTIMA.- DOMICILIO:** Para todos los efectos legales y contractuales las partes fijan como domicilio el establecido en el numeral quince del capítulo segundo del Cuadro de Declaraciones.

**CLÁUSULA VIGÉSIMA OCTAVA.- DE GESTIÓN DE RIESGOS: LAS PARTES** manifiestan que conocen y aceptan las implicaciones de celebrar este Contrato de Fiducia, y con la finalidad de cumplir lo establecido en el numeral 2.3.9 de la Circular Externa Número 46 de 2008 de la Superintendencia Financiera de Colombia, para el presente contrato las partes han establecido los siguiente mecanismos de gestión de riesgos los cuales tienen como objetivo minimizar los riesgos del negocio:

1. Se establece un procedimiento para la transferencia del **ACTIVO**, conforme al cumplimiento de unas condiciones por parte del FIDEICOMITENTE señaladas en la definición PAGADOR del Capítulo I – DEFINICIONES.

2. Se establece un procedimiento para efectuar los pagos o, en general, la entrega de recursos o **ACTIVO**, de conformidad con lo que se requiera en desarrollo de este contrato.

3. Cuando se soliciten modificaciones al Contrato de Fiducia, además de la firma de todas las partes que intervinieron en su celebración, se solicitará autorización expresa y escrita a los beneficiarios en la cual acepten previamente los cambios del Contrato.

En todo caso las partes manifiestan que conocen y aceptan que la anterior gestión de riesgos es la prevista en la situación actual del negocio, pero la misma no es taxativa dado que en el desarrollo y ejecución del Contrato de Fiducia se pueden presentar situaciones que generen nuevos riesgos los cuales serán mitigados por los mecanismos que en su oportunidad acuerdan las partes.

Adicionalmente **EL FIDUCIARIO** cuenta con sistemas especiales de administración de Riesgo de Mercado, Crédito, Operacional, Prevención de Lavado de Activos y Financiación de Actividades Terroristas a los cuales se encuentran sometidos los negocios fiduciarios celebrados por ésta en virtud de la aplicación de las normas vigentes.

**CLÁUSULA VIGÉSIMA NOVENA.- CONFLICTO DE INTERÉS:** El presente contrato ha sido evaluado respecto de la existencia de un posible conflicto de interés de los que establece el numeral 9°, artículo 146 del E.O.S.F, y como resultado de dicha evaluación no se encontró un conflicto de esas características. Se prevé como mecanismo para conjurar una situación que implique un conflicto de interés en los términos del numeral 9°, artículo 146 del E.O.S.F, en el evento de que se presente durante la ejecución del negocio, el siguiente procedimiento: Identificado el conflicto de interés, se pondrá en conocimiento de la Administración de **EL FIDUCIARIO** dicha situación a fin de que sea ésta la que estudie y determine si en realidad se configura y tomará las determinaciones pertinentes para su manejo.

**CLÁUSULA TRIGESIMA.- FECHA DEL CONTRATO DE FIDUCIA:** Es la fecha en la cual se perfecciona y celebra el presente contrato por concurrir la voluntad de todas las partes que en él intervienen. Esta fecha corresponde a la fecha en la que **EL FIDUCIARIO** suscribe el presente contrato de fiducia.

**CLÁUSULA TRIGESIMA PRIMERA.- EXONERACIÓN DE MEDICIÓN DE RIESGO DE MERCADO (VaR): EL FIDEICOMIENTE** conoce las disposiciones legales establecidas en el Capítulo XXI de la Circular Básica Contable y



**M1**
Fitch Ratings
Colombia S.A.

ISO 9001
icontec
SC 3846-1

IQNet

Bogotá: Carrera 7 No. 27-18 Piso 19  Teléfono: (P.B.X.) 5818181 Fax: 3276732  A.A. 241644
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (P.B.X.) 4861818 Fax: 4861818 Ext. 3279 A.A. 11497  Medellín: Calle 7 No. 39-215 Oficina 201
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 29 No. 45-77 Piso 2 Teléfono: (7) 6971818 Fax: (7) 6573773 A.A. 50080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6931818 Fax: 6653309 Barranquilla: Carrera 51 B No. 82-239  Piso 3 Teléfono: (P.B.X.) 3851818 Fax: 3585020



**Helm.**
Fiduciaria

NIT. 800.141.021-1

Financiera (C.E. 100 de 1995)  de la Superintendencia Financiera de Colombia, en lo referente a las reglas aplicables a la gestión de los riesgos de mercado y de forma libre y voluntaria  exonera a HELM FIDUCIARIA S.A. en la aplicación de las reglas para la medición de este riesgo y su respectiva transmisión al ente de control en cuanto al presente Contrato de Fiducia.

En constancia de lo anterior se suscribe en dos (2) ejemplares del mismo tenor y valor en la Ciudad de Bogotá D.C. el
**2 4 FEB 2016**    de 2016.

POR EL FIDUCIARIO

ANGELA ISABEL RIVERA CORREA
C.C. 39.791.361 expedida en Usaquén
Representante Legal
HELM FIDUCIARIA S.A.

POR EL FIDEICOMITENTE

ALVARO AUGUSTO VARGAS BRAVO
C.C. 91.241.213 expedida en Bucaramanga
Representante Legal
VP INGENERGIA S.A. E.S.P

---

NOTARIA VEINTITRES DEL CIRCULO DE BOGOTÁ, D.C.

**DILIGENCIA DE RECONOCIMIENTO**

Ante la Notaría 23 del circulo de Bogotá, compareció:

VARGAS BRAVO ALVARO AUGUSTO

Identificado con  P.A.  AO212793COLOMBIA

Quien  declara que la firma que aparece en  este documento  es la suya y que el contenido del mismo es cierto en todas sus partes en fé de lo cual se firma esta diligencia.

El 24/02/2016 a las  09:09:12 a.m.

FIRMA

frbyvf54fl4fg

ESTHER MARITZA BONIVENTO JOHNSON NOTARIA 23

**NOTARIA 23**

---

NOTARIA VEINTITRES DEL CIRCULO DE BOGOTÁ, D.C.

**CERTIFICACION HUELLA**

El  24/02/2016
El Suscrito Notario 23 del Circulo de Bogotá, certifica que la huella dactilar que aquí aparece fue impresa por:

VARGAS BRAVO ALVARO AUGUSTO

Identificado con  P.A.  AO212793COLOMBIA

6b6umy6hg66gb7

ESTHER MARITZA BONIVENTO JOHNSON NOTARIA 23

**NOTARIA 23**

M1
Fitch Ratings
Colombia S.A.

9001

contec
3846-1

Net

---

Bogotá: Carrera 7 No. 27 - 18 Piso 19  Teléfono (1) 5818181 Fax: 3276711
Cali: Calle 22 N  No. 6 A-24 Piso 2  Santa Mónica Teléfono: (2) 488181 Ext. 3879 Oficina 201.
Teléfono: (4) 6041818 Fax: (4) 3105057  Bucaramanga: Carrera 18 No. 34 - 45 Piso 2 Teléfono: (7) 6978181 Fax: (7) 6452080
Cartagena: Avenida San Martín No. 9-219 Teléfono: (P.B.X.) 6653818 Fax: 6653809  Barranquilla: Carrera 51 B No. 80-58 Piso 3  Teléfono: (P.B.X.) 3851818 Fax: 3585020





[Firmado con Certifirma. Documento No.] c3ba8a07-8135-47aa-9630-89a2da83dcfa

 DAVIVIENDA

**GARANTÍA BANCARIA No.07002026100924719**

| | |
|---|---|
| **FECHA DE EMISIÓN** | : 02 de noviembre de 2022 |
| **MONTO** | : COP $78.931.611.900 |
| **FECHA DE VENCIMIENTO** | : 30 de noviembre de 2023. |
| **ORDENANTE** | : TERMOBARRANQUILLA S.A. E.S.P. |
| **BENEFICIARIO** | : CNE OIL & GAS S.A.S. Nit: 900.713.658-0 |
| | CANACOL ENERGY COLOMBIA S.A.S. Nit: 830.095.563-3 |

Por cuenta y orden de la TERMOBARRANQUILLA S.A. E.S.P. ,(en adelante, "EL Ordenante"), con domicilio legal en Barranquilla, República de Colombia, identificada con NIT 800.245.746 - 1, Banco Davivienda S.A., identificado con NIT 860.034.313-7, establecimiento bancario legalmente constituido bajo las leyes de la República de Colombia, con domicilio principal en en Bogotá, (en adelante, "el Banco"), por medio del presente instrumento constituye garantía bancaria irrevocable a primer requerimiento,en adelante, ("Garantía Bancaria"), a favor de CNE OIL & GAS S.A.S. identificada con NIT 900.713.658-0 y  CANACOL ENERGY COLOMBIA S.A.S. identificada con NIT 830.095.563-3, ("el Beneficiario" y/o "los Beneficiarios"), la cual se regirá por las siguientes:

## CLÁUSULAS

**Primera.- Objeto:** La Garantía Bancaria ampara el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, multas, cargos y sobrecostos en que incurra EL VENDEDOR por el incumplimiento de EL COMPRADOR (la "Garantía"). Según la cláusula 5.5 del contrato VP-0515, los Beneficiarios Finales de la presente Garantía son CNE OIL & GAS SAS y CANACOL ENERGY COLOMBIA SAS, acorde a lo señalado en el contrato de suministro de Gas Natural en firme Nro. CNEGN- 01-2016 firmado el 2 de febrero de 2016.

**Segunda.- Beneficiarios:** Esta Garantía Bancaria se extiende únicamente a favor de los Beneficiarios, quienes, al momento de la reclamación de exigibilidad, parcial o total, de la presente Garantía Bancaria, podrán actuar individual y/o conjuntamente ambos o alguno de ellos, requiriendo hasta el 100% del Monto Máximo Garantizado (según se define este término más adelante en la cláusula tercera) y cualquier acción tomada por cualquiera de los Beneficiarios bajo la presente Garantía Bancaria será vinculante para cada uno de ellos.

[Firmado con Certifirma. Documento No.] c3ba8e07-8135-47ee-9630-69a2de83dcfa



**GARANTÍA BANCARIA No.07002026100924719**

**Tercera.- Cuantía:** La cuantía de la Garantía Bancaria será de hasta la suma de setenta y ocho mil novecientos treinta y un millones seiscientos once mil novecientos pesos, moneda legal colombiana ($78.931.611.900) (el "Monto Máximo Garantizado").

