**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re Application of

CANACOL ENERGY COLOMBIA S.A.S, CNE OIL & GAS S.A.S, CNEOG COLOMBIA SUCURSAL COLOMBIA

Index No.

Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings.

## DECLARACIÓN DE JUAN MENDOZA GÓMEZ EN SOPORTE DE LA SOLICITUD DE ASISTENCIA JUDICIAL DE ACUERDO CON EL TÍTULO 28 U.S.C.§ 1782

Yo, Juan Mendoza Gómez, con domicilio profesional en Calle 59a Bis #5-53, Bogotá, Colombia, declaro lo siguiente:

1. Represento a CNE OIL & GAS S.A.S ("**CNE**") y CNEOG COLOMBIA SUCURSAL COLOMBIA ("**CNEOG**"), en calidad de demandantes, en una serie de procedimientos ejecutivos contra VP Ingenergía S.A.S. E.S.P. ("**VP Colombia**") ante los juzgados colombianos (véanse párrafos **13** a **36** *infra*).

2. Presento esta declaración en apoyo a la solicitud de asistencia judicial conforme al Título 28 del *United States Code* (U.S.C.) Sección (§) 1782 para el requerimiento (*subpoena)* respecto de personas ubicadas en este distrito judicial para su uso en ciertos procedimientos judiciales en Colombia (la "**Solicitud**").

*Formación y experiencia*

3. Soy abogado colombiano identificado con la tarjeta profesional 144.959 del Consejo Superior de la Judicatura y socio de DRET Legal, una firma de abogados con oficinas en Bogotá y Medellín, Colombia. Concentro mi práctica en la negociación y resolución de disputas. A lo largo de 20 años, he representado clientes de diversas nacionalidades en negociaciones,

conciliaciones, arbitrajes (nacionales e internacionales) y, en general, litigios en varios países y jurisdicciones en disputas contractuales y conflictos comerciales, civiles y contencioso-administrativos involucrados en multitud de sectores e industrias (energía, petróleos, gas, minería, inmobiliario, logística, construcción, infraestructura, agroindustria, entre otros).

4. Bien como apoderado o como parte de equipos legales, he participado en diferentes procesos ejecutivos similares a los que originan esta solicitud en varias ciudades del país, realizando actuaciones parecidas como la petición de medida cautelares sobre productos financieros en Colombia.

*Anexos a esta declaración*

5. A lo largo de esta declaración, hago referencia a una serie de demandas ejecutivas, basadas en las reglas de los procesos de ejecución contenidas en el Código General del Proceso Colombiano, cuyas copias auténticas y correctas se adjuntan como Anexos 1 a 3:

  a. Demanda ejecutiva interpuesta por CNE contra VP Colombia para el pago de la Factura Electrónica de Venta CNEG-191 (**Anexo 1**) y su traducción al inglés (**Anexo 1A**);

  b. Demanda ejecutiva interpuesta por CNE y CNEOG contra VP Colombia para el pago de un pagaré (**Anexo 2**) y su traducción al inglés (**Anexo 2A**); y

  c. Demanda ejecutiva interpuesta por CNE y CNEOG contra VP Colombia en virtud de un título ejecutivo complejo (**Anexo 3**) y su traducción al inglés (**Anexo 3A**).

**I. ANTECEDENTES FÁCTICOS**

6. CNE y CNEOG son personas jurídicas de nacionalidad colombiana dedicadas a la exploración, producción y comercialización de gas natural en Colombia.

7. Por su parte, VP Colombia es una empresa dedicada al comercio de hidrocarburos y sus derivados líquidos y gaseosos a nombre propio o de terceros. VP Colombia tiene como representantes legales a su presidente, Álvaro Augusto Vargas Bravo (el "**Sr. Vargas Bravo**"); su vicepresidenta, Patricia Cristina Peña Anaya (la "**Sra. Peña Anaya**"); Darlyn Yesenia Neira Caro (la "**Sra. Neira Caro**"); y Álvaro Vargas Grass (el "**Sr. Vargas Grass**").

