# Exhibit 1



**MARTHA R. MORA**
Direct Dial: (305) 779-3567
Email: mmora@avilalaw.com

June 13, 2025

**<u>VIA E-MAIL AND U.S. MAIL</u>**
Hector James Montalvo, Esq.
Montalvo Law, P.A.
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, FL 33134
jim@montalvopa.com

      Re:    Initial Objections to Subpoenas to Testify at a Deposition in a Civil Action to VP Engenergy LLC and Nicolas Vargas Peña dated April 24, 2025 ("**Subpoenas**") in *In re Application of Canacol Energy Colombia S.A.S., CNE Oil & Gas S.A.S., CNEOG Colombia Sucursal Colombia*, Case No. 25-mc-60796-AHS, United States District Court for the Southern District of Florida.

Dear Mr. Montalvo:

      As you know, this law firm represents VP Engenergy LLC ("**VP USA**") and Nicolas Vargas Peña ("**Nicolas Vargas**") in connection with responding to the above referenced Subpoenas. The Subpoenas were issued in connection with the *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings ("**Application**") filed by Canacol Energy Colombia S.A.S. ("**Canacol**"), CNE Oil & Gas S.A.S. ("**CNE**"), and CNEOG Colombia Sucursal Colombia ("**CNEOG**") (collectively, "**Petitioners**") in the above referenced proceeding. This letter serves as VP USA's and Nicolas Vargas' timely objections to the Subpoenas, pursuant to our agreement to extend this timeframe until June 13, 2025.

      The Subpoenas purport to require VP USA and Nicolas Vargas to appear at a deposition on September 15 and 16, 2025, respectively, on a multitude of topics, and produce documents and communications dating back to January 1, 2022 pertaining to numerous individuals, entities, contracts, and proceedings in Colombia to which neither VP USA or Nicolas Vargas are parties nor directly involved.

      Pursuant to Rule 45 of the Federal Rules of Civil Procedure, VP USA and Nicolas Vargas respond and object to the Subpoenas as follows.

## Introduction

As you are aware, VP Ingenergia S.A.S. E.S.P. ("**VP Colombia**") filed an arbitration against Petitioners CNE and CNEOG before an Arbitral Tribunal in Colombia and, in turn, CNE and CNEOG filed in Colombia multiple enforcement proceedings against VP Colombia pertaining to the same controversy and matters in two ongoing arbitrations in Colombia involving three contracts between VP Colombia and Petitioners CNE and CNEOG. In another move to continue to pressure VP Colombia through the courts in Colombia and circumvent the arbitration, Petitioners also filed in Colombia criminal complaints against VP Colombia's representatives stemming from the same contractual disputes between VP Colombia and Petitioners CNE and CNEOG. Petitioners have also taken legal action against the arbitrators and judges in the Colombian proceedings to disrupt and delay the administration of the arbitration in Colombia.

The Subpoenas are the latest litigious attempt by Petitioners to continue their crusade against VP Colombia and bring Petitioners' harassment campaign to the United States. The Subpoenas seek irrelevant, confidential, financial and business information of VP Colombia's member, VP USA, and Nicolas Vargas, the son of VP Colombia's principals, through the unduly intrusive and burdensome Subpoenas. VP USA and Nicolas Vargas are not involved in the Colombian proceedings and are not parties to any of the contracts at issue in the arbitration, enforcement, and criminal proceedings pending in Colombia between Petitioners and VP Colombia.

## Relevant Procedural History and Colombian Proceedings

### *Contractual Relationship Between VP Colombia and Petitioners CNE and CNEOG*

All of the Colombian proceedings referenced in Petitioners' Application stem from disputes between the parties pertaining to three *Take or Pay* contracts between VP Colombia and Petitioners CNE and CNEOG involving the delivery and sale of natural gas to VP Colombia. Specifically, (1) Contract No. CNEGN-01-2016 between CNE and VP Colombia for sale of natural gas dated February 2, 2016 ("**2016 Contract**"); (2) Contract No. CNEOG-CF-VP-01-2022 between CNE and CNEOG and VP Colombia for sale of natural gas dated December 21, 2022 ("**2022 Contract**"); and Contract No. CNEOG-CI-VP-01-2022 between CNE and CNEOG and VP Colombia for the interruptible supply of natural gas dated December 21, 2022 ("**2022 Interruptible Contract**"). The 2016 Contract, the 2022 Contract, and the 2022 Interruptible Contract are referred to collectively herein as the "**Colombian Contracts**". VP USA and Nicolas Vargas are not parties to any of the Colombian Contracts nor did they participate directly or indirectly in their execution.