En ningún caso la responsabilidad del Banco ante el Beneficiario o los Beneficiarios de la Garantía Bancaria excederá el Monto Máximo Garantizado. El Banco se obliga a pagar en forma total o parcial hasta el Monto Máximo Garantizado únicamente durante la vigencia de la Garantía Bancaria.

**Cuarta.- Requisitos de exigibilidad:** Para la reclamación de exigibilidad y pago de la Garantía Bancaria, cualquiera de los Beneficiarios o conjuntamente todos ellos, deberán presentar al Banco dentro de su vigencia los siguientes documentos: (i)Copia de la Garantía Bancaria con el código QR legible , y (ii) declaración escrita firmada por el funcionario autorizado de cualquiera de los Beneficiario o de ambos,, donde manifieste que el Ordenante ha incumplido cualquiera de las obligaciones garantizadas con la Garantía Bancaria.

El Beneficiario deberá presentar los documentos mencionados en las oficinas del Banco señaladas en la cláusula décima primera.

Una vez presentados dichos documentos dentro del término de vigencia de la Garantía Bancaria, el Banco procederá a primer requerimiento, al pago de las sumas que no excedan la cuantía total garantizada por la Garantía Bancaria. En caso de que el Beneficiario o los Beneficiarios no presente solicitud de pago alguna dentro del término de vigencia de la Garantía Bancaria, así se hubiese generado el incumplimiento dentro de dicho término, la Garantía Bancaria se extinguirá automáticamente y el Banco libre de todo compromiso.

**Quinta.- Moneda de pago:** El Banco pagará a cualquiera de los Beneficiarios hasta el Monto Máximo Garantizado en la presente Garantía Bancaria en pesos colombianos.

**Sexta.- Término para el pago:** El Banco se obliga a realizar el pago de la Garantía Bancaria que solicite el Beneficiario, dentro de los cinco (5) días hábiles siguientes a aquel en que el Banco reciba del Beneficiario los documentos indicados en la cláusula tercera a satisfacción.

**Séptima- Vigencia:** La Garantía Bancaria se mantendrá vigente desde el primero (01) de diciembre de 2022 hasta el treinta (30) de noviembre de 2023.

[Firmado con Certifirma. Documento No.] c3ba8e07-8135-47ee-9630-69a2de83dcfa

 DAVIVIENDA

**GARANTÍA BANCARIA No.07002026100924719**

La Garantía Bancaria no expirará por falta de pago de la prima o por revocatoria unilateral, por lo que el Banco renuncia expresamente a invocar dichas figuras. La Garantía Bancaria es irrevocable.

Si hasta el último día de vigencia de la Garantía Bancaria, el Banco no hubiera recibido por escrito algún aviso o reclamo en el sentido de haberse producido responsabilidad de parte del Banco originada en la Garantía Bancaria, cesará por esta misma circunstancia toda responsabilidad derivada de las obligaciones garantizadas y la Garantía Bancaria quedará total y definitivamente cancelada.

**Octava.- Legislación aplicable:** La Garantía Bancaria se rige por la normatividad Colombiana. Todas las obligaciones aquí contenidas serán pagaderas por el Banco con sujeción a la normatividad colombiana vigente aplicable a esta clase de actos.

**Novena.- Cesión:** Ninguno de los Beneficiarios podrá ceder la Garantía Bancaria, caso en el cual cesará cualquier responsabilidad a cargo del Banco derivada de las obligaciones garantizadas con la Garantía Bancaria.

**Décima.- Beneficio de excusión:** El Banco renuncia expresamente al beneficio de excusión establecido en el artículo 2383 del Código Civil.

**Décima Primera.- Autonomía:** La Garantía Bancaria es totalmente autónoma e independiente del negocio causal, así como de los derechos y obligaciones derivados del mismo y con ella garantizados.

**Décima Segunda.- Dirección del Banco y horario de reclamación:** El Banco recibirá los documentos de que trata la cláusula tercera en sus oficinas ubicadas en la Avenida El Dorado No. 68 C - 61 Piso 10, de Bogotá D.C. Toda diligencia o petición relacionada con la Garantía Bancaria deberá ser realizada en los días bancarios hábiles desde las 8:30 a.m. a 12:00 m. y de 2:00 p.m. a 5:00 p.m.

La Garantía Bancaria se emite en el Distrito Capital de Bogotá, el dos (02) de noviembre del año dos mil veintidós (2022), en un ejemplar con destino a los Beneficiarios.

Atentamente,

**KARINA AFRICANO MOLINA**
C. de C. No. 32.737.957 de Barranquilla
Apoderada especial
**BANCO DAVIVIENDA S. A.**



Este documento esta firmado electrónicamente, enmarcado en la **ley 527 de 1999 y decreto 2364 de 2012** de la normatividad colombiana, cumpliendo además con los estandares internacionales de firma.

**HOJA DE APROBACIÓN Y FIRMAS**



Firmado digitalmente por:
Fecha: 04-11-2022
11:53:13 AM
Razón: Firma Electronica
de prod
Ubicación: Colombia



**GARANTÍA BANCARIA No.07002026101065306**

| | |
|---|---|
| **FECHA DE EMISIÓN** | : 10 de noviembre de 2023 |
| **MONTO AGREGADO** | : COP $91.332.127.530,oo |
| **FECHA DE VENCIMIENTO** | : 30 de noviembre de 2024. |
| **ORDENANTE** | : TERMOBARRANQUILLA S.A. E.S.P. |
| **BENEFICIARIO** | : VP INGENERGIA SAS ESP |

La presente garantía bancaria reemplaza en su totalidad y deja sin efectos la emitida bajo el número 07002026101061412 el día 31 de octubre de 2023.

Por cuenta y orden de la TERMOBARRANQUILLA S.A. E.S.P, ,(en adelante, "EL Ordenante"), con domicilio legal en Barranquilla, República de Colombia, identificada con NIT 800.245.746-1, el Banco Davivienda S.A., identificado con NIT 860.034.313-7, establecimiento bancario legalmente constituido bajo las leyes de la República de Colombia, con domicilio principal en Bogotá, (en adelante, "el Banco"), por medio del presente instrumento constituye garantía bancaria irrevocable a primer requerimiento,en adelante, ("Garantía Bancaria"), a favor de VP INGENERGIA SAS ESP, identificada con NIT 900.305.404-7 ("el Beneficiario"), la cual se regirá por las siguientes:

## CLÁUSULAS

**Primera.- Objeto:** La Garantía Bancaria ampara el cumplimiento de todas y cada una de las obligaciones derivadas del contrato VP-0515 incluyendo las de pago del suministro, los intereses, penalizaciones, compensaciones, multas, cargos y sobrecostos en que incurra EL VENDEDOR por el incumplimiento de EL COMPRADOR (la "Garantía), según la cláusula 5.5 del contrato VP-0515.

**Segunda.- Monto Agregado:** La cuantía de la Garantía Bancaria será de hasta la suma de noventa y un mil trescientos treinta y dos millones ciento veintisiete mil quinientos treinta pesos moneda legal colombiana (COP $91.332.127.530,oo) (el "Monto Agregado").

En ningún caso la responsabilidad del Banco ante el Beneficiario de la Garantía Bancaria excederá el Monto Agregado. El Banco se obliga a pagar en forma total o parcial hasta el Monto Agregado únicamente durante la vigencia de la Garantía Bancaria.

Firmado electrónicamente. Documento No. b0562547-a3b7-4716-8cb1-201ac1ea6078



**GARANTÍA BANCARIA No.07002026101065306**

**Cuarta.- Requisitos de exigibilidad:** El Banco procederá a realizar el pago total o parcial de la Garantía Bancaria una vez el Beneficiario le presente los siguientes documentos: (i) Copia de la Garantía Bancaria con el código QR legible, y (ii) declaración escrita firmada por el funcionario autorizado del Beneficiario, donde manifieste que el Ordenante ha incumplido cualquiera de las obligaciones garantizadas con la Garantía Bancaria.

El Beneficiario deberá presentar los documentos mencionados en las oficinas del Banco señaladas en la cláusula décima primera.

Una vez presentados dichos documentos dentro del término de vigencia de la Garantía Bancaria, el Banco procederá a primer requerimiento, al pago de las sumas que no excedan la cuantía total garantizada por la Garantía Bancaria. En caso de que el Beneficiario no presente solicitud de pago alguna dentro del término de vigencia de la Garantía Bancaria, así se hubiese generado el incumplimiento dentro de dicho término, la Garantía Bancaria se extinguirá automáticamente y el Banco queda libre de todo compromiso.

**Quinta.- Moneda de pago:** El Banco pagará a cualquiera de los Beneficiarios hasta el Monto Agregado en la presente Garantía Bancaria en pesos colombianos.

**Sexta.- Término para el pago:** El Banco se obliga a realizar el pago de la Garantía Bancaria que solicite el Beneficiario, dentro de los cinco (5) días hábiles siguientes a aquel en que el Banco reciba del Beneficiario los documentos indicados en la cláusula tercera a satisfacción.

**Séptima- Vigencia:** La Garantía Bancaria se mantendrá vigente desde el primero (01) de diciembre de 2023 hasta el treinta (30) de noviembre de 2024.

La Garantía Bancaria no expirará por falta de pago de la prima o por revocatoria unilateral, por lo que el Banco renuncia expresamente a invocar dichas figuras. La Garantía Bancaria es irrevocable.

Si hasta el último día de vigencia de la Garantía Bancaria, el Banco no hubiera recibido por escrito algún aviso o reclamo en el sentido de haberse producido responsabilidad de parte del Banco originada en la Garantía Bancaria, cesará por esta misma circunstancia toda responsabilidad derivada de las obligaciones garantizadas y la Garantía Bancaria quedará total y definitivamente cancelada.

**Octava.- Legislación aplicable:** La Garantía Bancaria se rige por la normatividad Colombiana  Todas las obligaciones aquí contenidas serán pagaderas por el Banco con sujeción a la normatividad colombiana vigente aplicable a esta clase de actos.



**GARANTÍA BANCARIA No.07002026101065306**

**Novena.- Cesión:** El Beneficiario no podrá ceder la Garantía Bancaria, caso en el cual cesará cualquier responsabilidad a cargo del Banco derivada de las obligaciones garantizadas con la Garantía Bancaria, salvo que dicha cesión haya sido a CNE OIL & GAS S.A.S. Nit: 900.713.658-0 y CNEOG Colombia Sucursal Colombia, NIT 900.276.770-2, la cual desde ya se encuentra aceptada por el Banco y que El Beneficiario realizará a raíz del contrato CNEOG-CF-VP-01-2022.