8. A su vez, VP Colombia tiene como empresa matriz a VP Engenergy LLC ("**VP USA**"), una compañía de responsabilidad limitada (*limited liability company*) registrada en Texas con establecimiento principal en Florida. Figuran como sus gestores el Sr. Vargas Bravo, la Sr. Peña Anaya y el Sr. Nicolás Vargas Peña (el "**Sr. Vargas Peña**").

9. Las relaciones comerciales entre los Solicitantes y VP Colombia comenzaron en 2016. Mi entendimiento es que, hasta entonces, los Solicitantes suministraban de manera directa el gas a su cliente TERMOBARRANQUILLA S.A. E.S.P. ("**TEBSA**"). Sin embargo, me han informado que, desde ese año, VP Colombia comenzó a actuar como intermediario, adquiriendo el gas de los Solicitantes y vendiéndoselo a TEBSA a un precio mayor.

10. En este contexto, CNE y VP Colombia celebraron el Contrato No. CNEGN-01-2016 de 2 de febrero de 2016, cuyo objeto era el suministro de gas natural (el "**Contrato 2016**").

11. Años más tarde, el 21 de diciembre de 2022, las partes firmaron un nuevo Contrato No. CNEOG-CF-VP-01-2022, por el cual CNE y CNEOG venderían gas a VP Colombia (el "**Contrato 2022**"). En virtud del Contrato 2022, VP Colombia debía prestar una garantía para garantizar el cumplimiento de sus obligaciones. Asimismo, se constituiría un fideicomiso de administración y pagos con la sociedad fiduciaria Itaú Fiduciaria Colombia ("**Fiduciaria Itaú**"), de manera que los recursos provenientes de los pagos TEBSA se emplearían en satisfacer las obligaciones de VP Colombia frente a CNE por el suministro del gas.

12. En la misma fecha se firmó el Contrato CNEOG-CI-VP-01-2022 entre CNE y CNEOG, por un lado, y VP Colombia, por otro, para el suministro de gas interrumpible en los términos y condiciones acordados (el "**Contrato 2022 Interrumpible**").

## II.     LOS PROCEDIMIENTOS EN COLOMBIA

13. A raíz de los reiterados incumplimientos contractuales de VP Colombia, CNE y CNEOG se vieron obligadas a iniciar tres procedimientos ejecutivos diferentes frente a VP Colombia:

   a. El procedimiento ejecutivo No. 2024-00142 ante el Juzgado 45 Civil del Circuito de Bogotá presentado por CNE contra VP Colombia para el pago de la Factura Electrónica de Venta CNEG-191 ("**Procedimiento Ejecutivo 00142**");

   b. El procedimiento ejecutivo No 2024-00034 ante el Juzgado 47 Civil del Circuito de Bogotá presentado por CNE y CNEOG contra VP Colombia para el pago de un pagaré ("**Procedimiento Ejecutivo 00034**"); y

   c. El procedimiento ejecutivo No. 2024-00151 ante el Juzgado 32 Civil del Circuito de Bogotá presentado por CNE y CNEOG contra VP Colombia en virtud de un título ejecutivo complejo ("**Procedimiento Ejecutivo 00151**" y, junto con los Procedimientos Ejecutivos 00142 y 00034, los "**Procedimientos Ejecutivos**").

14. Como se explica en la declaración de David Espinosa Acuña, los Solicitantes también han iniciado varios procedimientos penales contra representantes de VP Colombia por delitos de estafa, alzamiento de bienes, lavado de dinero y concierto para delinquir

("**Procedimientos Penales**" y, junto con los Procedimientos Ejecutivos, los "**Procedimientos Colombianos**").[1]