### *Colombian Arbitrations Between VP Colombia and Petitioners CNE and CNEOG*

There are two ongoing arbitrations in Colombia between VP Colombia and Petitioners CNE and CNEOG. In October 2023, VP Colombia filed an arbitration against CNE and CNEOG before the Arbitral Tribunal of the Center for Arbitration and Conciliation of the Chamber of Commerce of Bogotá identified as Case 146188 ("**Colombian National Arbitration**"), stemming from CNE and CNEOG's breaches of the three Colombian Contracts. CNE and CNEOG have presented counterclaims pertaining to the Colombian Contracts against VP Colombia in the

2

Colombian National Arbitration. The Arbitral Tribunal has declared itself competent to hear the entire dispute between the parties pertaining to the Colombian Contracts.[1] Petitioners asked the arbitrators for discovery, including as to VP USA, and the arbitrators allowed at least some discovery requests to proceed within the arbitration. Petitioners through the Subpoenas are now attempting to circumvent the arbitration process and the rulings of the arbitrators. On May 29, 2025, through Ruling 47, the National Arbitration of Colombia ordered the parties to present the evidence requested by the other party (testimonies, documents and expert reports). Therefore, the stage to request additional discovery or incorporate new evidence has ended.

Interestingly, Petitioners reference these "two ongoing arbitrations between the parties" in Colombia in their Application, but claim they "are not relevant to this Application." These two arbitrations between the parties involve claims pertaining to the Colombian Contracts, including payment of invoices, which are part of the three "enforcement proceedings" subsequently filed in Colombia by Petitioners against VP Colombia that are referenced in the Application, as further discussed below. It appears that Petitioners, through the Subpoenas, are seeking to circumvent the arbitration procedure and arbitration proceedings by claiming the Colombian National Arbitration is not relevant to the Application, while simultaneously seeking documents in the Subpoenas pertaining to the same Colombian Contracts and claims at issue in the ongoing Colombian National Arbitration.

### *Colombian Enforcement Proceedings Against VP Colombia*

In parallel, and within the same controversy and matters that are already part of the Colombian National Arbitration, Petitioners CNE and CNEOG initiated three enforcement proceedings against VP Colombia wherein Petitioners are seeking payment from VP Colombia for certain invoices, which had been rejected by VP Colombia, and a promissory note, all of which pertain to the Colombian Contracts.

1. <u>Colombian Enforcement Proceeding 00034</u>. Specifically, after VP Colombia in Colombia initiated the Colombian National Arbitration, in December 2023, CNE and CNEOG filed a claim in Colombia against VP Colombia ("**Colombian Enforcement Proceeding 00034**") seeking payment of a promissory note issued by VP Colombia guaranteeing its payment obligations under the <u>2022 Interruptible Contract</u>. VP Colombia rejected the invoices based on Petitioners prior breach of the 2022 Interruptible Contract, which will be decided in the Colombian National Arbitration. *See* Declaration of Juan Mendoza Gómez ("**Mendoza Declaration**"), submitted with Petitioners' Application, ¶ 22, n.1. It appears that Petitioners decided to pursue the promissory note in a summary execution proceeding available in Colombia before the arbitrators decide whether the subject invoices are valid and by extension whether Petitioners first breached

---

[1] In September 2023, Petitioners filed in Colombia an international arbitration under different procedural rules against VP Colombia (**"Colombian International Arbitration"**), pertaining to the same dispute in which VP Colombia filed the arbitration demand against Petitioners for breaches and amounts due under the Colombian Contracts at issue in the Colombian National Arbitration. VP Colombia has challenged the international nature of this arbitration, as under Colombian law and the applicable Colombian contracts the arbitration must be domestic.