**Décima.- Beneficio de excusión:** El Banco renuncia expresamente al beneficio de excusión establecido en el artículo 2383 del Código Civil, aclarando que este documento corresponde a una Garantía Bancaria y no una fianza.

**Décima Primera.- Autonomía:** La Garantía Bancaria es totalmente autónoma e independiente del negocio causal, así como de los derechos y obligaciones derivados del mismo y con ella garantizados.

**Décima Segunda.- Dirección del Banco y horario de reclamación:** El Banco recibirá los documentos de que trata la cláusula tercera en sus oficinas ubicadas en la Avenida El Dorado No. 68 C - 61 Piso 10, de Bogotá D.C. Toda diligencia o petición relacionada con la Garantía Bancaria deberá ser realizada en los días bancarios hábiles desde las 8:30 a.m. a 12:00 m. y de 2:00 p.m. a 5:00 p.m.

La Garantía Bancaria se emite en el Distrito Capital de Bogotá, el diez (10) de noviembre del año dos mil veintitrés (2023), en un ejemplar con destino a los Beneficiarios.

Atentamente,

**FERNANDO AUGUSTO ROJAS BARRERA**
C. de C. No. 79.472.892 de Bogotá
Apoderado especial
**BANCO DAVIVIENDA S. A.**



Verificado y firmado con

**CertiFirma**
By AutenTIC

Documento No.
b0562547-a3b7-4716-8cb1-201acica6078

Creado el:
10/11/2023 05:38 PM

Este documento es la representación de un documento original en formato electrónico. Para validar el estado actual del documento ingrese a: consulta.autenticsign.com/y/o escanee el código QR.



Este documento esta firmado electrónicamente, enmarcado en la **ley 527 de 1999 y decreto 2364 de 2012** de la normatividad colombiana, cumpliendo además con los estandares internacionales de firma.





Nombre(s): Fernando A
Apellido(s): Rojas Barrer
Identificación No. 79472I8v.
Firmó el: 10/11/2023 05:38 PM

Firmado digitalmente por:
Fecha: 10-11-2023
05:38:17 PM
Razón: Firma Electronica
de prod
Ubicación: Colombia

69

Señores,
Bancolombia S.A.
Ciudad

Ref. Garantía Bancaria No. 10090004337 con fecha de vencimiento del 30 de noviembre de 2023.

Apreciados señores:

Nos dirigimos a ustedes para reiterar nuestra solicitud de pago S-COG-20231658-VLG que les enviamos el pasado 30 de noviembre de 2023, por medio de la cual les requerimos el pago de $92.338.487.500, por el incumplimiento de las obligaciones adquiridas por VP INGENERGÍA S.A.S. E.S.P. en favor de CNE OIL & GAS S.A.S. y de CNEOG COLOMBIA SUCURSAL COLOMBIA originadas en el Contrato CNEOG-CF-VP-01-2022.

Adicionalmente, les informamos el incumplimiento de otras obligaciones por concepto de suministro de gas suministrado en los meses de octubre y noviembre de 2023, también adeudadas por VP INGENERGÍA S.A.S. E.S.P. en favor de CNE OIL & GAS S.A.S. y de CNEOG COLOMBIA SUCURSAL COLOMBIA originadas en el citado Contrato CNEOG-CF-VP-01-2022, cuyos montos ascienden a $48.333.353.950.

En consecuencia, la suma hasta ahora incumplida por VP INGENERGÍA S.A.S. E.S.P. corresponde a $140.671.841.450 (la "Suma Incumplida"), cuyo pago les solicitamos conforme a la garantía bancaria de la referencia.

El pago deberá efectuarse mediante transferencia bancaria a la cuenta de ahorros No. 291-819613 a nombre de CNEOG COLOMBIA SUCURSAL COLOMBIA (NIT 900.276.770-2) abierta en el Banco de Occidente, domiciliado en Bogotá, por la totalidad de la Suma Incumplida.

Anexamos copia de: (i) la Garantía Bancaria y (ii) certificado de existencia y representación de CNE OIL & GAS S.A.S. y de CNEOG COLOMBIA SUCURSAL COLOMBIA.

Cordialmente,

ANDRES VALENZUELA PACHÓN
Representante legal de las siguientes sociedades:
CNE OIL & GAS S.A.S. (NIT 900.713.658-0)
CNEOG COLOMBIA SUCURSAL COLOMBIA (NIT 900276770-2)

BANCOLOMBIA
BOGOTA - TELEPORT
2023 DIC. 18
OF. 172
CORRESPONDENCIA RECIBIDA

Recibido Monica M

Firmado electrónicamente. Documento No. 83dbd948-a2c2-4c18-8c25-142709d02530



**GARANTÍA BANCARIA No.07002026101061412**

| | |
|---|---|
| **FECHA DE EMISIÓN** | : 31 de octubre de 2023 |
| **MONTO** | : COP $102.332.916.000,oo |
| **FECHA DE VENCIMIENTO** | : 30 de noviembre de 2024. |
| **ORDENANTE** | : TERMOBARRANQUILLA S.A. E.S.P. |
| **BENEFICIARIO** | : CNE OIL & GAS S.A.S. Nit: 900.713.658-0 y CNEOG Colombia Sucursal Colombia, NIT 900.276.770-2 |

Por cuenta y orden de la TERMOBARRANQUILLA S.A. E.S.P, ,(en adelante, "EL Ordenante"), con domicilio legal en Barranquilla, República de Colombia, identificada con NIT 800.245.746-1, el Banco Davivienda S.A., identificado con NIT 860.034.313-7, establecimiento bancario legalmente constituido bajo las leyes de la República de Colombia, con domicilio principal en en Bogotá, (en adelante, "el Banco"), por medio del presente instrumento constituye garantía bancaria irrevocable a primer requerimiento,en adelante, ("Garantía Bancaria"), a favor de CNE OIL & GAS S.A.S. identificada con NIT 900.713.658-0 y CNEOG Colombia Sucursal Colombia, identificada con NIT 900.276.770-2 ("el Beneficiario" y/o "los Beneficiarios"), la cual se regirá por las siguientes:

### CLÁUSULAS

**Primera.- Objeto:** La Garantía Bancaria ampara el cumplimiento de las obligaciones de pago del suministro, los intereses, penalizaciones, compensaciones, multas, cargos y sobrecostos en que incurra EL VENDEDOR por el incumplimiento de EL COMPRADOR (la "Garantía"). Según la cláusula 5.5 del contrato VP-0515, los Beneficiarios Finales de la presente Garantía son CNEOG COLOMBIA SUCURSAL COLOMBIA y CNE OIL & GAS S.A.S., acorde a lo señalado en los contratos de suministro de Gas en firme No. CNEGN-01-2016 y No. CNEOG-CF-VP-01- 2022 firmados el 2 de febrero de 2016 y el 21 de diciembre de 2022, respectivamente.

**Segunda.- Beneficiarios:** Esta Garantía Bancaria se extiende únicamente a favor de los Beneficiarios, quienes, al momento de la reclamación de exigibilidad, parcial o total, de la presente Garantía Bancaria, podrán actuar individual y/o conjuntamente ambos o alguno de ellos, requiriendo hasta el 100% del Monto Máximo Garantizado (según se define este término más adelante en la cláusula tercera) y cualquier acción tomada por cualquiera de los Beneficiarios bajo la presente Garantía Bancaria será vinculante para cada uno de ellos.



**GARANTÍA BANCARIA No.07002026101061412**

**Tercera.- Cuantía:** La cuantía de la Garantía Bancaria será de hasta la suma de ciento dos mil trescientos treinta y dos millones novecientos dieciséis mil pesos, moneda legal colombiana (COP $102.332.916.000) (el "Monto Máximo Garantizado").

En ningún caso la responsabilidad del Banco ante el Beneficiario o los Beneficiarios de la Garantía Bancaria excederá el Monto Máximo Garantizado. El Banco se obliga a pagar en forma total o parcial hasta el Monto Máximo Garantizado únicamente durante la vigencia de la Garantía Bancaria.

**Cuarta.- Requisitos de exigibilidad:** Para la reclamación de exigibilidad y pago de la Garantía Bancaria, cualquiera de los Beneficiarios o conjuntamente todos ellos, deberán presentar al Banco dentro de su vigencia los siguientes documentos: (i)Copia de la Garantía Bancaria con el código QR legible , y (ii) declaración escrita firmada por el funcionario autorizado de cualquiera de los Beneficiario o de ambos,, donde manifieste que el Ordenante ha incumplido cualquiera de las obligaciones garantizadas con la Garantía Bancaria.

El Beneficiario deberá presentar los documentos mencionados en las oficinas del Banco señaladas en la cláusula décima primera.

Una vez presentados dichos documentos dentro del término de vigencia de la Garantía Bancaria, el Banco procederá a primer requerimiento, al pago de las sumas que no excedan la cuantía total garantizada por la Garantía Bancaria. En caso de que el Beneficiario o los Beneficiarios no presente solicitud de pago alguna dentro del término de vigencia de la Garantía Bancaria, así se hubiese generado el incumplimiento dentro de dicho término, la Garantía Bancaria se extinguirá automáticamente y el Banco libre de todo compromiso.

**Quinta.- Moneda de pago:** El Banco pagará a cualquiera de los Beneficiarios hasta el Monto Máximo Garantizado en la presente Garantía Bancaria en pesos colombianos.

**Sexta.- Término para el pago:** El Banco se obliga a realizar el pago de la Garantía Bancaria que solicite el Beneficiario, dentro de los cinco (5) días hábiles siguientes a aquel en que el Banco reciba del Beneficiario los documentos indicados en la cláusula tercera a satisfacción.

**Séptima- Vigencia:** La Garantía Bancaria se mantendrá vigente desde el primero (01) de diciembre de 2023 hasta el treinta (30) de noviembre de 2024.

Firmado electrónicamente. Documento No. 63dbd948-a2c2-4d8-8c25-142709d02530



**GARANTÍA BANCARIA No.07002026101061412**

La Garantía Bancaria no expirará por falta de pago de la prima o por revocatoria unilateral, por lo que el Banco renuncia expresamente a invocar dichas figuras. La Garantía Bancaria es irrevocable.

Si hasta el último día de vigencia de la Garantía Bancaria, el Banco no hubiera recibido por escrito algún aviso o reclamo en el sentido de haberse producido responsabilidad de parte del Banco originada en la Garantía Bancaria, cesará por esta misma circunstancia toda responsabilidad derivada de las obligaciones garantizadas y la Garantía Bancaria quedará total y definitivamente cancelada.