### A. PROCEDIMIENTO EJECUTIVO 00142

15. En el marco del Contrato 2016, CNE entregó a VP Colombia 1.212.148 MBTU de gas entre el 1 y 31 de diciembre de 2022. Anexos 1 y 1A, p. 2. El 17 de enero de 2023, CNE expidió la Factura Electrónica de Venta CNEG-191 (la "**Factura 191**") en la que se indicaba que el título se incorporaba como derecho que VP debía pagar a CNE la suma de COP$30.777.611.352 (aproximadamente US$7.486.575,51), la firma electrónica y la fecha de vencimiento de 14 de febrero de 2023. *Id*., p. 3. VP acusó recibo de la Factura 191 y la aceptó expresamente el 31 de enero de 2023, confirmando también que había recibido la mercancía. *Id*., pp. 4 – 5. De este modo, la Factura devino un título valor que presta mérito ejecutivo de acuerdo con el derecho colombiano. *Id*., p. 5. VP Colombia todavía adeuda y se niega a pagar la suma de COP$14.813.257.808 (aproximadamente US$3.603.287,20). *Id*., p. 6.

16. En su demanda ejecutiva, CNE solicitó la condena al pago de la suma debida, de las costas y agencias en derecho, así como la adopción de una serie de medidas cautelares. *Id*., pp. 2, 7 – 12.

17. El 16 de mayo de 2024, el Juzgado 45 Civil del Circuito de Bogotá libró mandamiento de pago a favor de CNE contra VP Colombia por la suma reclamada e intereses moratorios. El mismo día, el Juzgado decretó el embargo y retención de las sumas de dinero de

---

[1] También se han instituido dos procedimientos arbitrales entre las partes ante el Centro de Arbitraje de la Cámara de Comercio de Bogotá. El 27 de septiembre de 2023, Canacol Energy Colombia S.A.S. ("**Canacol**"), CNE y CNEOG presentaron una solicitud de inicio de arbitraje internacional ante el Centro de Arbitraje y Conciliación de la Cámara de Comercio de Bogotá contra VP Colombia por incumplimiento del Contrato 2016, Contrato 2022, el Contrato 2022 Interrumpible y el Acuerdo de Transacción No. 2112. Tras la presentación de dicho arbitraje, VP Colombia presentó una demanda de arbitraje nacional ante el Centro de Arbitraje y Conciliación de la Cámara de Comercio de Bogotá contra Canacol, CNE y CNEOG por incumplimiento del Contrato 2016, el Contrato 2022 y el Contrato 2022 Interrumpible. Estos procedimientos no se referencian en mayor detalle por no resultar relevantes a la presente Solicitud.

VP Colombia, incluidas las que posea en entidad bancarias y acciones, bonos o cualquier tipo de valor en la suma de COP$22.500.000.000,00 (aproximadamente US$5.464.482,75). El 24 de junio de 2024, el Juzgado notificó a diferentes entidades el embargo y retención del dinero, acciones, bonos o cualquier valor de VP Colombia que estuviese en su posesión.

18. El 27 de agosto de 2024, VP Colombia presentó recurso de reposición solicitando la revocación del auto de 16 de mayo de 2024 por medio del cual se libró mandamiento de pago. Asimismo, VP Colombia alegó que el Contrato 2016 contenía una cláusula arbitral que sometía cualquier controversia al arbitraje, por lo que pedía la terminación del proceso o, subsidiariamente, su suspensión por prejudicialidad.

19. CNE se opuso al recurso de reposición solicitando que se tuviese por extemporáneo y que subsidiariamente, se denegasen las excepciones interpuestas y la suspensión del procedimiento ejecutivo. En este sentido, CNE aclaró que la justicia arbitral no tiene competencia para conocer de los procesos ejecutivos en el ordenamiento jurídico colombiano, y que tampoco se dan los presupuestos para que opere la suspensión por prejudicialidad.

20. Por decisión del 10 de febrero de 2025 el Juzgado 45 Civil del Circuito decidió negar el recurso de VP Colombia, acogiendo los argumentos de CNE, por lo que el mandamiento de pago se mantuvo en firme.

21. Posteriormente VP Colombia contestó la demanda e interpuso sus defensas. Actualmente, las partes están a la espera de que el Juzgado celebre las audiencias para resolver sobre la prosperidad de las defensas de VP Colomba.