3

the 2022 Interruptible Contract, render the subject invoices invalid and nullify the promissory note claim.

2. <u>Colombian Enforcement Proceeding 00151</u>. A few months later, in March 2024, CNE and CNEOG filed a second claim in Colombia against VP Colombia ("**Colombian Enforcement Proceeding 00151**") pertaining to alleged payment obligations of VP Colombia under the <u>2022 Contract</u>, which is also part of the Colombian National Arbitration, as acknowledged in the Mendoza Declaration, ¶ 30, n.1.

3. <u>Colombian Enforcement Proceeding 00142.</u> The next month, in April 2024, CNE filed a third claim in Colombia against VP Colombia ("**Colombian Enforcement Proceeding 00142**") seeking payment of an invoice for natural gas sold to VP Colombia under the <u>2016 Contract</u>. Similar to the claims at issue in the Colombian Enforcement Proceedings 00034 and 00151, CNE's claim for payment under the 2016 Contract is also part of the parties' dispute in the Colombian National Arbitration. *See* Mendoza Declaration, ¶ 15, n.1. Rather than awaiting the Arbitrators' decision, Petitioners chose to file this enforcement proceeding as a tactic to pressure VP Colombia.

*Colombian Criminal Proceedings Against VP Colombia Initiated by Petitioners*

In another tactical move to continue to harass VP Colombia through the courts in Colombia and circumvent the arbitration, Petitioners filed numerous criminal complaints against VP Colombia's representatives with the Colombian Public Prosecutor's Office. The Application identifies three criminal proceedings that Petitioners have initiated in Colombia against VP Colombia's representatives. In fact, the Colombian Prosecutor's Office has not found cause or merit to open any formal criminal investigation or proceeding.

1. <u>First Colombian Criminal Proceeding</u>. The first criminal proceeding referenced as the "Fraud Proceeding" in the Application ("**First Colombian Criminal Proceeding**"), filed in February 2024, stems from alleged fraud by VP Colombia's representatives in connection with issuing purported invalid guarantees and wrongfully withdrawing funds in connection with the 2022 Contract. The arbitration will be deciding these issues, as Petitioners included these claims within their counterclaims in the arbitration. Further, the speculative allegations in this proceeding pertain to the Colombian Contracts and invoices which are part of the Colombian National Arbitration, as evidenced in the Declaration of David Espinosa Acuña ("**Espinosa Declaration**") submitted with Petitioners' Application. *See* Espinosa Decl., ¶ 14 (asserting that this criminal "complaint alleges that the guarantee issued by VP Colombia under the 2022 Contract was ineffective" and that VP Colombia's representatives "continued to engage in their criminal behavior . . . by rejecting the invoices proving the delivery of gas"). The Colombian Prosecutor's Office, which is responsible for gathering and introducing evidence, not Petitioners, has not opened a formal investigation into these spurious, speculative allegations nor have charges been filed against VP Colombia's representatives. Petitioners' Application fails to disclose that the Colombian Prosecutor's Office closed an earlier criminal case filed by Petitioners against VP Colombia in December 2023, involving similar allegations based on the contractual nature of the

4

dispute, including the allegations in the arbitration, and lack of probable cause. It is unclear whether this closed Colombian criminal case is the "additional criminal proceeding" referenced in the Application as not being relevant without any explanation to the Court as to the underlying basis of such proceeding which stems from the same dispute between Petitioners and VP Colombia.

2. <u>Second Colombian Criminal Proceeding</u>. The Application also references a second criminal proceeding ("**Second Colombian Criminal Proceeding**") filed in April 2024, Case No. 2024-69206, against VP Colombia's representatives for alleged conspiracy to commit a crime. This proceeding, however, appears to be inactive, and also pertained to VP Colombia's purported obligations to Petitioners in connection with amounts allegedly due by VP Colombia under the Colombian Contracts and claims already part of the Colombian National Arbitration.