**Octava.- Legislación aplicable:** La Garantía Bancaria se rige por la normatividad Colombiana. Todas las obligaciones aquí contenidas serán pagaderas por el Banco con sujeción a la normatividad colombiana vigente aplicable a esta clase de actos.

**Novena.- Cesión:** Ninguno de los Beneficiarios podrá ceder la Garantía Bancaria, caso en el cual cesará cualquier responsabilidad a cargo del Banco derivada de las obligaciones garantizadas con la Garantía Bancaria.

**Décima.- Beneficio de excusión:** El Banco renuncia expresamente al beneficio de excusión establecido en el artículo 2383 del Código Civil.

**Décima Primera.- Autonomía:** La Garantía Bancaria es totalmente autónoma e independiente del negocio causal, así como de los derechos y obligaciones derivados del mismo y con ella garantizados.

**Décima Segunda.- Dirección del Banco y horario de reclamación:** El Banco recibirá los documentos de que trata la cláusula tercera en sus oficinas ubicadas en la Avenida El Dorado No. 68 C - 61 Piso 10, de Bogotá D.C. Toda diligencia o petición relacionada con la Garantía Bancaria deberá ser realizada en los días bancarios hábiles desde las 8:30 a.m. a 12:00 m. y de 2:00 p.m. a 5:00 p.m.

La Garantía Bancaria se emite en el Distrito Capital de Bogotá, el treinta y uno (31) de octubre del año dos mil veintitrés (2023), en un ejemplar con destino a los Beneficiarios.

Atentamente,

**KARINA AFRICANO MOLINA**
C. de C. No. 32.737.957 de Barranquilla
Apoderada especial
**BANCO DAVIVIENDA S. A.**

 

**Documento No.**
63dbd948-a2c2-4cf8-8c25-142709d02530

**Creado el:**
31/10/2023 06:09 PM

Este documento es la representación de un documento original en formato electrónico. Para validar el estado actual del documento ingrese a consulta.autenticsign.com y/o escanee el código QR.

Este documento esta firmado electrónicamente, enmarcado en la **ley 527 de 1999 y decreto 2364 de 2012** de la normatividad colombiana, cumpliendo además con los estandares internacionales de firma. 



Firmado digitalmente por:
Fecha: 31-10-2023
06:10:00 PM
Razón: Firma Electronica
de prod
Ubicación: Colombia

**Itaú**

**Otrosí No. 1 al Contrato de Fiducia Mercantil de administración y pagos celebrado entre VP Ingenergía S.A.S. E.S.P. e Itaú Asset Management Colombia S.A. Sociedad Fiduciaria.**

Entre los suscritos a saber:

(i)   **Darlyn Yesenia Neira Caro,** identificada con cédula de ciudadanía 1.095.808.726, quien actúa en calidad de tercer suplente Gerente General de **VP Ingenergía S.A.S. E.S.P.,** identificada con NIT. 900.305.404 – 7, sociedad legalmente constituida mediante escritura pública número 1999 del 29 de julio de 2009 en la Notaría 11 de Bogotá, estando debidamente facultado para celebrar en nombre de la sociedad, tal y como consta en el certificado de existencia y representación legal expedido por la Cámara de Comercio de Bogotá, quien en adelante se denominará "**Fideicomitente**".

(ii)  **María Fernanda Morales Carrillo**, identificada con cédula de ciudadanía número 39.780.034 quien en su calidad de representante legal, obra en nombre y representación de **Itaú Asset Management Colombia S.A. Sociedad Fiduciaria** identificada con NIT. 800.141.021-1 sociedad de servicios financieros, con domicilio principal en la ciudad de Bogotá D.C., debidamente autorizada para desarrollar su objeto social, todo lo cual acredita con el certificado de existencia y representación legal expedido por la Superintendencia Financiera de Colombia, quien para efectos del presente documento se denominará la "**Fiduciaria**"; y en conjunto con el Fideicomitente, se denominarán como, las "**Partes**".

Las Partes han acordado celebrar el presente Otrosí No. 1, en adelante "Otrosí" al Contrato de Fiducia Mercantil de administración y pagos, en adelante el "Contrato de Fiducia" mediante el cual se constituyó el **Fideicomiso de administración y pagos VP – CNE – TEBSA**, en adelante el "Fideicomiso" previas las siguientes:

### Consideraciones

1.  Que, mediante documento privado del 24 de febrero de 2016, el Fideicomitente y Helm Fiduciaria S.A. celebraron el Contrato de Fiducia mediante el cual se constituyó el Fideicomiso.

2.  Que, por escritura pública número 1199 del 16 de mayo de 2017 de la Notaría 25 de Bogotá, se cambió la razón social de Helm Fiduciaria S.A. por la de Itaú Asset Management Colombia S.A. Sociedad Fiduciaria.

3.  Que, es interés del Fideicomitente adicionar un beneficiario de pago y modificar la duración del Contrato de Fiducia.

4.  Que, el Beneficiario de Pago con la firma del Contrato de Suministro de Gas en Firme No. CNEOG-CF-VP-01-2022, acordó la modificación propuesta en el numeral anterior.

5.  Que, previas las presentes consideraciones, las Partes acuerdan suscribir el Otrosí al Contrato de Fiducia, que en adelante se regirá por las siguientes:

### Cláusulas

**Cláusula Primera**: Las Partes acuerdan modificar la Primera Parte – Cuadro de Declaraciones del Contrato de Fiducia, en los siguientes términos:

Itaú Asset Management Colombia S. A. Sociedad Fiduciaria



**Otrosí No. 1 al Contrato de Fiducia Mercantil de administración y pagos celebrado entre VP Ingenergía S.A.S. E.S.P. e Itaú Asset Management Colombia S.A. Sociedad Fiduciaria.**

*Itaú Asset Management* *(vertical left margin)*

> **"I. Capítulo Primero**
>
> **Definiciones**
>
> *(...)*
>
> **Beneficiario de Pago:** *Serán las compañías CNE Oil & Gas S.A.S. identificada con NIT. 900.713.658 – 0 y CNEOG Colombia Sucursal Colombia identificada con NIT. 900.276.770 – 2, que se encuentran identificadas en el numeral tercero del capítulo segundo de este CUADRO DE DECLARACIONES, quienes han suscrito con el FIdeicomitente los contratos relacionados a continuacion: (i) Contrato de Suministro de Gas en Firme No. CNEGN-01-2016 ; (ii) Contrato de Suministro de Gas en Firme No. CNEOG-CF-VP-01-2022.*
>
> *(...)*
>
> **II. Capítulo Segundo**
>
> **Condiciones del Contrato de Administración y Pagos**
>
> *(...)*
>
> **3. Beneficiarios de Pago**
>
> **CNE Oil & Gas S.A.S. y CNEOG Colombia Sucursal Colombia**
>
> *Dirección: Calle 113 Nro. 7 – 45 Of 1501*
>
> *Ciudad: Bogotá D.C., Colombia*
>
> *Teléfono: 6211747*
>
> *Correo electrónico: avalenzuela@canacolenergy.com*
>
> *(...)*
>
> **8. Duración del Contrato de Fiducia:** *El presente contrato tendrá una duración hasta el 30 de noviembre de 2026 y dos meses más, el cual podrá ser prorrogado por acuerdo entre las Partes debidamente instrumentalizado mediante la suscripción del otrosí al Contrato de Fiducia. En todo caso, el contrato permanecerá vigente mientras existan obligaciones a cargo del Fideicomitente a favor de los Beneficiarios de Pago.*
>
> *(...)*
>
> **15. Condiciones especiales:**
>
> - *Para la realización de los pagos que debe hacer el Fideicomiso a los Beneficiarios de Pago, el Fideicomitente deberá presentar a la Fiduciaria la factura debidamente aprobada por las Partes. Dentro de los documentos que debe adjuntar el Fideicomitente, debe adjuntarse la aceptación de la factura por parte de él.*
>
>   *La Fiduciaria realizará el pago siempre y cuando existan recursos en el Fideicomiso a los Beneficiarios de Pago en la siguientes cuenta:*
>
>   **CNE Oil & Gas S.A.S. y CNEOG Colombia Sucursal Colombia**

*VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA (vertical left margin)*

**Itaú**

**Otrosí No. 1 al Contrato de Fiducia Mercantil de administración y pagos celebrado entre VP Ingenergía S.A.S. E.S.P. e Itaú Asset Management Colombia S.A. Sociedad Fiduciaria.**

- *Entidad: Banco de Occidente*

- *Tipo de cuenta: ahorros*

- *Nombre de la cuenta: Helm Fiduciaria – Fideicomiso PA CANACOL*

- *Número de la cuenta: 270-87746-7*

• *Para la realización del pago del Servicio de Transporte, los Beneficiarios de Pago enviarán al Fideicomitente una cuenta de cobro, documento que será enviado a la Fiduciaria para que realice el pago de acuerdo con las instrucciones impartidas por el Fideicomitente.*

• *La Fiduciaria deberá emitir certificación a los Beneficiarios de Pago que contenga: (i) que el Fideicomitente ha suscrito contrato de Fiducia, con duración hasta el 30 de noviembre del 2026 y dos meses más ; (ii) que están expresamente incluidas las instrucciones de pago a favor de los Beneficiarios de Pago ; (iii) que las cuentas bancarias indicadas por los Beneficiarios de Pagos para la recepción de los pagos se encuentran inscritas en el Fideicomiso y (iv) que existe compromiso de la Fiduciaria de informar cualquier evento que pueda afectar los derechos de los Beneficiarios de Pago en cuanto a recibir procesos de embargo o falta de recursos de pago para las facturas que presente el Fideicomitente.*

*(...)".*

**Cláusula Segunda**. – Las Partes acuerdan modificar el numeral 5 de la cláusula décima cuarta (Obligaciones de la Fiduciaria) del Capítulo Tercero (Clausulado) de la Segunda Parte del Contrato en los siguientes términos:

*5. Rendir, cuentas comprobadas de su gestión al Fideicomitentes y a los Beneficiarios o sus cesionarios, dentro de los quince (15) Días Hábiles siguientes, con una periodicidad semestral, contados a partir de la Fecha de Suscripción del Contrato de Fiducia Inicial, con sus respectivos soportes documentales de las actividades que ha llevado a cabo en cumplimiento del Contrato y las Leyes Aplicables. Una vez recibida cada rendición de cuentas, el Fideicomitente y los Beneficiarios tendrán un plazo de diez (10) Días Hábiles para revisarla y objetarla. Transcurrido este plazo sin que se reciba pronunciamiento alguno, se entenderá que han aceptado en su totalidad el contenido de la rendición de cuentas"*