  **B.**  **PROCEDIMIENTO EJECUTIVO 00034**

22. Conforme al Contrato 2022 Interrumpible, VP emitió y entregó el Pagaré No. CNEOG-CI-VP-01-2022 (el "**Pagaré**") a CNE y CNEOG para garantizar el pago de sus obligaciones, que CNE y CNEOG podrían llegar a ejecutar ante su incumplimiento. Anexos 2 y

2A, p. 3.  Durante los meses de octubre y noviembre de 2023, CNE y CNEOG entregaron a VP Colombia el gas solicitado, emitiendo una serie de facturas para su cobro.  *Id*., p. 4. No obstante, VP Colombia reclamó el contenido de dichas facturas y se negó al pago. *Id*., pp. 4 – 5.

23. Ante el incumplimiento de tales obligaciones, CNE y CNEOG cumplimentaron el Pagaré en blanco conforme a su carta de instrucciones, por valores exigibles que ascienden a COP$36.077.009.198 (aproximadamente US$8.793.475,16). *Id*., p. 5.  En su demanda ejecutiva, CNE y CNEOG solicitaron la condena al pago de la suma adeuda, de las costas y agencias en derecho, así como la adopción de una serie de medidas cautelares. *Id*., p. 2, 6 – 10.

24. Tras subsanar ciertas deficiencias de la demanda, el auto 18 de marzo de 2024 del Juzgado 47 Civil del Circuito de Bogotá libró mandamiento de pago a favor de CNE y CNEOG contra VP Colombia por la suma reclamada e intereses moratorios.  CNE y CNEOG renunciaron al término de ejecutoria del auto, por lo que este debía tenerse en firme.  El mismo 18 de marzo de 2024, el Juzgado decretó el embargo y retención de los fondos que VP Colombia llegase a tener depositado a cualquier título en determinadas entidades bancarias, fiduciarias y fondos de inversión, hasta la cuantía de COP$54.115.000.000,00 (aproximadamente US$13.142.688,18).  Por medio de oficios, el embargo se notificó a tales entidades.

25. VP Colombia presentó recurso de reposición solicitando la revocación del auto de 18 de marzo de 2023 por medio del cual se libró mandamiento de pago.  Asimismo, por contener el Contrato 2022 Interrumpible una cláusula arbitral, VP Colombia alegó la excepción de cláusula compromisoria y, subsidiariamente, solicitó la suspensión por prejudicialidad.  Finalmente, en subsidio de lo anterior, VP Colombia solicitó la inadmisión de la demanda ejecutiva por incumplir los requisitos formales exigidos por el derecho colombiano.

26. En contestación al recurso de reposición, CNE y CNEOG presentaron un escrito solicitando la denegación del recurso de reposición y de la suspensión del procedimiento ejecutivo, reiterando que los árbitros no tienen competencia para conocer de los procedimientos ejecutivos en Colombia.

27. El 16 de septiembre de 2024, el Juzgado 47 Civil del Circuito resolvió el recurso de reposición de VP Colombia, confirmando el mandamiento de pago y declarando que la cláusula arbitral no resultaba aplicable a asuntos ejecutivos.

28. El 26 de septiembre de 2024, VP Colombia presentó contestación a la demanda ejecutiva, alegando que existía un cobro de lo no debido pues las facturas habían sido rechazadas, que el Pagaré no presentaba mérito ejecutivo y que CNE y CNEOG tienen la obligación de pagar compensaciones a favor de VP Colombia. Asimismo, VP Colombia planteó una serie de excepciones contra la acción cambiaria y de prejudicialidad por la existencia de un proceso arbitral.