3. <u>Third Colombian Criminal Proceeding</u>. The third criminal proceeding referenced in the Application ("**Third Colombian Criminal Proceeding**") was filed by Petitioners in Colombia in October of 2024, for the alleged concealment of assets and money laundering against VP Colombia's representatives. The impetus of having filed the Third Colombian Criminal Proceeding appears to stem from the allegation that VP Colombia had $350.00 in certain accounts in Colombia while VP Colombia had allegedly been able to cover fees in the arbitration in Colombia. *See* Espinosa Decl., ¶ 14. Even the Espinosa Declaration submitted with Petitioners' Application does not allege that these allegations constitute criminal conduct, only that such purported conduct "could be considered" "concealment of assets." *See id.* Similar to the First Colombian Criminal Proceeding, the Colombian Prosecutor's Office, which is responsible for gathering and introducing evidence, not Petitioners, has not opened a formal investigation into these spurious, speculative allegations nor have charges been filed against VP Colombia's representatives.

### Objections to Subpoenas to VP USA and Nicolas Vargas

Through the Subpoenas, Petitioners have brought their vicious campaign of litigation against VP Colombia to Florida under the guise of needing evidence for use in the Colombian Enforcement and Criminal Proceedings. To that end, Petitioners, as a result of their *ex parte* Application, issued the Subpoenas requesting irrelevant, confidential business and improper financial worth discovery prior to any judgment in Petitioners' favor in the Colombian arbitration proceedings and improperly seeking financial information about Nicolas Vargas, individually, and the assets of VP USA, neither of whom are parties to the Colombian proceedings nor parties to the Colombian Contracts.

*28 U.S.C. § 1782's statutory requirements and the Intel Factors*

VP USA and Nicolas Vargas object to the Subpoenas on the basis that they were issued based on an Application, filed *ex parte*, that does not satisfy all of 28 U.S.C. § 1782's statutory requirements. Petitioners allege in their Application that the "for use in a foreign proceeding" element is satisfied because "Petitioners plan on using the Requested Discovery in the Colombian Proceedings." *See* Petitioners' 28 U.S.C. § 1782 Application, at 10. There is really only one dispute

5

– the contractual claims in the arbitration. The arbitrators will decide whether VP Colombia or Petitioners first breached the Colombian Contracts, whether the other was therefore excused from performing, and the amount of damages to be awarded against the breaching party. The three Colombian Enforcement Proceedings are nothing more than claims pertaining to purported payment obligations of VP Colombia under the three Colombian Contracts which will be decided in the Colombian arbitration. In fact, there is a current pending request by VP Colombia to the Arbitration Panel to have it assume jurisdiction over the Colombian Enforcement Proceedings, as provided by Colombian law. If the Arbitration Panel assumes jurisdiction, the Colombian courts would no longer preside over the Colombian Enforcement Proceedings. All of the other enforcement and criminal proceedings in Colombia are offshoots of the main contractual dispute in the arbitration, and the arbitration will ultimately decide who prevails. If VP Colombia prevails in the arbitration, all of the offshoot criminal, enforcement and other proceedings in Colombia will fail and VP Colombia will prevail in them. The discovery sought in the Subpoenas, particularly as to the corporate, business and financial information pertaining to VP USA, is beyond the scope of the contractual issues between Petitioners and VP Colombia at issue in each of the Colombian Enforcement Proceedings, which do not involve VP USA or Nicolas Vargas. It appears that Petitioners are prematurely seeking financial worth information pertaining to VP Colombia and simultaneously to pierce the corporate veil and reach its member, VP USA, prior to even obtaining a judgment against VP Colombia. We object to the Subpoenas on these bases.

Although Petitioners claim that the "Requested Discovery will be 'of use' to the Colombian courts given its relevance in determining VP Colombia's intent to defraud petitioner," such allegation is not even remotely relevant to the Colombian Enforcement Proceedings, which are contractual disputes pertaining to the three Colombian Contracts. The "Requested Discovery" appears to be an attempt to make an end run around the Colombian National Arbitration, where the time to request additional discovery has passed. The so-called "Requested Discovery" with its overreaching broad scope includes various requests that would have no bearing on Petitioners' spurious allegations of purported fraud by VP Colombia, such as the organizational, governance, financial and accounting records of VP USA. Notably, any transactions between VP Colombia and any other entity, including VP USA, should be sought from VP Colombia in the Colombian proceedings.