*(...)".*

**Cláusula Tercera.** Las Partes acuerdan adicionar la siguiente cláusula, que para todos los efectos legales y contractuales se entenderá de la siguiente manera:

*"Cláusula Trigésima Segunda. – Firma Electrónica*

*El Contrato y sus modificaciones podrán ser perfeccionados a través de cualquier medio de firma reconocido y válido, particularmente a través del mecanismo de firma electrónica y/o mediante firma autógrafa, por un representante legal debidamente facultado de cada una de las Partes. En caso de que alguna firma se realice a través del mecanismo de firma electrónica, las Partes reconocen expresa validez a dichas firmas de acuerdo con las disposiciones contenidas en la Ley 527 de 1999 y en el*

**Itaú**

**Otrosí No. 1 al Contrato de Fiducia Mercantil de administración y pagos celebrado entre VP Ingenergía S.A.S. E.S.P. e Itaú Asset Management Colombia S.A. Sociedad Fiduciaria.**

*Decreto 1074 de 2015 y en las normas que al respecto se encuentren vigentes, por lo que declaran y garantizan que la suscripción de este Contrato y de sus modificaciones es válido y exigible para todos los efectos legales, tanto con firmas electrónicas como con firmas autógrafas."*

**Cláusula Cuarta.** – Las Partes acuerdan expresamente que las estipulaciones del Contrato de Fiducia que no hayan sido expresamente modificadas o adicionadas mediante el presente otrosí permanecen vigentes y con plenos efectos

En constancia se firma en la última fecha en que cualquiera de las Partes suscriba el presente Otrosí.

**El Fideicomitente,**

E-SIGNED by Darlyn Yesenia Neira Caro
on 2023-04-12 10:33:38 COT

**Darlyn Yesenia Neira Caro**

Tercer Suplente Gerente General

**VP Ingenergía S.A.S. E.S.P.**

**La Fiduciaria,**

E-SIGNED by Maria Fernanda Morales Carrillo
on 2023-04-12 14:25:41 COT

**María Fernanda Morales Carrillo**

Representante Legal

**Itaú Asset Management Colombia S.A. Sociedad Fiduciaria como vocera y administradora del Fideicomiso de administración y pagos VP – CNE – TEBSA.**



Uso Interno



Bogotá D.C., diciembre 28 de 2023

Señores,
**Banco Davivienda S.A.**
Ciudad

Ref. Garantía Bancaria No. 07002026100924719 con fecha de vencimiento del 30 de noviembre de 2023.

Apreciados señores:

Nos referimos a nuestra comunicación con radicado RCCI0417212023 del pasado 18 de diciembre de 2023 mediante la cual reiteramos nuestra solicitud de pago de la garantía de la referencia, en favor de CNE OIL & GAS S.A.S. como consecuencia del incumplimiento de las obligaciones adquiridas por VP INGENERGÍA S.A.S. E.S.P originadas en el Contrato CNEGN-01-2016.

Al respecto atentamente les solicitamos dar trámite y respuesta a la referida solicitud a la mayor brevedad, toda vez que la solicitud original fue presentada desde el 14 de noviembre de 2023.

Cordialmente,

ANDRES VALENZUELA PACHÓN
Representante legal
CNE OIL & GAS S.A.S. (NIT 900.713.658-0)

Firmado electrónicamente. Documento No. 4b5f5493-24a3-453a-a447-11dae9f430a4

Bogotá D.C., 22 de enero de 2024

SEÑORES

CNE OIL & GAS SAS

CNEOG COLOMBIA SUCURSAL COLOMBIA

Ciudad

REF. Garantía bancaria No. 10090004337 con fecha de vencimiento del 30 de noviembre de 2023.

Apreciados señores,

En atención a su comunicación de 28 de diciembre de 2023, reiteramos que no es posible acceder a su solicitud de pagar la garantía de la referencia, toda vez que el incumplimiento objeto de la reclamación no corresponde a la obligación garantizada, al igual que el monto reclamado difiere del valor de la garantía, tal como consta en las comunicaciones emitidas por Bancolombia, a través de los correos electrónicos enviados a ustedes, el 4 diciembre de 2023, el 7 de diciembre de 2023 y el 28 de diciembre de 2023.

Adicionalmente, la solitud de pago presentada por ustedes el 30 de noviembre de 2023, no cumplió con los requisitos previstos en el romano (i), cláusula tercera, de la garantía bancaria, los cuales nos permitimos mencionar:

1. No se declaró que TERMOBARRANQUILLA S.A. ESP, sociedad que ostenta calidad de "EL GARANTIZADO", incumplió las obligaciones de la Operación Subyacente.
2. No se indicó la forma como TERMOBARRANQUILLA S.A. ESP incumplió la Operación Subyacente.

Finalmente, es importante precisar que el primer correo, al que hace referencia el primer párrafo de la presente comunicación, fue enviado a la dirección avalenzuela@canacolenergy.com, en respuesta a la reclamación recibida desde esa misma dirección y que los correos subsiguientes, anteriores al del 28 de diciembre, fueron enviados a la dirección jlinero@canacolenergy.com, que corresponde a la dirección de contacto suministrada en el formato de solicitud de emisión de la garantía.

Cordialmente,

_____

BANCOLOMBIA S.A.



Documento No.
4b5f5493-24a3-453a-a447-11dae9f430a4

Creado el:
01/02/2024 08:00 a. m.

Este documento es la representación de un documento original en formato electrónico. Para validar el estado actual del documento ingrese a: consulta.autenticsign.com/o escanee el código QR.



Este documento esta firmado electrónicamente, de conformidad con los estándares internacionales de firma en tanto es un documento autentico, integro y disponible para consulta en línea.





**Nombre(s)Sandra Marcela**
**Apellido(s)Gonzalez Lopez**
**CC. 32106399**
**Firmó el: 01/02/2024 08:00 a. m.**



Bogotá, D.C., 19 de enero de 2024.

Señores:
**CNEOG Colombia – CNE Oil Gas**
Atn: Andrés Valenzuela
Ciudad.

**Referencia:** Respuesta requerimiento S-COG-20240015-VLG- Fideicomiso de administración y pagos VP - CNE -TEBSA (en adelante el "Fideicomiso")

Respetado señor Valenzuela:

En atención a la petición efectuada a través de la Superintendencia Financiera de Colombia radicada el pasado 05 de enero de 2024 a continuación, nos permitimos enviar respuesta en el mismo orden solicitado:

*1. Proceder con una rendición inmediata de cuentas del Fideicomiso.*

**Respuesta**: Al respecto nos permitimos manifestar que la rendición de cuentas correspondiente al segundo semestre de 2023 será enviada el 26 de enero de esta anualidad.

*2. Adicional a lo anterior, especificar lo siguiente.*

    *2.1 Informarnos si del 1 de septiembre de 2023 en adelante ha habido retiros del Fideicomiso y, en caso tal, quién ordenó tales retiros y cuándo lo hizo. Solicitamos además remitírnos todos los documentos e información que hubiere presentado el Fideicomitente para justificar tales retiros.*

**Respuesta:** Respecto a esta solicitud nos permitimos anexar en ambiente Excel la relación de los pagos y/o giros que se han hecho en el fideicomiso desde el 01 de septiembre de 2023 hasta la fecha, es de aclarar que estos retiros han sido debidamente instruidos por nuestro fideicomitente.

Así mismo, anexamos en ambiente PDF la planilla de pagos presentada por el Fideicomitente para realizar los traslados.

    *2.2 Informarnos, del 1 de septiembre de 2023 en adelante, (i) la relación de facturas que han sido pagadas por el Fideicomiso a CNE OIL & GAS SAS y/o a CNEOG COLOMBIA SUCURSAL COLOMBIA o (ii) que el Fideicomitente dijo a la Fiduciaria que había pagado él directamente o un tercero a CNE OIL & GAS SAS y/o a CNEOG COLOMBIA SUCURSAL COLOMBIA.*

Respuesta: Sobre este particular, es menester indicar que a la fecha el Fideicomiso ha realizado giros por cuenta del Fideicomitente a CNE OIL & GAS SAS y al Fideicomitente directamente.

**Itaú**Fiduciaria

Itaú

Como consecuencia de lo manifestado, el Fideicomiso no cuenta con una relación de facturas por lo que no han sido pagadas por este, sin embargo, adjuntamos la planilla de pagos con la relación de estas.

Por último, nos permitimos indicar que atendiendo lo establecido contractualmente, y, en el entendido que se nos informa que hay diferencias en cuanto al cronograma de pago de las facturas por parte del fideicomitente para con el beneficiario de pago, la Fiduciaria como vocera del Fideicomiso no procederá con restituciones de aportes al fideicomitente, ni girará en nombre del Fideicomitente los recursos para el pago de facturas a favor del beneficiario de pago hasta cuando ambas partes diriman las diferencias, para tal efecto y como constancia del acuerdo entre las partes, la Fiduciaria deberá recibir una comunicación conjunta o separada (por parte del Fideicomitente y los Beneficiarios de Pago) indicando que fueron resueltas las diferencias y los valores que se transferirán a cada una de las partes de acuerdo con los recursos disponibles del Fideicomiso

Quedamos atentos a cualquier inquietud adicional que se requiera.

Atentamente,

OSCAR LARA
ORTIZ

Firmado digitalmente por
OSCAR LARA ORTIZ
Fecha: 2024.01.19 13:47:15
-05'00'

Óscar Lara Ortiz
Representante legal
**Itaú Fiduciaria Colombia S.A. Sociedad Fiduciaria actuando única y exclusivamente como vocera y administradora del Fideicomiso de administración y pagos VP – CNE – TEBSA**

VIGILADO SUPERINTENDENCIA FINANCIERA DE COLOMBIA

Itaú Asset Management Colombia S. A. Sociedad Fiduciaria



Bogotá D.C., 12 de Enero de 2024

Señores
**CNE OIL & GAS S.A.S.**
**CANACOL ENERGY COLOMBIA S.A.S.**
Calle 113 # 7-45 Torre B of. 1501
Ciudad

Asunto: Respuesta a comunicación - Garantía Bancaria No. 07002026100924719.