29. Actualmente, las partes están a la espera de que el Juzgado resuelva las anteriores solicitudes de las partes.

C. **PROCEDIMIENTO EJECUTIVO 00151**

30. Entre el 1 de octubre y el 30 de noviembre de 2023, y en el marco del Contrato 2022, CNE y CNEOG vendieron a VP Colombia 522.786 MBTU de gas por valor de COP$11.302.940.152,00 (aproximadamente US$2.745.098,73). Anexos 3 y 3A, p. 3. CNE y CNEOG remitieron los correspondientes documentos de cobro primero el 13 de diciembre de 2023 y luego del reclamo de VP expidieron las facturas nuevamente el 5 de febrero de 2024. *Id.* A pesar del reclamo de VP, lo cierto fue que el gas fue recibido sin objeciones ni reservas, siendo vendido por VP Colombia a sus clientes. *Id.*, pp. 3 – 4. No obstante, VP Colombia no pagó las cantidades que adeudaba. *Id.*, 4.

31. Por estos motivos, CNE y CNEOG se vieron obligadas a ejecutar judicialmente el Contrato 2022 que, junto a los documentos de cobro, constituye un título ejecutivo que en la jurisdicción colombiana se califica como complejo para significar que no dependen de uno solo documento sino de la integración de varios documentos. *Id*. En su demanda ejecutiva, CNE y CNEOG solicitaron la condena al pago de la suma adeudada, de las costas y agencias en derecho, así como la adopción de una serie de medidas cautelares. *Id*., p. 2, 5 – 10.

32. Subsanadas ciertas deficiencias de la demanda, el 20 de junio de 2024, el Juzgado 32 Civil del Circuito de Bogotá libró mandamiento de pago a favor de CNE y CNEOG contra VP Colombia por la suma reclamada e intereses moratorios. El mismo día, el Juzgado decretó el embargo de los recursos, dineros, activos y créditos de cualquier naturaleza que tuviera VP Colombia en ciertas compañías o sociedades fiduciarias o comisionistas de bolsa hasta cuantías determinadas. Por medio de oficios, el embargo se notificó a tales entidades.

33. VP Colombia presentó recurso de reposición solicitando la revocación del auto de 20 de junio de 2024 por medio del cual se libró mandamiento de pago. Asimismo, VP Colombia alegó que el Contrato 2022 contenía una cláusula arbitral que sometía cualquier controversia al arbitraje, por lo que pedía la terminación del proceso o, subsidiariamente, su suspensión por prejudicialidad.

34. CNE y CNEOG presentaron un escrito solicitando la denegación del recurso de reposición y la suspensión del procedimiento ejecutivo. Como en los otros procesos, CNE y CNEOG alegaron que los árbitros no tienen competencia para conocer de los procedimientos ejecutivos en Colombia.

35. En contestación al recurso de reposición, CNE y CNEOG presentaron un escrito solicitando la denegación del recurso de reposición y de la suspensión del procedimiento ejecutivo,

reiterando que los árbitros no tienen competencia para conocer de los procedimientos ejecutivos en Colombia.

36. Actualmente, las partes están a la espera de que el Juzgado resuelva las anteriores solicitudes de las partes.

### D. LA INSOLVENCIA DE VP COLOMBIA

37. Como expliqué anteriormente, los Juzgados de los Procedimientos Ejecutivos Colombianos decretaron medidas cautelares relativas al embargo y secuestro de los recursos económicos que se hallaran en las cuentas bancarias titularidad de VP Colombia. Sin embargo, a la fecha las entidades financieras correspondientes, luego de proceder con su verificación, han reportado que VP Colombia tienen un total de COP$1.445.811 (aproximadamente US$350).

38. Teniendo en cuenta que VP Colombia es una empresa dedicada al comercio de hidrocarburos y sus derivados líquidos y gaseosos a nombre propio o de terceros, actividades que implican operar con importantes cantidades de dinero, el hallazgo de esta cantidad ínfima de dinero indica que VP Colombia podría estar tratando de eludir el cumplimiento de sus obligaciones económicas y el pago de deudas para con CNE y CNEOG mediante un posible ocultamiento de sus bienes.

39. Dado que no ha sido posible localizar los recursos y activos de VP Colombia en Colombia, es altamente probable que estos hayan sido desviados, por medio de dividendos, préstamos u otros negocios jurídicos, a su matriz, VP USA, en Estados Unidos.