The *Intel* factors also do not appear to weigh in favor of allowing the irrelevant, unduly and intrusive requests in the Subpoenas.[2] The Colombian courts would not consider the information sought in the Subpoenas which are not relevant to the underlying claims in the Colombian proceedings. *See* Second *Intel* factor (considering the receptivity of the foreign court to the U.S. discovery). As to the third *Intel* factor, it appears that Petitioners may be seeking to circumvent foreign proof gathering in the Colombian arbitration proceedings and, particularly, as it relates to the Colombian Criminal Proceedings, where any relevant evidence for use in those proceedings appears to be within the purview of the Colombian Prosecutor's Office charged with seeking and collecting any relevant evidence, not a complainant, as evidenced in the Espinosa Declaration submitted by Petitioners in their Application. *See* Espinosa Decl., ¶ 14 (alleging that in one of the Colombian Criminal Proceedings, the "Colombian Prosecutor's Office has already

---

[2] *Intel v. Corp. v. Advances Micro Devices, Inc.*, 542 U.S. 241 (2004) (listing the four discretionary factors established by the United States Supreme Court for courts to consider in requests for U.S. discovery for use in foreign proceedings under 28 U.S.C. § 1782).

6

instructed its investigators to technically collect the information that is the subject of the complaint"). In addition, in at least one of the Colombian Enforcement Proceedings, the time period to present evidence pertaining to the parties' contractual dispute has already passed. As to the fourth *Intel* factor, the Subpoenas' requests are unduly intrusive and burdensome, as recognized by the Court in this case, and VP USA and Nicolas Vargas object on these bases. *See* Order [D.E. 14] (finding that "at least the first three factors *appear* to support granting the Motion" and that the requested subpoenas may be unduly intrusive or burdensome).

### *Specific Subpoena Requests to VP USA and Nicolas Vargas*

The Subpoenas seek "All Documents and Communications" from VP USA and Nicolas Vargas, individually, "Concerning VP Colombia" dating back to 2022 without any reasonable limitation and irrespective of whether they are relevant to the underlying claims in the Colombian proceedings. *See* Request No. 1. This request is patently unreasonable and objectionable on various grounds, including because it is overbroad, vague, ambiguous, and not relevant to the claims in the Colombian proceedings. *See In re Bernal*, Case No. 18-21951-MC-Williams/Torres, 2018 WL 6620085, *9 (S.D. Fla. Dec. 18, 2018) (holding that discovery requests were improper because they sought all "communications relating to" or "involving [certain] entities or persons whether or not they are relevant to the underlying claims in the foreign proceeding."). Similarly, the subparagraphs in Request No. 1, which include documents and communications "Concerning," among other things, the 2016 Contract, the 2022 Contract, the 2022 Interruptible Contract, the Colombian Enforcement and Criminal Proceedings, and communications with a multitude of third parties are objectionable on these same bases. VP USA also objects to the Subpoena to the extent that it purports to "cover All Documents . . . including those belonging to subsidiaries, subdivisions, or affiliates," without identifying any specific entities. *See* Subpoena, Instruction No.1. Tellingly, Petitioners did not seek this discovery from VP Colombia in the Colombian proceedings or such discovery was not allowed by the arbitrators and courts in Colombia.