Respetados señores:

Reciban un cordial saludo del Banco Davivienda (el Banco). En respuesta a sus comunicaciones de fecha 18 y 28 de diciembre de 2023, en donde solicitan  el pago de la Garantía Bancaria No. 07002026100924719 (la Garantía), de manera atenta le manifestamos lo siguiente:

En nuestra comunicación del 20 de noviembre de 2023, ante la solicitud realizada de parte de ustedes con fecha 11 de noviembre de 2023, recibida el día 14 del mismo mes y año, el Banco puso de presente varios aspectos que esa compañía debía subsanar para que el Banco evaluara la solicitud de ejecución de la Garantía.

No obstante lo anterior, no se recibió por su parte las precisiones e información necesaria dentro del tiempo de vigencia de la Garantía, el cual venció el pasado 30 de noviembre. Al respecto, es importante resaltar lo indicado en la cláusula tercera de la Garantía que describimos a continuación:

*"(...) En caso de que el Beneficiario o los Beneficiarios no presente solicitud de pago alguna dentro del término de vigencia de la Garantía Bancaria, así se hubiese generado el incumplimiento dentro de dicho término, la Garantía Bancaria se extinguirá automáticamente y el Banco quedará libre de todo compromiso". (Subrayado fuera de texto)*

En consecuencia, infortunadamente el Banco no podrá atender favorablemente su solicitud de ejecución de la garantía en mención, debido a que no cumplió con el plazo para su presentación, el cual, como se informó, venció el 30 de noviembre de 2023.

Sin perjuicio de lo anterior y a título meramente informativo, este Banco observa que CANACOL sigue solicitando el pago ante el incumplimiento de la compañía VP INGENERGIA S.A. E.S.P. Tal situación, como se puso de presente en nuestra carta del 20 de noviembre de 2023, no corresponde con lo establecido en la Garantía, en la que expresamente se señaló que para su cobro se requiere una *"declaración escrita firmada por el funcionario autorizado de cualquiera de los Beneficiarios o de ambos, donde manifieste que el Ordenante ha incumplido cualquiera de las obligaciones garantizadas con la Garantía Bancaria"*. En este caso, el ordenante es TERMOBARRANQUILLA S.A. E.S.P.

Cordialmente,

**ÁLVARO MONTERO AGÓN**
Representante Legal

**Itaú**Fiduciaria

**Itaú**

Bogotá, D.C., 20 de diciembre de 2023

Señores:
CNEOG Colombia – CNE Oil Gas
Atn: Andrés Valenzuela
Ciudad.

Referencia: Respuesta comunicación requerimiento de pago

Respetado señor Valenzuela:

En atención a la petición efectuada en la cual indica "(...) les solicitamos proceder con el pago inmediato de las referidas facturas mediante transferencia electrónica de la suma de COP $45.429.868.152 (...) Y COP $23.461.275.117 (...)", por medio de la presente nos permitimos informar que el Fideicomiso de Administración y Pagos VP-CNE-TEBSA constituido en virtud del contrato de fiducia celebrado el 24 de febrero de 2016 (el "Contrato de Fiducia"), recibió comunicación por parte del Fideicomitente, esto es, la sociedad VP INGENERGIA S.A. ESP en la que instruyó "irrevocablemente el no pago de ninguna suma de dinero y/o bien fideicomitido en favor de los Beneficiarios de Pago, toda vez que, el pasado 15 de diciembre de 2023 el Fideicomitente rechazó las facturas presentadas por el Beneficiario de Pago.".

Es menester indicar que el Contrato de Fiducia en su clausula duodécima – "procedimiento para efectuar pagos", estipula que para la realización del pago al Beneficiario del Pago, el fideicomitente deberá instruir al fiduciario mediante comunicación escrita enviada con tres días de antelación indicando los pagos a realizar al Beneficiario de Pago".

En atención a lo indicado, para proceder con los pagos al beneficiario de pago es necesario recibir instrucción de nuestro Fideicomitente autorizando este.

Quedamos atentos a cualquier inquietud adicional que se requiera.

Atentamente,

*Andres Peña Baquero*

**Andrés Eduardo Peña Baquero**
Apoderado especial
**Itaú Fiduciaria Colombia S.A. Sociedad Fiduciaria**

1 de 1

**Itaú**Fiduciaria

**Itaú**

Bogotá, D.C., 20 de diciembre de 2023

Señores:
CNEOG Colombia – CNE Oil Gas
Atn: Andrés Valenzuela
Ciudad.

Referencia: Respuesta comunicación requerimiento de pago

Respetado señor Valenzuela:

En atención a la petición efectuada en la cual indica "(...) les solicitamos proceder con el pago inmediato de las referidas facturas mediante transferencia electrónica de la suma de COP $45.429.868.152 (...) Y COP $23.461.275.117 (...)", por medio de la presente nos permitimos informar que el Fideicomiso de Administración y Pagos VP-CNE-TEBSA constituido en virtud del contrato de fiducia celebrado el 24 de febrero de 2016 (el "Contrato de Fiducia"), recibió comunicación por parte del Fideicomitente, esto es, la sociedad VP INGENERGIA S.A. ESP en la que instruyó "irrevocablemente el no pago de ninguna suma de dinero y/o bien fideicomitido en favor de los Beneficiarios de Pago, toda vez que, el pasado 15 de diciembre de 2023 el Fideicomitente rechazó las facturas presentadas por el Beneficiario de Pago.".

Es menester indicar que el Contrato de Fiducia en su clausula duodécima – "procedimiento para efectuar pagos", estipula que para la realización del pago al Beneficiario del Pago, el fideicomitente deberá instruir al fiduciario mediante comunicación escrita enviada con tres días de antelación indicando los pagos a realizar al Beneficiario de Pago".

En atención a lo indicado, para proceder con los pagos al beneficiario de pago es necesario recibir instrucción de nuestro Fideicomitente autorizando este.

Quedamos atentos a cualquier inquietud adicional que se requiera.

Atentamente,

*Andrés Peña Baquero*

**Andrés Eduardo Peña Baquero**
Apoderado especial
**Itaú Fiduciaria  Colombia S.A. Sociedad Fiduciaria**

1 de 1



**De:** Andres Valenzuela Pachon avalenzuela@canacolenergy.com
**Asunto:** RV: [CORREO EXTERNO]: Alcance a Comunicación COE_202301359 enviada por Tebsa.
**Fecha:** 20 de noviembre de 2023, 6:29 p. m.
**Para:** Carolina Rodriguez Gomez lcrodriguez@canacolenergy.com

Carolina
Reenvió lo solicitado

### Andres Valenzuela Pachon
**Legal Representative**
**Leader for Corporate Legal Affairs**
**Human Rights/ Ethics & Compliance/ Money Laundering & Terrorist Financing**



Calle 113 No. 7 - 45 Torre B Piso 15 Ed. Teleport , Bogota

Phone: +571 6211747 Ext. 1165

Mobile: +57 3202658419

www.canacolenergy.com



Este mensaje contiene información confidencial dirigida exclusivamente a la persona designada. Si usted no es el destinatario designado, no debe difundir, distribuir ni copiar este mensaje. Si ha recibido este mensaje por error, le rogamos que se lo comunique al remitente de inmediato por correo electrónico y que elimine el mensaje de su sistema. No es posible garantizar que la transmisión de correo electrónico vaya a ser segura o a estar libre de errores, puesto que la información puede interceptarse, dañarse, perderse, destruirse, llegar tarde o incompleta, o contener virus. Por consiguiente, el remitente no acepta responsabilidad alguna por ningún error u omisión que pueda contener este mensaje como consecuencia de la transmisión de correo electrónico. En caso de que se requiera verificación, solicite una versión impresa.
?

This message contains confidential, privileged and / or personal information for the exclusive use of the recipient. If you are not the intended recipient, please inform the sender immediately and permanently delete it from your account; If you are the recipient of the information contained in this email, you must use the same for the purpose strictly requested, being governed by the provisions on the handling of confidential information and / or personal information in accordance with the provisions of the Law 1581 of 2012 (protection of personal data) and other concordant norms. In case of any concern about the handling of the information contained, please refrain from distributing it and immediately consult the sender of this email.

### Andres Valenzuela Pachon
**Legal Representative**
**Leader for Corporate Legal Affairs**
**Human Rights/ Ethics & Compliance/ Money Laundering & Terrorist Financing**

Calle 113 No. 7 - 45 Torre B Piso 15 Ed. Teleport, Bogota
Phone: +57 601 6211747 Ext. 1165
Mobile: +57 3202658419
www.canacolenergy.com

Este mensaje contiene información confidencial dirigida exclusivamente a la persona designada. Si usted no es el destinatario designado, no debe difundir, distribuir ni copiar este mensaje. Si ha recibido este mensaje por error, le rogamos que se lo comunique al remitente de inmediato por correo electrónico y que elimine el mensaje de su sistema. No es posible garantizar que la transmisión de correo electrónico vaya a ser segura o a estar libre de errores, puesto que la información

guarantizar que la transmisión de correo electrónico vaya a ser segura o a estar libre de errores, puesto que la información puede interceptarse, dañarse, perderse, destruirse, llegar tarde o incompleta, o contener virus. Por consiguiente, el remitente no acepta responsabilidad alguna por ningún error u omisión que pueda contener este mensaje como consecuencia de la transmisión de correo electrónico. En caso de que se requiera verificación, solicite una versión impresa.

This message contains confidential, privileged and / or personal information for the exclusive use of the recipient. If you are not the intended recipient, please inform the sender immediately and permanently delete it from your account; If you are the recipient of the information contained in this email, you must use the same for the purpose strictly requested, being governed by the provisions on the handling of confidential information and / or personal information in accordance with the provisions of the Law 1581 of 2012 (protection of personal data) and other concordant norms. In case of any concern about the handling of the information contained, please refrain from distributing it and immediately consult the sender of this email.

**De:** Financiera VP <financiera@vpsa.co>
**Enviado:** jueves, 9 de noviembre de 2023 21:00
**Para:** Andres Valenzuela Pachon <avalenzuela@canacolenergy.com>; Juan Pablo Henao Botero <jhenao@canacolenergy.com>; Claudia Lafaurie Taboada <clafaurie@canacolenergy.com>
**Cc:** ALVARO VARGAS <alvarovargas@vpsa.co>; Jose Rosales <jrosales@tebsa.com.co>; nbendekg@davivienda.com <nbendekg@davivienda.com>
**Asunto:** [CORREO EXTERNO]: Alcance a Comunicación COE_202301359 enviada por Tebsa.

**CORREO EXTERNO:** No haga clic en ningún link o abra ficheros adjuntos a menos que reconozca que el remitente y e contenido del mensaje es seguro.

Buenas noches,

Adjunto comunicación VP-2442 sobre el asunto en referencia.