### III. NI VP USA Y NI EL SR. VARGAS PEÑA, RESIDENTES EN ESTE DISTRITO, SON PARTE DE LOS PROCEDIMIENTOS COLOMBIANOS

40. Ni VP USA ni el Sr. Vargas Peña son parte de los Procedimientos Ejecutivos ni en general de los Procedimientos Colombianos.

**IV. LA SOLICITUD NO ES CONTRARIA AL DERECHO COLOMBIANO Y LOS JUZGADOS COLOMBIANOS ADMITIRÍAN LOS DOCUMENTOS RECABADOS COMO PRUEBA EN ESTE DISTRITO**

41. Las pruebas que logren obtenerse en esta jurisdicción podrán ser utilizadas ante los jueces colombianos para evidenciar tanto la procedencia de la ejecución como la intención de VP Colombia de no cumplir con sus obligaciones contractuales para con CNE y CNEOG, y su intención de desviar activos y fondos fuera de Colombia para entorpecer los procedimientos ejecutivos.

42. No existe ninguna ley, reglamento o norma procedimental en el ordenamiento colombiano que impida a las partes de un procedimiento en Colombia recopilar pruebas a través de una solicitud de *discovery* en Estados Unidos. Aunque los jueces colombianos podrían solicitar la obtención de estas pruebas a través de una carta rogatoria, de acuerdo con lo dispuesto en el Convenio de la Haya del 18 de marzo de 1970 sobre la Obtención de Pruebas en el Extranjero en Materia Civil o Comercial, este procedimiento es muy lento y poco eficiente. En cualquier caso, esta no es una vía que las partes de un procedimiento en Colombia hayan de agotar antes de recurrir a la solicitud de asistencia judicial de la Sección 1782.

43. En definitiva, de acuerdo con la ley colombiana, la información y documentos resultantes de esta Solicitud podrían ser utilizadas como pruebas en los Procedimientos Ejecutivos.

**V. SOLICITUD DE *DISCOVERY* EN ESTE DISTRITO**

44. Como se adelantó en los párrafos **8**, **38** y **39** *supra*, es altamente probable que la información y documentos concernientes al desvío de recursos de VP Colombia se encuentren en este distrito. Por este motivo, los Solicitantes piden a la Corte de distrito de los Estados Unidos para el Distrito Sur de Florida que ordene las declaraciones y exhibición de documentos de VP USA y del Sr. Vargas Peña, incluyendo, entre otras:

    a.    La estructura societaria y de administración de VP Colombia y VP USA, incluyendo estatutos, acuerdos operativos, actas de reuniones o resoluciones;

    b.    Documentos relativos a los estados financieros, extractos bancarios, declaraciones de impuestos, arrendamientos, garantías o ventas de activos de VP USA;

    c.    Documentos relativos a operaciones (ej.: préstamos, pagos, dividendos, salarios o transferencias) entre VP USA y sus miembros, y entre VP USA y sus afiliadas (incluyendo VP Colombia) u otras entidades relacionadas; y

    d.    Las responsabilidades del Sr. Vargas Peña como gestor de VP USA, así como su conocimiento, opinión y recomendaciones respecto de las operaciones, contratos y/o relación entre VP USA y VP Colombia.

45. Las pruebas solicitadas en la Solicitud se enfocan en la relación, operaciones, contratos o transacciones que hayan tenido lugar entre VP Colombia, VP USA, otras sociedades vinculadas y el Sr. Vargas Peña y que pudieran haber servido a VP Colombia para defraudar a sus acreedores CNE, CNEOG y Canacol. Esta información es directamente relevante a los puntos sobre los cuáles tendrán que decidir los juzgados colombianos en los Procedimientos Ejecutivos.

46. De acuerdo con 28 U.S.C. § 1746, declaro bajo pena de perjurio a tenor de las leyes de Estados Unidos de América que lo que antecede es fiel y exacto.

Firmo esta declaración en Bogotá (Colombia), el 20 de abril de 2025.

_____
Juan Mendoza Gómez