The remaining requests in the Subpoenas for "All Documents and Communications Concerning" –

- the business/contractual relationships between VP Colombia/VP USA and TEBSA, including payments (Request No. 2);
- VP USA and Nicolas Vargas' ownership or interest in VP Colombia and "any other energy company" (Request No. 3);
- organizational, governance, financial and accounting records, including tax filings and audits, of VP USA and roles/responsibilities of managers and members (Request Nos. 4-5 to VP USA);
- Nicolas Vargas' role and responsibilities as manager of VP USA, any salaries, distributions, bonuses, etc. made by VP USA and/or VP Colombia to Nicolas Vargas, and agreements and records of VP USA's transactions (Request Nos. 4-5 to Nicolas Vargas);
- transactions between VP Colombia and VP USA, including loans, payments, salaries, transfers, and with "persons affiliated with" VP USA (Request No. 6);

7

- funds used to maintain real property located at 16754 Natures Way, Weston, Florida (Request No. 7 to VP USA);
- documents provided and communications sent to VP USA and Nicolas Vargas as a manager, shareholder, member or equivalent of VP Colombia and VP USA, respectively (Request No. 8 to VP USA, Request No. 7 to Nicolas Vargas);
- assets and funds placed by VP Colombia in "the Trust with Itaú" (Request No. 9 to VP USA, Request No. 8 to Nicolas Vargas); and
- VP USA's document retention (No. 10) –

have no relevance on the underlying claims in the Colombian Enforcement Proceedings pertaining to VP Colombia's contractual obligations and payments allegedly due under invoices and a promissory note in connection with the 2016 Contract, 2022 Contract and 2022 Interruptible Contract, which are the subject of the arbitration in Colombia. The unduly intrusive discovery sought in these requests also appear to be grossly overbroad and not relevant to Petitioners' spurious allegations in the Colombian Criminal Proceedings. We object to the Subpoenas on these bases.

### *Deposition Topics in the Subpoenas to VP USA and Nicolas Vargas*

Similarly objectionable are the irrelevant and overly broad deposition topics in the Subpoenas. Remarkably, the Subpoenas to Nicolas Vargas, individually, and VP USA purport to seek testimony from them as to their "knowledge" and "understanding" concerning, among other things:

- each of the Colombian Contracts, which VP USA and Nicolas Vargas are not parties to;
- the multiple Colombian Enforcement Proceedings and Colombian Criminal Proceedings, which they are not parties to;
- "Guarantees" and a "Trust" which do not involve them, including as to funds placed by VP Colombia in the "Trust";
- the liabilities, debts, obligations and payments purportedly owed by VP Colombia to Petitioners, and Petitioner's ability to collect on any such liabilities, debts, obligations and payments purportedly owed by VP Colombia, which have nothing to do with VP USA or Nicolas Vargas;
- salary and payments made to Nicolas Vargas, who is not a party to any of the Colombian Contracts or Colombian Proceedings;
- funds used to maintain a property in Weston, Florida, that does not appear to be part of any of the Colombian Enforcement or Criminal Proceedings.

The Subpoenas also seek testimony as to VP USA's organization structure, accounting practices, governance, members, managers, and payments, including salaries, made by VP USA, which is not relevant to the claims in the Colombian proceedings. The overreach of all the deposition topics in the Subpoenas is patently unreasonable. Further, the Colombian proceedings would not accept the purported testimony as evidence, which could not be "used" in the Colombian proceedings. Based on the foregoing, Petitioners' attempt to seek testimony from VP USA or

8

Nicolas Vargas is not appropriate or within the permissible scope of discovery, particularly in light of the claims at issue in the Colombian proceedings.

      VP USA and Nicolas Vargas also object to the Subpoenas to the extent that they seek to require them to produce records that are not within the scope of permissible discovery under the Federal Rules of Civil Procedure and applicable law, are otherwise protected by applicable law from disclosure, and/or are privileged and confidential. *See* Fed. R. Civ. P. 26, 45. Further, to the extent that VP USA or Nicolas Vargas are required to search for and produce documents, VP USA and Nicolas Vargas intend to seek for your clients to pay the expenses.

      VP USA and Nicolas Vargas are prepared to seek relief from the Court, including through a motion to quash the subpoenas or, alternatively, for a protective order. However, we hope that Court intervention will not be necessary and that the parties can reach an amicable resolution of this matter. Please let me know a good time to discuss this matter including the foregoing objections.

Sincerely,

AVILA RODRIGUEZ HERNANDEZ MENA & GARRO LLP

*Martha R. Mora*

Martha R. Mora

cc: Daniel O. Mena, Esq.