Atentamente,



**PATRICIA PEÑA**
VICEPRESIDENTE

OFICINA PRINCIPAL
AK. 9 # 115-06 / Oficina 801 / (1) 4624673 / Bogotá Colombia

CENTRO DE DOCUMENTACIÓN
Cra. 29 # 45-45 / Oficina 603 / (7) 6476968 / Bucaramanga

**INGENERGÍA**                                    WWW.VPSA.CO

**Aviso Legal**
La información contenida en este mensaje de correo electrónico, incluyendo cualquier archivo adjunto son confidenciales, privilegiados y protegidos por derechos de autor y están dirigidos única y exclusivamente para uso del destinatario, quien deberá utilizarla con el fin estrictamente solicitado, rigiéndose según lo establecido en las normas sobre manejo de información confidencial y/o de información personal de conformidad con lo dispuesto en la Ley 1581 de 2012 (protección de datos personales) y demás concordantes. Cualquier divulgación, reproducción o uso del mismo, así como cualquier acción que se tome respecto a la información contenida, por personas o entidades diferentes al propósito original de la misma está prohibida y será sancionada de acuerdo con las normas legales aplicables. Si usted ha recibido este mensaje por error, le solicitamos notificar este hecho inmediatamente al correo electrónico info@vpsa.co, eliminar este mensaje de su bandeja de entrada y borrar los datos adjuntos en los archivos de su computador. En caso de cualquier inquietud sobre el manejo de la información contenida abstengase de distribuirla y consulte inmediatamente al remitente de este correo.

Alcance a Comunicación
COE_202301359 enviada por...
117 KB



**De:** **Claudia Lafaurie Taboada** clafaurie@canacolenergy.com 📎
**Asunto:** RV: [CORREO EXTERNO]: Alcance a Comunicación COE_202301359 enviada por Tebsa.
**Fecha:** 10 de noviembre de 2023, 11:54 a. m.
**Para:** Carolina Rodriguez Gomez lcrodriguez@canacolenergy.com

## Claudia Lafaurie Taboada
### Vp Legal & General Counsel Colombia

Calle 113 No. 7 - 45 Torre B Piso 15 Ed. Teleport, Bogota
Phone:+57 601 6211747
www.canacolenergy.com



Este mensaje contiene información confidencial dirigida exclusivamente a la persona designada. Si usted no es el destinatario designado, no debe difundir, distribuir ni copiar este mensaje. Si ha recibido este mensaje por error, le rogamos que se lo comunique al remitente de inmediato por correo electrónico y que elimine el mensaje de su sistema. No es posible garantizar que la transmisión de correo electrónico vaya a ser segura o a estar libre de errores, puesto que la información puede interceptarse, dañarse, perderse, destruirse, llegar tarde o incompleta, o contener virus. Por consiguiente, el remitente no acepta responsabilidad alguna por ningún error u omisión que pueda contener este mensaje como consecuencia de la transmisión de correo electrónico. En caso de que se requiera verificación, solicite una versión impresa.

This message contains confidential, privileged and / or personal information for the exclusive use of the recipient. If you are not the intended recipient, please inform the sender immediately and permanently delete it from your account; If you are the recipient of the information contained in this email, you must use the same for the purpose strictly requested, being governed by the provisions on the handling of confidential information and / or personal information in accordance with the provisions of the Law 1581 of 2012 (protection of personal data) and other concordant norms. In case of any concern about the handling of the information contained, please refrain from distributing it and immediately consult the sender of this email.

**De:** Financiera VP <financiera@vpsa.co>
**Enviado el:** jueves, 9 de noviembre de 2023 9:00 p. m.
**Para:** Andres Valenzuela Pachon <avalenzuela@canacolenergy.com>; Juan Pablo Henao Botero <jhenao@canacolenergy.com>; Claudia Lafaurie Taboada <clafaurie@canacolenergy.com>
**CC:** ALVARO VARGAS <alvarovargas@vpsa.co>; Jose Rosales <jrosales@tebsa.com.co>; nbendekg@davivienda.com
**Asunto:** [CORREO EXTERNO]: Alcance a Comunicación COE_202301359 enviada por Tebsa.

> **CORREO EXTERNO:** No haga clic en ningún link o abra ficheros adjuntos a menos que reconozca que el remitente y el contenido del mensaje es seguro.

Buenas noches,

Adjunto comunicación VP-2442 sobre el asunto en referencia.

Atentamente,



**PATRICIA PEÑA**
VICEPRESIDENTE

OFICINA PRINCIPAL
AK. 9 # 115-06 / Oficina 801 / (1) 4624673 / Bogotá Colombia

CENTRO DE DOCUMENTACIÓN
Cra. 29 # 45-45 / Oficina 603 / (7) 6476968 / Bucaramanga

INGENIERÍA

INGENIERGIA

WWW.VPSA.CO

**Aviso Legal**

La información contenida en este mensaje de correo electrónico, incluyendo cualquier archivo adjunto son confidenciales, privilegiados y protegidos por derechos de autor y están dirigidos única y exclusivamente para uso del destinatario, quien deberá utilizarla con el fin estrictamente solicitado, rigiéndose según lo establecido en las normas sobre manejo de información confidencial y/o de información personal de conformidad con lo dispuesto en la Ley 1581 de 2012 (protección de datos personales) y demás concordantes. Cualquier divulgación, reproducción o uso del mismo, así como cualquier acción que se tome respecto a la información contenida, por personas o entidades diferentes al propósito original de la misma está prohibida y será sancionada de acuerdo con las normas legales aplicables. Si usted ha recibido este mensaje por error, le solicitamos notificar este hecho inmediatamente al correo electrónico info@vpsa.co, eliminar este mensaje de su bandeja de entrada y borrar los datos adjuntos en los archivos de su computador. En caso de cualquier inquietud sobre el manejo de la información contenida absténgase de distribuirla y consulte inmediatamente al remitente de este correo.

**Alcance a Comunicación**
**COE_202301359 enviada por...** 
117 KB

**De:** **Andres Valenzuela Pachon** avalenzuela@canacolenergy.com 📎
**Asunto:** RV: [CORREO EXTERNO]: BP - CORRESPONDENCIA: Garantía Bancaria No. 0700202610106141
**Fecha:** 20 de noviembre de 2023, 6:10 p. m.
**Para:** Carolina Rodriguez Gomez lcrodriguez@canacolenergy.com

Carolina
Reenvío lo solicitado

## Andres Valenzuela Pachon

**Legal Representative**
**Leader for Corporate Legal Affairs**
**Human Rights/ Ethics & Compliance/ Money Laundering & Terrorist Financing**



Calle 113 No. 7 - 45 Torre B Piso 15 Ed. Teleport , Bogota

Phone: +571 6211747 Ext. 1165

Mobile: +57 3202658419

www.canacolenergy.com



Este mensaje contiene información confidencial dirigida exclusivamente a la persona designada. Si usted no es el destinatario designado, no debe difundir, distribuir ni copiar este mensaje. Si ha recibido este mensaje por error, le rogamos que se lo comunique al remitente de inmediato por correo electrónico y que elimine el mensaje de su sistema. No es posible garantizar que la transmisión de correo electrónico vaya a ser segura o a estar libre de errores, puesto que la información puede interceptarse, dañarse, perderse, destruirse, llegar tarde o incompleta, o contener virus. Por consiguiente, el remitente no acepta responsabilidad alguna por ningún error u omisión que pueda contener este mensaje como consecuencia de la transmisión de correo electrónico. En caso de que se requiera verificación, solicite una versión impresa.
?

This message contains confidential, privileged and / or personal information for the exclusive use of the recipient. If you are not the intended recipient, please inform the sender immediately and permanently delete it from your account; If you are the recipient of the information contained in this email, you must use the same for the purpose strictly requested, being governed by the provisions on the handling of confidential information and / or personal information in accordance with the provisions of the Law 1581 of 2012 (protection of personal data) and other concordant norms. In case of any concern about the handling of the information contained, please refrain from distributing it and immediately consult the sender of this email.

## Andres Valenzuela Pachon
**Legal Representative**
**Leader for Corporate Legal Affairs**
**Human Rights/ Ethics & Compliance/ Money Laundering & Terrorist Financing**

Calle 113 No. 7 - 45 Torre B Piso 15 Ed. Teleport, Bogota
Phone: +57 601 6211747 Ext. 1165
Mobile: +57 3202658419
www.canacolenergy.com

Este mensaje contiene información confidencial dirigida exclusivamente a la persona designada. Si usted no es el destinatario designado, no debe difundir, distribuir ni copiar este mensaje. Si ha recibido este mensaje por error, le rogamos que se lo comunique al remitente de inmediato por correo electrónico y que elimine el mensaje de su sistema. No es posible garantizar que la transmisión de correo electrónico vaya a ser segura o a estar libre de errores, puesto que la información

garantizar que la transmisión de correo electrónico vaya a ser segura o a estar libre de errores, puesto que la información puede interceptarse, dañarse, perderse, destruirse, llegar tarde o incompleta, o contener virus. Por consiguiente, el remitente no acepta responsabilidad alguna por ningún error u omisión que pueda contener este mensaje como consecuencia de la transmisión de correo electrónico. En caso de que se requiera verificación, solicite una versión impresa.

This message contains confidential, privileged and / or personal information for the exclusive use of the recipient. If you are not the intended recipient, please inform the sender immediately and permanently delete it from your account; If you are the recipient of the information contained in this email, you must use the same for the purpose strictly requested, being governed by the provisions on the handling of confidential information and / or personal information in accordance with the provisions of the Law 1581 of 2012 (protection of personal data) and other concordant norms. In case of any concern about the handling of the information contained, please refrain from distributing it and immediately consult the sender of this email.

**De:** tebsa@tebsa.com.co <tebsa@tebsa.com.co>
**Enviado:** jueves, 9 de noviembre de 2023 15:26
**Para:** Andres Valenzuela Pachon <avalenzuela@canacolenergy.com>; Claudia Lafaurie Taboada <clafaurie@canacolenergy.com>; Juan Pablo Henao Botero <jhenao@canacolenergy.com>; Yuly Silva Salgado <ysilva@canacolenergy.com>; direcciongas@vpsa.co <direcciongas@vpsa.co>; ibarrios@tebsa.com.co <ibarrios@tebsa.com.co>; vdiazgranados@tebsa.com.co <vdiazgranados@tebsa.com.co>; eritzel@tebsa.com.co <eritzel@tebsa.com.co>
**Cc:** hramirez@tebsa.com.co <hramirez@tebsa.com.co>; jrosales@tebsa.com.co <jrosales@tebsa.com.co>; lfernandez@tebsa.com.co <lfernandez@tebsa.com.co>
**Asunto:** [CORREO EXTERNO]: BP - CORRESPONDENCIA: Garantía Bancaria No. 0700202610106141

**CORREO EXTERNO:** No haga clic en ningún link o abra ficheros adjuntos a menos que reconozca que el remitente y e contenido del mensaje es seguro.

Cordial Saludo, Doctor Andrés Valenzuela Pachón

Hemos radicado una correspondencia dirigida a usted con el No. Radicado **COE_202301359** .

**Asunto:** Garantía Bancaria No. 07002026101061412 expedida por Banco Davivienda

**Generado por:**
HERNANDO RAMIREZ
Director de Energía y Gas
hramirez@tebsa.com.co

**Firmado por:**
LUIS MIGUEL FERNANDEZ ZAHER
Presidente

La información contenida en este e-mail tiene carácter confidencial y solo puede ser utilizada por la persona o la compañía a la cual está dirigido. Si por error recibe este mensaje, le agradecemos eliminarlo de inmediato y no abrir el(los) archivo(s) adjunto(s) en caso de que lo(s) contenga. Por favor tenga en cuenta que si no es el receptor autorizado, cualquier retención, difusión, distribución o copia de este mensaje es prohibida y será sancionada por la ley. Las opiniones personales son exclusivas del autor y no de la compañía o sus vinculadas.
The information in this E-mail is intended to be confidential and only for use of the individual or entity to whom it is addressed. If you receive this message in error, please immediately delete the message received and please do not open attached files if applicable. Please bear in mind that if you are not the intended recipient, any retention, dissemination, distribution or copying of this message is strictly prohibited and sanctioned by law. Personal views or opinions are solely those of the author and not of the company or its affiliates.

**COE_202301359.pdf**

Uso Interno

 

Bogotá D.C., diciembre 19 de 2023                          S-CNO-20231528-VLG

Señores
**TERMOBARRANQUILLA SA ESP**
**Att: LUIS MIGUEL FERNÁNDEZ ZAHER**
Presidente
Ciudad

Estimados señores:

Como es de su conocimiento, CNE OIL & GAS SAS, CNEOG COLOMBIA SUCURSAL COLOMBIA y VP INGENERGÍA SAS ESP celebramos los contratos CNEGN-01- 2016, CNEOG-CF-VP-01-2022 y CNEOG-CI-VP-01-2022 para suministrarle gas a esta última.

Tanto por lo estipulado en los anteriores contratos, como por lo que se nos ha hecho saber de diferentes maneras, entendemos que ustedes son el Destinatario Final del gas que suministramos a VP INGENERGÍA SAS ESP.

Aunque en su momento remitimos a VP INGENERGÍA SAS ESP las facturas listadas a continuación cobrando a esa sociedad el gas suministrado en octubre y noviembre de 2023 por las cantidades que también relacionamos a continuación y pese a que dicho gas fue entregado a satisfacción, VP INGENERGÍA SAS ESP se niega sin fundamento válido al pago de las siguientes facturas:

**CNEGN-01- 2016 –CNE OIL & GAS S.A.S**
- CNEG-511 – COP$4.481.879.333 Reintegro costos de transporte
- CNEG-524 – 750.070MBTUGAS - COP$16.793.643.567
- CNEG-550 – COP$109.725.984 Reintegro costos de transporte
- CNEG-551 – COP$275.489.032 Reintegro costos de transporte
- CNEG-553 – 39.585MBTUGAS - COP$847.741.949

**CNEOG-CF-VP- 01-2022 – CNEOG COLOMBIA SUCURSAL COLOMBIA**:
- CNSC-384 - COP$77.345.041 Reintegro costos de transporte
- CNSC-405 - 108.891MBTUGAS - COP$2.438.237.867
- CNSC-445 – 319.234MBTUGAS - COP$ 8.864.702.285
- CNSC-431 – COP$876.059.559 Reintegro costos de transporte

**CNEOG-CI-VP-01-2022 - CNEOG COLOMBIA SUCURSAL COLOMBIA**
- CNSC-407 – 495.518MBTUGAS - COP$11.095.414.235
- CNSC-420 – COP$1.864.555.188 Reintegro costos de transporte
- CNSC-444 – 849.305MBTUGAS - COP$18.190.207.599
- CNSC-450 – COP$4.926.832.176 Reintegro costos de transporte

Uso Interno

 

La negativa sin fundamento y justificación por parte de VP INGENERGÍA SAS ESP al pago de un gas que ya le fue entregado causa innumerables perjuicios. Por lo mismo y dada la gravedad de la situación, les agradecemos indicarnos lo siguiente:

(1) Si TERMOBARRANQUILLA SA ESP fue el Destinatario Final del anterior gas;
(2) Si TERMOBARRANQUILLA SA ESP pagó a VP INGENERGÍA SAS ESP dicho gas;
(3) Si el eventual pago realizado por TERMOBARRANQUILLA SA ESP fue hecho al Fideicomiso de Administración y Pagos VP-CNE-TEBSA administrado por Itaú Fiduciaria Colombia SA Sociedad Fiduciaria

En caso de que existan saldos pendientes de pago por el anterior gas, les solicitamos que, como Destinatarios Finales de este, lo hagan directamente a CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA a las siguientes cuentas bancarias: cuenta de ahorros No. 291-819613 a nombre de CNEOG COLOMBIA SUCURSAL COLOMBIA con NIT 9002767702 y a la cuenta de ahorros No. 4828-0000-5274 a nombre de CNE OIL & GAS S A S con NIT 900.713.658-0.

Desafortunadamente, muchos de los eventos aquí relatados y otros colaterales se estima que no sólo han tenido la posibilidad de impactar económicamente a las compañías, sino que se trata de hechos jurídicamente relevantes que se ha estimado indispensable poner en conocimiento de las autoridades competentes para que se tomen las decisiones que en derecho correspondan.

Atentamente,

ANDRES VALENZUELA PACHÓN
CNE OIL & GAS SAS
CNEOG COLOMBIA SUCURSAL COLOMBIA

Copia: XM S.A/ E.S.P

 

Bogotá D.C., 29 de diciembre de 2023

Señores
**TERMOBARRANQUILLA SA ESP**
Att: LUIS MIGUEL FERNANDEZ ZAHER
Presidente

Ref.:     Respuesta a su comunicación COE_202301531 de fecha 21 de diciembre de 2023.

Estimados señores:

Rechazamos categóricamente su comunicación de la referencia y, en particular, la sugerencia que hacen de que CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA podrían llegar a ser responsables de las obligaciones contenidas en los acuerdos privados que ha celebrado TERMOBARRANQUILLA SA ESP con los comercializadores que les suministran gas. Menos aún, cuando nunca hemos conocido el alcance y términos de dicho acuerdo y tampoco los hemos garantizado de ninguna forma.

Lo contrario ocurre con los contratos de suministro de gas CNEGN-01-2016, CNEOG-CI-VP-01-2022 y CNEOG-CF-VP-01-2022 que fueron celebrados por CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA, como proveedores, con VP INGENERGÍA SAS ESP, como comprador, ya que ustedes garantizaron, de diferentes formas las obligaciones asumidas por VP INGENERGÍA SAS ESP como comprador en dichos contratos.

Por este motivo venimos requiriendo de TERMOBARRANQUILLA SA ESP el pago de las obligaciones incumplidas por VP INGENERGÍA SAS ESP, en particular el pago de facturas en mora, las cuales les informamos a ustedes en nuestra comunicación del pasado 19 de diciembre de 2023, en la cual les requerimos pagar el gas vendido a VP INGENERGÍA SAS ESP entre octubre y noviembre de 2023 y que ustedes habrían consumido.

CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA reiteran en consecuencia a TERMOBARRANQUILLA SA ESP que, como garante de VP INGENERGÍA SAS ESP en los contratos CNEGN-01-2016, CNEOG-CI-VP-01-2022 y CNEOG-CF-VP-01-2022, proceda al pago de las siguientes facturas por el gas que recibieron y utilizaron efectivamente:

- CNEG-511 – COP$4.481.879.333
- CNEG-514 – COP$38.605.509
- CNEG-524 – COP$16.793.643.567
- CNEG-550 – COP$109.725.984
- CNEG-551 – COP$275.489.032
- CNEG-553 – COP$847.741.949
- CNEG-562 – COP$38.130.184
- CNSC-431 – COP$876.059.559
- CNSC-384 – COP$77.345.041

 

- CNSC-405 – COP$2.438.237.867
- CNSC-445 – COP$ 8.864.702.285
- CNSC-407 – COP$11.095.414.235
- CNSC-420 – COP$1.864.555.188
- CNSC-450 – COP$4.926.832.176
- CNSC-444 – COP$18.190.207.599

Es necesario decir, además, que CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA terminaron las relaciones contractuales con VP INGENERGÍA SAS ESP por graves incumplimientos en los que esa sociedad incurrió.

CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA se reservan el derecho a cobrar todos los perjuicios que están sufriendo por los incumplimientos contractuales y por todas las acciones y omisiones desplegadas por VP INGENERGÍA SAS ESP y sus garantes, que ciertamente han afectado gravemente nuestras operaciones en Colombia.

Por último, CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA están procurando el pago de las referidas facturas y, en tal sentido, requerimos su colaboración respondiendo las siguientes preguntas:

1. ¿TERMOBARRANQUILLA SA ESP ha hecho pagos a VP INGENERGÍA SAS ESP por concepto del gas que ésta le vende, mediante consignación a cuentas diferentes del Fideicomiso de Administración y Pagos VP-CNE-TEBSA cuyo vocero es Itaú Fiduciaria Colombia SA? En caso afirmativo, solicitamos remitirnos un listado de estos pagos, indicando fecha, cuantía, y titular de la cuenta a la cual se dirigió el pago.

2. ¿TERMOBARRANQUILLA SA ESP ha recibido alguna instrucción de no pagar el gas vendido por CNE OIL & GAS SAS y CNEOG COLOMBIA SUCURSAL COLOMBIA a VP INGENERGÍA SAS ESP?

Cabe precisar que la información que estamos solicitando no corresponde a los amparados por reserva a la luz de la Constitución Política y la Ley, menos aun cuando TERMOBARRANQUILLA SAS ESP es garante de los contratos que celebramos con VP INGENERGÍA SAS ESP.

Atentamente,

ANDRES VALENZUELA PACHON
CNE OIL & GAS SAS
CNEOG COLOMBIA SUCURSAL COLOMBIA